Nos. 25-4673 (L) and 25-4674

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
LETITIA JAMES,
Defendant-Appellee

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
JAMES COMEY, JR.,
Defendant-Appellee

On Appeal from the United States District Court
for the Eastern District of Virginia

## JOINT APPENDIX

Henry C. Whitaker
Counselor to the Attorney General
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 445-8942
henry.whitaker@usdoj.gov
*Counsel for Appellant*

Abbe David Lowell
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
(202) 964-6110
ALowellpublicoutreach
 @lowellandassociates.com
*Counsel for Appellee Letitia James*

Ephraim A. McDowell
Elias S. Kim
Cooley LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
(202) 842-7800
emcdowell@cooley.com

Rebekah Donaleski
Cooley LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

Connie L. Wang
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Jessica N. Carmichael
Carmichael Ellis & Brock, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
(703) 684-7908

Patrick J. Fitzgerald
P.O. Box 277
New Buffalo, MI 49177
(312) 758-4454

Michael R. Dreeben
600 New Jersey Ave. NW
Washington, DC 20001
(202) 695-2562

*Counsel for Appellee James Comey, Jr.*

# Table of Contents

**United States v. Comey**, No. 1:25-cr-272

District Court Docket Report ................................................... J.A. 1

DE1 Indictment .................................................................... J.A. 28

DE3 Report of Grand Jury's Failure to Concur in Indictment ............... J.A. 30

DE60-1 Exhibit A: Attorney General Order No. 6402-2025 Appointing
Lindsey Halligan Interim U.S. Attorney ................................................ J.A. 34

DE95 Order to Submit Grand Jury Materials for in Camera Review ..... J.A. 36

DE137-1 Exhibit A: Attorney General Order No. 6485-2025 Appointing
Lindsey Halligan Special Attorney and Ratifying Certain Actions ......... J.A. 37

DE148 Order to Submit Complete Grand Jury Transcript for in Camera
Review ........................................................................... J.A. 40

DE158 Notice of Compliance with Judicial Order ............................... J.A. 42

DE188 Informative Notice Clarifying the Record ................................ J.A. 45

DE188-1 Declaration of Interim U.S. Attorney Lindsey Halligan .......... J.A. 48

DE188-2 Attorney General Order No. 6491-2025 Ratifying Certain Actions in
the Eastern District of Virginia ........................................................ J.A. 50

DE191 Memorandum Opinion re: Order Requiring Disclosure of Grand Jury
Materials ........................................................................ J.A. 51

DE193 Order Requiring Disclosure of Grand Jury Materials .............. J.A. 75

DE206 Government's Notice Correcting the Record ........................... J.A. 77

DE206-1 Exhibit A: Transcript of Return of Indictment ...................... J.A. 82

DE213 Order Granting Motion to Dismiss Indictment ........................ J.A. 89

DE217 Notice of Appeal ................................................................ J.A. 118

**United States v. James**, No. 2:25-cr-122

District Court Docket Report ......................................................... J.A. 121

DE1 Indictment ................................................................... J.A. 142

DE22 Motion to Dismiss Indictment and Enjoin Prosecution ............. J.A. 147

DE43 Response in Opposition to Motion to Dismiss Indictment ......... J.A. 169

DE56 Reply in Support of Motion to Dismiss Indictment ................... J.A. 201

DE89 Transcript of Hearing on Motion to Dismiss Indictment ........... J.A. 227

DE99 Notice of Ratification ............................................... J.A. 280

DE99-1 Attorney General Order No. 6495-2025 Ratifying Certain Actions in the Eastern District of Virginia ........................................ J.A. 282

DE140 Order Granting Motion to Dismiss Indictment ..................... J.A. 283

DE142 Notice of Appeal ................................................ J.A. 309

2/4/26, 9:47 AM                                    CM/ECF - vaed

APPEAL,CLOSED

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
## CRIMINAL DOCKET FOR CASE #: 1:25-cr-00272-MSN-WEF-1

Case title: USA v. Comey

Date Filed: 09/25/2025

Date Terminated: 11/24/2025

---

Assigned to: District Judge Michael S
Nachmanoff
Referred to: Magistrate Judge William E.
Fitzpatrick

Appeals court case number: 25-4674 4CCA

### Defendant (1)

**James B. Comey, Jr.**
*TERMINATED: 11/24/2025*

represented by **Jessica Nicole Carmichael**
Carmichael Ellis & Brock
108 N Alfred St
1st Floor
Alexandria, VA 22314
703-684-7908
Fax: 703-649-6360
Email: jessica@carmichaellegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Elias Kim**
Cooley LLP (DC)
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
202-842-7800
Fax: 202-842-7899
Email: ekim@cooley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ephraim McDowell**
Cooley LLP (DC)
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
202-842-7800
Fax: 202-842-7899
Email: emcdowell@cooley.com
*PRO HAC VICE*

J.A. 001

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael Richard Dreeben**
600 New Jersey Avenue, NW
Washington, DC 20001
202-695-2562
Email: mrd28@georgetown.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Waived or Self (Pro Se)*

**Patrick Joseph Fitzgerald**
Patrick Fitzgerald (Solo Practitioner)
P.O. Box 277
New Buffalo, MI 49117
**NA**
312-758-4454
Fax: 833-968-2424
Email:
patrickjfitzgeraldlawoffice@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Rebekah Donaleski**
Cooley LLP (NY-NA)
55 Hudson Yards
New York, NY 10001-2157
**NA**
212-479-6000
Fax: 212-479-6275
Email: rdonaleski@cooley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1001(a)(2) False statements within the jurisdiction of the legislative branch of the United States Government<br>(1) | Dismissed |
| 18:1505 Obstruction of a Congressional proceeding<br>(2) | Dismissed |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

J.A. 002

## Highest Offense Level (Terminated)

None

## Complaints                                              Disposition

None

## Interested Party

**Jennifer H. Campbell**                represented by   **Jennifer H. Campbell**
*Classified Information Security Officer*                 Email: Jennifer.Campbell2@usdoj.gov
*TERMINATED: 11/24/2025*                                  PRO SE

## Interested Party

**Former Senior Officials of the U.S. Dept.**   represented by   **Samantha Bateman**
**of Justice**                                                   Washington Litigation Group
*TERMINATED: 11/24/2025*                                         1717 K St NW
                                                                 Washington, DC 20006
                                                                 202-521-8755
                                                                 Email:
                                                                 sbateman@washingtonlitigationgroup.org
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Designation: Retained*

                                                                 **James Pearce**
                                                                 Washington Litigation Group
                                                                 1717 K Street NW
                                                                 Suite 1120
                                                                 Washington, DC 20006
                                                                 202-521-8770
                                                                 Email:
                                                                 jpearce@washingtonlitigationgroup.org
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Designation: Retained*

                                                                 **Mary Lyle Dohrmann**
                                                                 Washington Litigation Group
                                                                 1717 K Street, NW
                                                                 Washington, DC 20006
                                                                 202-521-8750
                                                                 Email:
                                                                 mdohrmann@washingtonlitigationgroup.org
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Designation: Retained*

J.A. 003

**Interested Party**

**University Professors and Scholars**
*TERMINATED: 11/24/2025*

represented by    **Joshua Harry Erlich**
Joshua H Erlich
1550 Wilson Blvd
Ste 700
Arlington, VA 22209
202-630-9546
Email: jerlich@erlichlawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Christine P. Sun**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
202-299-9305
Email: christine@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maithreyi Ratakonda**
States United Democracy Center
45 Main Street
Suite 320
Brooklyn, NY 11202
202-999-9305
Email: mai@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Marina Eisner**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
202-999-9305
Email: marina@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Samantha Trepel**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
Email: sam@statesunited.org
*PRO HAC VICE*

CM/ECF - vaed

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Protect Democracy Project**                 represented by   **Abigail Sophia Grand**
*TERMINATED: 11/24/2025*                                       Victor M. Glasberg & Associates
                                                              121 S. Columbus St.
                                                              Alexandria, VA 22314
                                                              703-684-1100
                                                              Email: agrand@robinhoodesq.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Retained*

                                                              **Victor Michael Glasberg**
                                                              Victor M. Glasberg & Associates
                                                              121 S. Columbus Street
                                                              Alexandria, VA 22314
                                                              (703) 684-1100
                                                              Fax: 703-684-1104
                                                              Email: vmg@robinhoodesq.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Retained*

                                                              **Kristy Parker**
                                                              Protect Democracy
                                                              2020 Pennsylvania Avenue NW
                                                              Ste 163
                                                              Washington, DC 20006
                                                              202-424-9906
                                                              Fax: 929-777-8428
                                                              Email: kristy.parker@protectdemocracy.org
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Retained*

                                                              **Rachel Goodman**
                                                              Protect Democracy
                                                              115 Broadway
                                                              Ste 5th Floor
                                                              New York, NY 10006
                                                              202-997-0599
                                                              Email:
                                                              rachel.goodman@protectdemocracy.org
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Retained*

---

**Interested Party**

J.A. 005

**Bipartisan Group of Current and Former
Members of Congress**
*TERMINATED: 11/24/2025*

represented by **Scott Brooks**
Levy Firestone Muse LLP
900 17th Street NW
Ste 605
20006
Washington, DC 20006
202-845-3215
Email: sbrooks@levyfirestone.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Carey Richard Dunne**
Free + Fair Litigation Group
266 W 37th Street
20th Floor
New York, NY 10018
646-434-8604
Email: carey@freeandfair.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Interested Party**

**Former Federal Judges and Former
United States Attorneys**
*TERMINATED: 11/24/2025*

represented by **Justin Patrick Keating**
Beins, Axelrod & Keating, P.C.
215 N Payne St
Suite 129
Alexandria, VA 22314
703-966-3193
Email: jkeating@beinsaxelrod.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Treyvon Jordan**
Beins, Axelrod & Keating
1800 Diagonal Rd
Suite 600
Alexandria, VA 22314
803-529-3954
Email: tjordan@beinsaxelrod.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Benjamin J. Wish**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**

J.A. 006

617-720-2626
Fax: 617-227-5777
Email: bwish@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Howard M. Cooper**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**
617-720-2626
Fax: 617-227-5777
Email: hcooper@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joseph M. Cacace**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**
617-720-2626
Fax: 617-227-5777
Email: jcacace@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Josh L. Launer**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**
617-720-2626
Fax: 617-624-4748
Email: jlauner@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joshua G. Kolb**
Democracy Defenders Fund (NA/DC)
600 Pennsylvania Ave
Ste 15180
Washington, DC 20003
**NA**
202-594-9958
Email: joshua@democracydefenders.org

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Norman Larry Eisen**
Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
202-594-9958
Email: norman@democracydefenders.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stephen A. Jonas**
Democracy Defenders Fund (NA/DC)
600 Pennsylvania Ave
Ste 15180
Washington, DC 20003
**NA**
202-594-9958
Email: stephen@democracydefenders.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                          represented by **Gabriel J. Diaz**
2100 Jamieson Ave
Alexandria, VA 22314
703-299-3700
Email: gabriel.diaz@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lindsey Halligan**
DOJ-USAO
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: lindsey.halligan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**Nathaniel Lemons**
2100 Jamieson Ave
Alexandria, VA 22314
703-299-3700
Email: tyler.lemons@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

J.A. 008

2/4/26, 9:47 AM

CM/ECF - vaed

**Henry Charles Whitaker**
DOJ-Oag
Office of the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, DC 20530
202-445-8942
Email: henry.whitaker@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2025 | 1 | INDICTMENT as to James B. Comey, Jr. count(s) 1, 2. (jlan) (Entered: 09/25/2025) |
| 09/25/2025 | 3 | Report of a Grand Jury's Failure to Concur in an Indictment by USA as to James B. Comey, Jr. (jlan) (Entered: 09/25/2025) |
| 09/25/2025 | 4 | Motion to appear Pro Hac Vice by Patrick Fitzgerald and Certification of Local Counsel Jessica Carmichael (Filing fee $ 75 receipt number AVAEDC-10485134.) by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 09/25/2025) |
| 09/25/2025 | 7 | Redacted Criminal Case Cover Sheet. (jlan) (Entered: 09/25/2025) |
| 09/25/2025 | | Arraignment set for 10/9/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S. Nachmanoff as to James B. Comey, Jr. (jlan) (Entered: 09/25/2025) |
| 09/25/2025 | 8 | Summons Issued in case as to James B. Comey, Jr. (jlan) (Main Document 8 replaced on 9/26/2025) (jlan, ). (Entered: 09/25/2025) |
| 09/25/2025 | 9 | Summons Returned Executed on 09/25/2025 as to James B. Comey, Jr. (jlan) (Entered: 09/26/2025) |
| 09/26/2025 | 10 | TRANSCRIPT of return of indictment proceedings held on 9-25-25 before Judge Lindsey R. Vaala. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/27/2025. Redacted Transcript Deadline set for 11/26/2025. Release of Transcript Restriction set for 12/25/2025.(Salters, Diane) (Entered: 09/26/2025)** |
| 09/29/2025 | 11 | ORDER granting 4 Motion for Pro hac vice Appointed Patrick Joseph Fitzgerald for James B. Comey, Jr as to James B. Comey Jr. (1). Signed by District Judge Michael S Nachmanoff on 9/29/2025. (swil) (Entered: 09/29/2025) |
| 10/06/2025 | 13 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED - government and defense counsel) as to James B. Comey, Jr. (stewart, mariel) (Entered: 10/06/2025) |
| 10/06/2025 | 14 | ORDERED that Defendant is summoned to appear for arraignment before this Court on Wednesday, October 8, 2025, at 10:00 a.m. Signed by District Judge Michael S Nachmanoff on 10/06/2025. (wgar, ) (Entered: 10/06/2025) |

J.A. 009

| 10/06/2025 | 15 | ORDER - The arraignment of Defendant James B. Comey, Jr. shall begin promptly at 10:00 a.m. on Wednesday, October 8, 2025, in Courtroom 600 on the Sixth Floor of the Albert V. Bryan United States Courthouse. Because seating capacity will be limited, Courtroom 601 will be reserved and will serve as an overflow courtroom. Courtroom 601 will have screens which should enable attendees to see and hear what is happening in Courtroom 600. A Court Security Officer will always be present in Courtroom 601 to ensure that appropriate decorum is maintained and to communicate with Information Technology staff if there are problems with the audio or video transmission. The hearing will not be delayed for transmission issues. All seating in Courtroom 601 will be on a first-come basis. Signed by District Judge Michael S Nachmanoff on 10/06/2025. SEE ORDER FOR FURTHER DETAILS. (wgar, ) (Entered: 10/06/2025) |
|---|---|---|
| 10/06/2025 | | Arraignment set for 10/8/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (wgar, ) (Entered: 10/06/2025) |
| 10/07/2025 | 17 | NOTICE OF ATTORNEY APPEARANCE Nathaniel Lemons appearing for USA. (Lemons, Nathaniel) (Main Document 17 replaced to correct pdf fillable form on 10/9/2025) (Dest). (Entered: 10/07/2025) |
| 10/07/2025 | 18 | NOTICE OF ATTORNEY APPEARANCE Gabriel J. Diaz appearing for USA. (Diaz, Gabriel) (Main Document 18 replaced to correct pdf fillable form on 10/9/2025) (Dest). (Entered: 10/07/2025) |
| 10/08/2025 | 19 | Minute Entry for proceedings held before District Judge Michael S Nachmanoff: Arraignment as to James B. Comey Jr. (1) Count 1,2 held on 10/8/2025. USA appeared through Lindsey Halligan, Gabriel Diaz, and Nathaniel Tyler Lemons. Defendant appeared with counsel Patrick Fitzgerald and Jessica Carmichael. Defendant WFA, PNG, and demanded a Jury Trial. Parties' request to waive right to speedy trial as articulated in open court- GRANTED. Motions Schedule 1: Motions due on 10/20/2025; Responses due on 11/3/2025; Replies due on 11/10/2025. Motions Schedule 2: Motions due on 10/30/2025; Responses due on 11/13/2025; Replies due on 11/20/2025. Parties directed to confer with regard to a discovery order by 10/10/2025. Parties directed to submit proposed discovery orders and supporting briefs, if necessary, as articulated in open court by COB on 10/13/2025. Parties directed to immediately confer with regard to providing defense counsel with access to classified information and submit a proposed CIPA briefing schedule by COB on 10/13/2025. Court advised counsel of process to appoint out-of-district judge to resolve defense motion for disqualification of Lindsey Halligan. DPPA advisement given in open court. Court adopts Pretrial Services Report. Motion Hearing set for 11/19/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. Motion Hearing set for 12/9/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. Jury Trial set for 1/5/2026 at 09:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. Defendant entered on PR bond. (Court Reporter D.Salters.) (lcre, ) (Entered: 10/08/2025) |
| 10/08/2025 | 20 | Due Process Protections Act Order as to James B. Comey, Jr. Signed by District Judge Michael S Nachmanoff on 10/8/2025. (lcre, ) (Entered: 10/08/2025) |

J.A. 010

| 10/08/2025 | 21 | ORDER Setting Conditions of Release as to James B. Comey Jr. (1) PR bond. Signed by District Judge Michael S Nachmanoff on 10/8/2025. (lcre, ) (Entered: 10/08/2025) |
|---|---|---|
| 10/08/2025 | 22 | PR Bond Entered as to James B. Comey, Jr (lcre, ) (Entered: 10/08/2025) |
| 10/08/2025 | 23 | ORDERED that this matter is scheduled for a jury trial on Monday, January 5, 2026. In the interests of fairness, efficiency, and justice, the Court ORDERS as follows: The first round of motions shall be due on Monday, October 20, 2025. The Government's response brief(s) shall be due on Monday, November 3, 2025. Defendant's reply brief(s) shall be due on Monday, November 10, 2025. The Court will hold a hearing on these motion(s) on Wednesday, November 19, 2025, at 10:00 a.m. Any additional pre-trial motions shall be due on Thursday. October 30, 2025. The Government's response brief(s) shall be due on Thursday, November 13, 2025. Defendant's reply brief(s) shall be due on Thursday, November 20, 2025. The Court will hold a hearing on the motion(s) on Tuesday, December 9, 2025, at 10:00 a.m. All briefing must be filed by 5:00 p.m. on the day of the briefing deadline. Signed by District Judge Michael S Nachmanoff on 10/8/2025. (lcre, ) (Entered: 10/08/2025) |
| 10/08/2025 | 24 | ORDERED that the parties immediately confer regarding the entry of a joint discovery order. ORDERED that if after good faith discussions the parties are unable to agree on and file a joint discovery order by Friday, October 10, 2025, at 5:00 p.m., the parties shall each submit a proposed discovery order by Monday, October 13, 2025, at 5:00 p.m. ORDERED that the parties may submit a brief in support of their respective proposed discovery orders, not to exceed a maximum of 10 pages. The parties' briefs shall be filed simultaneously with their proposed discovery orders by Monday, October 13, 2025, at 5:00 p.m.ORDERED that the parties immediately confer with regard to providing defense counsel with expedited access to classified information. ORDERED that the parties are to file a joint proposed Classified Information Procedures Act (CIPA) briefing schedule by Monday, October 13, 2025, at 5:00 p.m. Signed by District Judge Michael S Nachmanoff on 10/8/2025. (lcre, ) (Entered: 10/08/2025) |
| 10/08/2025 | 25 | TRANSCRIPT of initial appearance and arraignment proceedings held on 10-8-25 before Judge Michael S. Nachmanoff. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at** www.vaed.uscourts.gov **Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/7/2025. Redacted Transcript Deadline set for 12/8/2025. Release of Transcript Restriction set for 1/6/2026.(Salters, Diane) (Entered: 10/08/2025)** |
| 10/10/2025 | 26 | ORDER with respect to Classified Information Security Officers. Signed by District Judge Michael S. Nachmanoff on 10/10/2025. (dzir) (Entered: 10/10/2025) |
| 10/10/2025 | 27 | MOTION for Discovery *Order* by James B. Comey, Jr. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Carmichael, Jessica) (Entered: 10/10/2025) |
| 10/10/2025 | 28 | Discovery Order as to James B. Comey, Jr. Signed by District Judge Michael S. Nachmanoff on 10/10/2025. (dzir) (Entered: 10/10/2025) |
| 10/10/2025 | 29 | ORDERED that the first pretrial motions deadline in this matter is October 20, 2025. This is the pretrial motions deadline to which the discovery order refers and the date that prompts the government's Rule 16(a) discovery production. Signed by District Judge Michael S. Nachmanoff on 10/10/2025. (dzir) (Entered: 10/10/2025) |

J.A. 011

| 10/11/2025 | 30 | MOTION for Discovery *Order* by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Diaz, Gabriel) (Entered: 10/11/2025) |
| 10/12/2025 | 31 | RESPONSE in Opposition by James B. Comey, Jr re 30 MOTION for Discovery *Order* (Carmichael, Jessica) (Entered: 10/12/2025) |
| 10/12/2025 | 32 | ORDERED that the government's Motion for Discovery Order is DENIED; it is further ORDERED that the government shall provide Defendant with all discovery required under Federal Rule of Criminal Procedure 16(a) by Monday, October 13, 2025. To the extent the parties cannot reach agreement with respect to the terms of a protective order by Monday, October 13, 2025, at 5:00 p.m., the Court shall promptly set a hearing to resolve any such dispute. Under no circumstance shall the failure to reach agreement with respect to a protective order justify withholding prompt disclosure of discovery to defense counsel for review as to James B. Comey Jr. Signed by District Judge Michael S Nachmanoff on 10/12/2025. (jlan) (Entered: 10/12/2025) |
| 10/12/2025 | 33 | First MOTION for Protective Order by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Lemons, Nathaniel) (Entered: 10/12/2025) |
| 10/13/2025 | 34 | RESPONSE in Opposition by James B. Comey, Jr re 33 First MOTION for Protective Order (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/13/2025) |
| 10/13/2025 | 35 | Consent MOTION for Protective Order by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order CIPA 3 Protective Order)(Diaz, Gabriel) (Entered: 10/13/2025) |
| 10/13/2025 | 36 | Consent MOTION *for CIPA Briefing Schedule* by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order Joint Proposed CIPA Scheduling Order)(Diaz, Gabriel) (Entered: 10/13/2025) |
| 10/13/2025 | 37 | NOTICE *of Filing Memorandum of Understanding Regarding Classified Information* by James B. Comey, Jr (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 10/13/2025) |
| 10/13/2025 | 38 | First MOTION Implementation of Filter Protocol by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order Proposed Filter Protocol with Appendix A and B) (Lemons, Nathaniel) (Entered: 10/13/2025) |
| 10/13/2025 | 39 | ORDERED that the government's First Motion for Protective Order (ECF 33) is DENIED; and it is further ORDERED that Defendant's proposed protective order (ECF 34-1) is ADOPTED and will be separately entered in an order to follow as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 10/13/2025. (jlan) (Entered: 10/13/2025) |
| 10/13/2025 | 40 | Protective Order as to James B. Comey, Jr. (see order for details). Signed by District Judge Michael S. Nachmanoff on 10/13/2025. (jlan) (Entered: 10/13/2025) |
| 10/14/2025 | 41 | NOTICE *of Intent to File Motion* by James B. Comey, Jr (Carmichael, Jessica) (Entered: 10/14/2025) |
| 10/14/2025 | 42 | ORDER granting 35 Motion as to James B. Comey Jr. (1). Signed by District Judge Michael S Nachmanoff on 10/14/2025. (lcre, ) (Entered: 10/14/2025) |
| 10/14/2025 | 43 | ORDER re 36 Consent MOTION *for CIPA Briefing Schedule* as to James Comey, Jr. Signed by District Judge Michael S Nachmanoff on 10/14/2025. (lcre, ) (Entered: 10/14/2025) |
| 10/14/2025 | 44 | Sealed Motion by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order) (jlan) (Entered: 10/14/2025) |

| 10/14/2025 | 45 | Sealed Document as to 44 Sealed Motion as to as to James B. Comey, Jr. (jlan) (Entered: 10/14/2025) |
| 10/17/2025 | 48 | MOTION for Leave to File Excess Pages by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/17/2025) |
| 10/17/2025 | 49 | Motion to appear Pro Hac Vice by Rebekah Donaleski and Certification of Local Counsel Jessica Carmichael (Filing fee $ 75 receipt number AVAEDC-10531167.) by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/17/2025) |
| 10/17/2025 | 50 | Motion to appear Pro Hac Vice by Ephraim McDowell and Certification of Local Counsel Jessica Carmichael (Filing fee $ 75 receipt number AVAEDC-10531175.) by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/17/2025) |
| 10/17/2025 | 51 | Motion to appear Pro Hac Vice by Elias Kim and Certification of Local Counsel Jessica Carmichael (Filing fee $ 75 receipt number AVAEDC-10531182.) by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/17/2025) |
| 10/17/2025 | 52 | Motion to appear Pro Hac Vice by Michael Dreeben and Certification of Local Counsel Jessica Carmichael (Filing fee $ 75 receipt number AVAEDC-10531201.) by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/17/2025) |
| 10/17/2025 | 53 | ORDER granting 48 Motion for Leave to File Excess Pages; it is further ORDERED that Defendant may exceed the standard page limit by up to fifteen (15) pages for his Motion to Dismiss for Vindictive and Selective Prosecution; it is further ORDERED that the government may exceed the standard page limit by the same amount for its response to the defendant's Motion to Dismiss for Vindictive and Selective Prosecution as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 10/17/2025. (jlan) (Entered: 10/17/2025) |
| 10/19/2025 | 54 | First MOTION to Expedite *Ruling on Gov Motion for Implementation of Filter Protocol (DE 38)* by USA as to James B. Comey, Jr. (Lemons, Nathaniel) (Entered: 10/19/2025) |
| 10/20/2025 | 55 | RESPONSE in Opposition by James B. Comey, Jr re 54 First MOTION to Expedite *Ruling on Gov Motion for Implementation of Filter Protocol (DE 38)* (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 10/20/2025) |
| 10/20/2025 | 56 | MOTION to Seal *Redacted Portions of Response to Government's Motion for Expedited Ruling and Exhibit A* by James B. Comey, Jr. (Attachments: # 1 Proposed Order) (Carmichael, Jessica) (Entered: 10/20/2025) |
| 10/20/2025 | 57 | ORDER granting 49 Motion for Pro hac vice Appointed Rebekah Donaleski for James B. Comey, Jr. Signed by District Judge Michael S. Nachmanoff on 10/20/2025. (jlan) (Entered: 10/20/2025) |
| 10/20/2025 | 58 | Sealed Response to 54 First MOTION to Expedite Ruling on Gov Motion for Implementation of Filter Protocol. (Attachments: # 1 Exhibit) (jlan) (Entered: 10/20/2025) |
| 10/20/2025 | 59 | MOTION to Dismiss *Indictment based on Vindictive and Selective Prosecution* by James B. Comey, Jr. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (Carmichael, Jessica) (Entered: 10/20/2025) |
| 10/20/2025 | 60 | MOTION to Dismiss *Indictment based on Unlawful Appointment* by James B. Comey, Jr. (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 10/20/2025) |
| 10/20/2025 | 61 | ORDERED that the government's Motion for Expedited Ruling (ECF 54) is DENIED; and it is further ORDERED that Defendant shall respond to the government's Motion for Implementation of Filter Protocol (ECF 38) on or before October 27, 2025 as to James B. |

J.A. 013

| | | |
|---|---|---|
| | | Comey Jr. Signed by District Judge Michael S Nachmanoff on 10/20/2025. (jlan) (Entered: 10/20/2025) |
| 10/21/2025 | 62 | ORDERED that the motion challenging the qualification of the current Interim United States Attorney in the above-entitled action (ECF 60) is hereby transferred to the Honorable Cameron McGowan Currie, Senior United States District Judge of the District of South Carolina. Signed by District Judge Michael S. Nachmanoff on 10/21/2025. (Attachments: # 1 Order Designating District Judge) (jlan) (Entered: 10/21/2025) |
| 10/21/2025 | | TEXT ORDER: In accordance with ECF 23, the Government's response brief to Defendant's motion challenging the qualification of the current Interim United States Attorney is due by 5:00 p.m. on Monday, November 3, 2025. Defendant's reply brief is due by 5:00 p.m. on Monday, November 10, 2025. Signed by the Honorable Cameron McGowan Currie on 10/21/2025. (jlan) (Entered: 10/21/2025) |
| 10/22/2025 | 63 | Amended Motion to appear Pro Hac Vice by Ephraim McDowell and Certification of Local Counsel Jessica Carmichael by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/22/2025) |
| 10/22/2025 | 64 | Amended Motion to appear Pro Hac Vice by Elias Kim and Certification of Local Counsel Jessica Carmichael by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/22/2025) |
| 10/22/2025 | 65 | Amended Motion to appear Pro Hac Vice by Michael Dreeben and Certification of Local Counsel Jessica Carmichael by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/22/2025) |
| 10/22/2025 | 66 | ORDER granting 63 Motion for Pro hac vice Appointed Ephraim McDowell for James B. Comey, Jr. Signed by District Judge Michael S Nachmanoff on 10/22/2025. (jlan) (Entered: 10/22/2025) |
| 10/22/2025 | 67 | ORDER granting 64 Motion for Pro hac vice Appointed Elias Kim for James B. Comey, Jr. Signed by District Judge Michael S Nachmanoff on 10/22/2025. (jlan) (Entered: 10/22/2025) |
| 10/22/2025 | 68 | ORDER granting 65 Motion for Pro hac vice Appointed Michael Richard Dreeben for James B. Comey, Jr. Signed by District Judge Michael S Nachmanoff on 10/22/2025. (jlan) (Entered: 10/22/2025) |
| 10/23/2025 | | TEXT ORDER: Oral argument on Defendant's motion challenging the qualification of the current Interim United States Attorney (ECF 60) will be held on November 13, 2025, at 10:00 a.m. in Courtroom 600 of the Albert V. Bryan United States Courthouse. Signed by the Honorable Cameron McGowan Currie on 10/23/2025. (jlan) (Entered: 10/23/2025) |
| 10/23/2025 | | Motion Hearing set for 11/13/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Cameron McGowan Currie as to James B. Comey, Jr. in re 60 MOTION to Dismiss Indictment based on Unlawful Appointment. (jlan) (Entered: 10/23/2025) |
| 10/27/2025 | 69 | Docketed in Error and Removed - Modified on 10/28/2025 (wgar, ). (Entered: 10/27/2025) |
| 10/27/2025 | 70 | NOTICE *of Appearance on Behalf of Amici* by James B. Comey, Jr (Erlich, Joshua) (Entered: 10/27/2025) |
| 10/27/2025 | 71 | RESPONSE in Opposition by James B. Comey, Jr re 38 First MOTION Implementation of Filter Protocol (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Carmichael, Jessica) (Entered: 10/27/2025) |

2/4/26, 9:47 AM                                   CM/ECF - vaed

| 10/27/2025 | 72 | MOTION to Seal *Redacted Portions of Response in Opposition and Corresponding Exhibits* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/27/2025) |
|---|---|---|
| 10/27/2025 | 73 | MOTION to File Amicus Brief by Joshua Erlich as to James B. Comey, Jr. (Attachments: # 1 Proposed Order, # 2 Exhibit Exhibit A)(Erlich, Joshua) Modified on 10/28/2025 to update docket text (wgar, ). (Entered: 10/27/2025) |
| 10/27/2025 | 74 | WAIVER OF ORAL ARGUMENT by Joshua Erlich in re 73 MOTION to File Amicus Brief by Joshua Erlich. (Erlich, Joshua) Modified on 10/28/2025 to correct docket text (wgar, ). (Entered: 10/27/2025) |
| 10/27/2025 | 75 | NOTICE OF ATTORNEY APPEARANCE: Samantha Bateman appearing for Former Senior Officials of the U.S. Dept. of Justice. (wgar, ) (Entered: 10/28/2025) |
| 10/27/2025 | 76 | MOTION to File Amicus Brief by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. (Attachments: # 1 Proposed Order, # 2 Brief of Former Senior Officials of the Department of Justice as Amici Curiae in Support of Defendant's Motion to Dismiss Indictment for Vindictive Prosecution)(wgar, ) (Entered: 10/28/2025) |
| 10/27/2025 | 77 | Motion to appear Pro Hac Vice by Mary Lyle Dohrmann and Certification of Local Counsel Samantha Bateman by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. (Attachments: # 1 Receipt)(wgar, ) (Entered: 10/28/2025) |
| 10/27/2025 | 78 | Motion to appear Pro Hac Vice by James Inman Pearce and Certification of Local Counsel Samantha Bateman by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. (Attachments: # 1 Receipt)(wgar, ) (Entered: 10/28/2025) |
| 10/27/2025 | 79 | **[WITHDRAWN per ECF 125]** Motion to appear Pro Hac Vice by Nathaniel Avi Gideon Zelinsky and Certification of Local Counsel Samantha Bateman by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. (Attachments: # 1 Receipt) (wgar, ) Modified text on 10/31/2025 (jlan) (Entered: 10/28/2025) |
| 10/27/2025 | 89 | SEALED RESPONSE in Opposition by James B. Comey, Jr re 38 First MOTION Implementation of Filter Protocol in re 71 Response in Opposition filed by James B. Comey, Jr. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | | Notice of Correction: The filing user has been notified that a Motion to File Amicus Brief and related documents should not be filed electronically and should be filed with the Clerk's Office in person in re 73 MOTION to File Amicus Brief, 70 Notice, 74 Notice. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 80 | Motion to appear Pro Hac Vice by Christine P. Sun and Certification of Local Counsel Joshua Erlich (Filing fee $ 75 receipt number AVAEDC-10550854.) by University Professors and Scholars as to James B. Comey, Jr. (Erlich, Joshua) (Entered: 10/28/2025) |
| 10/28/2025 | 81 | Motion to appear Pro Hac Vice by Marina Eisner and Certification of Local Counsel Joshua Erlich (Filing fee $ 75 receipt number AVAEDC-10550955.) by University Professors and Scholars as to James B. Comey, Jr. (Erlich, Joshua) (Entered: 10/28/2025) |
| 10/28/2025 | 82 | NOTICE OF ATTORNEY APPEARANCE: Victor Michael Glasberg appearing for Protect Democracy Project. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 83 | NOTICE OF ATTORNEY APPEARANCE: Abigail Sophia Grand appearing for Protect Democracy Project. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 84 | Motion to appear Pro Hac Vice by Samantha Trepel and Certification of Local Counsel Joshua Erlich (Filing fee $ 75 receipt number AVAEDC-10550984.) by University |

J.A. 015

| | | Professors and Scholars as to James B. Comey, Jr. (Erlich, Joshua) (Entered: 10/28/2025) |
|---|---|---|
| 10/28/2025 | 85 | MOTION for Leave to File Amicus Curiae Brief of Protect Democracy Project in Support of Defendant's Motion to Dismiss Indictment Based on Vindictive and Selective Prosecution filed by Protect Democracy Project as to James B. Comey, Jr. (Attachments: # 1 Proposed Order, # 2 Brief of amicus curiae by Protect Democracy Project in Support of Defendant's Motion to Dismiss Based on Vindictive and Selective Prosecution)(wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 86 | NOTICE OF ATTORNEY APPEARANCE: Scott Brooks appearing for Bipartisan Group of Current and Former Members of Congress. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 87 | MOTION for Leave to File Amicus Curiae Brief by Bipartisan Group of Current and Former Members of Congress as to James B. Comey, Jr. (Attachments: # 1 Proposed Order, # 2 Brief of Amici Curiae Bipartisan Current and Former Members of Congress in Support of Defendant's Request for Relief)(wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 90 | NOTICE OF ATTORNEY APPEARANCE: Treyvon Jordan appearing for Former Federal Judges and Former United States Attorneys. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 91 | NOTICE OF ATTORNEY APPEARANCE: Justin Patrick Keating appearing for Former Federal Judges and Former United States Attorneys. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 92 | MOTION for Leave to File Brief of Bipartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Attachments: # 1 Proposed Order, # 2 Brief of Bipartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief)(wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 93 | Notice of Waiver of Oral Argument by Former Federal Judges and Former United States Attorneys. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 94 | Financial Interest Disclosure Statement by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (wgar, ) (Entered: 10/28/2025) |
| 10/28/2025 | 95 | ORDERED that the Government is directed to submit, no later than Monday, November 3, 2025, at 5:00 pm, for in camera review, all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts. In camera review is appropriate given the secrecy requirements applicable to grand jury proceedings. Fed. R. Crim. P. 6(e)2). The above documents shall be delivered to chambers of Judge Cameron McGowan Currie at Matthew J. Perry United States Courthouse, 901 Richland Street, Columbia, South Carolina, 29201. Signed by District Judge Cameron McGowan Currie on 10/28/2025. (jlan) (Entered: 10/28/2025) |
| 10/28/2025 | 96 | Motion to appear Pro Hac Vice by Maithreyi Ratakonda and Certification of Local Counsel Joshua Erlich (Filing fee $ 75 receipt number AVAEDC-10553208.) by University Professors and Scholars as to James B. Comey, Jr. (Erlich, Joshua) (Entered: 10/28/2025) |
| 10/29/2025 | 97 | Motion to appear Pro Hac Vice by Rachel Goodman and Certification of Local Counsel Victor M. Glasberg (Filing fee $ 75 receipt number AVAEDC-10553677.) by Protect Democracy Project as to James B. Comey, Jr. (Glasberg, Victor) (Entered: 10/29/2025) |
| 10/29/2025 | 98 | Motion to appear Pro Hac Vice by Kristy Parky and Certification of Local Counsel Victor M. Glasberg (Filing fee $ 75 receipt number AVAEDC-10553709.) by Protect Democracy Project as to James B. Comey, Jr. (Glasberg, Victor) (Entered: 10/29/2025) |

J.A. 016

| 10/29/2025 | 99 | WAIVER of Oral Argument by Protect Democracy Project in re 85 MOTION for Leave to File Amicus Curiae Brief (Glasberg, Victor) Modified on 10/29/2025 to update docket text (wgar, ). (Entered: 10/29/2025) |
| 10/29/2025 | 100 | Notice of Waiver of Hearing by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. in re 76 MOTION to File Amicus Brief. (wgar, ) (Entered: 10/29/2025) |
| 10/29/2025 | 101 | Motion to appear Pro Hac Vice by Carey Richard Dunne and Certification of Local Counsel Scott G. Brooks (Filing fee $ 75 receipt number AVAEDC-10555213.) by Bipartisan Group of Current and Former Members of Congress as to James B. Comey, Jr. (Brooks, Scott) (Entered: 10/29/2025) |
| 10/29/2025 | 102 | ORDERED that Magistrate Judge William E. Fitzpatrick is hereby appointed to preside over all proceedings related to the potential review of privileged materials in this case in accordance with the guidance provided in In re Search Warrant Issued June 13, 2019, 942 F.3d 159 (4th Cir. 2019), as amended (Oct. 31, 2019) and directed to promptly schedule a hearing to address these matters. Signed by District Judge Michael S. Nachmanoff on 10/29/2025. (jlan) (Entered: 10/29/2025) |
| 10/30/2025 | 104 | This matter is before the Court pursuant to United States District Judge Michael S. Nachmanoffs Order dated October 29, 2025 (ECF 102) directing the undersigned to schedule a hearing to address the governments Motion for Implementation of Filter Protocol (ECF 38) and the Defendants opposition thereto (ECF 71). Accordingly, it is hereby ORDERED that a hearing on this issue shall be held on Wednesday, November 5, 2025, at 10:00 a.m. in Courtroom 500; and, given that the hearing may address information the government has designated as Protected Material under the Protective Order (ECF 40), it is further ORDERED that the parties shall file their positions as to whether all or part of the hearing should be closed to the public by Friday, October 31, 2025, at 5:00 p.m. Signed by Magistrate Judge William E. Fitzpatrick on 10/30/25. (tfitz, ) (Entered: 10/30/2025) |
| 10/30/2025 | | Motion Hearing set for 11/5/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (tfitz, ) (Entered: 10/30/2025) |
| 10/30/2025 | 105 | MOTION to Dismiss *Indictment Based on Fundamental Ambiguity and Literal Truth* by James B. Comey, Jr. (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 10/30/2025) |
| 10/30/2025 | 106 | MOTION for Disclosure *of Grand Jury Proceedings* by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/30/2025) |
| 10/30/2025 | 107 | MOTION for Bill of Particulars by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 10/30/2025) |
| 10/30/2025 | 108 | MOTION to File Video Recording re 105 MOTION to Dismiss *Indictment Based on Fundamental Ambiguity and Literal Truth* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/30/2025) |
| 10/30/2025 | 109 | MOTION to Seal *Redacted Portions of Motion for Disclosure of Grand Jury Proceedings* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/30/2025) |
| 10/30/2025 | 110 | Sealed Motion to Disclose Grand Jury Proceedings by James B. Comey, Jr. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | | Video Exhibit A received on a USB Drive by James B. Comey, Jr. (Placed in the criminal file room). (jlan) (Entered: 10/30/2025) |

J.A. 017

| | | |
|---|---|---|
| 10/30/2025 | 111 | ORDER granting 96 Motion for Pro hac vice Appointed Maithreyi Ratakonda for University Professors and Scholars. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 112 | ORDER granting 97 Motion for Pro hac vice Appointed Rachel Goodman for Protect Democracy Project. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 113 | ORDER granting 98 Motion for Pro hac vice Appointed Kristy Parker for Protect Democracy Project. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 114 | ORDER granting 84 Motion for Pro hac vice Appointed Samantha Trepel for University Professors and Scholars. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 115 | ORDER granting 80 Motion for Pro hac vice Appointed Christine P. Sun for University Professors and Scholars. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 116 | ORDER granting 77 Motion for Pro hac vice Appointed Mary Lyle Dohrmann for Former Senior Officials of the U.S. Dept. of Justice. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/30/2025 | 117 | ORDER granting 78 Motion for Pro hac vice Appointed James Pearce for Former Senior Officials of the U.S. Dept. of Justice. Signed by District Judge Michael S. Nachmanoff on 10/30/2025. (jlan) (Entered: 10/30/2025) |
| 10/31/2025 | 118 | Consent MOTION for Extension *of CIPA Deadlines* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 10/31/2025) |
| 10/31/2025 | 119 | ORDER granting 76 MOTION to File Amicus Brief by Former Senior Officials of the U.S. Dept. of Justice as to James B. Comey, Jr. Signed by District Judge Michael S. Nachmanoff on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 120 | Brief of Former Senior Officials of the U.S. Dept. of Justice as Amici Curiae in Support of 59 MOTION to Dismiss Indictment based on Vindictive and Selective Prosecution as to James B. Comey, Jr. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 121 | ORDER granting 85 MOTION for Leave to File Amicus Curiae Brief of Protect Democracy Project as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 122 | Brief of Amicus Curiae by Protect Democracy Project in Support of 59 MOTION to Dismiss Indictment based on Vindictive and Selective Prosecution as to James B. Comey, Jr. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 123 | ORDER granting 73 MOTION to File Amicus Brief of University Professors and Scholars as to James B. Comey, Jr. Signed by District Judge Michael S. Nachmanoff on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 124 | Brief of Amici Curiae by University Professors and Scholars in Support of 59 MOTION to Dismiss Indictment based on Vindictive and Selective Prosecution as to James B. Comey, Jr. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 125 | NOTICE of Withdrawal of 79 Motion to appear Pro Hac Vice by Nathaniel Avi Gideon Zelinsky. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 126 | ORDER granting 92 Motion for Leave to File Amicus Curiae Brief of Bipartisan Former Federal Judges and Former United States Attorneys in support of Defendant's Request as |

J.A. 018

| | | |
|---|---|---|
| | | to James B. Comey, Jr. Signed by District Judge Cameron McGowan Currie on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 127 | NOTICE *Parties' Consent Position on Public Hearing* by James B. Comey, Jr re 104 Order,,, (Lemons, Nathaniel) (Entered: 10/31/2025) |
| 10/31/2025 | 128 | Brief of BiPartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief as to James B. Comey, Jr. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 129 | ORDER granting 87 MOTION for Leave to File Amicus Curiae Brief by Bipartisan Group of Current and Former Members of Congress as to James B. Comey, Jr. Signed by District Judge Cameron McGowan Currie on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 130 | Brief of Amici Curiae by Bipartisan Current and Former Members of Congress in Support of 60 MOTION to Dismiss Indictment based on Unlawful Appointment as to James B. Comey, Jr. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 131 | ORDER granting 101 Motion for Pro hac vice Appointed Carey Richard Dunne for Bipartisan Group of Current and Former Members of Congress. Signed by District Judge Michael S. Nachmanoff on 10/31/2025. (jlan) (Entered: 10/31/2025) |
| 10/31/2025 | 136 | ORDER granting 118 Motion for Extension of Time; Mr. Corney's CIPA Section 5 Notice shall be due two weeks after lead counsel, Patrick Fitzgerald, receives his final and full clearance. The remaining CIPA deadlines shall be concomitantly extended as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 10/31/2025. (jlan) (Entered: 11/03/2025) |
| 11/02/2025 | 132 | REPLY TO RESPONSE to USA as to James B. Comey, Jr re 89 Sealed Document, (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Lemons, Nathaniel) (Entered: 11/02/2025) |
| 11/02/2025 | 133 | MOTION to Seal by USA as to James B. Comey, Jr. (Attachments: # 1 Proposed Order to Seal Redacted Portions of ECF 132 and Seal Exhibits 1 and 2)(Lemons, Nathaniel) (Entered: 11/02/2025) |
| 11/03/2025 | 134 | NOTICE OF ATTORNEY APPEARANCE Henry Charles Whitaker appearing for USA. (Whitaker, Henry) (Entered: 11/03/2025) |
| 11/03/2025 | 135 | Unredacted Document in re 132 Reply to Response to USA as to James B. Comey, Jr. (Attachments: # 1 Exhibits) (jlan) (Entered: 11/03/2025) |
| 11/03/2025 | 137 | RESPONSE in Opposition by USA as to James B. Comey, Jr re 60 MOTION to Dismiss *Indictment based on Unlawful Appointment* (Attachments: # 1 Exhibit A)(Whitaker, Henry) (Entered: 11/03/2025) |
| 11/03/2025 | 138 | RESPONSE in Opposition by USA as to James B. Comey, Jr. re 59 MOTION to Dismiss *Indictment based on Vindictive and Selective Prosecution (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14)(Lemons, Nathaniel) (Attachments 4, 5, 6, 7, 8, and 10 replaced on 11/4/2025) (jlan) (Entered: 11/03/2025)* |
| 11/03/2025 | 139 | ORDERED the hearing before Magistrate Judge William E. Fitzpatrick on November 5, 2025, at 10:00 a.m. is hereby moved to Courtroom 600 on the Sixth Floor of the Albert V. Bryan United States Courthouse. Because seating capacity will be limited. Courtroom 601 will be reserved and will serve as an overflow courtroom. Courtroom 601 will have screens which should enable attendees to see and hear what is happening in Courtroom 600. A Court Security Officer will always be present in Courtroom 601 to ensure that appropriate decorum is maintained and to communicate with Information Technology |

| | | |
|---|---|---|
| | | staff if there are problems with the audio or video transmission. The hearing will not be delayed for transmission issues. All seating in Courtroom 601 will be on a first-come basis (see order for further details). Signed by District Judge Michael S. Nachmanoff on 11/03/2025. (jlan) (Entered: 11/04/2025) |
| 11/03/2025 | | **Ex Parte Under Seal Documents received by Judge Currie's chambers for in camera review on November 3, 2025** (jlan) Modified text on 11/7/2025 (jlan) (Entered: 11/07/2025) |
| 11/04/2025 | [140](#) | MOTION for Electronic Device Application by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 11/04/2025) |
| 11/04/2025 | [141](#) | Motion to appear Pro Hac Vice by Benjamin Jacob Wish and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566209.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [142](#) | Motion to appear Pro Hac Vice by Norman Larry Eisen and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566247.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [143](#) | Motion to appear Pro Hac Vice by Joshua Gabriel Kolb and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566252.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [144](#) | Motion to appear Pro Hac Vice by Josh Leonard Launer and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566263.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [145](#) | Motion to appear Pro Hac Vice by Howard Michael Cooper and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566274.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [146](#) | Motion to appear Pro Hac Vice by Joseph Michael Cacace and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566283.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [147](#) | Motion to appear Pro Hac Vice by Stephen Allen Jonas and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10566295.) by Former Federal Judges and Former United States Attorneys as to James B. Comey, Jr. (Jordan, Treyvon) (Entered: 11/04/2025) |
| 11/04/2025 | [148](#) | ORDERED that the Government is directed to submit, no later than Wednesday, November 5, 2025, at 5:00 pm, for in camera review, a complete Transcript and/or recording of all statements made by the indictment signer to the grand jury on September 25, 2025, to include statements made prior to and after the testimony of the witness and during the presentation of the three-count and subsequent two-count indictments. Signed by the Honorable Cameron McGowan Currie on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | [149](#) | Amended Motion to appear Pro Hac Vice by Marina Eisner and Certification of Local Counsel Joshua Erlich by University Professors and Scholars as to James B. Comey, Jr. (Erlich, Joshua) (Entered: 11/04/2025) |

| 11/04/2025 | 150 | ORDER granting 140 Motion for Electronic Device Application as to James B. Comey Jr. Signed by Magistrate Judge William E. Fitzpatrick on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| --- | --- | --- |
| 11/04/2025 | 151 | ORDER granting 143 Motion for Pro hac vice Appointed Joshua G. Kolb for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 152 | ORDER granting 142 Motion for Pro hac vice Appointed Norman L. Eisen for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 153 | ORDER granting 144 Motion for Pro hac vice Appointed Josh L. Launer for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 154 | ORDER granting 145 Motion for Pro hac vice Appointed Howard M. Cooper for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 155 | ORDER granting 146 Motion for Pro hac vice Appointed Joseph M. Cacace for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 156 | ORDER granting 147 Motion for Pro hac vice Appointed Stephen A. Jonas for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/04/2025 | 157 | ORDER granting 141 Motion for Pro hac vice Appointed Benjamin J. Wish for Former Federal Judges and Former United States Attorneys. Signed by District Judge Michael S. Nachmanoff on 11/04/2025. (jlan) (Entered: 11/04/2025) |
| 11/05/2025 | 158 | NOTICE *Government Compliance with Court Order at DE 148* by James B. Comey, Jr re 148 Order, (Lemons, Nathaniel) (Entered: 11/05/2025) |
| 11/05/2025 | 159 | ORDER granting 81 Motion for Pro hac vice Appointed Marina Eisner for University Professors and Scholars. Signed by District Judge Michael S. Nachmanoff on 11/05/2025. (jlan) (Entered: 11/06/2025) |
| 11/05/2025 | 160 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Motion Hearing as to James B. Comey, Jr held on 11/5/2025. USA appeared through Nathaniel Lemons, Lindsey Halligan, and Gabriel Diaz. Counsel Rebekah Donaleski, Patrick Fitzgerald, and Michael Dreeben appeared with Defendant. First MOTION Implementation of Filter Protocol re 38 argued and DENIED. Government directed to produce all seized materials as articulated in open court by 5:00 p.m. on 11/6/25. Parties directed to confer with regard to complying with warrant execution as articulated in open court. Defendant continued on previous conditions. Order to follow. (Court Reporter D.Salters.) (lcre, ) (Entered: 11/06/2025) |
| 11/05/2025 | 161 | ORDERED that the Government's First MOTION Implementation of Filter Protocol re 38 is DENIED. ORDERED that the Government shall produce to Defendant all materials seized pursuant to the four 2019 and 2020 search warrants referenced in the Government's Reply to Defendant's Response to the Government's Motion for Implementation of Filter |

|  |  |  |
|---|---|---|
|  |  | Protocol re 132 , in whatever form it is currently maintained, by 5:00 p.m. on November 6, 2025. ORDERED that the Government shall provide notice to the Court and to Defendant regarding the status of such production, including any anticipated delay, no later than 12:00 p.m. on November 6, 2025 (See Order for Details). Signed by Magistrate Judge William E. Fitzpatrick on 11/6/2025. (lcre, ) (Entered: 11/06/2025) |
| 11/06/2025 | 162 | ORDERED that the Government shall, on or before November 10, 2025, move in the issuing district to unseal the four 2019 and 2020 search warrants referenced in the Governments Reply to Defendants Response to the Governments Motion for Implementation of Filter Protocol re 132 , together with all attendant documents, or, in the alternative, file a motion in the issuing district setting forth good cause as to why the subject search warrants and all attendant documents should remain under seal, in whole or in part ORDERED that Defendant may provide the Government with his position regarding such a motion and, if he chooses to do so, shall submit that position in writing to the Government no later than 5:00 p.m. on November 6, 2025. ORDERED that, if the Defendant provides to the Government his written position, the Government shall attach that submission to its motion in the issuing district. ORDERED that, if necessary, the Court shall hold a hearing on the pending motions to seal (re 56 , 72 , 109 , and 133 ) on November 21, 2025, at 10:00 a.m. in Courtroom 500, and the materials subject to those motions shall remain UNDER SEAL until further order of the Court (See Order for Details). Signed by Magistrate Judge William E. Fitzpatrick on 11/5/2025. (lcre, ) (Entered: 11/06/2025) |
| 11/06/2025 | 163 | NOTICE OF COMPLIANCE WITH MAGISTRATE JUDGES ORDER by USA as to James B. Comey, Jr. in re 161 Order (Diaz, Gabriel) Modified text on 11/6/2025 (jlan) (Entered: 11/06/2025) |
| 11/06/2025 | 164 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by USA as to James B. Comey, Jr. in re 160 Motion Hearing (Diaz, Gabriel) Modified text on 11/6/2025 (jlan) (Entered: 11/06/2025) |
| 11/07/2025 | 165 | TRANSCRIPT of motion proceedings held on 11-5-25 before Judge William E. Fitzpatrick. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/8/2025. Redacted Transcript Deadline set for 1/7/2026. Release of Transcript Restriction set for 2/5/2026.**(Salters, Diane) (Entered: 11/07/2025) |
| 11/07/2025 | 166 | NOTICE *of Filing Memorandum of Understanding* by James B. Comey, Jr (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 11/07/2025) |
| 11/07/2025 | 167 | ORDERED that the matter of disclosure of the grand jury transcripts to the Defendant is remanded to Judge Fitzpatrick for further proceedings to analyze whether there are particularized and factually based grounds for disclosure. Signed by District Judge Michael S. Nachmanoff on 11/07/2025. (jlan) (Entered: 11/07/2025) |
| 11/07/2025 | 168 | ORDERED that a telephonic hearing on this issue shall be held on November 10, 2025, at 4:00 p.m.; and it is further ORDERED that the Clerk of Court shall file the conference line information on the docket, which may be used by the public to access the hearing, no later than 11:00 a.m. on November 10, 2025; and it is further ORDERED that any party wishing to submit additional briefing on this issue shall do so no later than 12:00 p.m. on |

J.A. 022

| | | |
|---|---|---|
| | | November 10, 2025. Signed by Magistrate Judge William E. Fitzpatrick on 11/07/2025. (jlan) (Entered: 11/07/2025) |
| 11/07/2025 | | Status Conference set for 11/10/2025 at 04:00 PM Telephonically before Magistrate Judge William E. Fitzpatrick as to James B. Comey, Jr. (jlan) (Entered: 11/07/2025) |
| 11/07/2025 | | **Ex Parte Under Seal Documents plus one (1) flash drive received by Judge Currie's chambers for in camera review on November 5, 2025.** (jlan) (Entered: 11/07/2025) |
| 11/10/2025 | 170 | MOTION for Leave to File Excess Pages by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 11/10/2025) |
| 11/10/2025 | | **A Telephonic Hearing is being held on November 10, 2025, at 4:00 pm. The dial in information is as follows:** <br><br> **Telephone dial-in: +1 703 239 7244** <br><br> **Phone conference ID: 781 102 146# (jlan)** <br><br> Modified text on 11/10/2025 (jlan) (Entered: 11/10/2025) |
| 11/10/2025 | 171 | RESPONSE by James B. Comey, Jr re 168 Order,, (Carmichael, Jessica) (Entered: 11/10/2025) |
| 11/10/2025 | 172 | RESPONSE by USA as to James B. Comey, Jr re 168 Order,, *GOVERNMENT'S ADDITIONAL BRIEFING ON DISCLOSURE OF GRAND JURY MATERIALS* (Attachments: # 1 Affidavit, # 2 Affidavit)(Diaz, Gabriel) (Entered: 11/10/2025) |
| 11/10/2025 | 173 | ORDER granting 170 Motion for Leave to File Excess Pages. Mr. Comey is granted up to 26 pages for this reply. Signed by District Judge Michael S. Nachmanoff on 11/10/2025. (jlan) (Entered: 11/10/2025) |
| 11/10/2025 | 174 | Reply by James B. Comey, Jr re 59 MOTION to Dismiss *Indictment based on Vindictive and Selective Prosecution* (Attachments: # 1 Exhibit)(Carmichael, Jessica) (Entered: 11/10/2025) |
| 11/10/2025 | 175 | Reply by James B. Comey, Jr re 60 MOTION to Dismiss *Indictment based on Unlawful Appointment* (Carmichael, Jessica) (Entered: 11/10/2025) |
| 11/10/2025 | 176 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Telephonic Hearing as to James B. Comey, Jr. held on 11/10/2025. U.S. appeared through Gabriel Diaz and Nathaniel Lemons. Defendant appeared with counsel, Rebekah Donaleski, Patrick Fitzgerald, and Jessica Carmichael. The Court orders that defense counsel may submit *ex parte* any information with respect to grand jury proceedings that may be helpful by 12:00 p.m. on November 11th. The Court requests that the Government produce, *in camera*, all materials relating to the grand jury including grand jury instructions, transcripts of witness testimony, any other communications with the grand jurors, and the exhibits produced as soon as possible. Order to follow. (Court Reporter D. Salters)(dzir) (Entered: 11/10/2025) |
| 11/10/2025 | 177 | ORDERED that the Government shall submit to the Court forthwith, for in camera review, all materials relating to the September 25, 2025 grand jury proceedings, including complete audio recordings and transcripts reflecting (i) all testimony presented to the grand jury and (ii) any statements made by any prosecutor, law enforcement officer, or witness to the grand jury, or in the presence of the grand jury. These materials shall be filed on the docket under seal; and it is further ORDERED that the Defendant may submit an ex parte filing to assist the Court in its review of the grand jury materials; and it is further ORDERED that any such ex parte submission shall be submitted to the Court no |

|  |  | later than 12:00 p.m. on November 11, 2025. Signed by Magistrate Judge William E. Fitzpatrick on 11/10/2025. (jlan) (Entered: 11/10/2025) |
|---|---|---|
| 11/10/2025 | 179 | **Ex Parte Under Seal Documents and audio files received for in camera review on November 10, 2025 pursuant to ECF 177. (jlan)** Modified text on 11/10/2025 (jlan) (Entered: 11/10/2025) |
| 11/10/2025 | [180](#) | TRANSCRIPT of telephonic proceedings held on 11-10-25 before Judge William E. Fitzpatrick. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/10/2025. Redacted Transcript Deadline set for 1/12/2026. Release of Transcript Restriction set for 2/9/2026.(Salters, Diane) (Entered: 11/10/2025)** |
| 11/12/2025 | [182](#) | MOTION to Advance Motions Hearing by James B. Comey, Jr. (Attachments: # [1](#) Proposed Order)(Carmichael, Jessica) (Entered: 11/12/2025) |
| 11/13/2025 | [183](#) | RESPONSE in Opposition by USA as to James B. Comey, Jr re [107](#) MOTION for Bill of Particulars (Attachments: # [1](#) Exhibit 1)(Diaz, Gabriel) (Entered: 11/13/2025) |
| 11/13/2025 | [184](#) | RESPONSE in Opposition by USA as to James B. Comey, Jr re [106](#) MOTION for Disclosure *of Grand Jury Proceedings* (Diaz, Gabriel) (Entered: 11/13/2025) |
| 11/13/2025 | [185](#) | RESPONSE in Opposition by USA as to James B. Comey, Jr re [105](#) MOTION to Dismiss *Indictment Based on Fundamental Ambiguity and Literal Truth* (Diaz, Gabriel) (Entered: 11/13/2025) |
| 11/13/2025 | [186](#) | Minute Entry for proceedings held before District Judge Cameron M. Currie: Motion Hearing as to James B. Comey, Jr held on 11/13/2025. USA appeared through Henry Whitaker, Lindsey Halligan, Nathaniel Lemons and Gabriel Diaz. Counsel Jessica Carmichael, Elias Kim, Ephriam McDowell, Michael Dreeke, Patrick Fitzgerald, and Rebekah Donaleski appeared with defendant James Comey. Counsel Andrew Bosse, John Bolen, and Abbe Lowell appeared on behalf of defendant Letitia James. MOTION to Dismiss *Indictment based on Unlawful Appointment* re [60](#) argued and TAKEN UNDER ADVISEMENT. Defendants continued on previous conditions. Order to follow. (Court Reporter D.Salters.) (lcre, ) (Entered: 11/14/2025) |
| 11/14/2025 | [187](#) | NOTICE *CLARIFYING THE RECORD* by USA as to James B. Comey, Jr re [186](#) Motion Hearing,, (Attachments: # [1](#) Exhibit Declaration of U.S. Attorney Lindsey Halligan, # [2](#) Exhibit Ratification by Attorney General Pamela Bondi)(Diaz, Gabriel) (Entered: 11/14/2025) |
| 11/14/2025 | [188](#) | NOTICE *Corrected D.E. 187 NOTICE CLARIFYING THE RECORD* by USA as to James B. Comey, Jr re [187](#) Notice (Other), (Attachments: # [1](#) Exhibit 1. Declaration of U.S. Attorney Lindsey Halligan, # [2](#) Exhibit 2. Ratification by Attorney General Pamela Bondi)(Diaz, Gabriel) (Entered: 11/14/2025) |

| | | |
|---|---|---|
| 11/17/2025 | 189 | TRANSCRIPT of motion proceedings held on 11-13-25 before Judge Cameron Currie. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/17/2025. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 2/17/2026.(Salters, Diane) (Main Document 189 replaced on 11/23/2025)** (jlan, ). (Entered: 11/17/2025) |
| 11/17/2025 | 190 | MOTION for Extension *of Time to File Suppression Motions and Designate Privileged Materials* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 11/17/2025) |
| 11/17/2025 | 191 | MEMORANDUM OPINION in re 167 Order remanding the matter of disclosure of the grand jury materials as to James B. Comey, Jr. Signed by Magistrate Judge William E. Fitzpatrick on 11/17/2025. (jlan) (Entered: 11/17/2025) |
| 11/17/2025 | 192 | Unredacted Document of 191 Memorandum Opinion as to James B. Comey, Jr. (jlan) (Entered: 11/17/2025) |
| 11/17/2025 | 193 | ORDERED that, by 3:00 p.m. on November 17, 2025, the Clerk of Court shall make available to the defense all grand jury materials filed on the docket under seal by the government (ECF 179); and it is further ORDERED that the government shall, no later than 5:00 p.m. on November 17, 2025, produce to the defense the complete audio recording of the grand jury proceedings; and it is further ORDERED that the Clerk of Court shall file on the public docket the version of the Memorandum Opinion containing narrow redactions of grand jury material; and it is further ORDERED that the Clerk of Court shall maintain the unredacted version of the Memorandum Opinion under seal until further order of the Court as to James B. Comey, Jr. Signed by Magistrate Judge William E. Fitzpatrick on 11/17/2025. (jlan) (Entered: 11/17/2025) |
| 11/17/2025 | 194 | ORDERED that Mr. Comey's suppression motions and privilege designations shall be due November 26, 2025 as to James B. Comey Jr. (1). Signed by Magistrate Judge William E. Fitzpatrick on 11/17/2025. (lcre, ) (Entered: 11/17/2025) |
| 11/17/2025 | 195 | Emergency MOTION to Stay re 193 Order,,, 192 Unredacted Document, 191 Memorandum Opinion *TO ALLOW TIME FOR THE GOVERNMENT TO FILE ITS OBJECTIONS TO THE ORDER TO THE DISTRICT COURT PURUSANT TO RULE 59*. (Diaz, Gabriel) (Entered: 11/17/2025) |
| 11/17/2025 | 196 | RESPONSE in Opposition by James B. Comey, Jr re 195 Emergency MOTION to Stay re 193 Order,,, 192 Unredacted Document, 191 Memorandum Opinion *TO ALLOW TIME FOR THE GOVERNMENT TO FILE ITS OBJECTIONS TO THE ORDER TO THE DISTRICT COURT PURUSANT TO RULE 59* (Carmichael, Jessica) (Entered: 11/17/2025) |
| 11/17/2025 | 197 | ORDERED that the Motion (ECF 195) is GRANTED IN PART; and it is further ORDERED that the government will file any objections to Judge Fitzpatrick's Order by 5:00 p.m. on Wednesday, November 19, 2025. Thereafter, the defense will file any response to any objection by the government by 5:00 p.m. on Friday, November 21, 2025; and it is further ORDERED that Judge Fitzpatrick's Order (ECF 193) is STAYED pending the resolution of any objections filed by the government, which this Court will consider |

J.A. 025

| | | |
|---|---|---|
| | | on the papers as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 11/17/2025. (jlan) (Entered: 11/17/2025) |
| 11/19/2025 | 198 | ORDERED that the Parties file a joint proposed Classified Information Procedures Act (CIPA) briefing schedule by Friday, November 21, 2025, at 5:00 p.m.; and it is further ORDERED that Defendant's Motion to Advance Motions Hearing (ECF 182) is DENIED as to James B. Comey Jr. Signed by District Judge Michael S. Nachmanoff on 11/19/2025. (jlan) (Entered: 11/19/2025) |
| 11/19/2025 | 199 | Minute Entry for proceedings held before District Judge Michael S Nachmanoff: Motion Hearing as to James B. Comey, Jr held on 11/19/2025. USA appeared through Nathaniel Lemons, Gabriel Diaz, and Lindsey Halligan. Defendant appeared with counsel Michael Dreeben, Jessica Carmichael, Patrick Fitzgerald,Rebekah Donaleski, and Elias Kim. MOTION to Dismiss *Indictment based on Vindictive and Selective Prosecution* re 59 argued and TAKEN UNDER ADVISEMENT. MOTION to Advance Motions Hearing re 182 -DENIED. Counsel Jessica Carmichael permitted to waive appearance at referenced motion hearing as articulated in open court. Parties directed to confer with respect to CIPA items as articulated in open court. Defendant continued on previous conditions. Order to follow. (Court Reporter D.Salters.)(lcre, ) (Entered: 11/19/2025) |
| 11/19/2025 | 200 | Objection by USA as to James B. Comey, Jr re 193 Order,,, 197 Order on Motion to Stay,, (Attachments: # 1 Exhibit)(Diaz, Gabriel) (Entered: 11/19/2025) |
| 11/19/2025 | 201 | NOTICE *Gov Brief as to Gaither 413 F.2d 1061 (D.C. Cir. 1969) per Court's Oral Order* by USA as to James B. Comey, Jr re 199 Motion Hearing,,, (Lemons, Nathaniel) (Entered: 11/19/2025) |
| 11/20/2025 | 203 | Reply by James B. Comey, Jr re 105 MOTION to Dismiss *Indictment Based on Fundamental Ambiguity and Literal Truth* (Carmichael, Jessica) (Entered: 11/20/2025) |
| 11/20/2025 | 204 | Reply by James B. Comey, Jr re 107 MOTION for Bill of Particulars (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Carmichael, Jessica) (Entered: 11/20/2025) |
| 11/20/2025 | 205 | MOTION to Seal *Redacted Portions of Exhibit 2* by James B. Comey, Jr. (Attachments: # 1 Proposed Order)(Carmichael, Jessica) (Entered: 11/20/2025) |
| 11/20/2025 | 206 | NOTICE *Correcting the Record* by USA as to James B. Comey, Jr re 199 Motion Hearing,,, (Attachments: # 1 Exhibit A - (Transcript, Dkt. NO, 10))(Diaz, Gabriel) (Entered: 11/20/2025) |
| 11/20/2025 | 207 | TRANSCRIPT of motion proceedings held on 11-19-25 before Judge Michael S. Nachmanoff. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/22/2025. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 2/18/2026.(Salters, Diane) (Entered: 11/20/2025)** |

2/4/26, 9:47 AM                                           CM/ECF - vaed

| 11/20/2025 | 208 | Reply by James B. Comey, Jr re 106 MOTION for Disclosure *of Grand Jury Proceedings* (Carmichael, Jessica) (Entered: 11/20/2025) |
|---|---|---|
| 11/21/2025 | 209 | NOTICE *on CIPA Deadlines* by James B. Comey, Jr (Carmichael, Jessica) (Entered: 11/21/2025) |
| 11/21/2025 | 210 | RESPONSE by James B. Comey, Jr re 200 Objection (Carmichael, Jessica) (Entered: 11/21/2025) |
| 11/21/2025 | 211 | MOTION to Dismiss *Indictment based on Fifth Amendment, Rule 6, and Grand Jury Violations* by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 11/21/2025) |
| 11/21/2025 | 212 | Amended MOTION to Dismiss *Indictment based on Fifth Amendment, Rule 6, and Grand Jury Violations* by James B. Comey, Jr. (Carmichael, Jessica) (Entered: 11/21/2025) |
| 11/24/2025 | 213 | ORDERED AND ADJUDGED as follows: (1) The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. (2) All actions flowing from Ms. Halligan's defective appointment, including securing and signing Mr. Comey's indictment, were unlawful exercises of executive power and are hereby set aside. (3) The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside. (4) Mr. Comey's motion to dismiss the indictment (ECF No. 60) is granted in accordance with this order. (5) The indictment is dismissed without prejudice. (6) The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541 as to James B. Comey Jr. Signed by Senior District Judge Cameron McGowan Currie on 11/24/2025. (jlan) (Entered: 11/24/2025) |
| 12/19/2025 | 217 | NOTICE OF APPEAL by USA as to James B. Comey, Jr as to 213 Order on Motion to Dismiss,,,, (Whitaker, Henry) (Entered: 12/19/2025) |
| 12/22/2025 | 218 | Transmission of Notice of Appeal to 4CCA as to James B. Comey, Jr. to US Court of Appeals re 217 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (jlan) (Entered: 12/22/2025) |
| 12/22/2025 | 219 | USCA Case Number 25-4674 4th Circuit, Case Manager A. Walker for 217 Notice of Appeal filed by USA. (wgar, ) (Entered: 12/22/2025) |
| 01/12/2026 | 220 | ORDER of USCA as to James B. Comey, Jr. in re 217 Notice of Appeal. Upon consideration of submissions relative to the motion to consolidate, the court grants the motion and consolidates Case No. 25-4673 (L) and Case No.25-4674. (jlan) (Entered: 01/14/2026) |

J.A. 027



FILED
IN OPEN COURT

SEP 2 5 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES B. COMEY JR.<br><br>*Defendant*. | CRIMINAL NO. 1:25-CR-272<br><br>Count One: False statements within the jurisdiction of the legislative branch of the United States Government (18 U.S.C. § 1001(a)(2))<br><br>Count Two: Obstruction of a Congressional proceeding (18 U.S.C. § 1505) |

INDICTMENT

<u>COUNT ONE</u>
False statements within the jurisdiction of the legislative branch of the United States Government
[18 U.S.C. § 1001(a)(2)]

1.  On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES B. COMEY JR., did willfully and knowingly make a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the legislative branch of the Government of the United States, by falsely stating to a U.S. Senator during a Senate Judiciary Committee hearing that he, JAMES B. COMEY JR., had not "authorized someone else at the FBI to be an anonymous source in news reports" regarding an FBI investigation concerning PERSON 1.

2.  That statement was false, because, as JAMES B. COMEY JR. then and there knew, he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1.

3.  All in violation of 18 U.S.C. § 1001(a)(2).

## COUNT TWO
Obstruction of a Congressional proceeding
[18 U.S.C. § 1505]

4.  On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES

    B. COMEY JR. did corruptly endeavor to influence, obstruct and impede the due and

    proper exercise of the power of inquiry under which an investigation was being had before

    the Senate Judiciary Committee by making false and misleading statements before that

    committee.

5.  All in violation of 18 U.S.C. § 1505.

A TRUE BILL

~~Foreperson~~

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

By: _____

LINDSEY HALLIGAN
UNITED STATES ATTORNEY

AO 191 (Rev. 01/09)  Report of a Grand Jury's Failure to Concur in an Indictment

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

United States of America                     )
v.                                           )
*James B. Comey Jr.*                         )
                                             )
_____                      )
*Defendant*                                  )

FILED
IN OPEN COURT

**SEP** 2 5 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## REPORT OF A GRAND JURY'S FAILURE TO CONCUR IN AN INDICTMENT

As the foreperson of the grand jury of this court at a session held at _____ Alexandria, Virginia _____ on
_Sep 25, 2025_, I report that 12 or more grand jurors did not concur in finding an indictment in this case. Count 1 only.
Under Fed. R. Crim. P. 6(c), this record is being filed with the court clerk and will *not* be made public unless the court
orders otherwise.

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Date:  _Sep 25, 2025_

_____
*Foreperson's signature*

J.A. 030



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA <br><br> v. <br><br> JAMES B. COMEY JR. <br><br> *Defendant*. | CRIMINAL NO. 1:25-CR-272 <br><br> Count One:  False statements within the jurisdiction of the legislative branch of the United States Government (18 U.S.C. § 1001(a)(2)) <br><br> Count Two: False statements within the jurisdiction of the legislative branch of the United States Government (18 U.S.C. § 1001(a)(2)) <br><br> Count Three:  Obstruction of a Congressional proceeding (18 U.S.C. § 1505) |

INDICTMENT

COUNT ONE

False statements within the jurisdiction of the legislative branch of the United States Government
[18 U.S.C. § 1001(a)(2)]

1. On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES B. COMEY JR., did willfully and knowingly make a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the legislative branch of the Government of the United States, by falsely stating to a U.S. Senator during a Senate Judiciary Committee hearing that he, JAMES B. COMEY JR., did not remember "being taught" of PERSON 1's "approval of a plan concerning" PERSON 2 and the 2016 U.S. Presidential election.

2. That statement and representation was false, because, as JAMES B. COMEY JR. then and there knew, he had in fact been provided information regarding PERSON 1's approval of a plan concerning PERSON 2 and the 2016 U.S. Presidential election.

3. All in violation of 18 U.S.C. § 1001(a)(2).

J.A. 031

<u>COUNT TWO</u>

False statements within the jurisdiction of the legislative branch of the United States Government

[18 U.S.C. § 1001(a)(2)]

4. On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES B. COMEY JR., did willfully and knowingly make a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the legislative branch of the Government of the United States, by falsely stating to a U.S. Senator during a Senate Judiciary Committee hearing that he, JAMES B. COMEY JR., had not "authorized someone else at the FBI to be an anonymous source in news reports" regarding an FBI investigation concerning PERSON 1.

5. That statement was false, because, as JAMES B. COMEY JR. then and there knew, he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1.

6. All in violation of 18 U.S.C. § 1001(a)(2).

COUNT TWO
Obstruction of a Congressional proceeding
[18 U.S.C. § 1505]

4.  On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES

B. COMEY JR. did corruptly endeavor to influence, obstruct and impede the due and

proper exercise of the power of inquiry under which an investigation was being had before

the Senate Judiciary Committee by making false and misleading statements before that

committee.

5.  All in violation of 18 U.S.C. § 1505.


A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson

By: _____
LINDSEY HALLIGAN
UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **JAMES B. COMEY JR.'S MOTION TO DISMISS INDICTMENT**

Exhibit A



**Office of the Attorney General**
**Washington, D. C. 20530**

ORDER NO. 6402-2025

AUTHORIZING LINDSEY HALLIGAN TO BE THE INTERIM
UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF VIRGINIA
DURING THE VACANCY IN THAT OFFICE

By virtue of the authority vested in the Attorney General by 28 U.S.C. § 546, I designate

and appoint Lindsey Halligan to serve as the United States Attorney for the Eastern District of

Virginia and to serve in that capacity for the period of one hundred and twenty days or until

replaced in accordance with law, whichever occurs first.

The appointment shall be effective September 22, 2025.

_____9/22/25_____
Date

_____
Pamela Bondi
Attorney General

J.A. 035

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> v. <br><br> JAMES B. COMEY, JR., <br><br> Defendant. | Criminal No. 1:25-272 <br><br> Order |

Defendant James B. Comey, Jr. has filed a motion to dismiss alleging the indictment resulted from a violation of the Appointments Clause and 28 U.S.C. § 546, which authorizes appointment of an interim United States Attorney.  ECF No. 60. He contends the individual who signed and procured the indictment was invalidly appointed to the position of Interim United States Attorney.

The undersigned has been appointed to hear this motion and finds it necessary to determine the extent of the indictment signer's involvement in the grand jury proceedings. Accordingly, the Government is directed to submit, no later than Monday, November 3, 2025, at 5:00 pm, for in camera review, all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts. In camera review is appropriate given the secrecy requirements applicable to grand jury proceedings. Fed. R. Crim. P. 6(e)(2).

The above documents shall be delivered to chambers of Judge Cameron McGowan Currie at Matthew J. Perry United States Courthouse, 901 Richland Street, Columbia, South Carolina, 29201.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
October 28, 2025

J.A. 036

# Exhibit A



# Office of the Attorney General
## Washington, D.C. 20530

ORDER NO. 6485-2025

APPOINTMENT OF LINDSEY HALLIGAN AS SPECIAL ATTORNEY
TO CONDUCT LEGAL PROCEEDINGS IN THE EASTERN DISTRICT OF VIRGINIA AND
RATIFICATION OF CERTAIN ACTIONS IN THAT DISTRICT

On September 22, 2025, I exercised the authority vested in the Attorney General by 28 U.S.C. § 546 to designate and appoint Lindsey Halligan as the United States Attorney for the Eastern District of Virginia. *See* Att'y Gen. Order No. 6402-2025. For the avoidance of doubt as to the validity of that appointment, and by virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 515, I hereby appoint Ms. Halligan to the additional position of Special Attorney, as of September 22, 2025, and thereby ratify her employment as an attorney of the Department of Justice from that date going forward. As Special Attorney, Ms. Halligan has authority to conduct, in the Eastern District of Virginia, any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before United States Magistrates and Judges. In the alternative, should a court conclude that Ms. Halligan's authority as Special Attorney is limited to particular matters, I hereby delegate to Ms. Halligan authority as Special Attorney to conduct and supervise the prosecutions in *United States v. Comey* (Case No. 1:25-CR-00272) and *United States v. James* (Case No. 2:25-CR-00122).

In addition, based on my review of the grand jury proceedings in *United States v. Comey* and *United States v. James*, I hereby exercise the authority vested in the Attorney General by

J.A. 038



# Office of the Attorney General

### Washington, D.C. 20530

law, including 28 U.S.C. § 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictments returned by the grand jury in each case.

_____10/31/25_____
Date

Pamela Bondi
Attorney General

J.A. 039

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　v.<br><br>JAMES B. COMEY, JR.,<br><br>　　　　　　Defendant. | Criminal No. 1:25-272-MSN<br><br><br>Order |

Defendant James B. Comey, Jr. has filed a motion to dismiss alleging the indictment resulted from a violation of the Appointments Clause and 28 U.S.C. § 546, which authorizes appointment of an interim United States Attorney.  ECF No. 60.

On October 28, 2025, the undersigned entered an order directing the Government to submit, for in camera review, "all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts." ECF No. 95.  On Friday, October 31, 2025, the court received a package containing, inter alia, a "Transcript of Grand Jury proceedings on September 25, 2025."  This court has reviewed the transcript and finds it fails to include remarks made by the indictment signer both before and after the testimony of the sole witness, which remarks were referenced by the indictment signer during the witness's testimony.  In addition, the package contains no records or transcripts regarding the presentation of the three-count indictment referenced in the Transcript of the Return of Grand Jury Indictment Proceedings before the Magistrate Judge.  See ECF No. 10.

Accordingly, the Government is directed to submit, no later than Wednesday, November 5, 2025, at 5:00 pm, for in camera review, a complete Transcript and/or recording of all statements made by the indictment signer to the grand jury on September 25, 2025, to include statements

J.A. 040

made prior to and after the testimony of the witness and during the presentation of the three-count and subsequent two-count indictments.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
November 4, 2025

2

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:25-CR-272-MSN** |
| **JAMES B. COMEY, JR.** | |
| ***Defendant.*** | |

<u>**NOTICE OF COMPLIANCE WITH JUDICIAL ORDER**</u>

The government files this notice of compliance with the Court's Order at Docket Entry 148. The Court had previously Ordered the government to provide, for in camera review, all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts. [DE 95]. In response, the government provided the transcript of the Grand Jury proceedings that was previously provided to the government by the transcription service.

The Court's subsequent Order at Docket Entry 148 additionally requested the recording from the Grand Jury presentation. Upon receiving this order, the government immediately contacted the transcription service and requested the complete recording.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

Further, the government requested that the transcription service transcribe the entire recording, which had not been done previously. This new transcript was provided to the government on November 5, 2025. The above items have now been provided to the Court in compliance with the Court's Orders.

Respectfully submitted this 5th day of November, 2025.

Lindsey Halligan
United States Attorney

_____ /S/ _____
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
tyler.lemons@usdoj.gov
gabriel.diaz@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 5th day of November, 2025, the government served a copy of the foregoing upon the defendant by CM/ECF to:

Jessica Nicole Carmichael
Counsel for Defendant

Patrick Joseph Fitzgerald
Counsel for Defendant

Respectfully submitted,

_____/S/_____
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
tyler.lemons@usdoj.gov
gabriel.diaz@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,** | |
| *v.* | **CRIMINAL NO. 1:25-CR-272-MSN** |
| **JAMES B. COMEY, JR.,** | |
| ***Defendant.*** | |

### <u>INFORMATIVE NOTICE CLARIFYING THE RECORD</u>

On November 13, 2025, U.S. District Court Judge Cameron M. Currie held a hearing on the defendant's Motion to Dismiss Indictment based on Unlawful Appointment. D.E. 186. At the hearing, Judge Currie: (1) noted an alleged gap in the grand-jury record, referring specifically to the period beginning at approximately 4:28 p.m., when the transcript reflects that U.S. Attorney Lindsey Halligan and the court reporter exited the grand-jury room; and (2) noted U.S. Attorney General Pamela Bondi did not have all the grand jury materials at the time of her ratification.

Accordingly, the government respectfully requests the Court take notice of the attached declaration of U.S. Attorney Lindsey Halligan (Exhibit 1), and the attached ratification dated November 14, 2025, by U.S. Attorney General Pamela Bondi (Exhibit 2).

(remainder of page left intentionally blank)

Respectfully submitted this 14th day of November, 2025.

Lindsey Halligan
United States Attorney

*/s/ Gabriel J. Diaz*
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
gabriel.diaz@usdoj.gov
tyler.lemons@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 14th day of November, 2025, the government served a copy of the foregoing upon the defendant by CM/ECF to:

Jessica Nicole Carmichael
Counsel for Defendant

Patrick Joseph Fitzgerald
Counsel for Defendant

Rebekah Donaleski
Counsel for Defendant

<div style="margin-left:40%">

Respectfully submitted,

<u>*/s/ Gabriel J. Diaz*</u>
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
gabriel.diaz@usdoj.gov
tyler.lemons@usdoj.gov

</div>

J.A. 047

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| **THE UNITED STATES OF AMERICA,** | |
| ***v.*** | **CRIMINAL NO. 1:25-CR-272-MSN** |
| **JAMES B. COMEY, JR.,** | |
| ***Defendant.*** | |

<u>**DECLARATION OF THE INTERIM UNITED STATES ATTORNEY**</u>
<u>**FOR THE EASTERN DISTRICT OF VIRGINIA**</u>

At the November 13, 2025 hearing, Judge Cameron Currie expressed concern regarding an alleged gap in the grand-jury record, referring specifically to the period beginning at approximately 4:28 p.m., when the transcript reflects that I, Lindsey Halligan and the court reporter exited the grand-jury room. By identifying that specific timeframe, the court placed the timing of the proceedings in dispute.

1.     Accordingly, I, Lindsey Halligan, submit this declaration to clarify the precise sequence of events on September 25, 2025, to confirm that the grand jury transcript accurately reflects the full extent of my appearance before the grand jury, and to explain that the period in question consisted solely of the grand jury's private deliberations, during which no prosecutor, court reporter, or other person may be present pursuant to Rule 6(d) of the Federal Rules of Criminal Procedure. There are no missing minutes, contrary to the suggestion raised by the court.

2.     On September 25, 2025, I presented the case of the United States v. James B. Comey, Jr., to a federal grand jury in the Eastern District of Virginia, Alexandria Division. I have reviewed the full transcript of the grand jury proceedings, and the transcript accurately reflects the entirety of the government's presentation and presence in front of the grand jury. There was no

1

J.A. 048

additional presentation, interaction, or discussion with the grand jury outside of what is reflected in the transcript. Below is a brief timeline of the events that day.

3.    On September 25, 2025, I appeared before the grand jury. After introducing myself and the case proposed for indictment, the case was presented through testimony. At the conclusion of the presentment, I provided a brief summation to the grand jury and then departed along with the court reporter. The process of presenting the indictment took place from approximately 02:18 PM to 04:28 PM.

4.    Approximately two hours later, at 06:40 PM, I was notified by then-First Assistant United States Attorney Maggie Cleary that the grand jury had returned a true bill as to the presented Count Two and Count Three of the indictment and that the grand jury had not returned a true bill as to the presented Count One. I then proceeded to the courtroom for the return of the indictment in front of the magistrate judge.

5.    During the intermediary time, between concluding my presentation and being notified of the grand jury's return, I had no interaction whatsoever with any members of the grand jury. This time represents the grand jury's private deliberation which was done in secret with no one but the members of the grand jury present, consistent with Federal Rule of Criminal Procedure 6(d)(2).

6.    I was never present in front of the grand jury alone. At every moment I was in front of the grand jury, the court reporter was also present.

Respectfully submitted this 14th day of November, 2025

*/s/ Lindsey Halligan*
Lindsey Halligan
Interim United States Attorney

2



# Office of the Attorney General
## Washington, D. C. 20530

ORDER NO. 6491-2025

RATIFICATION OF CERTAIN ACTIONS IN THE EASTERN DISTRICT OF VIRGINIA

On October 31, 2025, and based on the record of the grand jury proceedings that was available to the government at the time, I ratified the actions of United States Attorney Lindsey Halligan before the grand jury and her signature on the indictment returned by the grand jury in the case of *United States v. Comey* (Case No. 1:25-CR-00272). *See* Att'y Gen. Order No. 6485-2025. The district court has subsequently raised questions about the completeness of the record of the grand jury proceedings presented to me at the time of that initial ratification. For the avoidance of doubt, I have reviewed the entirety of the record now available to the government and confirm my knowledge of the material facts associated with the grand jury proceedings. Based on that knowledge, I hereby exercise the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictment returned by the grand jury.

11/14/25
_____
Date

_____
Pamela Bondi
Attorney General

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

v.

JAMES B. COMEY, JR.,

*Defendant*.

Criminal No. 1:25-cr-272-MSN-WEF

<u>MEMORANDUM OPINION</u>

This matter is before the Court to address the narrow issue of whether there are particularized and factually based grounds to justify the disclosure of grand jury materials to the defense pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). For the reasons set forth below, the Court finds the record in this case requires the full disclosure of grand jury materials. In so finding, the Court recognizes this is an extraordinary remedy, but given the factually based challenges the defense has raised to the government's conduct and the prospect that government misconduct may have tainted the grand jury proceedings, disclosure of grand jury materials under these unique circumstances is necessary to fully protect the rights of the accused.

**I. Relevant Procedural History**

On October 13, 2025, the government moved for implementation of a filter protocol to govern its handling and disclosure of potentially privileged material. ECF 38. The material was seized in 2019 and 2020 pursuant to court authorized warrants in a different district and as part of a separate investigation. *Id.* at 2. The defense opposed the motion, in part, on the grounds that the information the government sought to review was improperly retained after the conclusion of the prior investigation, improperly used in this investigation and the government had already accessed

J.A. 051

potentially privileged information.  ECF 71.  Rather than institute a filter protocol, the defense asked the Court to direct the government to disclose information related to the acquisition and prior use of the material it sought to review.  *Id.*  The defense argued that its "concerns with the government's respect for—and ability to safeguard—the defendant's attorney-client privileged materials are not merely hypothetical" because the lead case agents "may have been exposed to attorney-client privileged materials."  *Id.* at 6.

On October 29, 2025, United States District Judge Michael S. Nachmanoff entered an Order finding that "briefing on the government's proposed filter protocol raises several legal questions that must be resolved before any protocol is authorized."  ECF 102 at 2.  Citing the government's motion and Mr. Comey's response, ECF Nos. 38 and 71, the Court appointed the undersigned "to preside over all proceedings related to the potential review of privileged materials in this case."  ECF 102 at 1–2.

On November 5, 2025, the undersigned held a hearing on the government's motion for a filter protocol. Following the hearing, the Court ordered the government to provide the materials subject to the filter review to the defense to give the defense an opportunity to assert any claims of privilege.  ECF 161.  The Court further ordered the government not to review any of the materials at issue until any privilege disputes have been resolved by the Court.  *Id.*  The Court then ordered the government to provide additional information to the defense about the circumstances surrounding the search and prior use of the materials at issue, including, at the defense's request, to produce all grand jury materials.  *Id.*

The government appealed the Court's order challenging, in part, whether the Court made sufficient particularized findings to support the disclosure of the grand jury materials.  ECF 164. District Judge Nachmanoff then remanded the matter to the undersigned to conduct "further

2

J.A. 052

proceedings to analyze whether there are particularized and factually based grounds for disclosure" of the grand jury material. ECF 167 at 2.

On November 10, 2025, the parties filed briefs addressing the disclosure of grand jury materials. ECF Nos. 171 and 172. In its brief, the government proposed the Court review the grand jury materials *in camera* to aid its analysis. ECF 172. The same day, November 10, 2025, the Court held a telephonic hearing during which it granted the government's request to provide the grand jury materials to the Court for review. ECF 177. The Court, having considered the briefs of the parties, the oral argument of counsel, and the grand jury materials provided by the government, now sets forth, as the government requested, particularized and factually based grounds supporting the disclosure of the grand jury materials.[1]

## II. Legal Standard for Disclosure of Grand Jury Materials

The "long-established policy of maintaining the secrecy of grand jury proceedings" is codified in Federal Rule of Criminal Procedure 6(e). *United States v. Penrod*, 609 F.2d 1092, 1096 (4th Cir. 1979). However, Rule 6(e) provides several exceptions under which a court may authorize disclosure of grand jury materials. *See Gallop v. United States*, 2012 WL 13081725, at *9 (E.D. Va. Jan. 9, 2012) ("The decision whether to order the disclosure of grand jury testimony is within the court's discretion.") (citing *United States v. Foggo*, 595 F. Supp. 2d. 672, 674 (E.D. Va. 2009)). In this case, Mr. Comey seeks access to such materials in order to move for dismissal of the indictment based on alleged irregularities in the grand jury proceedings. ECF 171 at 2. Accordingly, the relevant exception is Rule 6(e)(3)(E)(ii), which permits a court to authorize disclosure "at a time, in a manner, and subject to any other conditions that it directs . . . at the

---

[1] Relatedly, the defense filed a separate motion seeking access to the grand jury materials. ECF 106. The government filed its opposition to that motion on November 13, 2025. ECF 184.

3

J.A. 053

request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]"

A majority of courts have held that the appropriate standard that a defendant must meet to gain disclosure of grand jury materials under Rule 6(e)(3)(E)(ii) is that of "'particularized need,' borrowed from the standard under the case law applying Rule 6(e)(3)(E)(i)." *See United States v. Naegele,* 474 F. Supp. 2d 9, 10 (D.D.C. 2007) (citing *Ridings v. Department of Justice,* 38 Fed. Appx. 20, 21, (D.C. Cir. 2002) (per curiam) (unpublished) ("Even assuming appellant could invoke Rule 6(e)(3)(C)(ii), his claim nonetheless fails because appellant did not make a 'showing of particularized need' for disclosure of the grand jury transcripts ... The district court properly held that appellant's unsupported assertion that a grand jury did not indict him does not constitute the showing of particularized need required under Fed. R. Crim. P. 6(e)(3)(C)(ii).") (citations omitted); *United States v. Nguyen,* 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (defendant must show that "particularized and factually based grounds exist . . . [that] may create a basis for dismissal of the indictment."); *United States v. Labate,* 2001 WL 533714 at *20 (S.D.N.Y. May 18, 2001) ("To be entitled to disclosure of grand jury minutes, defendant must make a showing of 'particularized need' that outweighs the strong interest in maintaining the secrecy of grand jury proceedings."); *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992) (defendant "has the burden of asserting that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment"); *United States v. Broyles,* 37 F.3d 1314, 1318 (8th Cir.1994) (using particularized need standard); *United States v. Puglia,* 8 F.3d 478, 480 (7th Cir.1993) (same); *United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir.1984) (same); *United States v. Dunn,* 2005 WL 1705303 at *1 (S.D.N.Y. July 19, 2005) (same); *United States v. Mazzola,* 183 F. Supp. 2d 195, 197-98 (D. Mass. 2001) (same)).

4

The Fourth Circuit has held that this "particularized need" inquiry requires the trial court to "balance the petitioner's need for release against the traditional public interest reasons for grand jury secrecy and 'only in those cases where the need for [disclosure] outweighs the public interest in secrecy' will the requirement of 'particularized need' for release be found to exist." *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298 (4th Cir. 1986) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)); *United States v. Sells Engineering, Inc*., 463 U.S. 418 (1983)); *see also United States v. Foggo*, 595 F. Supp. 2d 672, 675 (E.D. Va. 2009); *Gallop v. United States*, No. 2:08CR217, 2012 WL 13081725, at \*9 (E.D. Va. Jan. 9, 2012).

Courts in this district have made clear that Rule 6(e)(3)(E)(ii) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *Loc Tien Nguyen*, 314 F. Supp. 2d at 616. Because "grand jury proceedings are entitled to a strong presumption of regularity," a defendant seeking disclosure under Rule 6(e)(3)(E)(ii) bears a "heavy burden" of showing that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Id.* (citing *Abcasis*, 785 F. Supp. at 1119; *United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir. 1992); *United States v. McKie*, 831 F.2d 819, 821 (8th Cir. 1987); *Lisinski*, 728 F.2d at 893)). "Nor can this burden be satisfied with conclusory or speculative allegations of misconduct." *Id.* (citing *United States v. Morgan*, 845 F. Supp. 934, 941 (D. Conn. 1994); *Abcasis*, 785 F. Supp. at 1119).

### III. Factual Background

In 2017, the U.S. Attorney's Office for the District of Columbia ("USAO-DDC") initiated an investigation, referred to by the Federal Bureau of Investigation ("FBI") as Arctic Haze. ECF 71 at 2. This investigation concerned an allegation of unauthorized disclosure of classified

information to a New York Times reporter, which appeared in an April 22, 2017 article titled "Comey Tried to Shield the FBI from Politics. Then He Shaped an Election." *Id.* The investigation focused on the article's inclusion of classified information related to one of the factors that influenced Mr. Comey's decision, as then-FBI director, to unilaterally announce the closure of the FBI's investigation into then-Presidential Candidate Hillary Clinton's handling of classified material while she was serving as Secretary of State. *Id.* Daniel Richman, a Columbia Law School professor, personal friend of Mr. Comey, and former Special Government Employee at the FBI during Mr. Comey's tenure as FBI Director, was quoted by name in the article and was the subject of USAO-DDC's investigation. *Id.*

*The Richman Search Warrants*

In 2019 and 2020, the FBI obtained four warrants authorizing agents to search a hard drive, an iCloud account, an iPad and iPhone belonging to Mr. Richman, as well as two Columbia University email accounts used by Mr. Richman (collectively referred to as "the Richman Warrants").[2] ECF Nos. 89-1 to 89-4. The Richman Warrants authorized agents to search for and seize information created or stored between March 1, 2016 and May 30, 2017 that constituted evidence of violations of 18 U.S.C. § 641 (Theft and Conversion of Stolen Government Property) and 18 U.S.C. § 793 (Unlawful Gathering or Transmission of National Defense Information). *Id.*

---

[2]      Search warrant 19-sw-182 was issued on August 27, 2019, and authorized the search of Mr. Richman's hard drive from February 1, 2017 to April 30, 2017. ECF 89-1.

Search warrant 19-sc-2097 was issued on October 22, 2019, and authorized the search of Mr. Richman's Columbia University and Law School email accounts from March 1, 2016 to May 30, 2017. ECF 89-2.

Search warrant 20-sw-200 was issued on January 31, 2020, and authorized the search of Mr. Richman's iCloud account from March 1, 2016 to May 30, 2017. ECF 89-3. Attachment B to the warrant specifically limits the information to be seized to "non-privileged communications." *Id.*

Search warrant 20-sw-143 was issued on June 4, 2020, and authorized the search of the backup files for Mr. Richman's iPad and iPhone from March 1, 2016 to May 30, 2017. ECF 89-4. Attachment B to the warrant specifically limits the information to be seized to "non-privileged communications." *Id.*

6

The information seized pursuant to the Richman Warrants during the Arctic Haze investigation is at the center of the current dispute between the parties in this case.

*The 2019 and 2020 Searches of the Richman Devices as Part of the Arctic Haze Investigation*

The record reflects that in 2019 and 2020, the government took modest–and as it turned out ineffective–steps to identify and isolate potentially privileged information contained in the materials seized pursuant to the Richman Warrants.  For example, the government permitted Columbia University to review the emails seized from Mr. Richman's Columbia email accounts and withhold private or otherwise sensitive communications.  ECF 181 (Defense's *Ex Parte* Under Seal Notice Regarding Grand Jury Materials).  The government also provided Mr. Richman and his counsel with an opportunity to review the materials seized from his devices and to assert a privilege over those materials.  ECF 38 at 2.  The government claims that the documents and communications identified by Columbia University and Mr. Richman as privileged were never reviewed as part of the Arctic Haze investigation.  ECF 165 at 11–12.

However, the government never engaged Mr. Comey in this process even though it knew that Mr. Richman represented Mr. Comey as his attorney as of May 9, 2017, and three of the four Richman Warrants authorized the government to search Mr. Richman's devices through May 30, 2017, 21 days after an attorney-client relationship had been formed.  ECF Nos. 38 at 2 and 138-11 at 33 (Aug. 2019 Office of the Inspector General Report) (noting that Mr. Comey informed the Office of Inspector General that "the day after his removal, or 'very shortly thereafter,' he retained attorneys Patrick Fitzgerald, David Kelley, and Daniel Richman.").

According to an April 29, 2020 letter from Mr. Richman's then-attorney to the government–produced to the Court *ex parte* by the defense–the Department of Justice informed Mr. Richman that the data it obtained from his iCloud account extended to August 13, 2019, well

outside the scope of the warrant and well past the date on which Mr. Richman was retained as Mr. Comey's attorney. ECF 181-6 at 20. The same letter further states that the Department of Justice informed Mr. Richman that it had seized data from Mr. Richman's hard drive that extended to June 10, 2017–again well into the period during which Mr. Richman represented Mr. Comey–despite the warrant (19-sw-182) imposing a temporal limit of April 30, 2017. *Id.*

At the time the Richman Warrants were executed, the government was aware not only that Mr. Richman represented Mr. Comey, but also that he maintained ongoing attorney-client relationships with other individuals, as the FBI materials regarding his resignation from Special Government Employee status noted his intention to represent a defendant in a federal criminal prosecution. *Id.* As a result, when the government obtained the first Richman Warrant in 2019, it was clearly foreseeable that Mr. Richman's devices contained potentially privileged communications with numerous third parties, including Mr. Comey. Nevertheless, in 2019 and 2020, the government made a conscious decision to exclude Mr. Comey from the filter process, even though Mr. Comey, as the client, is the privilege holder, not Mr. Richman. The government's claim at the November 5, 2025 hearing that Mr. Richman, at the time himself the subject of a criminal investigation and represented by separate counsel, was in a position to effectively assert Mr. Comey's privilege is entirely unreasonable.

Of equal concern is whether the government complied with a fundamental requirement of the Fourth Amendment and with the plain language of the warrants that it may seize only those materials specifically authorized by the Court. Under long-standing Fourth Amendment precedent, the government may search for and seize only those materials expressly authorized by the terms of a search warrant issued in connection with specific predicate offenses. *See United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) ("At its core, the Fourth Amendment protects

against general warrants that authorize 'exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized.'" (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 595 (S.D.W. Va. 2019) ("Given the heightened potential for government abuse of stored electronic data, it is imperative that courts ensure that law enforcement scrupulously contain their searches to the scope of the search warrant which permitted the search in the first place."); *United States v. Schlingloff*, 901 F. Supp. 2d 1101, 1106 (C.D. Ill. 2012) (suppressing evidence where search exceeded scope of warrant because "[a]ny other outcome would be contrary to the intent of the Fourth Amendment that search warrants must describe with particularity the things to be seized, so that a search for specified evidence does not devolve into a generalized search for something entirely different"). This principle, referred to as the Fourth Amendment's particularity requirement, is fulfilled when "the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *Williams*, 592 F.3d at 519.

Here, the government was permitted to search all of the Richman materials but authorized to seize only evidence related to violations of 18 U.S.C. § 641 (Theft and Conversion of Stolen Government Property) and 18 U.S.C. § 793 (Unlawful Gathering or Transmission of National Defense Information), both markedly different offenses than those with which Mr. Comey is currently charged.[3]

---

[3]     On September 25, 2025, Mr. Comey was indicted by a federal Grand Jury in the Eastern District of Virginia for making a false statement in violation of 18 U.S.C. § 1001 (Count One) and obstruction of justice in violation of 18 U.S.C. § 1505 (Count Two). The indictment is based on Mr. Comey's testimony to the Senate Judiciary Committee on September 30, 2020, which referenced his testimony to the Senate Judiciary Committee on May 3, 2017.  ECF 1.

There is nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from Mr. Richman constituted evidence of violations of 18 U.S.C. § 641 and § 793. To be clear, ensuring that agents and prosecutors seize only those things which a court has authorized is a critical early step in the execution of any warrant and an elemental responsibility of all government agents.

When the undersigned questioned the Assistant United States Attorney currently assigned to this case at the November 5, 2025 hearing, as to how and whether a set of materials responsive to the Richman Warrants was identified and separated from non-responsive materials, he simply said he did not know.[4] ECF 165 at 19–20. Following the hearing, on November 5, 2025, the Court ordered the government to produce to the defense all material seized pursuant to the Richman Warrants "in whatever form it is currently maintained" by 5:00 p.m. on November 6, 2025. ECF 161. Pursuant to that Order, the government provided to the defense the materials seized from the Richman Warrants, but, according to the defense, the manner and format in which the government provided the information did not reflect that the government had seized, reviewed and used only the information responsive to the warrants. ECF 171 at 7 n.4.

This potential failure by the government is even more concerning because the warrant issued on August 27, 2019 (19-sw-182) specifically directed the government to identify what information was responsive to the warrant and instructed "[l]aw enforcement personnel [to] then seal any information that does not fall within the scope of [the warrant] and … not [to] further review the information absent an order of the Court."[5] ECF 89-1.

---

[4]    To be clear, the two assistant United States attorneys currently assigned to this case entered their appearances post-indictment and were not a part of the Arctic Haze investigative team.

[5]    This provision is not repeated in the other Richman warrants submitted by the government, but the approach is nevertheless plainly required on the face of each warrant and as discussed *supra*, in accordance with well-established Fourth Amendment precedent.

The government appears to have conflated its obligation to protect privileged information–an obligation it approached casually at best in this case–with its duty to seize only those materials authorized by the Court. This cavalier attitude towards a basic tenet of the Fourth Amendment and multiple court orders left the government unchecked to rummage through all of the information seized from Mr. Richman, and apparently, in the government's eyes, to do so again anytime they chose.[6] The Arctic Haze investigation was closed in September 2021, with no charges filed. The Richman materials sat dormant with the FBI until the summer of 2025, when the Bureau chose to rummage through them again.

*The 2025 Search of the Richman Materials as Part of the Investigation into Mr. Comey*

By the summer of 2025, the FBI and the United States Attorney's Office for the Eastern District of Virginia (USAO-EDVA) had initiated a criminal investigation into Mr. Comey. ECF Nos. 172-1 and 172-2. As part of the investigation, on September 12, 2025, an FBI agent assigned to the Director's Advisory Team was instructed, apparently with the concurrence of the USAO-EDVA,[7] to review "a Blu-ray disc that contained a full Cellebrite extraction and Reader reports of [Mr. Richman's] iPhone and iPad backups." ECF 172-1.

Inexplicably, the government elected not to seek a new warrant for the 2025 search, even though the 2025 investigation was focused on a different person, was exploring a fundamentally different legal theory, and was predicated on an entirely different set of criminal offenses. The Court recognizes that a failure to seek a new warrant under these circumstances is highly unusual.

---

[6]    The Fourth Circuit has held that the government's prolonged retention and continued access to materials that are non-responsive to a search warrant may violate the Fourth Amendment. *See United States v. Zelaya-Veliz,* 94 F.4th 321 (4th Cir. 2024) (holding that district courts "retain[] the authority to determine that prolonged retention of non-responsive data by the government violated the Fourth Amendment.").

[7]    It is important to note that the USAO-EDVA prosecutors were not involved in the 2019 and 2020 searches of the Richman materials and may have reasonably assumed the agents in 2019 and 2020 seized and preserved only those materials responsive to the warrants.

11

J.A. 061

The Court also recognizes that seeking a new warrant under these circumstances would have required a fresh legal analysis and likely resulted in some delay, a delay the investigative team could not afford given that the statute of limitations would expire in a mere 18 days. *See* 18 U.S.C. § 3282(a).

If a new warrant had been sought by the government and issued by the Court, the Fourth Amendment would have required it to be narrowly tailored, authorizing access only to materials within a limited time frame and relevant to the new offenses under investigation. *See Williams*, 592 F.3d at 519. In addition, any new warrant would have imposed strict procedural safeguards to ensure privileged information was not reviewed by the prosecution team. As a result, the parameters of the 2025 search would inevitably have had a different and much narrower scope than the Richman Warrants. Faced with this prospect, the government chose to unilaterally search materials that were (1) seized five years earlier; (2) seized in a separate and since closed investigation; (3) that were never reviewed to determine whether the seized information was responsive to the original warrants; (4) that were likely improperly held by the government for a prolonged period of time; (5) that included potentially privileged communications; (6) did so without ever engaging the privilege holders; and (7) did so without seeking any new judicial authority.

Having decided to forge ahead under these highly unusual circumstances, the FBI agent conducting the September 12, 2025 search of the disc containing information from Mr. Richman's iPhone and iPad was specifically instructed to seize "conversations between [Mr.] Richman and [Mr.] Comey." ECF 172-1. There appeared to be no precautions in place to avoid the collection of privileged communications. *Id.* The agent conducted the review and printed "the relevant pages," which included multiple conversations involving Mr. Comey and Mr. Richman. *Id.* The

J.A. 062

reviewing agent then transferred the disc and "the relevant [printed] pages" to a second FBI agent (hereinafter referred to as Agent-2). *Id.* Sometime between September 12, 2025 and September 25, 2025, Agent-2 reviewed the newly seized materials and, not surprisingly, identified communications involving Mr. Comey and Mr. Richman as potentially privileged. ECF 172-2.

The government presented this case to the grand jury on September 25, 2025. ECF 1. The same day, prior to the grand jury presentment, Agent-2 alerted the lead case agent (hereinafter referred to as Agent-3) and an attorney with the FBI's Office of General Counsel that "evidence obtained in the Government's investigation of James Comey may constitute attorney-client privileged or attorney-client confidential information. It is also possible that [the agents] may have obtained evidence that constitutes attorney work-product information."[8] ECF 89-5. Agent-2 gave Agent-3 and the FBI attorney "a limited overview of the [privileged] communications." ECF 172-2.[9] Agent-3, rather than remove himself from the investigative team until the taint issue was resolved, proceeded into the grand jury undeterred and testified in support of the pending indictment. ECF 179. In fact, Agent-3 was the only witness to testify before the grand jury in support of the pending indictment. *Id.* The government's decision to allow an agent who was exposed to potentially privileged information to testify before a grand jury is highly irregular and a radical departure from past DOJ practice.

Only after the government had reviewed the materials seized pursuant to the 2019 and 2020 search warrants, only after FBI agents had personally identified potentially privileged materials, and only after the government obtained an indictment on September 25, 2025, did it seek court

---

[8]    This is the language used by an FBI attorney to characterize their September 25, 2025 phone conversation with Agent-3. A second agent, possibly Agent-2, was also on the call but that that person's identity has been shielded from the Court. ECF 89-5.

[9]    The government provided no further detail about what, in its view, constitutes a "limited overview."

13

approval of a filter protocol for materials the FBI had already reviewed.  ECF 38.  For reasons that remain unclear, the government waited 31 days from September 12, 2025, the date the FBI began reviewing the materials, and 18 days from September 25, 2025, the date the FBI informed its Office of General Counsel about having been exposed to potentially privileged materials, before seeking court approval of a filter protocol on October 13, 2025.  *Id*.

### IV. The Court's *in Camera* Review of the Grand Jury Materials[10]

The Court has now reviewed the grand jury transcript, the audio recording of the grand jury proceedings, as well as the exhibits presented to the grand jurors.  Only one witness, Agent-3, testified before the grand jury, and only one prosecutor appeared on behalf of the government. ECF 179-1 (Full Grand Jury Indictment Transcript).

*The Search and Use of the Richman Materials*

The government's position is that the grand jury materials "confirm the baselessness of the defendant's claim that privileged information may have been shared with the grand jury."  ECF 172.  While it is true that the undersigned did not immediately recognize any overtly privileged communications, it is equally true that the materials seized from the Richman Warrants were the cornerstone of the government's grand jury presentation.  The government substantially relied on statements involving Mr. Comey and Mr. Richman in support of its proposed indictment.  Agent-3 referred to these statements in response to multiple questions from the prosecutor and from grand jurors and did so shortly after being given a limited overview of privileged communications between the same parties. The government's position that privileged materials were not directly shared with the grand jurors ignores the equally unacceptable prospect that privileged materials

---

[10]     Specific statements made before the grand jury are redacted. The Court's analysis of those statements is not.

were used to shape the government's presentation and therefore improperly inform the grand jurors' deliberations.

*Statements of the Prosecutor to the Grand Jury*

Having been requested by the government to review the grand jury materials, the Court has identified two statements by the prosecutor to the grand jurors that on their face appear to be fundamental misstatements of the law that could compromise the integrity of the grand jury process. Both statements by the prosecutor are in response to questions by grand jurors and are directly related to communications involving Mr. Comey.

First, after having advised the grand jurors that the prosecutor was their legal advisor (ECF 178-1 at 46), the prosecutor stated:

"███████████████████████████████████████
█████████…" (ECF 178-1 at 105)

The prosecutor's statement that ███████████████████████████ is a fundamental and highly prejudicial misstatement of the law that suggests to the grand jury that Mr. Comey does not have a Fifth Amendment right not to testify at trial. The prosecutor's statement ignores the foundational rule of law that if Mr. Comey exercised his right not to testify the jury could draw no negative inference from that decision. *See Griffin v. California,* 380 U.S. 609, 615 (1965) *(*holding that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.") The prosecutor's statement that ████████████████████████████ may have reasonably set an expectation in the minds of the grand jurors that rather than the government bear the burden to prove Mr. Comey's guilt beyond a reasonable doubt at trial, the burden shifts to Mr. Comey to explain away the government's evidence. See *Victor v. Nebraska*, 511 U.S. 1, 22 (1994) (holding that the Due

15

J.A. 065

Process Clause "requires the government to prove a criminal defendant's guilt beyond a reasonable doubt"). In addition, the statement by the prosecutor was made in response to challenging questions from grand jurors, the context of which suggests the grand jurors may have reasonably understood the prosecutor to mean that if she could not satisfactorily answer their questions, then Mr. Comey would "███████" answer these questions at trial.

Second, the prosecutor told the grand jury that there was █████████████

████████████████████████████████████████████████

███████████████████████████████ ECF 178-1 at 106. That statement clearly suggested to the grand jury that they did not have to rely only on the record before them to determine probable cause but could be assured the government had more evidence–perhaps better evidence–that would be presented at trial.

*Issues Regarding the Completeness of the Grand Jury Transcript and Audio Recording, and the Manner in Which the Second Indictment was Presented to the Grand Jury*

Finally, the record is well established that the grand jury was originally presented with a three-count indictment, signed by the prosecutor. ECF 3, 10. The grand jury, however, rejected Count 1 of the original indictment and found probable cause as to the two remaining counts. *Id*. At some point, the prosecutor prepared and signed a second indictment that removed Count 1 of the original indictment. ECF 10, 188-1. At the return of the indictment, the government presented both the first and second indictments to the magistrate judge. ECF 10. The first indictment indicated that the grand jury failed to find probable cause as to any count. ECF 3, 10. The second indictment indicated that the grand jury found probable cause as to two counts. ECF 1, 10. Both indictments were fully executed by grand jury foreperson and the prosecutor. ECF 1, 3, 10. Presented with two facially inconsistent indictments, the magistrate judge questioned the grand jury foreperson and the prosecutor to unwind this procedural knot. *Id*. The magistrate judge then

16

accepted the return of the second signed indictment. *Id*. The second indictment was a new indictment and therefore the undersigned concluded after reviewing the grand jury transcript that the prosecutor would have presented the second indictment to the grand jury for consideration before it was returned in open court. It now appears that may not have happened.

On November 14, 2025, the prosecutor filed a declaration with the Court attempting to address the issue of whether the transcript of the grand jury proceedings filed with the Court was the full and complete transcript. ECF 187-1. The prosecutor stated that after the grand jury was left to deliberate on the first indictment at approximately 4:28 p.m., she had no further contact with the grand jury. The prosecutor further stated that at approximately 6:40 p.m. she was notified by the then-First Assistant United States Attorney that the grand jury returned a true bill on only two of the three counts presented by the government.[11] *Id*. The prosecutor, according to her declaration, then proceeded to the courtroom for the return of the indictment. *Id*. The hearing on the return of the indictment began at approximately 6:47 p.m. ECF 10.

The short time span between the moment the prosecutor learned that the grand jury rejected one count in the original indictment and the time the prosecutor appeared in court to return the second indictment could not have been sufficient to draft the second indictment, sign the second indictment, present it to the grand jury, provide legal instructions to the grand jury, and give them an opportunity to deliberate and render a decision on the new indictment. If the prosecutor is mistaken about the time she received notification of the grand jury's vote on the original indictment, and this procedure did take place, then the transcript and audio recording provided to

---

[11]    If the Court is to read the prosecutor's declaration as suggesting there was no contact between any government official and the grand jury after 4:28 p.m., then it begs the question of how the then-First Assistant learned that the grand jury had refused to indict on one count, and how the First Assistant knew which count had been rejected by the grand jury, all before the indictment was returned in open court.

the Court are incomplete.[12] If this procedure did not take place, then the Court is in uncharted legal territory in that the indictment returned in open court was not the same charging document presented to and deliberated upon by the grand jury. Either way, this unusual series of events, still not fully explained by the prosecutor's declaration, calls into question the presumption of regularity generally associated with grand jury proceedings, and provides another genuine issue the defense may raise to challenge the manner in which the government obtained the indictment.

### V. Authority That May Support a Defense Motion to Dismiss

To secure the disclosure of grand jury materials under Rule 6(e)(3)(E)(ii), a defendant must show that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The government argues that the defense has failed to meet its heavy burden to satisfy this standard and even assuming there was a Fourth Amendment violation (or a series of Fourth Amendment violations) or that privileged information was compromised, the most severe remedy available to the defense would be the exclusion of evidence rather than dismissal of the indictment. ECF 172. Indeed, "the validity of an indictment is not affected by the character of the evidence considered." *United States v. Calandra*, 414 U.S. 338, 344–45 (1974); *see also Bracy v. United States,* 435 U.S. 1301, 1302 (1978) (Rehnquist, J., denying stay application) ("[A]n indictment is not invalidated by the grand jury's consideration of . . . evidence obtained in violation of the Fourth Amendment."). Courts have likewise held that the grand jury's consideration of evidence obtained in violation of the attorney–client privilege, on its own, does not constitute grounds for dismissal of an indictment. *See United States v. Colasurdo,* 453 F.2d 585, 596 (2d Cir. 1971); *United States v. Rodolitz*, 648 F. Supp. 430, 432 (S.D.N.Y. 1986) (holding that a motion

---

[12] It is the responsibility of the United States Attorney's Office to record and, if required, transcribe all grand jury proceedings.

to dismiss the indictment "based on an alleged violation of . . . the attorney-client privilege before the grand jury must be denied.").

However, the government's claim that this is, at worst, a conventional Fourth Amendment violation and an excusable slippage of privileged communications is unpersuasive, particularly considering the central role this information played in the government's grand jury presentation. It is well established that courts may, and indeed on occasion must, use their supervisory authority to "safeguard the integrity of the grand jury process." *See United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002). The Supreme Court has recognized that a district court may use its supervisory power "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *See United States v. Williams*, 504 U.S. 36, 46 (1992) (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in the judgment)). The Supreme Court has also recognized that this supervisory power of federal district courts should be used "to implement a remedy for violation[s] of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (citations omitted).

Accordingly, when prosecutorial misconduct before the grand jury prejudices a defendant and threatens the defendant's right to fundamental fairness in the criminal process, a district court may exercise its supervisory authority to dismiss the indictment. *See United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998) (explaining that the Fourth Circuit has "consistently recognized that an indictment may not be dismissed for prosecutorial misconduct absent a showing that the

misconduct prejudiced the defendant). The Supreme Court has held that a defendant who seeks to have an indictment dismissed because of misconduct before the grand jury must show actual prejudice and "establish[ ] that the violation substantially influenced the grand jury's decision to indict' or [that] there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.'" *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *see also United States v. Feurtado*, 191 F.3d 420, 425 (4th Cir. 1999) (applying the standard established by *Bank of Nova Scotia v. United States* and affirming a district court's dismissal of the indictment without prejudice, where the court found that, although the defendants had not shown that improper testimony substantially influenced the grand jury, there remained "some doubt that the grand jury's decision to indict was free from the influence of that testimony"). Here, the procedural and substantive irregularities that occurred before the grand jury, and the manner in which evidence presented to the grand jury was collected and used, may rise to the level of government misconduct resulting in prejudice to Mr. Comey.

**VI. Findings by the Court**

Based on the foregoing, the Court makes the following findings:

*First*, the facts establish a reasonable basis for the defense to challenge whether the Richman Warrants were executed in a manner consistent with the Fourth Amendment and the orders of the issuing court.

*Second*, the facts establish a reasonable basis for the defense to challenge whether the government exceeded the scope of the Richman Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793.

*Third*, the facts establish a reasonable basis for the defense to challenge whether the government had the lawful authority to search the Richman materials anew in 2025.

*Fourth*, the facts establish a reasonable basis for the defense to challenge whether the government's 2025 seizure of the Richman materials included information beyond the scope of the original warrants.

*Fifth*, the nature and circumstances surrounding the government's potential violations of the Fourth Amendment and court orders establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law.

*Sixth*, the facts provide a reasonable basis for the defense to show that they were prejudiced by the government's use of the Richman materials in the grand jury, particularly if the government's conduct was willful or reckless, given the centrality of these materials to the government's presentation.

*Seventh*, the facts establish a reasonable basis for the defense to challenge whether the government took sufficient steps to avoid the collection and review of privileged materials, including the reasons why Mr. Comey was never afforded the opportunity to assert a privilege over his communications until after the indictment was obtained.

*Eighth*, the facts establish a reasonable basis for the defense to challenge whether privileged information was used, directly or indirectly, by the government to prepare and present its grand jury presentation. This is particularly troublesome because the government's sole witness before the grand jury was exposed to a "limited overview" of privileged material shortly before he testified.

*Ninth*, the nature and circumstances surrounding the disclosure of potentially privileged information establish a reasonable basis to question whether the government's conduct was willful

21

J.A. 071

or in reckless disregard of the law. This is particularly significant because Agent-3, after having been exposed to potentially privileged information, chose to testify before the grand jury rather than separate himself from the investigation to contain any further exposure to privileged information and limit any prejudice to Mr. Comey.

*Tenth*, as discussed in Section IV above the prosecutor made statements to the grand jurors that could reasonably form the basis for the defense to challenge whether the grand jury proceedings were infected with constitutional error.

*Eleventh*, the grand jury transcript and recording likely do not reflect the full proceedings because, although it is clear that a second indictment was prepared and presented to the grand jury (ECF 3), the transcript and audio recording of the proceedings do not reflect any further communications after the grand jury began deliberating on the first indictment.

Collectively, the facts set forth herein and the particularized findings of the Court establish that "ground[s] may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Rule 6(e)(3)(E)(ii). The Court need not now determine whether any facts herein have been proven, or whether there is merit to any motion yet to be filed. That task may lie ahead. Rather, the Court is finding that the government's actions in this case–whether purposeful, reckless, or negligent–raise genuine issues of misconduct, are inextricably linked to the government's grand jury presentation, and deserve to be fully explored by the defense.

**VII. Balancing Grand Jury Secrecy and Disclosure to the Defense**

Lastly, before ordering disclosure of grand jury materials the Court must balance the secrecy requirements of Rule 6(e) against Mr. Comey's Due Process rights. See *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d at 1298. In *United States v. Procter & Gamble Co.*, the Supreme Court listed the traditional reasons underlying grand jury secrecy: "(1) To prevent the

J.A. 072

escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." 356 U.S. at 681 n. 6 (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)).

The traditional policies underlying grand jury secrecy are only moderately applicable to this case. Here, the grand jury's role in this case is over and the statute of limitations has expired so there is no danger that release of grand jury materials could impact future grand jury proceedings. The only person to testify before the grand jury was a single federal agent. There are no other "persons who have information with respect to the commission of crimes" who testified before the grand jury, either voluntarily or pursuant to a subpoena. The government has offered no particularized reason why grand jury materials should be kept from the person the grand jury indicted. Mr. Comey was the only person who was the subject of this grand jury proceeding, and Mr. Comey is the only person who is receiving the grand jury information. On the other hand, as the Court has found, these materials are essential if Mr. Comey is to fully and fairly defend himself in the face of the irregularities that have characterized this investigation from its inception.

It is also important to note that the grand jury materials are not being made public, at least not yet. The grand jury materials are being provided to the defense under the terms of a Protective

23

Order (ECF 40) and for the limited purpose of defending this criminal action brought by the

government.[13]

For these reasons, the Court finds that the institutional concerns for grand jury secrecy are

greatly outweighed by Mr. Comey's right to Due Process.

**VIII. Conclusion**

The Court recognizes that the relief sought by the defense is rarely granted. However, the

record points to a disturbing pattern of profound investigative missteps, missteps that led an FBI

agent and a prosecutor to potentially undermine the integrity of the grand jury proceeding.

Therefore, in this case, "the Court has before it a rare example of a criminal defendant who can

actually make a 'particularized and factually based' showing that grounds exist to support the

proposition that irregularities may have occurred in the grand jury proceedings and may justify the

dismissal of one or more counts of the indictment." *See Naegele*, 474 F. Supp. 2d at 10 (citations

omitted).

Accordingly, the defense request for all grand jury materials is granted.

**ENTERED** this 17th day of November 2025.


*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

---

[13]    It is also worth noting that those charged with criminal offenses routinely receive at least partial transcripts
of grand jury proceedings prior to trial. The government is oftentimes required to provide testimony given before a
grand jury to defendants to comply with its discovery obligations under Rule 16 and the Jencks Act, 18 U.S.C. § 3500,
or to comply with its constitutional responsibilities in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963) or
*United States v. Giglio*, 450 U.S. 150 (1972).

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

v.

JAMES B. COMEY, JR.,

         *Defendant.*

Criminal No. 1:25-cr-272-MSN-WEF

<u>ORDER</u>

This matter comes before the Court pursuant to United States District Judge Michael S. Nachmanoff's November 7, 2025 Order remanding the matter of disclosure of the grand jury materials to the undersigned for further proceedings to determine whether there are particularized and factually based grounds for disclosure.  ECF 167.

For the reasons set forth in the Memorandum Opinion filed concurrently with this Order, the undersigned finds that the Defendant has made a factually based showing of particularized need for the production and inspection of grand jury materials under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

Accordingly, it is hereby

ORDERED that, by 3:00 p.m. on November 17, 2025, the Clerk of Court shall make available to the defense all grand jury materials filed on the docket under seal by the government (ECF 179); and it is further

ORDERED that the government shall, no later than 5:00 p.m. on November 17, 2025, produce to the defense the complete audio recording of the grand jury proceedings; and it is further

ORDERED that the Clerk of Court shall file on the public docket the version of the Memorandum Opinion containing narrow redactions of grand jury material; and it is further

ORDERED that the Clerk of Court shall maintain the unredacted version of the Memorandum Opinion under seal until further order of the Court.

**ENTERED** this 17th day of November, 2025.

*William C. Fitzpatrick*

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:25-CR-272-MSN** |
| **JAMES B. COMEY, JR.** | |
| ***Defendant.*** | |

**<u>GOVERNMENT'S NOTICE CORRECTING THE RECORD</u>**

The government respectfully submits this supplemental filing to correct the record regarding statements during the hearing held on November 19, 2025, before U.S. District Court Judge Michael S. Nachmanoff, suggesting an issue with the grand jury voting process on the indictment returned in Case No. 1:25-CR-272-MSN. The official transcript of the September 25, 2025, proceedings before Magistrate Judge Vaala conclusively refutes that claim and establishes that the grand jury voted on – and true-billed – the two-count indictment.

**I. The Court and the Foreperson Confirmed the Vote on the Two-Count Indictment**

The transcript contains the following direct exchange between the Court and the grand jury foreperson:

```
 9          THE COURT:  Sorry, I didn't mean to interrupt you.
10     So you voted on the one that has the two counts?
11     THE FOREPERSON:  Yes.
```

See Transcript, Dkt No, 10, attached as Exhibit "A" at 4.

This sworn testimony alone establishes that the grand jury voted on the two-count

1

J.A. 077

indictment.

Further, the Foreperson explained the separation of the charges and the grand jury's action:

```
3          THE FOREPERSON:  So the three counts should be just
4    one count.  It was the very first count that we did not agree
5    on, and the Count Two and Three were then put in a different
6    package, which we agreed on.
```

*Id.*

This confirms that the grand jury failed to obtain concurrence on Count One, and that Counts Two and Three were placed into a separate two-count indictment that the grand jury approved.

**II. The Court Acknowledged the Clerical Discrepancy and Directed That the Two-Count True Bill Be Docketed**

The Court acknowledged that two documents with the same case number had been presented, explaining:

```
3    concur across all three counts, so I'm a little confused as to
4    why I was handed two things with the same case number that are
5    inconsistent.
```

*Id.* at 5.

The Court then identified the issue as a clerical inconsistency relating solely to Count One and directed the foreperson to clarify that only Count One lacked concurrence. After resolving this narrow issue, the Court stated:

2

J.A. 078

```
18   provided this to the Court, I assume you intended to make it
19   public, so these both will go on the docket in -272 now that
20   it's been presented in open court.  I just want to make sure
21   that you understand that and that was your intention.
22          MS. HALLIGAN:  Okay.  Understood.
```

*Id.* at p. 6,18-22.

This confirms the Court's recognition that the two-count true bill is the valid, operative indictment.

### III. The Transcript Leaves No Room for Ambiguity

The complete record eliminates any doubt:

• The foreperson confirmed the vote.

• The Court acknowledged the vote.

• The Court docketed the two-count true bill as the operative indictment.

• Only Count One lacked concurrence;

Counts Two and Three were true-billed by at least twelve jurors.

### IV. Conclusion

Accordingly, any assertion that the grand jury "never voted on the two-count indictment" is contradicted by the official transcript.  For the reasons stated herein, the government respectfully

3

J.A. 079

submits this Notice of Supplemental Filing so that the record accurately reflects the grand jury's vote on the two-count indictment and the proceedings held before Magistrate Judge Vaala on September 25, 2025.

Respectfully submitted this 20th day of November, 2025.

LINDSEY HALLIGAN
United States Attorney


*/s/ Gabriel J. Diaz*
Assistant United States Attorney
North Carolina Bar No. 49159
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700
Gabriel.Diaz@usdoj.gov

*/s/ Tyler Lemons*
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700
Tyler.Lemons@usdoj.gov

4

J.A. 080

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this 20th day of November, 2025, the government served a

copy of the foregoing upon the defendant by CM/ECF to:

Jessica Nicole Carmichael
Counsel for Defendant

Patrick Joseph Fitzgerald
Counsel for Defendant

Rebekah Donaleski
Counsel for Defendant

Respectfully Submitted,


LINDSEY HALLIGAN
United States Attorney


*/s/ Gabriel J. Diaz*
Assistant United States Attorney
North Carolina Bar No. 49159
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700
Gabriel.Diaz@usdoj.gov

*/s/ Tyler Lemons*
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700
Tyler.Lemons@usdoj.gov

J.A. 081

```
 1                      UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
 2                           ALEXANDRIA DIVISION

 3
      UNITED STATES OF AMERICA,      :   Criminal Action
 4                                   :   No. 1:25-cr-00272-MSN
              v.                     :
 5                                   :
      JAMES B. COMEY, JR.,           :   September 25, 2025
 6                                   :   6:47 p.m. - 6:54 p.m.
                        Defendant.   :
 7                                   :
      ...........................:
 8

 9


10      TRANSCRIPT OF RETURN OF GRAND JURY INDICTMENT PROCEEDINGS
                BEFORE THE HONORABLE LINDSEY R. VAALA,
11                  UNITED STATES MAGISTRATE JUDGE

12
      APPEARANCES:
13
      For the United States:   UNITED STATES ATTORNEY'S OFFICE
14                             Lindsey Halligan
                               United States Attorney
15                             2100 Jamieson Avenue
                               Alexandria, VA 22314
16
      Court Reporter:          Diane Salters, B.S., CSR, RPR, RCR
17                             Official Court Reporter
                               United States District Court
18                             401 Courthouse Square
                               Alexandria, VA 22314
19                             Email: Dianesalters.edva@gmail.com
                               Telephone: (301) 338-8033
20

21

22

23

24    Proceedings reported by machine shorthand from an FTR Gold
      recording.  Transcript produced by computer-aided transcription.
25
```

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

## Exhibit A

J.A. 082

*Proceedings*

```
 1          THE COURTROOM DEPUTY:  United States v. James B.

 2   Comey, Jr., a true bill, signed foreperson, charging the

 3   defendant with false statements within the jurisdiction of the

 4   legislative branch of the United States government and

 5   obstruction of a congressional proceeding.

 6          Madam Foreperson, are there any other matters for the

 7   Court at this time?

 8          THE FOREPERSON:  No, ma'am.

 9          THE COURTROOM DEPUTY:  Thank you.

10          THE COURT:  Good evening.

11          THE FOREPERSON:  Good evening.

12          THE COURT:  If you could come to the podium, please,

13   just so we can record you.

14          I know you've been through this before.

15          THE FOREPERSON:  Yes.

16          THE COURT:  And we're recording everything because I

17   don't have a court reporter.

18          I know you've had a long day.  How are you doing?  I

19   don't think I've seen you since my last duty week.

20          THE FOREPERSON:  We're doing good.  Thank you.

21          THE COURT:  Good.

22          So you've been through the returns process before.

23          THE FOREPERSON:  Yes.

24          THE COURT:  As always, I ask several questions to

25   ensure the integrity of the process.  I'm going to ask you
```

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

# Exhibit A
J.A. 083

3

*Proceedings*

1    those questions now, okay?

2         For each count, was a quorum of the grand jury members

3    present?

4         THE FOREPERSON:  Yes, ma'am.

5         THE COURT:  And for each count and for each defendant

6    for all of the indictments, did a sufficient number, meaning at

7    least 12, of grand jurors return a true bill?

8         THE FOREPERSON:  One exception.

9         THE COURT:  What is the exception?

10        THE FOREPERSON:  James Comey, Jr., on Count One.

11        THE COURT:  Okay.  I'm going to ask you about that

12   again in a minute.

13        Any there other indictments that haven't been

14   presented to the Court this evening?

15        THE FOREPERSON:  No, ma'am.

16        THE COURT:  Okay.  When you say one count -- so I'm

17   looking at two different -- I'm looking at case 25-cr-272,

18   *United States of America v. James B. Comey, Jr.*  I have an

19   indictment with two counts that my courtroom deputy read that

20   looks to be signed by you, ma'am.

21        THE FOREPERSON:  Yes.

22        THE COURT:  And it says 14 grand jurors concurred in

23   the indictment.

24        And then I have a report of a grand jury's failure to

25   concur in an indictment, and it just reports that -- has three

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

Exhibit A

J.A. 084

4

*Proceedings*

1    counts, and it says that the grand jurors did not concur in

2    finding an indictment in this case.

3            THE FOREPERSON:  So the three counts should be just

4    one count.  It was the very first count that we did not agree

5    on, and the Count Two and Three were then put in a different

6    package, which we agreed on.

7            THE COURT:  So you --

8            THE FOREPERSON:  So they separated it.

9            THE COURT:  Sorry, I didn't mean to interrupt you.

10           So you voted on the one that has the two counts?

11           THE FOREPERSON:  Yes.

12           THE COURT:  Okay.  And you're just giving me the other

13   one for what reason?

14           THE FOREPERSON:  That we could not agree on.

15           THE COURT:  Okay.  But just for one count?

16           THE FOREPERSON:  Yes.

17           THE COURT:  Okay.  I may have another question for you

18   in a minute, but you can have a seat.  Thank you.

19           Who's here for the government this evening?

20           MS. HALLIGAN:  Lindsey Halligan.

21           THE COURT:  Okay.  Please come to the podium, please.

22           So this has never happened before.  I've been handed

23   two documents that are in the Mr. Comey case that are

24   inconsistent with one another.  There seems to be a

25   discrepancy.  They're both signed by the foreperson.  The one

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

Exhibit A

J.A. 085

*Proceedings*

 1  that says it's a failure to concur in an indictment, it doesn't

 2  say with respect to one count.  It looks like they failed to

 3  concur across all three counts, so I'm a little confused as to

 4  why I was handed two things with the same case number that are

 5  inconsistent.

 6          MS. HALLIGAN:  So I only reviewed the one with the two

 7  counts that our office redrafted when we found out about the

 8  two -- two counts that were true billed, and I signed that one.

 9  I did not see the other one.  I don't know where that came

10  from.

11          THE COURT:  You didn't see it?

12          MS. HALLIGAN:  I did not see that one.

13          THE COURT:  So your office didn't prepare the

14  indictment that they --

15          MS. HALLIGAN:  No, no, no -- I -- no, I prepared three

16  counts.  I only signed the one -- the two-count.  I don't know

17  which one with three counts you have in your hands.

18          THE COURT:  Okay.  It has your signature on it.

19          MS. HALLIGAN:  Okay.  Well...

20          THE COURT:  So I think, to clean up the record here,

21  what needs to happen, Madam Foreperson, is -- if I understand

22  correctly, and I don't want to put words in your mouth --

23  you're saying that the one that says there's a failure to

24  concur in an indictment, you only mean with respect to

25  Count One --

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

Exhibit A
J.A. 086

*Proceedings*

```
1            THE FOREPERSON:  Correct.

2            THE COURT:  -- of that indictment?

3            THE FOREPERSON:  Yes, ma'am.

4            THE COURT:  It has three counts.  Okay.

5       What I need you to do is write on this piece of paper

6  both the case number, which is 25-cr-272, but also no true bill

7  as to Count One only, and then sign and date it so that it's

8  clear, okay?  So I'm going to hand it back up to the courtroom

9  security officer and have you do that.  You can have a seat.

10           Okay.  All right.  So for the record, Madam

11 Foreperson, I now have a report that looks like you've

12 handwritten -- a report that 12 or more grand jurors did not

13 concur in finding an indictment in -- and then you've added in

14 handwriting -- Count 1 only in this case.  Is that correct?

15           THE FOREPERSON:  Yes, ma'am.

16           THE COURT:  Okay.  Thank you.

17           With respect to this case, Ms. Halligan, since you've

18 provided this to the Court, I assume you intended to make it

19 public, so these both will go on the docket in -272 now that

20 it's been presented in open court.  I just want to make sure

21 that you understand that and that was your intention.

22           MS. HALLIGAN:  Okay.  Understood.

23           THE COURT:  Does the government have any other

24 applications on any of these indictments today?  I saw an

25 arrest warrant was requested in 25-cr-269 and a summons in
```

Exhibit A
J.A. 087

*Proceedings*

1    25-cr-272, so the Clerk's Office will issue both of those, and

2    nothing looks to be under seal, but I wanted to make sure that

3    if you had any other applications or motions, you had an

4    opportunity to tell me.

5                MS. HALLIGAN:  None, none, none at this time.

6                THE COURT:  Okay.  All right.  Thank you.

7                MS. HALLIGAN:  Thank you.

8                THE COURT:  Madam Foreperson, your grand jury has been

9    empaneled for a while, and I always say, as you know, how

10   grateful we are for your service.  This is a very -- it's a

11   late -- I don't think we've ever met this late, but the service

12   that you-all are providing to the Court and to the country is

13   indispensable, and so on behalf of myself and the rest of the

14   judges, thank you very much for your service.

15               All right.  We are adjourned.  Thank you.

16                        *       *       *       *       *

17                        CERTIFICATE OF REPORTER

18               I, Diane Salters, hereby certify that the foregoing

19   transcript of proceedings was prepared from an FTR Gold audio

20   recording of proceedings in the above-entitled matter and was

21   produced to the best of my ability.

22

23                              /s/ Diane Salters
                                _____
24
                                Diane Salters, CSR, RCR, RPR
25                              Official Court Reporter

*Diane Salters, B.S., CSR, RPR, RCR*
Official Court Reporter

Exhibit A

J.A. 088

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA,

v.                                        Criminal No. 1:25-cr-00272-MSN

JAMES B. COMEY, JR.,

Defendant.

## OPINION AND ORDER GRANTING MOTION
## TO DISMISS INDICTMENT (ECF NO. 60)

On September 25, 2025, Lindsey Halligan, a former White House aide with no prior prosecutorial experience, appeared before a federal grand jury in the Eastern District of Virginia. Having been appointed Interim U.S. Attorney by the Attorney General just days before, Ms. Halligan secured a two-count indictment charging former FBI Director James B. Comey, Jr. with making false statements to Congress and obstructing a congressional proceeding.

Mr. Comey now moves to dismiss the indictment on the ground that Ms. Halligan, the sole prosecutor who presented the case to the grand jury, was unlawfully appointed in violation of 28 U.S.C. § 546 and the Constitution's Appointments Clause. As explained below, I agree with Mr. Comey that the Attorney General's attempt to install Ms. Halligan as Interim U.S. Attorney for the Eastern District of Virginia was invalid. And because Ms. Halligan had no lawful authority to present the indictment, I will grant Mr. Comey's motion and dismiss the indictment without prejudice.

## I.    BACKGROUND

### A.    Legal Background

"The Appointments Clause prescribes the exclusive means of appointing 'Officers [of the United States].'" *Lucia v. SEC*, 585 U.S. 237, 244 (2018).  The text of the Clause contemplates two types of officers: "principal" and "inferior" officers.  *See Morrison v. Olson*, 487 U.S. 654, 670–71 (1988).  Principal officers must be appointed by the President "with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2.  The same process "is also the default manner of appointment for inferior officers."  *Edmond v. United States*, 520 U.S. 651, 660 (1997).  But the Framers "recognized that requiring *all* officers of the Federal Government to run the gauntlet of Presidential nomination and Senate confirmation would prove administratively unworkable."  *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760 (2025) (emphasis in original).  "So on one of the last days of the Constitutional Convention[,] . . . they authorized an additional and streamlined method of appointment for inferior officers" in the final provision of the Appointments Clause.  *Id.*  That provision, "sometimes referred to as the 'Excepting Clause,'" *Edmond*, 520 U.S. at 660, permits Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, § 2, cl. 2.

"For United States Attorneys, Congress has preserved the constitutional default rule of Presidential appointment and Senate confirmation."[1] *United States v. Giraud*, __ F. Supp. 3d __, No. 1:24-CR-768, 2025 WL 2416737, at *6 (D.N.J. Aug. 21, 2025) (*Giraud II*), *appeal filed*, No. 25-2635 (3d Cir. Aug. 25, 2025); *see* 28 U.S.C. § 541(a) ("The President shall appoint, by and

---

[1] The parties agree that U.S. Attorneys are inferior officers.  ECF No. 60 at 9; ECF No. 137 at 5.

with the advice and consent of the Senate, a United States attorney for each judicial district."). Congress has also established a mechanism, set forth in 28 U.S.C. § 546, for appointing interim U.S. Attorneys when a vacancy arises.[2]  Section 546 essentially "divide[s] the responsibility for making interim appointments between the Attorney General and the district courts." *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1192 (D.N.M. 2008).  It provides in full:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

> (c) A person appointed as United States attorney under this section may serve until the earlier of—

>> (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

>> (2) the expiration of 120 days after appointment by the Attorney General under this section.

> (d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

28 U.S.C. § 546.

---

[2] Another statute, the Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. §§ 3345–3349d, allows the President to "direct certain officials to temporarily carry out the duties of a vacant [office requiring Presidential appointment and Senate confirmation] in an acting capacity." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017).  The FVRA is not at issue in this case.

3

**B.    Factual Background**

On January 20, 2025, Jessica Aber, who had been nominated by President Biden and confirmed by the Senate, resigned from her position as U.S. Attorney for the Eastern District of Virginia.[3]  The following day, the Attorney General appointed Erik Siebert as Interim U.S. Attorney under 28 U.S.C. § 546.[4]  Mr. Siebert's 120-day interim appointment was set to expire on May 21, 2025.  So, on May 9, 2025, the judges of the district exercised their authority under section 546(d) to appoint Mr. Siebert to continue in his role, effective May 21.[5]

On September 19, 2025, Mr. Siebert informed colleagues of his resignation.[6]  According to news reports, Mr. Siebert had recently expressed concerns to senior Department of Justice officials about the viability of pursuing charges against Mr. Comey and New York Attorney

---

[3] Press Release, United States Attorney's Office, Eastern District of Virginia, *U.S. Attorney Jessica D. Aber Announces Resignation* (Jan. 17, 2025), https://www.justice.gov/usao-edva/pr/us-attorney-jessica-d-aber-announces-resignation.

[4] Press Release, United States Attorney's Office, Eastern District of Virginia, *Erik Siebert Appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025), https://www.justice.gov/usao-edva/pr/erik-siebert-appointed-interim-us-attorney-eastern-district-virginia.

[5] United States District Court for the Eastern District of Virginia, *Appointment of Erik S. Siebert as Interim U.S. Attorney Effective May 21, 2025* (May 9, 2025), https://www.vaed.uscourts.gov/news/appointment-erik-s-siebert-interim-us-attorney-effective-may-21-2025.

[6] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

4

General Letitia James.[7]  Mr. Siebert's resignation came hours after President Trump told reporters

at the White House he "want[ed] [Mr. Siebert] out."[8]

The next day, President Trump posted (and later deleted) the following message on social

media:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same
> old story as last time, all talk, no action.  Nothing is being done.  What about
> Comey, Adam "Shifty" Schiff, Leticia???  They're all guilty as hell, but nothing is
> going to be done."  Then we almost put in a Democrat supported U.S. Attorney, in
> Virginia, with a really bad Republican past.  A Woke RINO, who was never going
> to do his job.  That's why two of the worst Dem Senators PUSHED him so hard.
> He even lied to the media and said he quit, and that we had no case.  No, I fired
> him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so.
> Lindsey Halligan is a really good lawyer, and likes you, a lot.  We can't delay any
> longer, it's killing our reputation and credibility.  They impeached me twice, and
> indicted me (5 times!), OVER NOTHING.  JUSTICE MUST BE SERVED,
> NOW!!! President DJT[9]

Less than 48 hours after President Trump's post, on September 22, 2025, the Attorney

General issued an order "authorizing Lindsey Halligan to be the Interim United States Attorney

for the Eastern District of Virginia during the vacancy in that office" ("September 22 Order").

Att'y Gen. Order No. 6402-2025.  The September 22 Order cites only 28 U.S.C. § 546 as the basis

for Ms. Halligan's appointment.  *Id.*

---

[7] *Id.*; Salvador Rizzo, Perry Stein & Jeremy Roebuck, *Top Virginia Prosecutor Resigns Amid Criticism over Letitia James Investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/; The Associated Press, *U.S. Attorney Resigns Under Pressure From Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025), https://www.npr.org/2025/09/20/nx-s1-5547837/us-attorney-virginia-resigns-letitia-james-probe.

[8] Thrush et al., *supra* note 6.

[9] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 18:44 ET), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

On September 25, 2025, a grand jury sitting in the Eastern District of Virginia returned a two-count indictment[10] against Mr. Comey, charging him with making false statements within the jurisdiction of the legislative branch, in violation of 18 U.S.C. § 1001(a)(2), and obstructing a congressional proceeding, in violation of 18 U.S.C. § 1505. ECF No. 1. The charges stem from testimony Mr. Comey gave during a Senate Judiciary Committee hearing in 2020. Ms. Halligan was the only prosecutor who participated in the Government's presentation to the grand jury, and only her signature appears on Mr. Comey's indictment. ECF No. 1 at 2.[11]

**C.    Procedural History**

On October 20, 2025, Mr. Comey moved to dismiss the indictment on the ground that Ms. Halligan's appointment was unlawful under section 546 and violated the Appointments Clause. ECF No. 60. On October 21, the Chief Judge of the Fourth Circuit designated me to consider this and any other motion "concerning the appointment, qualification, or disqualification of the United States Attorney or the United States Attorney's Office" in the Eastern District of Virginia. ECF No. 62-1 at 1.

_____

[10] The grand jury was originally presented with a three-count indictment. ECF Nos. 3, 10. At some point, however, a second, two-count indictment was prepared (it is unclear by whom), which removed Count One of the original indictment. ECF No. 10 at 4–5. Both indictments were signed by Ms. Halligan and the grand jury foreperson and were returned to the magistrate judge. *Id.* at 4–5; ECF No. 1 at 2; ECF No. 3 at 4. During the indictment return proceeding, the foreperson explained that the grand jury "did not agree on" the "very first count" and that "Count[s] Two and Three were then put in a different package, which we agreed on." ECF No. 10 at 4. After speaking with Ms. Halligan, the magistrate judge accepted the return of the second, two-count indictment and instructed the foreperson to annotate the "Report of a Grand Jury's Failure to Concur in an Indictment" to reflect that it applied only to Count One. *Id.* at 6.

[11] Citations to page numbers are to those generated by CM/ECF.

Finding it "necessary to determine the extent of [Ms. Halligan's] involvement in the grand jury proceedings," I ordered the Government on October 28 to submit for in camera review "all documents relating to [Ms. Halligan's] participation" before the grand jury, "along with complete grand jury transcripts." ECF No. 95 at 1. Upon reviewing the transcript provided by the Government, I determined it did not include any remarks made by Ms. Halligan "before and after the testimony of the sole witness." ECF No. 148 at 1. Accordingly, on November 4, I directed the Government to submit "a complete [t]ranscript and/or recording of all statements made by [Ms. Halligan] to the grand jury on September 25, 2025." *Id.* at 1–2. In a notice of compliance filed on November 5, the Government represented it had produced all materials requested by the October 28 and November 4 orders:

> In response [to the October 28 order], the government provided the transcript of the Grand Jury proceedings that was previously provided to the government by the transcription service.
>
> The Court's subsequent [November 4 order] additionally requested the recording from the Grand Jury presentation. Upon receiving this order, the government immediately contacted the transcription service and requested the complete recording.
>
> Further, the government requested that the transcription service transcribe the entire recording, which had not been done previously. This new transcript was provided to the government on November 5, 2025. The above items have now been provided to the Court in compliance with the Court's Orders.

ECF No. 158 at 1–2.

On November 3, the Government responded in opposition to Mr. Comey's motion. ECF No. 137. Also that day, the Government filed an order from the Attorney General dated October 31, 2025 ("October 31 Order"). Att'y Gen. Order No. 6485-2025. The October 31 Order reads in its entirety:

7

On September 22, 2025, I exercised the authority vested in the Attorney General by 28 U.S.C. § 546 to designate and appoint Lindsey Halligan as the United States Attorney for the Eastern District of Virginia. *See* Att'y Gen. Order No. 6402-2025. For the avoidance of doubt as to the validity of that appointment, and by virtue of the authority vested in the Attorney General by law, including 28 U.S.C. §[§] 509, 510, and 515, I hereby appoint Ms. Halligan to the additional position of Special Attorney, as of September 22, 2025, and thereby ratify her employment as an attorney of the Department of Justice from that date going forward. As Special Attorney, Ms. Halligan has authority to conduct, in the Eastern District of Virginia, any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before United States Magistrates and Judges. In the alternative, should a court conclude that Ms. Halligan's authority as Special Attorney is limited to particular matters, I hereby delegate to Ms. Halligan authority as Special Attorney to conduct and supervise the prosecutions in *United States v. Comey* (Case No. 1:25-CR-00272) and *United States v. James* (Case No. 2:25-CR-00122).

In addition, based on my review of the grand jury proceedings in *United States v. Comey* and *United States v. James*, I hereby exercise the authority vested in the Attorney General by law, including 28 U.S.C. §[§] 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictments returned by the grand jury in each case.

*Id.*

Mr. Comey filed his reply on November 10.[12]  ECF No. 175.  On November 13, I heard oral argument from the parties and took the matter under advisement.  ECF No. 186.  During the hearing, I raised concerns about the Attorney General's ability to review Ms. Halligan's presentation to the grand jury when, as of October 31, the Government had not yet received the complete transcript of the proceeding.  ECF No. 189 at 36–37.  I also noted that, based on my in camera review, there appeared to be a gap in the grand jury transcript from 4:28 p.m. to 6:47 p.m., when the indictment was returned to the magistrate judge.  *Id.* at 36.

---

[12] In addition to the parties' briefs, I have also considered two amicus briefs, one from a bipartisan group of current and former members of Congress, ECF No. 87-2, and the other from a bipartisan group of former federal judges and U.S. Attorneys, ECF No. 92-2.

8

J.A. 096

The day after the hearing, on November 14, the Government filed an unsworn declaration from Ms. Halligan and a new ratification order from the Attorney General. ECF No. 188. Ms. Halligan declared "that the grand jury transcript accurately reflects the full extent of [her] appearance before the grand jury" and "explain[ed] that the period in question consisted solely of the grand jury's private deliberations." ECF No. 188-1 at 1. She further stated that "[t]here was no additional presentation, interaction, or discussion with the grand jury outside of what is reflected in the transcript."[13] *Id.* at 1–2. For her part, the Attorney General stated she had "reviewed the entirety of the record now available to the government" and again "ratif[ied] Ms. Halligan's actions before the grand jury and her signature on the indictment returned." Att'y Gen. Order No. 6491-2025.

## II.    DISCUSSION

Resolving Mr. Comey's motion requires me first to decide whether Ms. Halligan was validly appointed as Interim U.S. Attorney under section 546 and the Appointments Clause. If the answer to that question is yes, I need not go any further, and Mr. Comey's motion must be denied. But if the answer is no, and Ms. Halligan had no authority to present Mr. Comey's indictment to the grand jury, then the question becomes, what remedy is appropriate? Should the indictment be dismissed? And if so, should the dismissal be with or without prejudice? I address these issues in turn, beginning with whether Ms. Halligan's appointment was valid under section 546.

---

[13] In a motion filed on November 21, Mr. Comey argues the case should be dismissed because the operative two-count indictment was never presented to the full grand jury. ECF No. 211. The issues raised in Mr. Comey's November 21 motion are not before me.

9

J.A. 097

**A.    Ms. Halligan's appointment violated section 546.**

According to the Government, this case is "simple." ECF No. 137 at 8. In its view, the "one and only" limitation on the Attorney General's authority to appoint interim U.S. Attorneys under section 546 is subsection (b), which bars the Attorney General from appointing anyone whom the Senate has refused to confirm. *Id.* at 3, 8, 15. "Nothing in the text," it continues, "explicitly or implicitly" precludes the Attorney General from making multiple interim appointments during a vacancy. *Id.* at 8. Thus, it concludes, because "the Senate has not refused advice and consent to Ms. Halligan," the Attorney General "lawfully appointed [her] as interim U.S. Attorney" on September 22. *Id.* at 8.

Mr. Comey counters that section 546 "limits the total tenure of the Attorney General's interim appointments to 120 days" and therefore "precludes an additional appointment by the Attorney General after the expiration of that 120-day period." ECF No. 60 at 16. Accordingly, he argues, Ms. Halligan's appointment was unlawful because the district court possessed the "exclusive authority to appoint an interim U.S. Attorney" once Mr. Siebert's appointment by the Attorney General expired on May 21. *Id.* at 17. Mr. Comey has the better reading of the statute.

"The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "Thus, [my] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

10

Section 546 is unambiguous.  Subsection (a) begins by authorizing the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant."  28 U.S.C. § 546(a).  Subsection (c)(2), however, imposes a time limit on appointments made by the Attorney General.  It specifies that "[a] person appointed as United States attorney" under the statute "may serve until . . . the expiration of 120 days after appointment by the Attorney General."  *Id.* § 546(c)(2).  Subsection (d) then provides a single option for how subsequent interim appointments may be made: "If an appointment expires under subsection (c)(2), the district court for such district" — and only the district court — "may appoint a United States attorney to serve until the vacancy is filled."  *Id.* § 546(d).

The text and structure of subsection (d) in particular make clear the appointment power (1) shifts to the district court after the 120-day period and (2) does not revert to the Attorney General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed.  The first word in subsection (d) — "if" — introduces a conditional clause that establishes the condition triggering the district court's authority.  *See The Chicago Manual of Style* ¶ 5.235 (18th ed. 2024) ("A conditional clause . . . is an adverbial clause, typically introduced by *if* or *unless* . . . , establishing the condition in a conditional sentence.  Usually this is a direct condition, indicating that the main clause . . . is dependent on the condition being fulfilled.").  That condition is met once "*an* appointment expires under subsection (c)(2)."  28 U.S.C. § 546(d) (emphasis added).  The indefinite article "an" points "to a nonspecific object, thing, or person that is not distinguished from other members of a class," Bryan A. Garner, *Garner's Modern English Usage* 1195 (5th ed. 2022), so the expiration of any single Attorney General appointment satisfies the condition.  Thus, if, as here, a court-appointed U.S. Attorney resigns, the district court retains the authority to make another interim appointment because the triggering event — the expiration of

11

"*an* appointment" under subsection (c)(2) — has already occurred. Finally, the conjunction "until" in subsection (d)'s main clause defines the duration of the district court's authority. It lasts from the moment the condition is first met "up to the time that" the vacancy is filled by a Senate-confirmed appointee. *Merriam-Webster's Collegiate Dictionary* 1297 (10th ed. 1997).

This reading is reinforced by the negative-implication canon, which recognizes that the "expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). To be sure, the Supreme Court has cautioned that the "force of any negative implication . . . depends on context," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013), and that the "canon applies only when circumstances support[] a sensible inference that the term left out must have been meant to be excluded," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (internal quotation marks omitted). Here, however, "the inference is not just sensible but overwhelming." *Johnson v. White*, 989 F.3d 913, 918 (11th Cir. 2021). Congress assigned the authority to appoint interim U.S. Attorneys to different actors in different parts of the same statute: first to the Attorney General in subsection (a), and then to the district court in subsection (d). The omission of the Attorney General in subsection (d), when combined with her inclusion in subsection (a), is strong evidence Congress did not intend for the Attorney General to retain appointment power beyond 120 days. *Cf. United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000) ("The absence of any temporal limit [in subsection (d)] strikes us as deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute.").

Adopting the Government's contrary reading would render subsection (d) "insignificant," leaving it to "lie dormant in all but the most unlikely situations." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted); *see id.* ("[A] statute ought, upon the whole, to

12

J.A. 100

be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); *Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("[C]ourts must give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)). Under the Government's interpretation, Attorney General appointees can "serve indefinitely" "without Senate confirmation" as long as the Attorney General "revisit[s] her interim appointments every 120 days." ECF No. 137 at 9. But if that were correct, the Attorney General could prevent interim appointments from ever "expir[ing] under subsection (c)(2)," which in turn would prevent the district court from ever exercising its appointment power under subsection (d). 28 U.S.C. § 546(d). Such a result would run counter to the principle that courts must avoid interpreting statutes in a way that has the "practical effect" of rendering a provision "entirely superfluous in all but the most unusual circumstances." *TRW Inc.*, 534 U.S. at 29.

The Government's interpretation also conflicts with section 546's statutory history. *See Snyder v. United States*, 603 U.S. 1, 12 (2024) (relying on "statutory history[] [to] reinforce[] [its] textual analysis"); *United States v. Hansen*, 599 U.S. 762, 775 (2023) ("Statutory history is an important part of . . . context."); Scalia & Garner, *supra*, at 440 (defining "statutory history" as the "enacted lineage of a statute, including prior laws, amendments, codifications, and repeals"). From 1986 to 2006, section 546 was identical to its current form.[14] *See* Criminal Law and Procedure

---

[14] Three days after Congress enacted the 1986 law, an Office of Legal Counsel ("OLC") memorandum authored by then-Deputy Assistant Attorney General Samuel Alito concluded the statute does not allow "the Attorney General [to] make another appointment pursuant to [subsection (a)] after the expiration of the 120-day period." Memorandum from Samuel A. Alito, Jr., Deputy Assistant Att'y Gen., Off. of Legal Couns., to William P. Tyson, Dir., Exec. Off. for U.S. Att'ys 3 (Nov. 13, 1986), available at https://perma.cc/SD5Q-7CPH. "The statutory plan," Alito reasoned, "discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *Id.* Footnote Continued . . .

Technical Amendments Act of 1986, Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616–17 (1986). But in 2006, Congress amended the statute to abolish "the 120-day limit and the district court's backstopping role" altogether. *Giraud II*, 2025 WL 2416737, at *11; *see* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Title V, § 502, 120 Stat. 192, 246 (2006) [hereinafter Reauthorization Act]. This change, which was "inserted quietly into the conference report on the [Reauthorization] Act, without debate," made it possible for "United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation." H.R. Rep. No. 110-58, at 5 (2007).

"The switch to an unlimited appointment was short lived," however. *Giraud II*, 2025 WL 2416737, at *11. Just over a year later, "Congress reverted to the pre-[Reauthorization] Act language," reinstating the 120-day limit and the district court's role in the interim appointment process. *Id.*; *see* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007) [hereinafter 2007 Act]. "When Congress amends legislation, courts must presume it intends [the change] to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (internal quotation marks omitted). Yet if the Government's reading were correct, the 2007 Act would have had virtually no effect, as it would still allow the Executive to evade the Senate confirmation process indefinitely by stacking successive 120-day appointments.

Undeterred, the Government insists that "in reenacting the pre-2006 text, Congress presumptively ratified the Executive's longstanding use of successive 120-day appointments under [the 1986–2006] version of the statute." ECF No. 137 at 14. True, "a systematic, unbroken,

---

Though not binding, OLC's "contemporaneous[]" interpretation of section 546 further supports Mr. Comey's position. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386, 388 (2024).

14

executive practice, long pursued to the knowledge of the Congress and never before questioned, can raise a presumption that the [action] had been [taken] in pursuance of its consent." *Medellín v. Texas*, 552 U.S. 491, 531 (2008) (alterations in original) (internal quotation marks omitted); *see also NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014) ("[T]he longstanding practice of the government can inform our determination of what the law is." (internal citation and quotation marks omitted)). But the evidence on which the Government relies — a handful of successive 120-day appointments across the Clinton and Bush administrations — hardly establishes a "longstanding" Executive practice. *Cf. Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 415 (2003) ("Given the fact that the practice goes back over 200 years, and has received congressional acquiescence throughout its history, the conclusion that the President's control of foreign relations includes the settlement of claims is indisputable." (internal quotation marks omitted)). This is especially true when considering the Attorney General had no authority to appoint interim U.S. Attorneys *at all* before 1986.[15] *See* H.R. Rep. No. 110-58, at 4.

Finally, "[f]or those who find it relevant, the legislative history confirms" Congress sought to eliminate the Executive Branch's ability to circumvent the Senate's advice-and-consent role through repeat or indefinite interim appointments. *Honeycutt v. United States*, 581 U.S. 443, 453 (2017). For example, in describing the pre-2006 framework, Senator Leahy explained Congress had "carefully circumscribed [the Attorney General's authority to appoint an interim U.S. Attorney] by limiting it to 120 days, after which the district court would make any further interim appointment needed." 153 Cong. Rec. S1994 (2007) (statement of Sen. Patrick Leahy). The 2007

---

[15] By contrast, the judiciary's authority to make interim appointments dates back to the Civil War. *See* Act of March 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863).

15

Act, he stated, would "reinstate th[o]se vital limits on the Attorney General's authority and bring

back incentives for [an] administration to fill vacancies with Senate-confirmable nominees." *Id.*

Notably, Senator Leahy also rejected the notion that the Attorney General could "use the 120-day

appointment authority more than once," stating that the statute "is not designed or intended to be

used repeatedly for the same vacancy." *Id.* at S3299.

Senator Feinstein, the 2007 Act's primary sponsor, similarly stated that the legislation

"would return the law to what it was before the change that was made in March of 2006." *Id.* at

S3298 (statement of Sen. Dianne Feinstein). She explained:

> It would still give the Attorney General the authority to appoint interim U.S.
> attorneys, *but it would limit that authority to 120 days*. If after that time, the
> President had not nominated a new U.S. attorney or the Senate had not confirmed
> a nominee, then the district courts would appoint an interim U.S. attorney.

*Id.* (emphasis added). Several other Senators echoed this understanding,[16] as did Members of the

_____

[16] 153 Cong. Rec. S3240 (2007) (statement of Sen. Harry Reid) (remarking that the 2007
Act would "restore[] the pre-[Reauthorization] Act procedure," which "allowed the chief Federal
judge in the Federal district court to appoint a temporary replacement while the permanent nominee
undergoes Senate confirmation"); *id.* at S3245 (statement of Sen. Arlen Specter) ("I think there is
no doubt we ought to . . . go back to the old system where the Attorney General could appoint for
120 days, on an interim basis, and then after that period of time the replacement U.S. attorney
would be appointed by the district court."); *id.* at S3255 (statement of Sen. Ted Kennedy) ("The
bill before us . . . reinstates the 120-day limit on service by interim U.S. attorneys appointed by
the Attorney General. This change will force the administration to send nominees to the Senate to
fill vacant slots, or have them filled by a court instead."); *id.* at S3304 (statement of Sen. Carl
Levin) ("The legislation before us today is simple: it would repeal [the] changes [in the
Reauthorization Act] . . . and would require an interim appointment made by the Attorney General
to expire after 120 days or when a successor is nominated by the President and confirmed by the
Senate, whichever comes first. If at the end of the 120-day period no successor has been confirmed,
the relevant district court would be authorized to appoint an interim U.S. attorney to serve until
the vacancy is filled.").

House of Representatives.[17]     And the accompanying House Report explicitly identified "Bypassing the Requirement of Senatorial Advice and Consent" as a primary concern motivating the 2007 Act.  H.R. Rep. No. 110-58, at 6.

<p style="text-align:center">*     *     *</p>

In sum, the text, structure, and history of section 546 point to one conclusion: the Attorney General's authority to appoint an interim U.S. Attorney lasts for a total of 120 days from the date she first invokes section 546 after the departure of a Senate-confirmed U.S. Attorney.  If the position remains vacant at the end of the 120-day period, the exclusive authority to make further interim appointments under the statute shifts to the district court, where it remains until the President's nominee is confirmed by the Senate.

Ms. Halligan was not appointed in a manner consistent with this framework.  The 120-day clock began running with Mr. Siebert's appointment on January 21, 2025.  When that clock expired on May 21, 2025, so too did the Attorney General's appointment authority.  Consequently, I conclude that the Attorney General's attempt to install Ms. Halligan as Interim U.S. Attorney for the Eastern District of Virginia was invalid and that Ms. Halligan has been unlawfully serving in that role since September 22, 2025.

---

[17] 153 Cong. Rec. H5553 (2007) (statement of Rep. John Conyers) ("[W]hat this measure does is restore the checks and balances that have historically provided a critical safeguard against politicization of the Department of Justice and the United States attorneys, limiting the Attorney General's interim appointments to 120 days only, then allowing the district court for that district to appoint a U.S. attorney until the vacancy is filled[.]"); *id.* at H5554 (statement of Rep. Ric Keller) ("S. 214 returns the authority of the judiciary to appoint interim U.S. attorneys if a permanent replacement is not confirmed within 120 days."); *id.* at H5555 (statement of Rep. Sheila Jackson Lee) ("This much needed and timely legislation . . . restore[s] the 120-day limit on the term of a United States Attorney appointed on an interim basis by the Attorney General.").

<p style="text-align:center">17</p>

**B.    Ms. Halligan's appointment also violated the Appointments Clause.**

As discussed, the Appointments Clause allows Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2.  Through section 546, Congress devised a statutory scheme that vests the appointment of interim U.S. Attorneys first in "the Head[] of [a] Department[]," and then in "the Courts of Law."  *Id.*  Because Ms. Halligan was appointed in violation of that scheme, her appointment was not authorized "by Law" and thus also violates the Appointments Clause.  *See United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The head of a department has no constitutional prerogative of appointment to offices independently of the legislation of congress, and by such legislation he must be governed, not only in making appointments, but in all that is incident thereto.").

Resisting this conclusion, the Government briefly asserts that "not every action 'in excess of … statutory authority is *ipso facto* in violation of the Constitution.'"  ECF No. 137 at 25 (quoting *Dalton v. Specter*, 511 U.S. 462, 472 (1994)).  That is true but beside the point.  "[A]n officer can[not] lawfully exercise the statutory power of [her] office *at all*" unless she has been "properly appointed" under Article II.  *Collins v. Yellen*, 594 U.S. 220, 266 (2021) (Thomas, J., concurring) (emphasis added).  And here Ms. Halligan has not been appointed (1) by the President with the advice and consent of the Senate or (2) through a process Congress has authorized "by statute." *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting) ("At the time of the framing, 'by Law' of course meant 'by statute.'" (quoting *Lucia*, 585 U.S. at 254 (Thomas, J., concurring))).  So an Appointments Clause violation has occurred.  The next question is what to do about that violation.

18

### C.    Dismissal of the indictment is appropriate.

The Appointments Clause "is more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. at 659 (internal quotation marks omitted).   The Clause not only serves as "a bulwark against one branch aggrandizing its power at the expense of another," *Ryder v. United States*, 515 U.S. 177, 182 (1995), but also "preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power," *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991).   "Given its importance within our Constitution's structure," *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022), "'remedies with bite' should be applied to appointments that run afoul of the Clause's restrictions," *Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023) (quoting *Cody*, 48 F.4th at 960).

Here, Mr. Comey contends Ms. Halligan's unlawful appointment renders all her purported official actions void *ab initio*.   ECF No. 60 at 25.   He therefore argues the case must be dismissed because Ms. Halligan was not lawfully exercising executive power when she appeared before the grand jury alone and obtained his indictment.   *See id.*   I agree.

"When an appointment violates the Appointments Clause from the jump, the actor has 'exercise[d] power that [she] did not lawfully possess.'"   *United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2196794, at *8 (D.N.J. Aug. 1, 2025) (*Giraud I*) (alterations in original) (quoting *Collins*, 594 U.S. at 258); *see also Collins*, 594 U.S. at 276 (Gorsuch, J., concurring in part) (explaining that when an officer is "unconstitutionally appointed," "governmental action is taken by someone erroneously claiming the mantle of executive power — and thus taken with no authority at all"); *id.* at 266 (Thomas, J., concurring) ("[A]n officer must be properly appointed before he can legally act as an officer.").   In such a case, "the proper remedy is invalidation of the *ultra vires* action[s]" taken by the actor.   *United States v. Trump*, 740 F. Supp. 3d 1245, 1302 (S.D.

19

Fla. 2024). "Invalidation 'follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough.'" *Id.* (quoting *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (Jones, J., concurring)).

In light of these principles, I conclude that all actions flowing from Ms. Halligan's defective appointment, including securing and signing Mr. Comey's indictment, constitute unlawful exercises of executive power and must be set aside. There is simply "no alternative course to cure the unconstitutional problem." *Trump*, 740 F. Supp. 3d at 1303.

The Government attempts to counter this result with several arguments, but none is persuasive.

First, the Government argues that whatever her status as U.S. Attorney, Ms. Halligan still validly obtained and signed Mr. Comey's indictment as an "attorney for the government." ECF No. 137 at 21; *see* Fed. R. Crim. P. 1(b)(1) (defining an "[a]ttorney for the government" as "the Attorney General or an authorized assistant," "a United States attorney or an authorized assistant," or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor"); Fed. R. Crim. P. 6(d)(1) ("The following persons may be present while the grand jury is in session: attorneys for the government . . . ."); Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be signed by an attorney for the government."). In support of this argument, the Government relies on the Attorney General's October 31 Order, which purported to retroactively appoint Ms. Halligan to the "additional position" of "Special Attorney," effective September 22, 2025 — three days before Mr. Comey was indicted. Att'y Gen. Order No. 6485-2025. Although the Attorney General has "the power to appoint subordinate officers to assist [her] in the discharge of [her] duties," *United States v. Nixon*, 418 U.S. 683, 694 (1974), the Government has identified

20

no authority allowing the Attorney General to reach back in time and rewrite the terms of a past appointment.

Nor can the variation between the September 22 and October 31 Orders be dismissed as a mere "paperwork error," as suggested by the Government. ECF No. 137 at 28. The September 22 Order was unambiguous. The Attorney General stated she was appointing Ms. Halligan under 28 U.S.C. § 546 to "serve as the United States Attorney for the Eastern District of Virginia . . . for the period of one hundred and twenty days or until replaced in accordance with law, whichever occurs first." Att'y Gen. Order No. 6402-2025. The October 31 Order then purported to appoint Ms. Halligan to an entirely different position (Special Attorney), under entirely different statutes (28 U.S.C. §§ 509, 510, and 515). Att'y Gen. Order No. 6485-2025. I reject the Attorney General's attempt to retroactively confer Special Attorney status on Ms. Halligan. Regardless of what the Attorney General "intended," ECF No. 137 at 23 (emphasis omitted), or "could have" done, *id.* at 28, the fact remains that Ms. Halligan was not an "attorney authorized by law" to conduct grand jury proceedings when she secured Mr. Comey's indictment,[18] Fed. R. Crim. P. 1(b)(1)(D), 6(d)(1).

---

[18] The Government attempts to frame the effect of Ms. Halligan's invalid appointment as nothing more than a violation of Rule 7's signature requirement. *See* ECF No. 137 at 23–24. The Government is correct that courts have treated "the improper signing of an indictment," *Wheatley v. United States*, 159 F.2d 599, 601 (4th Cir. 1946), as a "technical deficienc[y]" that does not always require dismissal, *United States v. Irorere*, 228 F.3d 816, 830–31 (7th Cir. 2000); *see also* 1 *Wright & Miller's Federal Practice & Procedure* § 124 (5th ed. 2025) (observing that "courts have not rigorously enforced" Rule 7's signature requirement). The problem here, though, is not just Ms. Halligan's signature on the indictment — she presented the indictment to the grand jury alone, without being a "proper representative of the Government." *United States v. Garcia-Andrade*, No. 13-CR-993-IEG, 2013 WL 4027859, at *9 (S.D. Cal. Aug. 6, 2013).

Second, the Government contends that even if Ms. Halligan lacked the authority to obtain and sign indictments when she appeared before the grand jury, her actions should be entitled to "de facto validity." ECF No. 137 at 24–25 (quoting *Buckley v. Valeo*, 424 U.S. 1, 142 (1976)). When applicable, the de facto officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder*, 515 U.S. at 180. "In other words, the doctrine operates so that a defect in an official's appointment is not an adequate ground to challenge his earlier decisions." *Sidak v. U.S. Int'l Trade Comm'n*, 678 F. Supp. 3d 1, 18 (D.D.C. 2023), *appeal filed*, No. 23-5149 (D.C. Cir. June 30, 2023).

But the de facto officer doctrine "applies only to some *non*-constitutional appointments challenges." *Id.* (emphasis in original); *see, e.g.*, *Ball v. United States*, 140 U.S. 118, 128–29 (1891) (applying doctrine where an out-of-district judge assigned to replace a resident judge who had fallen ill continued to hold court after the resident judge's death); *McDowell v. United States*, 159 U.S. 596, 601–02 (1895) (holding that a properly appointed judge assigned to another district was a "judge de facto" and that "his actions as such, so far as they affect[ed] third persons, [were] not open to question," notwithstanding any question as to the validity of his designation). It has no application "when Appointments Clause challenges are involved." *Rop v. Fed. Housing Fin. Agency*, 50 F.4th 562, 587 (6th Cir. 2022) (Thapar, J., concurring in part and dissenting in part); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015) ("In its most recent cases, . . . the Supreme Court has limited the doctrine, declining to apply it when reviewing Appointments Clause challenges[.]"); *Sidak*, 678 F. Supp. 3d at 17–19.

In *Ryder*, a unanimous Supreme Court declined to apply the de facto officer doctrine to a claim that two judges on a panel of the Coast Guard Court of Military Review had been appointed

22

in violation of the Appointments Clause.  515 U.S. at 179.  The Court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."[19]  *Id.* at 182–83.  "Any other rule," it explained, "would create a disincentive to raise Appointments Clause challenges with respect to questionable . . . appointments."  *Id.* at 183.  "[T]he Court then buried past precedents applying the doctrine," including *Buckley*.  *Rop*, 50 F.4th at 587 (Thapar, J., concurring in part and dissenting in part).  It declared, "To the extent [those] cases may be thought to have implicitly applied a form of the de facto officer doctrine, we are not inclined to extend them beyond their facts."  *Ryder*, 515 U.S. at 184.

"After *Ryder*, the Supreme Court in *Lucia* 'doubled down' on its holding that 'the de facto officer doctrine has no place when Appointments Clause challenges are involved,'" *Sidak*, 678 F. Supp. 3d at 18 (quoting *Rop*, 50 F.4th at 587 (Thapar, J., concurring in part and dissenting in part)), reaffirming that a party who raises a timely Appointments Clause claim is "entitled to relief," *Lucia*, 585 U.S. at 251; *see also id.* at 251 n.5 (explaining that "Appointments Clause remedies are designed" both "to advance [the Clause's structural] purposes directly" and "to create []incentive[s] to raise Appointments Clause challenges" in the first place (internal quotation marks omitted)).  Given the Court's holdings in *Ryder* and *Lucia*, the de facto officer doctrine does not bar the relief sought by Mr. Comey.

---

[19] Although *Ryder* concerned the appointment of adjudicators, "[t]here is no reason to limit the permissive approach to Appointments Clause claims and remedies where a defendant challenges the appointment of the party bringing criminal charges against him, as opposed to the party adjudicating the case."  *Giraud I*, 2025 WL 2196794, at *7.  "The same 'structural' interests are at stake, because the allegation is that one branch has attempted to 'aggrandiz[e] its power at the expense of another branch' and thereby 'diffus[e] the appointment power.'"  *Id.* (quoting *Freytag*, 501 U.S. at 878).

23

Third, the Government submits that the grand jury's "independent decision" to indict Mr. Comey renders any error in his indictment harmless. ECF No. 137 at 27–29. The "customary harmless-error inquiry" is normally "applicable where . . . a court is asked to dismiss an indictment prior to the conclusion of the trial." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Harmless-error analysis does not apply, however, when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Id.* at 257. This case presents the unique, if not unprecedented, situation where an unconstitutionally appointed prosecutor, exercising "power [she] did not lawfully possess," *Collins*, 594 U.S. at 258, acted alone in conducting a grand jury proceeding and securing an indictment. In light of the near-complete control that prosecutors wield over the grand-jury process,[20] such an error necessarily "affect[s] the entire framework within which the proceeding occurs," *Greer v. United States*, 593 U.S. 503, 513–14 (2021), and thus "def[ies] analysis by 'harmless-error' standards," *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991); *cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 812–14 (1987) (plurality opinion) (holding that "harmless-error analysis is inappropriate in reviewing the appointment of an interested prosecutor" in part because "[s]uch an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision").

---

[20] Although the grand jury is understood to be "a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47 (1992) (internal quotation marks omitted), it is "easy to overstate the grand jury's independence from the prosecutor," 1 *Wright & Miller's Federal Practice & Procedure* § 102 (5th ed. 2025). Indeed, it is the prosecutor "who decides which investigations to pursue, what documents to subpoena, which witnesses to call, and what charges to recommend for indictment." 1 *Wright & Miller*, *supra*, § 102. And it is the prosecutor who examines the witnesses, summarizes the evidence, and advises the grand jury on the law.

24

As a final fallback position, the Government argues that even if Mr. Comey's indictment is flawed, dismissal is inappropriate because the Attorney General has since ratified Ms. Halligan's actions before the grand jury and her signature on the indictment. ECF No. 137 at 29–30; *see* Att'y Gen. Order Nos. 6485-2025, 6491-2025. Even assuming the agency-law doctrine of ratification can be used to cure a defective indictment (the Government cites no authority holding as much), the Attorney General's attempt at ratification here fails.

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . . ." Restatement (Second) of Agency § 82 (1958). In effect, the doctrine "reaches back and makes it so that a formerly unauthorized act was authorized from the get-go." *Wille v. Lutnick*, __ F.4th __, 2025 WL 3039191, at *8 (4th Cir. Oct. 31, 2025). But for ratification to be effective, "the principal must have [had] the authority to authorize the action *both* when the action [was] initially performed by the agent, *and* when the act [was] affirmed (and thereby ratified) by the principal." *Id.* (emphasis in original). The Attorney General lacked that authority at both points here.

I have already concluded that Ms. Halligan's original appointment was invalid and that the Attorney General's attempt to retroactively bestow Special Attorney status on her was ineffective. As a result, the Attorney General "could not have authorized" Ms. Halligan, who was not an attorney for the Government at the time, to present Mr. Comey's indictment to the grand jury on September 25. Restatement (Second) of Agency, *supra*, § 84(2) (stating that if "the purported or intended principal could not have authorized" the challenged "act" when it was "done," "he cannot ratify" it). The implications of a contrary conclusion are extraordinary. It would mean the Government could send any private citizen off the street — attorney or not — into the grand jury

25

room to secure an indictment so long as the Attorney General gives her approval after the fact. That cannot be the law.

The Government also fails to meet the second requirement for a valid ratification, i.e., that the principal must have been able "to do the act ratified . . . *at the time the ratification was made*." *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994) (emphasis in original) (internal quotation marks omitted). In *NRA Political Victory Fund*, the Supreme Court rejected the Solicitor General's attempt to ratify the filing of an unauthorized petition for certiorari when the attempted ratification occurred after the filing deadline had already passed. *Id.* at 98. Similarly here, the Attorney General's attempt to ratify Mr. Comey's indictment on October 31 "came too late in the day to be effective," as the statute of limitations for the charged offenses expired 31 days earlier on September 30.[21] *Id.*

The Government responds that the Attorney General's ratification was proper because she could have "personally obtain[ed] a new indictment" on October 31 "using [the] grace period" set forth in 18 U.S.C. § 3288. ECF No. 137 at 29. That statute provides in part:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information.

_____

[21] Generally, "[t]he return of an indictment tolls the statute of limitations on the charges contained in the indictment." *United States v. Ojedokun*, 16 F.4th 1091, 1109 (4th Cir. 2021). "An *invalid* indictment," however, "cannot serve to block the door of limitations as it swings closed." *United States v. Crysopt Corp.*, 781 F. Supp. 375, 378 (D. Md. 1991) (emphasis in original); *see also United States v. Gillespie*, 666 F. Supp. 1137, 1141 (N.D. Ill. 1987) ("[A] *valid* indictment insulates from statute-of-limitations problems any refiling of the same charges during the pendency of that valid indictment (that is, the superseding of a valid indictment). But if the earlier indictment is *void*, there is no legitimate peg on which to hang such a judicial limitations-tolling result." (emphasis in original)).

18 U.S.C. § 3288. "[B]y its own terms," section 3288 "only applies where an indictment has previously been dismissed." *United States v. Crysopt Corp.*, 781 F. Supp. 375, 377 (D. Md. 1991). But on October 31, Mr. Comey's indictment remained pending. Thus, the Attorney General could not have invoked section 3288 "*at the time the ratification was made*." *NRA Political Victory Fund*, 513 U.S. at 98 (emphasis in original) (internal quotation marks omitted).

**D.    Dismissal will be without prejudice.**

Having found that Ms. Halligan's appointment violated 28 U.S.C. § 546 and the Appointments Clause and that dismissal of Mr. Comey's indictment is warranted, the remaining issue is whether dismissal should be with or without prejudice. Relying primarily on the Ninth Circuit's decision in *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020), Mr. Comey urges me to exercise my supervisory powers and dismiss his indictment with prejudice. ECF No. 60 at 29–32. A with-prejudice dismissal is necessary, he argues, to "vindicate the interests protected by the Appointments Clause" and to "deter the government from using unlawful appointments to effectuate retaliation against perceived political opponents." *Id.* at 29; *see United States v. Hasting*, 461 U.S. 499, 505 (1983) (recognizing that a court may use its "supervisory powers" to "implement a remedy for violation of recognized rights" and "as a remedy designed to deter illegal conduct"). The Government, on the other hand, asserts that any dismissal should be without prejudice, for Mr. Comey "comes nowhere close to showing 'flagrant misbehavior,' 'substantial prejudice,' or the unavailability of a 'lesser sanction,'" as required by *Bundy*. ECF No. 137 at 31; *see Bundy*, 968 F.3d at 1031 (holding that a "district court may dismiss an indictment with prejudice for prosecutorial misconduct" using its "supervisory powers" only if there is "flagrant misbehavior," "substantial prejudice," and "no lesser remedial action" available).

27

Ultimately, I believe the Supreme Court's Appointments Clause jurisprudence provides the answer to the with-or-without-prejudice question. In both *Ryder* and *Lucia*, the Court essentially unwound the actions taken by the unconstitutionally appointed officer and restored the affected party to the position the party occupied before being subjected to those invalid acts. *See Ryder*, 515 U.S. at 188 (ordering a new "hearing before a properly appointed panel"); *Lucia*, 585 U.S. at 251 ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." (quoting *Ryder*, 515 U.S. at 183, 188)); *see also Nguyen v. United States*, 539 U.S. 69, 83 (2003) (vacating decisions made by an appeals panel that included a judge who was ineligible to sit by designation on an Article III court and remanding "for fresh consideration of petitioners' appeals by a properly constituted panel"). I will do the same here. I will invalidate the *ultra vires* acts performed by Ms. Halligan and dismiss the indictment without prejudice, returning Mr. Comey to the status he occupied before being indicted. *See Trump*, 740 F. Supp. 3d at 1303, 1309.

## III.    CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution.

2.    All actions flowing from Ms. Halligan's defective appointment, including securing and signing Mr. Comey's indictment, were unlawful exercises of executive power and are hereby set aside.

3.    The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside.

4.     Mr. Comey's motion to dismiss the indictment (ECF No. 60) is granted in accordance with this order.

5.     The indictment is dismissed without prejudice.

6.     The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge
Sitting by Designation

Columbia, South Carolina
November 24, 2025

29

J.A. 117

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                                          Case No. 1:25-CR-272 (MSN)

JAMES B. COMEY, JR.

*Defendant*.

## NOTICE OF APPEAL

Notice is hereby given that the United States of America, pursuant to 18 U.S.C. § 3731, appeals to the United States Court of Appeals for the Fourth Circuit from the order of the District Court, issued on November 24, 2025 (ECF No. 213), which ordered that (1) The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. (2) All actions flowing from Ms. Halligan's defective appointment, including securing and signing Mr. Comey's indictment, were unlawful exercises of executive power and are hereby set aside. (3) The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside. (4) Mr. Comey's motion to dismiss the indictment (ECF No. 60) is granted in accordance with this order. (5) The indictment is dismissed without prejudice. (6) The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541.

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

By:    _____/s/_____
Henry C. Whitaker
Counselor to the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, D.C. 20530
Phone: (202) 445-8942
E-Mail: henry.whitaker@usdoj.gov

2

J.A. 119

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Henry C. Whitaker
Counselor to the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, D.C. 20530
Phone: (202) 445-8942
E-Mail: henry.whitaker@usdoj.gov

3

APPEAL,CLOSED

# U.S. District Court
## Eastern District of Virginia - (Norfolk)
## CRIMINAL DOCKET FOR CASE #: 2:25-cr-00122-JKW-DEM-1

Case title: USA v. James

Date Filed: 10/09/2025

Date Terminated: 11/24/2025

---

Assigned to: District Judge Jamar K. Walker
Referred to: Magistrate Judge Douglas E. Miller

Appeals court case number: 25-4673, 4CCA Case M

### Defendant (1)

**Letitia A. James**
*TERMINATED: 11/24/2025*

represented by **Andrew C. Bosse**
Baughman Kroup Bosse PLLC
500 East Main Street
Suite 1400
Norfolk, VA 23510
757-916-5771
Email: abosse@bkbfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Abbe David Lowell**
Lowell & Associates, PLLC
1250 H St NW
Suite 250
Washington, DC 20005
202-508-4450
Fax: 202-964-6116
Email:
alowellpublicoutreach@lowellandassociates.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**David A. Kolansky**
Lowell & Associates, PLLC
1250 H Street NW
Suite 250
Washington, DC 20005
202-964-6111
Fax: 202-964-6114
Email: dkolansky@lowellandassociates.com

J.A. 121

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Isabella M. Oishi**
Lowell & Associates, PLLC
1250 H Street NW
Suite 250
Washington, DC 20005
202-964-6111
Fax: 202-964-6114
Email: ioishi@lowellandassociates.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**John Patrick Bolen**
Lowell & Associates, PLLC
1250 H Street NW
Suite 250
Washington, DC 20005
202-964-6110
Email: jbolen@lowellandassociates.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Schuyler Joyes Standley**
Lowell & Associates, PLLC
1250 H Street NW
Suite 250
Washington, DC 20005
202-964-6110
Email: sstandley@lowellandassociates.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| T.18:1344 - Bank Fraud / T.18:981(a)(1)(C) and 982(a)(1); T.28:2461(c); T.21:853(p)- Criminal Forfeiture (1) | Dismissed |
| T.18:1014 - False Statements to a Financial Institution (2) | Dismissed |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

J.A. 122

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                    **Disposition**

None

---

**Interested Party**

**Former Federal Judges and Former**       represented by    **Justin Patrick Keating**
**United States Attorneys**                                Beins, Axelrod & Keating, P.C.
                                                          215 N Payne St
                                                          Suite 129
                                                          Alexandria, VA 22314
                                                          703-966-3193
                                                          Email: jkeating@beinsaxelrod.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Treyvon Jordan**
                                                          Beins, Axelrod & Keating
                                                          1800 Diagonal Rd
                                                          Suite 600
                                                          Alexandria, VA 22314
                                                          803-529-3954
                                                          Email: tjordan@beinsaxelrod.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Benjamin J. Wish**
                                                          Todd & Weld (MA/NA)
                                                          One Federal Street
                                                          27th Fl.
                                                          Boston, MA 02110
                                                          **NA**
                                                          617-720-2626
                                                          Fax: 617-227-5777
                                                          Email: bwish@toddweld.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Howard M. Cooper**
                                                          Todd & Weld (MA/NA)
                                                          One Federal Street
                                                          27th Fl.
                                                          Boston, MA 02110
                                                          **NA**

J.A. 123

617-720-2626
Fax: 617-227-5777
Email: hcooper@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joseph M. Cacace**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**
617-720-2626
Fax: 617-227-5777
Email: jcacace@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Josh L. Launer**
Todd & Weld (MA/NA)
One Federal Street
27th Fl.
Boston, MA 02110
**NA**
617-720-2626
Fax: 617-624-4748
Email: jlauner@toddweld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Former Senior Officials of the
Department of Justice**                    represented by    **Gregory Rosen**
                                                            Rogers Joseph O'Donnell PC
                                                            1500 K Street N.W.
                                                            Ste 800
                                                            Washington, DC 20005
                                                            202-777-8952
                                                            Email: Grosen@rjo.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

                                                            **James Pearce**
                                                            Washington Litigation Group
                                                            1717 K Street NW
                                                            Suite 1120
                                                            Washington, DC 20006
                                                            202-521-8770
                                                            Email:

J.A. 124

jpearce@washingtonlitigationgroup.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mary Lyle Dohrmann**
Washington Litigation Group
1717 K Street, NW
Washington, DC 20006
202-521-8750
Email:
mdohrmann@washingtonlitigationgroup.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

| | | |
|---|---|---|
| **Protect Democracy Project** | represented by | **Abigail Sophia Grand** |

Victor M. Glasberg & Associates
121 S. Columbus St.
Alexandria, VA 22314
703-684-1100
Email: agrand@robinhoodesq.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Victor Michael Glasberg**
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100
Fax: 703-684-1104
Email: vmg@robinhoodesq.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Kristy Parker**
Protect Democracy
2020 Pennsylvania Avenue NW
Ste 163
Washington, DC 20006
202-424-9906
Fax: 929-777-8428
Email: kristy.parker@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Rachel Goodman**
Protect Democracy
115 Broadway

J.A. 125

Ste 5th Floor
New York, NY 10006
202-997-0599
Email:
rachel.goodman@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**United States Senate Minority Leader**
**Charles Schumer and United States**
**House of Representatives Minority**
**Leader Hakeem Jeffries**

represented by **Lawrence Hunter Woodward , Jr.**
Ruloff, Haddad & Woodward, P.C.
317 30th Street
Virginia Beach, VA 23451
757-671-6047
Email: lwoodward@srgslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Carey Richard Dunne**
Free + Fair Litigation Group
266 W 37th Street
20th Floor
New York, NY 10018
646-434-8604
Email: carey@freeandfair.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**University Professors and Scholars**

represented by **Trey Robert Kelleter**
KelleterLaw PC
101 W. Main Street
Suite 100
Norfolk, VA 23510
757-500-7666
Email: trey.kelleter@kelleterlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Christine P. Sun**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
202-299-9305
Email: christine@statesunited.org

J.A. 126

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maithreyi Ratakonda**
States United Democracy Center
45 Main Street
Suite 320
Brooklyn, NY 11202
202-999-9305
Email: mai@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Marina Eisner**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
202-999-9305
Email: marina@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Samantha Trepel**
States United Democracy Center
1101 17th Street, NW
Suite 250
Washington, DC 20036
Email: sam@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Fifty-Eight Bipartisan Former State**          represented by   **Kevin Edward Byrnes**
**Attorneys General**                                            FH&H PLLC
                                                                 1751 Pinnacle Drive
                                                                 Suite 1000
                                                                 Tysons, VA 22102
                                                                 703-590-1234
                                                                 Fax: 703-590-0366
                                                                 Email: KevinByrnes@patriotslaw.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Designation: Retained*

**Brittany Lynn Garcia**
E. Danya Perry Law PLLC
445 Park Ave, 7th Floor

J.A. 127

New York, NY 10022
212-484-4381
Email: bhanke@danyaperrylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joshua G. Kolb**
Democracy Defenders Fund (NA/DC)
600 Pennsylvania Ave
Ste 15180
Washington, DC 20003
**NA**
202-594-9958
Email: joshua@democracydefenders.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joshua Aryeh Perry**
E. Danya Perry Law PLLC
445 Park Ave, 7th Floor
New York, NY 10022
212-251-2619
Email: jperry@danyaperrylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Miriam Rosenbaum**
Brennan Center for Justice at NYU School
of Law
120 Broadway
Suite 1750
New York, NY 10271
646-292-8310
Email: rosenbaumm@brennan.law.nyu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Norman Larry Eisen**
Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
202-594-9958
Email: norman@democracydefenders.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stephen A. Jonas**
Democracy Defenders Fund (NA/DC)
600 Pennsylvania Ave

Ste 15180
Washington, DC 20003
**NA**
202-594-9958
Email: stephen@democracydefenders.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Victoria Lief Recalde**
E. Danya Perry Law PLLC
445 Park Ave, 7th Floor
New York, NY 10022
212-416-4482
Email: tfeldman@danyaperrylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Wendy Robin Weiser**
Brennan Center for Justice at NYU School
of Law
120 Broadway
Suite 1750
New York, NY 10271
646-292-8310
Email: weiserw@brennan.law.nyu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Lawyers Defending American Democracy**          represented by **Jonathan Shapiro , I**
4220 Forge Rd
Glasgow, VA 24555-2423
703-217-7455
Email: js@greenspunlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                                           represented by **Lindsey Halligan**
DOJ-USAO
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: lindsey.halligan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

J.A. 129

CM/ECF - vaed

*Designation: US Attorney*

**Henry Charles Whitaker**
DOJ-Oag
Office of the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, DC 20530
202-445-8942
Email: henry.whitaker@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Roger Keller**
2100 Jamieson Ave
Alexandria, VA 22314
703-299-3700
Email: roger.keller@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/09/2025 | 1 | INDICTMENT FILED AND RETURNED IN OPEN COURT as to Letitia A. James (1) counts 1-2. (Attachments: # 1 Criminal Cover Sheet) (dbra, ) (Additional attachment(s) added on 10/10/2025: # 2 Corrected Criminal Cover Sheet) (ptom, ). (Entered: 10/09/2025) |
| 10/09/2025 | 4 | Summons Issued and delivered to USM in case as to Letitia A. James. Initial Appearance set for 10/24/2025 at 09:00 AM in Norfolk Mag Courtroom 2 before Magistrate Judge Douglas E. Miller. (dbra, ) (Entered: 10/09/2025) |
| 10/16/2025 | 5 | NOTICE OF ATTORNEY APPEARANCE: Andrew C. Bosse appearing for Letitia A. James (Bosse, Andrew) (Entered: 10/16/2025) |
| 10/16/2025 | 6 | Motion to appear Pro Hac Vice by Abbe David Lowell and Certification of Local Counsel Andrew Bosse (Filing fee $ 75 receipt number AVAEDC-10525950.) by Letitia A. James. (Bosse, Andrew) (Entered: 10/16/2025) |
| 10/16/2025 | 7 | Motion to appear Pro Hac Vice by David A. Kolansky and Certification of Local Counsel Andrew Bosse (Filing fee $ 75 receipt number AVAEDC-10525972.) by Letitia A. James. (Bosse, Andrew) (Entered: 10/16/2025) |
| 10/16/2025 | 8 | Motion to appear Pro Hac Vice by Isabella M. Oishi and Certification of Local Counsel Andrew Bosse (Filing fee $ 75 receipt number AVAEDC-10525985.) by Letitia A. James. (Bosse, Andrew) (Entered: 10/16/2025) |
| 10/16/2025 | 9 | ORDER granting 6 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/16/2025. (Walker, Jamar) (Entered: 10/16/2025) |
| 10/16/2025 | 10 | ORDER granting 7 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/16/2025. (Walker, Jamar) (Entered: 10/16/2025) |
| 10/16/2025 | 11 | ORDER granting 8 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/16/2025. (Walker, Jamar) (Entered: 10/16/2025) |
| 10/16/2025 | 12 | ORDER - The arraignment of Letitia A. James shall begin promptly at 11:00 a.m. on Friday, October 24, 2025, in Norfolk Courtroom Five on the first floor. Magistrate Courtroom One will be reserved as an overflow courtroom. Magistrate Courtroom One |

J.A. 130

| | | |
|---|---|---|
| | | will have screens which should enable attendees to see and hear what is happening in Courtroom Five. The hearing will not be delayed for transmission issues. All seating will be on a first-come basis. Signed by District Judge Jamar K. Walker on 10/16/25. SEE ORDER FOR FURTHER DETAILS. (ptom) (Entered: 10/16/2025) |
| 10/17/2025 | 15 | Summons Returned Executed on 10/16/25 as to Letitia A. James (mrees) (Entered: 10/20/2025) |
| 10/22/2025 | 16 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED - government and defense counsel) as to Letitia A. James. (bell, robert) (Entered: 10/22/2025) |
| 10/22/2025 | 18 | NOTICE OF ATTORNEY APPEARANCE Roger Keller appearing for USA. (Keller, Roger) (Entered: 10/22/2025) |
| 10/22/2025 | | Notice of Correction re 18 Notice of Attorney Appearance - USA. The document is an incorrectly saved PDF fillable form which we have removed. Please refile the document after saving it correctly. To correctly save the PDF fillable form, click on the File menu, select Print, and then select your PDF writer from the Printer Name List, then click on Print or OK depending on your program. (dbra, ) (Entered: 10/22/2025) |
| 10/22/2025 | 19 | NOTICE OF ATTORNEY APPEARANCE Roger Keller appearing for USA. (Keller, Roger) (Entered: 10/22/2025) |
| 10/23/2025 | 20 | NOTICE of Intent to File Motion on Unlawful Appointment by Letitia A. James (Bosse, Andrew) (Entered: 10/23/2025) |
| 10/23/2025 | 21 | MOTION to Enforce Rules Prohibiting the Government's Extrajudicial Disclosures and Statements by Letitia A. James. (Attachments: # 1 Exhibit A: Lawfare Article, # 2 Exhibit B: Signal Exchange, # 3 Proposed Order)(Bosse, Andrew) (Entered: 10/23/2025) |
| 10/24/2025 | 22 | MOTION to Dismiss the Indictment and Enjoin the Prosecution by Letitia A. James. (Attachments: # 1 Proposed Order MTD the Indictment and Enjoin the Prosecution) (Bosse, Andrew) (Entered: 10/24/2025) |
| 10/24/2025 | 23 | ORDER re 22 MOTION to Dismiss the Indictment and Enjoin the Prosecution filed by Letitia A. James. The Motion is TRANSFERRED to the Honorable Cameron McGowan Currie, Senior United States District Judge for District of South Carolina. Signed by District Judge Jamar K. Walker on 10/24/2025. (Attachments: # 1 Order by Chief Judge Albert Diaz) (dbra, )(copies distributed as directed) (Entered: 10/24/2025) |
| 10/24/2025 | 24 | Minute Entry: Initial Appearance and Arraignment as to Letitia A. James held before District Judge Jamar K. Walker. Govt appeared through Roger Keller, Lindsey Halligan, and Amanda Cheney. Deft present, appeared through Abbe Lowell, Andrew Bosse, David Kolansky, and Isabella Oishi. Deft waived formal arraignment, entered plea of not guilty, demanded trial by jury. Oral admonition as required by DPPA given to the prosecutor. Briefing schedules set as stated on the record. Any motion to dismiss based on the appointment, qualification, or disqualification of the United States Attorney or the United States Attorney's Office to be transferred to the Honorable Cameron McGown Currie. Hearing on any motion to dismiss based on a theory of vindictive and/or selective prosecution set for 12/5/2025 at 11:00 a.m. Hearing on any other pretrial motions set for 12/17/2025 at 11:00 a.m. Jury trial set for 1/26/2026 at 10:00 a.m. in Norfolk Courtroom 5 before District Judge Jamar K. Walker. Deft released on a PR bond. Court adjourned. (Court Reporter Carol Naughton, OCR) (bap, ) (Entered: 10/24/2025) |
| 10/24/2025 | 25 | Due Process Protections Act Order as to Letitia A. James. Signed by District Judge Jamar K. Walker on 10/24/2025. (bap, ) (Entered: 10/24/2025) |

| | | |
|---|---|---|
| 10/24/2025 | 26 | ORDER - The jury trial shall begin on 1/26/26. A joint proposed Discovery Order is due by 10/31/25 or a proposal plan by 11/3/25. Government shall file a response to ECF 21 by 10/28/25. Defendant's reply is due by 10/30/25. See Order for additional deadlines. Signed by District Judge Jamar K. Walker on 10/24/2025. (dbra, ) (Entered: 10/24/2025) |
| 10/24/2025 | | Set/Reset Hearings as to Letitia A. James: Hearing on any motion to dismiss the indictment based on a theory of vindictive and/or selective prosecution set for 12/5/2025 at 11:00 a.m. in Norfolk Courtroom 5 before District Judge Jamar K. Walker. Hearing on any additional pretrial motions set for 12/17/2025 at 11:00 a.m. in Norfolk Courtroom 5 before District Judge Jamar K. Walker. (bap, ) (Entered: 10/24/2025) |
| 10/24/2025 | | TEXT ORDER: The Government's response to Defendant's motion to dismiss the indictment and enjoin the prosecution (ECF 22) is due by 5:00 p.m. on Monday, November 3, 2025. Defendant's reply is due by 5:00 p.m. on Monday, November 10, 2025. Defendant's motion will be consolidated with the motion challenging the qualification of the current Interim U.S. Attorney in Case No. 1:25-cr-272 for purposes of oral argument only. Signed by the Honorable Cameron McGowan Currie on 10/24/2025. (ptom) (Entered: 10/24/2025) |
| 10/24/2025 | | Motion Hearing re: MOTION to Dismiss the Indictment and Enjoin the Prosecution by Letitia A. James set for 11/13/2025 at 10:00 AM in Alexandria Courtroom 600 before District Judge Cameron McGowan Currie. (ptom) (Entered: 10/24/2025) |
| 10/24/2025 | 27 | ORDER Setting Conditions of Release as to Letitia A. James. Signed by District Judge Jamar K. Walker on 10/24/2025. (bap, ) (Entered: 10/27/2025) |
| 10/28/2025 | 28 | ORDER - The Government is directed to submit, no later than 11/3/25 at 5:00 p.m., for in camera review, all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts, to be delivered to chambers of Judge Cameron McGowan Currie. Signed by Senior District Judge Cameron McGowan Currie on 10/28/2025. (dbra, ) (Entered: 10/28/2025) |
| 10/28/2025 | 29 | TRANSCRIPT of Proceedings (Initial Appearance/Arraignment) held on 10-24-2025, before Judge Jamar K. Walker. Court reporter/transcriber Carol Naughton, Telephone number 757-222-7073. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/27/2025. Redacted Transcript Deadline set for 12/29/2025. Release of Transcript Restriction set for 1/26/2026.(naughton, carol) (Entered: 10/28/2025)** |
| 10/28/2025 | 30 | RESPONSE in Opposition by USA as to Letitia A. James re 21 MOTION to Enforce Rules Prohibiting the Government's Extrajudicial Disclosures and Statements (Keller, Roger) (Entered: 10/28/2025) |
| 10/29/2025 | 31 | Joint Proposed Discovery *Order Pursuant to ECF No. 26* by Letitia A. James. (Bosse, Andrew) (Entered: 10/29/2025) |
| 10/29/2025 | 32 | Agreed Discovery Order as to Letitia A. James. Signed by District Judge Jamar K. Walker on 10/29/25. (mrees) (Entered: 10/29/2025) |

| | | |
|---|---|---|
| 10/29/2025 | [33](#) | MOTION for Leave to File Excess Pages *in Forthcoming Motion* by Letitia A. James. (Attachments: # [1](#) Proposed Order)(Bosse, Andrew) (Entered: 10/29/2025) |
| 10/29/2025 | [34](#) | Motion to appear Pro Hac Vice by John Patrick Bolen and Certification of Local Counsel Andrew Bosse (Filing fee $ 75 receipt number AVAEDC-10556144.) by Letitia A. James. (Bosse, Andrew) (Entered: 10/29/2025) |
| 10/29/2025 | [35](#) | Motion to appear Pro Hac Vice by Schuyler Joyes Standley and Certification of Local Counsel Andrew Bosse (Filing fee $ 75 receipt number AVAEDC-10556147.) by Letitia A. James. (Bosse, Andrew) (Entered: 10/29/2025) |
| 10/29/2025 | [36](#) | ORDER granting [33](#) Motion for Leave to File Excess Pages as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/29/2025. (dbra, ) (Entered: 10/29/2025) |
| 10/30/2025 | 37 | ORDER granting [34](#) Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/30/2025. (Walker, Jamar) (Entered: 10/30/2025) |
| 10/30/2025 | [38](#) | Amended Motion to appear Pro Hac Vice by Schuyler Joyes Standley and Certification of Local Counsel Andrew Bosse by Letitia A. James. (Bosse, Andrew) (Entered: 10/30/2025) |
| 10/30/2025 | [39](#) | Reply by Letitia A. James re [21](#) MOTION to Enforce Rules Prohibiting the Government's Extrajudicial Disclosures and Statements (Bosse, Andrew) (Entered: 10/30/2025) |
| 10/30/2025 | 40 | ORDER granting [38](#) Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 10/30/2025. (Walker, Jamar) (Entered: 10/30/2025) |
| 10/31/2025 | [41](#) | ORDER: Defendant's ECF [21](#) Motion to Enforce Rules Prohibiting the Government's Extrajudicial Disclosures and Statements is Granted in Part and Denied in Part. The Court ORDERS the government to comply with Fed. R. Crim. P. 6(e)(2), and all counsel to comply with Local Rule 57.1. In addition, the Court ORDERS a litigation hold preventing the deletion or destruction of any records or communications having to do with the investigation or prosecution of this case. The defendant's request that the government be required to keep a communication log is DENIED. To the extent the government asks the Court to limit the defendant's own speech, that request is DENIED. Signed by District Judge Jamar K. Walker on 10/31/25. (See Order for Specifics) (ptom) (Entered: 10/31/2025) |
| 11/03/2025 | [42](#) | NOTICE OF ATTORNEY APPEARANCE Henry Charles Whitaker appearing for USA. (Whitaker, Henry) (Entered: 11/03/2025) |
| 11/03/2025 | [43](#) | RESPONSE in Opposition by USA as to Letitia A. James re [22](#) MOTION to Dismiss *the Indictment and Enjoin the Prosecution* (Attachments: # [1](#) Exhibit A)(Whitaker, Henry) (Entered: 11/03/2025) |
| 11/03/2025 | [44](#) | Consent MOTION to Continue *Dec. 17, 2025 Hearing for Additional Pretrial Motions to Dec. 22, 2025* by Letitia A. James. (Attachments: # [1](#) Proposed Order)(Bosse, Andrew) (Entered: 11/03/2025) |
| 11/04/2025 | [45](#) | ORDER - The Court resets the hearing on any additional pretrial motions from December 17, 2025 at 11:00 a.m. to December 22, 2025 at 3:00 p.m. Signed by District Judge Jamar K. Walker on 11/4/2025. (dbra, ) (Entered: 11/04/2025) |
| 11/04/2025 | [46](#) | NOTICE *Of Reasons for Not Providing Pre-Vindictive/Selective Prosecution Motion Related Discovery* by USA as to Letitia A. James (Keller, Roger) (Entered: 11/04/2025) |
| 11/04/2025 | 47 | The Court has received the government's filing regarding discovery on the issue of vindictive and/or selective prosecution (ECF No. 40). The Order on the parties' jointly recommended discovery plan (ECF No. 32) governs discovery in this case. To the extent |

J.A. 133

| | | any discovery dispute arises, the parties may address it in a motion. Signed by District Judge Jamar K. Walker on 11/4/2025. (Walker, Jamar) (Entered: 11/04/2025) |
|---|---|---|
| 11/06/2025 | 48 | NOTICE *Certificate of Compliance* by USA as to Letitia A. James (Keller, Roger) (Entered: 11/06/2025) |
| 11/07/2025 | 49 | NOTICE OF ATTORNEY APPEARANCE: Treyvon Jordan appearing for Former Federal Judges and Former United States Attorneys (bwell) (Entered: 11/07/2025) |
| 11/07/2025 | 50 | NOTICE OF ATTORNEY APPEARANCE: Justin Patrick Keating appearing for Former Federal Judges and Former United States Attorneys (bwell) (Entered: 11/07/2025) |
| 11/07/2025 | 51 | Unopposed MOTION for Leave to File Brief of Bipartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief by Former Federal Judges and Former United States Attorneys as to Letitia A. James. (Attachments: # 1 Proposed Order, # 2 Brief of Bipartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief)(bwell) (Entered: 11/07/2025) |
| 11/07/2025 | 52 | Financial Interest Disclosure Statement by Former Federal Judges and Former United States Attorneys (bwell) (Entered: 11/07/2025) |
| 11/07/2025 | 53 | MOTION to Dismiss *Indictment for Vindictive and Selective Prosecution* by Letitia A. James. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Proposed Order)(Bosse, Andrew) (Entered: 11/07/2025) |
| 11/10/2025 | 54 | ORDER granting 51 Motion for Leave to File Amicus Curiae Brief of Bipartisan Former Federal Judges and Former United States Attorneys in Support of Defendant's Request for Relief. It is ORDERED that Movants' proposed amicus curiae brief (ECF No. 51-2) is deemed FILED. Signed by Senior District Judge Cameron McGowan Currie on 11/10/2025. (dbra, ) (Entered: 11/10/2025) |
| 11/10/2025 | 55 | Brief of Bipartisan Former Federal Judges and Former United States Attorneys as Amici Curiae in Support of Defendant's Request for Relief. (dbra, ) (Entered: 11/10/2025) |
| 11/10/2025 | 56 | Reply by Letitia A. James re 22 MOTION to Dismiss *the Indictment and Enjoin the Prosecution* (Bosse, Andrew) (Entered: 11/10/2025) |
| 11/12/2025 | 57 | Subpoena issued by Government. (ptom) (Entered: 11/12/2025) |
| 11/13/2025 | 58 | MOTION on Behalf of Former Senior Officials of the Department of Justice for Leave to File Brief as Amici Curiae in Support of Motion to Dismiss Indictment for Vindictive Prosecution by Former Senior Officials of the Department of Justice as to Letitia A. James. (Attachments: # 1 Brief of Former Senior Officials of the Department of Justice as Amici Curiae in Support of Defendant's Motion to Dismiss Indictment for Vindictive Prosecution, # 2 Notice of Appearance, # 3 Notice of Waiver of Hearing)(dbra, ) (Entered: 11/13/2025) |
| 11/13/2025 | 59 | Motion to appear Pro Hac Vice by James Pearce and Certification of Local Counsel Gregory Rosen (Filing fee $ 75 receipt number AVAEDC-10585946.) by Former Senior Officials of the Department of Justice as to Letitia A. James. (Rosen, Gregory) (Entered: 11/13/2025) |
| 11/13/2025 | 60 | Motion to appear Pro Hac Vice by Mary Dohrmann and Certification of Local Counsel Gregory Rosen (Filing fee $ 75 receipt number AVAEDC-10585947.) by Former Senior Officials of the Department of Justice as to Letitia A. James. (Rosen, Gregory) (Entered: 11/13/2025) |

| | | |
|---|---|---|
| 11/13/2025 | 61 | NOTICE OF ATTORNEY APPEARANCE: Gregory P. Rosen appearing for Former Senior Officials of the Department of Justice. (dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 62 | Notice of Waiver of Hearing re 58 MOTION on Behalf of Former Senior Officials of the Department of Justice for Leave to File Brief as Amici Curiae in Support of Motion to Dismiss Indictment for Vindictive Prosecution by Former Senior Officials of the Department of Justice as to Letitia A. James. (dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 63 | NOTICE OF ATTORNEY APPEARANCE: Victor M. Glasberg appearing for Protect Democracy Project. (dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 64 | NOTICE OF ATTORNEY APPEARANCE: Abigail S. Grand appearing for Protect Democracy Project.(dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 65 | MOTION for Leave to File Amicus Curiae Brief of Protect Democracy Project in Support of Defendant's Motion to Dismiss Indictment Base on Vindictive and Selective Prosecution by Protect Democracy Project as to Letitia A. James. (Attachments: # 1 Proposed Order, # 2 Brief of Amicus Curiae in support of Defendant's Motion to Dismiss Based on Vindictive and Selective Prosecution, # 3 Letter)(dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 66 | Motion to appear Pro Hac Vice by Rachel Goodman and Certification of Local Counsel Victor Glasberg by Protect Democracy Project. (Attachments: # 1 Receipt 200008815) (dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 67 | Motion to appear Pro Hac Vice by Kristy Parker and Certification of Local Counsel Victor Glasberg by Protect Democracy Project. (Attachments: # 1 Receipt 200008815) (dbra, ) (Entered: 11/14/2025) |
| 11/13/2025 | 69 | Minute Entry for proceedings held before Senior District Judge Cameron McGowan Currie:<br>Motion Hearing as to Letitia A. James held on 11/13/2025.<br>USA appeared through Henry Whitaker, Lindsey Halligan, Nathaniel Lemons and Gabriel Diaz.<br>Counsel Jessica Carmichael, Elias Kim, Ephriam McDowell, Michael Dreebe, Patrick Fitzgerald, and Rebekah Donaleski appeared with defendant James Comey.<br>Counsel Andrew Bosse, John Bolen, and Abbe Lowell appeared on behalf of defendant Letitia James.<br>MOTION to Dismiss *the Indictment and Enjoin the Prosecution* re 22 argued and TAKEN UNDER ADVISEMENT.<br>Defendants continued on previous conditions.<br>Order to follow.<br>(Court Reporter D.Salters.)<br>(lcre, ) (Entered: 11/14/2025) |
| 11/14/2025 | 68 | NOTICE *Notice of Appearance on behalf of amicus curiae* by Letitia A. James (Shapiro, Jonathan) (Entered: 11/14/2025) |
| 11/14/2025 | | Notice of Correction re 68 Notice of Appearance on behalf of amicus curiae filed by Jonathan Shapiro. The filer is advised that a Motion to File Amicus Brief and related documents are to be filed on paper with the Clerk's Office. (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | | Notice of Correction re 60 Motion to appear Pro Hac Vice by Mary Dohrmann and Certification of Local Counsel Gregory Rosen (Filing fee $ 75 receipt number AVAEDC-10585947.) Counsel is advised that the application must have the applicant's original signature. Additionally, there are extra digits listed for the applicant's "Firm Phone #". Please refile with the corrections listed. Counsel does not need to pay another fee. (alet) (Entered: 11/14/2025) |

J.A. 135

| 11/14/2025 | | Notice of Correction re 66 Motion to appear Pro Hac Vice by Rachel Goodman and Certification of Local Counsel Victor Glasberg. Counsel is advised that the application must have the applicant's original signature. Please refile with a wet signature. Counsel does not need to pay another fee. (alet) (Entered: 11/14/2025) |
|---|---|---|
| 11/14/2025 | | Notice of Correction re 67 Motion to appear Pro Hac Vice by Kristy Parker and Certification of Local Counsel Victor Glasberg. Counsel is advised that the application must have the applicant's original signature. Please refile with a wet signature. Counsel does not need to pay another fee. (alet) (Entered: 11/14/2025) |
| 11/14/2025 | 70 | ORDER granting 58 Motion for Leave to File as to Letitia A. James (1). For good cause shown, the motion for leave to file an amicus brief is GRANTED. Signed by District Judge Jamar K. Walker on 11/14/2025. (Walker, Jamar) (Entered: 11/14/2025) |
| 11/14/2025 | 71 | ORDER granting 65 Motion for Leave to File as to Letitia A. James (1). For good cause shown, the motion for leave to file an amicus brief is GRANTED. Signed by District Judge Jamar K. Walker on 11/14/2025. (Walker, Jamar) (Entered: 11/14/2025) |
| 11/14/2025 | 72 | NOTICE OF ATTORNEY APPEARANCE: Lawrence H. Woodward, Jr. appearing for United States Senate Minority Leader Charles Schumer and United States House of Representatives Minority Leader Hakeem Jeffries. (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 73 | MOTION for Leave to File Amicus Curiae Brief by United States Senate Minority Leader Charles Schumer and United States House of Representatives Minority Leader Hakeem Jeffries. (Attachments: # 1 Proposed Order, # 2 Brief of Amici Curiae, # 3 Letter)(dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 74 | Brief of Former Senior Officials of the Department of Justice as Amici Curiae in Support of Defendant's Motion to Dismiss Indictment for Vindictive Prosecution 53 . (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 75 | Brief of Amicus Curiae by Protect Democracy Project in Support of Defendant's Motion to Dismiss Based on Vindictive and Selective Prosecution 53 . (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 76 | NOTICE OF ATTORNEY APPEARANCE: Trey R. Kelleter appearing for University Professors and Scholars. (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 77 | MOTION for Leave to File Amici Curiae Brief of University Professors and Scholars in Support of Defendant's Motion to Dismiss Indictment for Vindictive and Selective Prosecution. (Attachments: # 1 Proposed Order, # 2 Exhibit A - Brief of Amici Curiae, # 3 Letter)(dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 78 | NOTICE of Waiver of Oral Argument re 77 MOTION for Leave to File Amici Curiae Brief of University Professors and Scholars in Support of Defendant's Motion to Dismiss Indictment for Vindictive and Selective Prosecution. (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 79 | Consent MOTION for Extension of Time to File Pretrial Motions by Letitia A. James. (Attachments: # 1 Proposed Order)(Bosse, Andrew) (Entered: 11/14/2025) |
| 11/14/2025 | 80 | NOTICE OF ATTORNEY APPEARANCE: Kevin E. Byrnes appearing for Fifty-Eight Former State Attorneys General. (dbra, ) (Entered: 11/14/2025) |
| 11/14/2025 | 81 | MOTION for Leave to File Brief of Fifty-Eight Bipartisan Former State Attorneys General as Amici Curiae in Support of Attorney General James' Motion to Dismiss. (Attachments: # 1 Proposed Order, # 2 Brief of Amici Curiae)(dbra, ) (Entered: 11/14/2025) |

CM/ECF - vaed

| 11/15/2025 | 82 | MOTION for Leave to File Amicus Brief in Support of Letitia James' Motion to Dismiss for Vindictive Prosecution by Lawyers Defending American Democracy. (Attachments: # 1 Proposed Order, # 2 Brief of Amicus Curiae)(dbra, ) (Entered: 11/15/2025) |
| --- | --- | --- |
| 11/15/2025 | 83 | Motion to appear Pro Hac Vice by Mary Dohrmann and Certification of Local Counsel Gregory Rosen by Former Senior Officials of the Department of Justice as to Letitia A. James. (Rosen, Gregory) (Entered: 11/15/2025) |
| 11/16/2025 | 84 | Motion to appear Pro Hac Vice by Marina Eisner and Certification of Local Counsel Trey Kelleter (Filing fee $ 75 receipt number AVAEDC-10589581.) by University Professors and Scholars as to Letitia A. James. (Kelleter, Trey) (Entered: 11/16/2025) |
| 11/16/2025 | 85 | Motion to appear Pro Hac Vice by Maithreyi Ratakonda and Certification of Local Counsel Trey Kelleter (Filing fee $ 75 receipt number AVAEDC-10589586.) by University Professors and Scholars as to Letitia A. James. (Kelleter, Trey) (Entered: 11/16/2025) |
| 11/16/2025 | 86 | Motion to appear Pro Hac Vice by Christine P. Sun and Certification of Local Counsel Trey Kelleter (Filing fee $ 75 receipt number AVAEDC-10589588.) by University Professors and Scholars as to Letitia A. James. (Kelleter, Trey) (Entered: 11/16/2025) |
| 11/16/2025 | 87 | Motion to appear Pro Hac Vice by Samantha Trepel and Certification of Local Counsel Trey Kelleter (Filing fee $ 75 receipt number AVAEDC-10589589.) by University Professors and Scholars as to Letitia A. James. (Kelleter, Trey) (Entered: 11/16/2025) |
| 11/17/2025 | 88 | Motion to appear Pro Hac Vice by Carey Richard Dunne and Certification of Local Counsel Lawrence H. Woodward, Jr. (Filing fee $ 75 receipt number AVAEDC-10589718.) by United States Senate Minority Leader Charles Schumer and United States House of Representatives Minority Leader Hakeem Jeffries as to Letitia A. James. (Woodward, Lawrence) (Entered: 11/17/2025) |
| 11/17/2025 | 89 | TRANSCRIPT of motion proceedings held on 11-13-25 before Judge Cameron Currie. Court reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/17/2025. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 2/17/2026.(Salters, Diane) (Main Document 89 replaced on 11/24/2025) (ptom, ). (Entered: 11/17/2025)** |
| 11/17/2025 | 90 | ORDER granting 79 Motion for Extension of Time to File Pretrial Motions as to Letitia A. James (1). The deadline for pretrial motions is extended to December 1, 2025. Signed by District Judge Jamar K. Walker on 11/17/2025. (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 91 | ORDER granting 83 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 92 | ORDER granting 84 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 93 | ORDER granting 85 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |

J.A. 137

| 11/17/2025 | 94 | ORDER granting 86 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 95 | ORDER granting 87 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 96 | ORDER granting 88 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 97 | ORDER granting 59 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/17/2025. (Walker, Jamar) (Entered: 11/17/2025) |
| 11/17/2025 | 98 | ORDER - Motions for leave to file amicus briefs at ECF Nos. 73 , 77 , 81 , and 82 are GRANTED. The Clerk is DIRECTED to docket the proposed briefs. Signed by District Judge Jamar K. Walker on 11/17/2025. (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 99 | NOTICE of Ratification by USA as to Letitia A. James (Attachments: # 1 Exhibit 1 - Ratification of Certain Actions in the Eastern District of Virginia)(Keller, Roger) (Entered: 11/17/2025) |
| 11/17/2025 | 100 | Motion to appear Pro Hac Vice by Benjamin Jacob Wish and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10591829.) by Former Federal Judges and Former United States Attorneys as to Letitia A. James. (Jordan, Treyvon) (Entered: 11/17/2025) |
| 11/17/2025 | 101 | Motion to appear Pro Hac Vice by Joseph Michael Cacace and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10591873.) by Former Federal Judges and Former United States Attorneys as to Letitia A. James. (Jordan, Treyvon) (Entered: 11/17/2025) |
| 11/17/2025 | 102 | Brief of Amici Curiae United States Senate Minority Leader Charles Schumer and United States House of Representatives Minority Leader Hakeem Jeffries. (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 103 | Motion to appear Pro Hac Vice by Josh Leonard Launer and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10591881.) by Former Federal Judges and Former United States Attorneys as to Letitia A. James. (Jordan, Treyvon) (Entered: 11/17/2025) |
| 11/17/2025 | 104 | Motion to appear Pro Hac Vice by Howard Michael Cooper and Certification of Local Counsel Treyvon Jordan (Filing fee $ 75 receipt number AVAEDC-10591892.) by Former Federal Judges and Former United States Attorneys as to Letitia A. James. (Jordan, Treyvon) (Entered: 11/17/2025) |
| 11/17/2025 | 105 | Brief of Amici Curiae University Professors and Scholars in Support of Defendant's Motion to Dismiss Indictment for Vindictive and Selective Prosecution 53 . (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 106 | Brief of Fifty-Eight Bipartisan Former State Attorneys General as Amici Curiae in Support of Letitia A. James' Motion to Dismiss 53 . (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 107 | Brief of Lawyers Defending American Democracy, Amicus Curiae, in Support of James' Motion to Dismiss for Vindictive Prosecution 53 . (dbra, ) (Entered: 11/17/2025) |
| 11/17/2025 | 108 | MOTION for Disclosure of Certain Grand Jury Records and Memorandum in Support by Letitia A. James. (Attachments: # 1 Proposed Order)(Bosse, Andrew) (Entered: 11/17/2025) |
| 11/17/2025 | 109 | MOTION to Dismiss the Indictment for Outrageous Government Conduct and Memorandum in Support by Letitia A. James. (Attachments: # 1 Exhibit A, # 2 Exhibit B, |

J.A. 138

| | | |
|---|---|---|
| | | # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Proposed Order)(Bosse, Andrew) (Entered: 11/17/2025) |
| 11/18/2025 | 110 | Motion to appear Pro Hac Vice by Rachel Goodman and Certification of Local Counsel Victor M. Glasberg by Protect Democracy Project as to Letitia A. James. (Glasberg, Victor) (Entered: 11/18/2025) |
| 11/18/2025 | 111 | Motion to appear Pro Hac Vice by Kristy Parker and Certification of Local Counsel Victor M. Glasberg by Protect Democracy Project as to Letitia A. James. (Glasberg, Victor) (Entered: 11/18/2025) |
| 11/18/2025 | 112 | ORDER granting 100 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/18/2025. (Walker, Jamar) (Entered: 11/18/2025) |
| 11/18/2025 | 113 | ORDER granting 101 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/18/2025. (Walker, Jamar) (Entered: 11/18/2025) |
| 11/18/2025 | 114 | ORDER granting 103 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/18/2025. (Walker, Jamar) (Entered: 11/18/2025) |
| 11/18/2025 | 115 | ORDER granting 104 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/18/2025. (Walker, Jamar) (Entered: 11/18/2025) |
| 11/18/2025 | 116 | Motion to appear Pro Hac Vice by Brittany Lynn Garcia and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594721.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 117 | Motion to appear Pro Hac Vice by Norman Larry Eisen and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594786.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 118 | Motion to appear Pro Hac Vice by Stephen Allen Jonas and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594790.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 119 | Motion to appear Pro Hac Vice by Joshua Gabriel Kolb and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594793.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 120 | Motion to appear Pro Hac Vice by Joshua Aryeh Perry and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594798.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 121 | Motion to appear Pro Hac Vice by Victoria Lief Recalde and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594805.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/18/2025 | 122 | Motion to appear Pro Hac Vice by Miriam Rosenbaum and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594820.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |

| | | |
|---|---|---|
| 11/18/2025 | 123 | Motion to appear Pro Hac Vice by Wendy Robin Weiser and Certification of Local Counsel Kevin E. Byrnes (Filing fee $ 75 receipt number AVAEDC-10594825.) by Fifty-Eight Bipartisan Former State Attorneys General as to Letitia A. James. (Byrnes, Kevin) (Entered: 11/18/2025) |
| 11/19/2025 | 124 | ORDER granting 110 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 125 | ORDER granting 111 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 126 | ORDER granting 116 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 127 | ORDER granting 117 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 128 | ORDER granting 118 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 129 | ORDER granting 119 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 130 | ORDER granting 120 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 131 | ORDER granting 121 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 132 | ORDER granting 122 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/19/2025 | 133 | ORDER granting 123 Motion for Pro hac vice as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/19/2025. (Walker, Jamar) (Entered: 11/19/2025) |
| 11/20/2025 | 134 | RESPONSE in Opposition by USA as to Letitia A. James re 53 MOTION to Dismiss *Indictment for Vindictive and Selective Prosecution* (Attachments: # 1 Exhibit 1 - Select Fraud and Low-Dollar Theft or Fraud Cases Filed Primarily in the Norfolk Division of the Eastern District of Virginia (2021-2025), # 2 Exhibit 2 - July 2020 Application, # 3 Exhibit 3 - August 2020 Application, # 4 Exhibit 4 - Affidavit of Occupancy, # 5 Exhibit 5 - Second Home Rider, # 6 Exhibit 6 - First Insurance Policy, # 7 Exhibit 7 - Second Insurance Policy, # 8 Exhibit 8 - Credit Card Receipts, # 9 Exhibit 9 - Schedule E, # 10 Exhibit 10 - Utility Bills, # 11 Exhibit 11 - New York Financial Disclosures)(Keller, Roger) (Entered: 11/20/2025) |
| 11/21/2025 | 135 | MOTION to Seal *Exhibits 2-11 attached to Government's Response to Defendant's Motion to Dismiss for Vindictive and Selective Prosecution* by USA as to Letitia A. James. (Attachments: # 1 Exhibit Proposed Order)(Keller, Roger) (Entered: 11/21/2025) |
| 11/21/2025 | 136 | ORDER granting 135 Motion to Seal as to Letitia A. James (1). Signed by District Judge Jamar K. Walker on 11/21/2025. (Walker, Jamar) (Entered: 11/21/2025) |
| 11/21/2025 | 137 | Sealed Exhibits 134 Response in Opposition filed by USA. Exhibit 2 - July 2020 Application (Attachments: # 1 Exhibit 3 - August 2020 Application, # 2 Exhibit 4 - Affidavit of Occupancy, # 3 Exhibit 5 - Second Home Rider, # 4 Exhibit 6 - First Insurance Policy, # 5 Exhibit 7 - Second Insurance Policy, # 6 Exhibit 8 - Credit Card Receipts, # 7 Exhibit 9 - Schedule E, # 8 Exhibit 10 - Utility Bills, # 9 Exhibit 11 - New York Financial Disclosures)(dbra, ) (Entered: 11/21/2025) |

J.A. 140

| 11/24/2025 | 138 | MOTION for Extension of Time to File Response/Reply as to 109 MOTION to Dismiss *the Indictment for Outrageous Government Conduct and Memorandum in Support*, 108 MOTION for Disclosure *of Certain Grand Jury Records and Memorandum in Support* by USA as to Letitia A. James. (Attachments: # 1 Exhibit 1 - Proposed Order)(Keller, Roger) (Entered: 11/24/2025) |
| --- | --- | --- |
| 11/24/2025 | 139 | ORDER granting 138 Motion for Extension of Time to File Response/Reply as to Letitia A. James (1). The government's responses to these motions will be due on or before December 4, 2025. Signed by District Judge Jamar K. Walker on 11/24/2025. (Walker, Jamar) (Entered: 11/24/2025) |
| 11/24/2025 | 140 | ORDER AND ADJUDGED as follows: (1) The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. (2) All actions flowing from Ms. Halligan's defective appointment, including securing and signing Ms. James's indictment, were unlawful exercises of executive power and are hereby set aside. (3) The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside. (4) Ms. James's motion to dismiss the indictment (ECF No. 22) is granted inaccordance with this order. (5) The indictment is dismissed without prejudice. (6) Ms. James's request for an injunction barring Ms. Halligan from participating in the prosecution of this case is denied as moot. (7) The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541 as to Letitia A. James (1). Signed by Senior District Judge Cameron McGowan Currie on 11/24/25. (ptom) (Entered: 11/24/2025) |
| 12/19/2025 | 142 | NOTICE OF APPEAL by USA as to Letitia A. James as to 140 Order on Motion to Dismiss,,,, (Whitaker, Henry) (Entered: 12/19/2025) |
| 12/22/2025 | 143 | Transmission of Notice of Appeal to 4CCA as to Letitia A. James to US Court of Appeals re 142 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Attachments: # 1 Notice of Appeal)(ptom) (Entered: 12/22/2025) |
| 12/22/2025 | 144 | USCA Case Number 25-4673, 4CCA Case Manager: A. Walker for 142 Notice of Appeal filed by USA. (ptom) (Entered: 12/22/2025) |
| 01/12/2026 | 145 | ORDER of USCA as to Letitia A. James re 142 Notice of Appeal [25-4673]. Upon consideration of submissions relative to the motion to consolidate, the court grants the motion and consolidates Case No. 25-4673 (L) and Case No. 25-4674. (dbra, ) (Entered: 01/14/2026) |

J.A. 141



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>v.<br><br>LETITIA A. JAMES.<br><br>*Defendant*. | CRIMINAL NO.  2:25cr122<br><br>Count One: Bank Fraud (18 U.S.C. § 1344)<br><br>Count Two:  False Statements to a Financial Institution (18 U.S.C. § 1014)<br><br>18 U.S.C. § 981(a)(1)(C) and 982(a)<br>28 U.S.C. § 2461<br>Criminal Forfeiture |

INDICTMENT

October 2025 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Indictment:

1. Letitia A. James ("JAMES") was a resident of Brooklyn, New York, and the borrower on a Fannie Mae-backed mortgage loan for the property located at 3121 Peronne Avenue, Norfolk, Virginia.

2. OVM Financial (also known as Old Virginia Mortgage / AnnieMac) was a mortgage lending business located in Virginia Beach, Virginia, engaged in the business of originating and underwriting residential mortgage loans, including those backed by the Federal National Mortgage Association ("Fannie Mae"). OVM Financial qualified as a "financial institution" within the meaning of 18 U.S.C. § 20(10).

3. Fannie Mae was a federally chartered corporation that purchased and guaranteed mortgages, operating as a government-sponsored enterprise under the oversight of the Federal Housing

1

J.A. 142

Finance Agency ("FHFA").

4. First Savings Bank was a state-chartered, FDIC-insured financial institution (Certificate #29961), headquartered in Jeffersonville, Indiana, which acquired mortgage loans through assignment or acquisition. First Savings Bank qualified as a "financial institution" within the meaning of 18 U.S.C. § 20(1).

5. On or about August 17, 2020, JAMES, as sole borrower, purchased the three (3) bedroom, (1) bathroom property located at 3121 Peronne Avenue, Norfolk, Virginia 23509 (the "Peronne Property"), for approximately $137,000, financed with a mortgage loan of approximately $109,600 (Loan #4430025978) backed by Fannie Mae.

6. The loan was originated by OVM Financial under a signed Second Home Rider, which required JAMES, as the sole borrower to occupy and use the property as her secondary residence, and prohibited its use as a timesharing or other shared ownership arrangement or agreement that requires her either to rent the property or give any other person any control over the occupancy or use of the property.

7. Despite these representations, the Peronne Property was not occupied or used by JAMES as a secondary residence and was instead used as a rental investment property, renting the property to a family of (3).

8. This misrepresentation allowed JAMES to obtain favorable loan terms not available for investment properties, including a note rate of 3.000% (avoiding a 0.815% higher comparable investment property rate of 3.815%, resulting in approximately $17,837 in rate savings over the life of the loan), a seller credit of approximately $3,288 (exceeding the seller credit for investment properties by approximately $1,096), for total ill-gotten gains of approximately $18,933 over the life of the loan.

9. JAMES' Universal Property application for homeowners' insurance indicated "owner-

2

occupied non-seasonal use," further misrepresenting the intended use of the property.

10. JAMES filed Schedule E tax form(s), under penalties of perjury, treating the Perrone Property as rental real estate, reporting fair rental days, zero personal use days, thousand(s) of dollars in rents received, and claiming deductions for expenses relating to the property, further contradicting the second home classification.

11. The loan was acquired by or assigned to First Savings Bank by March 2021, exposing it to risks associated with the misrepresented loan.

12. The acts described herein occurred within the Eastern District of Virginia.

## COUNT ONE

### (Bank Fraud - 18 U.S.C. § 1344)

13. The allegations in paragraphs 1 through 12 are re-alleged and incorporated herein.

14. From on or about August 7, 2020, through at least January 2024, in the Eastern District of Virginia and elsewhere, the Defendant, LETITIA A. JAMES, did knowingly execute and attempt to execute a scheme and artifice to defraud OVM Financial and First Savings Bank, financial institutions, and to obtain moneys, funds, and credits owned by and under the custody and control of OVM Financial and First Savings Bank by means of false and fraudulent pretenses, representations, and promises.

15. The scheme involved falsely representing the Peronne Property as a secondary residence to obtain favorable mortgage terms, while using it as an investment property with no intended or actual personal occupancy or use by her.

(In violation of Title 18, United States Code, Section 1344).

## COUNT TWO

### (False Statements to a Financial Institution - 18 U.S.C. § 1014)

16. The allegations in paragraphs 1 through 12 are re-alleged and incorporated herein.

J.A. 144

17. From on or about July 28, 2020, through at least August 31, 2020, in the Eastern District of
Virginia and elsewhere, the Defendant, LETITIA A. JAMES, did knowingly make and cause
to be made false statements and reports for the purpose of influencing the action of OVM
Financial, a Fannie Mae-backed lender, upon an application for a loan, in that JAMES
represented and affirmed in uniform residential loan applications and related documents that
the Peronne Property would be used as a secondary residence, when in truth and fact, as
JAMES then knew, the property was intended and used as an investment property with no
intended or actual personal occupancy or use by her.

(In violation of Title 18, United States Code, Section 1014).

<div align="center">FORFEITURE NOTICE</div>

Pursuant to Federal Rule of Criminal Procedure 32.2(a) and Title 18, U.S.C. §
982(a)(2)(A), upon conviction of the offenses in Counts One and Two, the Defendant, Letitia
A. James, shall forfeit to the United States any property constituting, or derived from,
proceeds obtained, directly or indirectly, as a result of such violations, including but not
limited to a money judgment in the amount of $18,933.

If any of the property described above, as a result of any act or omission of the
Defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred
or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the
court; (d) has been substantially diminished in value; or (e) has been commingled with other
property which cannot be divided without difficulty, the United States shall be entitled to a
forfeiture of substitute property pursuant to Title 21, U.S.C. § 853(b), as incorporated by Title
18 U.S.C. § 982(b)(1).

(In accordance with Title 18 U.S.C. § 981(a)(1)(C) and 982(a)(1); Title 28, U.S.C. § 2461(c);
and Title 21 U.S.C. § 853(p).)

<div align="center">4</div>

<div align="center">J.A. 145</div>

A TRUE BILL

REDACTED COPY

Foreperson

Pursuant to the E-Government Act
the original of this page has been filed
under seal.

By: _____

LINDSEY HALLIGAN
UNITED STATES ATTORNEY

5

J.A. 146

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

UNITED STATES OF AMERICA　　　*
　　　　　　　　　　　　　　　　*
　　　　　v.　　　　　　　　　　　*　Case No.  2:25-cr-122-JKW-DEM
　　　　　　　　　　　　　　　　*
LETITIA A.  JAMES,　　　　　　 *
　　　　　　　　　　　　　　　　*
　　　　　Defendant.　　　　　　 *
　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
*　　*　　*　　*　　*　　*　　*

**ATTORNEY GENERAL LETITIA A.  JAMES' MOTION AND MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT AND ENJOIN THE
<u>PROSECUTION</u>**

Attorney General Letitia A. James, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 12(b) moves this Court to dismiss the Government's indictment because purported interim U.S. Attorney Lindsey Halligan had no authority to bring the charges in this case.  As explained further below, Ms. Halligan's purported appointment as interim U.S. Attorney was invalid under 28 U.S.C § 546 and in violation of the Appointments Clause of the United States Constitution.

# TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

BACKGROUND ..........................................................................................................1

    A.   Factual Background ...................................................................... 1

    B.   Legal Background ......................................................................... 4

ARGUMENT .................................................................................................................6

   I.   Ms. Halligan's Purported Appointment as Interim United States Attorney is Unlawful ... 6

    A.   Ms. Halligan's Appointment is Invalid and Unlawful Under Section 546.................... 6

    B.   As Ms. Halligan's Appointment Occurred Without Statutory Authorization, it Violates the Appointments Clause. ....................................................... 11

  II.   Ms. Halligan's Unlawful Appointment Warrants Dismissal of The Indictment and an Injunction Barring Ms. Halligan From Continuing to Perform the Functions and Duties of Interim U.S. Attorney ............................................................. 12

    A.   This Court Should Dismiss the Indictment. ................................................. 12

    B.   This Court Should Enjoin Ms. Halligan From Prosecuting Cases, Supervising Prosecutions, and Performing Any of the Other Functions or Duties of Interim U.S. Attorney ............................................................................. 16

CONCLUSION ...........................................................................................................17

**TABLE OF AUTHORITIES**

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250  (1988)........................................................ 15

*Bates v. United States*, 522 U.S. 23 (1997) ................................................................................... 7

*Chapman v. California*, 386 U.S. 18 (1966)................................................................................. 16

*Collins v. Yellen*, 594 U.S. 220 (2021) ........................................................................................ 15

*Dean v. United States*, 556 U.S. 568 (2009)................................................................................... 7

*Edmond v. United States*, 520 U.S. 651 (1997) ....................................................................... 4, 12

*Iselin v. United States*, 270 U.S. 245 (1926)................................................................................... 8

*Kelley v. United States*, 989 F.3d 67 (1st Cir.  2021) ................................................................... 14

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ..................................................... 11

*Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237 (2018) .................................................... 1, 4, 13, 15

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988) ............................... 10

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024) ....................................................... 7

*Myers v. United States*, 272 U.S. 52, 159 (1926).......................................................................... 4

*Ryder v. United States*, 515 U.S. 177 (1995) .............................................................................. 15

*Trump v. United States*, 603 U.S. 593 (2024)............................................................................... 12

*Sherwood v. Sutton*, 21 F. Cas. 1303 (C.C.D.N.H. 1828)........................................................... 10

*United States v. Bennett*, 464 Fed. Appx. 183 (4th Cir. 2012) ................................................... 13

*United States v. Davila*, 569 U.S. 597 (2013).............................................................................. 16

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991)............................................................. 14

*United States v. Garcia-Andrade*, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) ........................ 15

*United States v. Germaine*, 99 U.S. 508 (1879)............................................................................. 4

*United States v. Giraud*, 2025 WL 2416737 (D.N.J. Aug. 21, 2025)...................................... 9, 11

*United States v. Hansen*, 599 U.S. 762 (2023) ............................................................. 8

*United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990) .................................. 14

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ......................... 1, 12, 13

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ................................ 12

*United States v. Underwood*, 129 F.4th 912 (6th Cir. 2025) ...................................... 14

**Statutes**

28 U.S.C. § 516 ............................................................................................... *passim*

28 U.S.C. § 541 ...................................................................................................... 10

28 U.S.C. § 546 .................................................................................................... 1, 2

Fed. R. Crim. P. 1 .................................................................................................. 13

Fed. R. Crim. P. 7 .................................................................................................. 13

Fed. R. Crim. P. 12 .................................................................................................. 1

Fed. R. Crim. P. 52 ................................................................................................ 16

H.R. Rep. No. 110-58 at 6 (2007) ...................................................................... 5, 9

Judiciary Act of 1789, 1 Stat. 73 § 35 ............................................................... 4, 10

Pub. L. No. 109-77, Title V, § 502, 120 Stat. 192, 246 (2006) .......................... 5, 9

Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007) ................................................... 5, 9

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) .................... 8, 9

Alanna Durkin Richer & Eric Tucker, *US attorney under pressure to charge Letitia James in mortgage fraud case has resigned*, Associated Press (Sept. 19, 2025) ..................................... 2

Anna Bower, *"Anna, Lindsey Halligan Here."*, *Lawfare* (October 20, 2025). ............................ 4

Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025). ........................................................... 3, 16

*Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986). ............... 11

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947)  10

Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025) ................................................................... 2, 3

*In re Appointment of Erik S. Siebert as United States Attorney*, Order of Appointment, United States District Court for the Eastern District of Virginia (May 9, 2025) ................................... 2

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020). ..... 5, 10
Jeremy Roebuck, *Trump's new demands on Justice Department raise alarm among prosecutors*, Wash. Post (Sept. 22, 2025) ..................................................................................... 3

Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025) ........................................................................................... 3, 16

Katherine Faulders et al., *Trump poised to fire US attorney for resisting effort to charge NY AG Letitia James: Sources*, ABC News (Sept. 19, 2025) ............................................... 2

Kristin Holmes, et al., *Lindsey Halligan didn't coordinate NY AG Letitia James indictment with Pam Bondi's DOJ*, CNN (Updated Oct 10, 2025). ................................................ 14

Press Release: Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia, United States Attorney's Office for the Eastern District of Virginia (Jan. 21, 2025) ................ 2

Salvador Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025) ............................................................. 2

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967 (2021) ................................... 10

**Constitutional Provisions**

U.S. Const. Art. II, § 2, cl. 2 ........................................................................... 4, 12

## INTRODUCTION

Defendant Letitia A. James, the Attorney General of New York, submits this motion to dismiss the indictment in this case under Federal Rule of Criminal Procedure 12(b)(3)(A) because the charges against her were brought by an individual who had no authority to litigate this case on behalf of the United States. Lindsey Halligan, the prosecutor who sought and obtained this indictment, was not lawfully appointed as interim United States Attorney for the Eastern District of Virginia. Her purported appointment violates both 28 U.S.C. § 546 and the Appointments Clause of the Constitution. Nor was Ms. Halligan authorized to represent the United States under any other title or designation. Ms. Halligan thus lacked the power to present this case to the grand jury or sign this indictment, and she cannot continue to supervise this prosecution.

The defects in Ms. Halligan's appointment mandate dismissal of this indictment. First, this Court lacks jurisdiction because no "proper representative of the Government" had a role in obtaining the indictment. *See United States v. Providence Journal Co.*, 485 U.S. 693, 707–08 (1988). Second, even if this Court were to possess jurisdiction, an officer's actions are null and void if her purported appointment violated the Appointments Clause. *See Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 (2018). And third, because this indictment would not have been sought or obtained absent Ms. Halligan's unlawful appointment under the guise of 28 U.S.C. § 546, the indictment's flaws cannot be brushed aside as harmless error. This Court must reject the Executive Branch's brazen attempt to sidestep the constitutional and statutory limitations on the appointment of U.S. Attorneys.

## BACKGROUND

### A.    Factual Background

On January 20, 2025, the Senate-confirmed U.S. Attorney for the Eastern District of Virginia, Jessica Aber, resigned. One day later, the U.S. Attorney General Pamela Bondi

1

J.A. 152

appointed Erik Siebert as interim U.S. Attorney pursuant to 28 U.S.C. § 546.[1]  On May 6, 2025, President Trump submitted Mr. Siebert's nomination to the Senate.  Mr. Siebert's interim appointment expired on May 21, 2025, which marked "120 days after appointment by the Attorney General under [Section 546]." 28 U.S.C. § 546(c)(2).  At that time, the district court judges of the Eastern District of Virginia exercised their appointment authority under Subsection 546(d) and  to unanimously decided to retain Mr. Siebert as interim U.S. Attorney.[2]

Mr. Siebert ultimately landed in President Trump's crosshairs.  Reports indicate that in the weeks preceding this indictment, Mr. Siebert informed senior Justice Department officials that there was insufficient evidence to charge Attorney General James.[3]  His stance "set off a push by some [Administration] officials to remove him from his post."[4]  On September 19, 2025, President Trump stated that he wanted Siebert "out."[5]  He told reporters that he believed Attorney General James was "very guilty of something," an assessment that reportedly contradicted the views of

---

[1] Press Release: Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia, United States Attorney's Office for the Eastern District of Virginia (Jan. 21, 2025), https://perma.cc/SZ2Z-KQ6P.

[2] *In re Appointment of Erik S. Siebert as United States Attorney*, Order of Appointment, United States District Court for the Eastern District of Virginia (May 9, 2025), https://perma.cc/2UM3-LX2X.

[3] Katherine Faulders et al., *Trump poised to fire US attorney for resisting effort to charge NY AG Letitia James: Sources*, ABC News (Sept. 19, 2025), https://abcnews.go.com/US/trump-poised-fire-us-attorney-resisting-effort-charge/story?id=125700904; Alanna Durkin Richer & Eric Tucker, *US attorney under pressure to charge Letitia James in mortgage fraud case has resigned*, Associated Press (Sept. 19, 2025), https://apnews.com/article/justice-department-letitia-james-siebert-trump-9ec1a96c05fa77d8acc558bd803622a2; Salvador Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/; Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19. 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[4] Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025).

[5] *Id.*

both Mr. Siebert and Deputy Attorney General Todd Blanche.[6]  Mr. Siebert resigned hours after

President Trump called for his ouster.[7]

On September 20, 2025, President Trump posted a statement on social media directly

urging Attorney General Bondi to prosecute Attorney General James, as well as former FBI

Director James Comey and Senator Adam Schiff.[8]  The post read:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same
> old story as last time, all talk, no action. Nothing is being done. What about Comey,
> Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to
> be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia,
> with a really bad Republican past.  A Woke RINO, who was never going to do his
> job. That's why two of the worst Dem Senators PUSHED him so hard. He even
> lied to the media and said he quit, and that we had no case. No, I fired him, and
> there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey
> Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer,
> it's killing our reputation and credibility. They impeached me twice, and indicted
> me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!!
> President DJT.[9]

At the White House that same evening, President Trump spoke to reporters about the social media

post and stated, "I just want people to act. They have to act," adding, "We have to act fast."[10]

Less than 48 hours after President Trump's post, the Attorney General purported to appoint

Ms. Halligan as interim U.S. Attorney pursuant to 28 U.S.C. § 546.  Though Subsection 546(c)(2)

---

[6] Thrush et al., *U.S. Attorney Investigating Two Trump Does Departs Amid Pressure from President*, N.Y. Times (Sept. 19, 2025).

[7] *Id.*

[8] From its salutation and context, it appears the social media post was intended to be a private message to Attorney General Bondi.  It has been reported that the President "was surprised to learn that it was public."  Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025), https://www.wsj.com/politics/policy/trump-doj-inside-political-enemies-17f13f72?.

[9] Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025), https://www.cnn.com/2025/09/20/politics/trump-justice-department-pam-bondi.

[10] Jeremy Roebuck, *Trump's new demands on Justice Department raise alarm among prosecutors*, Wash. Post (Sept. 22, 2025), https://www.washingtonpost.com/national-security/2025/09/22/trump-justice-department-prosecutions/.

3

provides that an interim U.S. Attorney may serve only until "the expiration of 120 days after appointment by the Attorney General under this section," the purported appointment of Ms. Halligan occurred *244 days* after the Attorney General's invocation of Section 546 to appoint Mr. Siebert. Since her purported appointment, Ms. Halligan has been "the one handling" this case, including as the sole signatory on the indictment.[11]

### B.    Legal Background

The Appointments Clause provides the exclusive process by which the President may appoint "Officers of the United States." U.S. Const. Art. II, § 2, cl. 2. "[F]or purposes of appointment," the Clause divides officers into two classes: principal officers and "inferior officers." *United States v. Germaine*, 99 U.S. 508, 509 (1879). Principal officers must be appointed by the President by and with the advice and consent of the Senate. *See Edmond v. United States*, 520 U.S. 651, 660 (1997). That process "is also the default manner of appointment for inferior officers," subject to a limited exception: Congress may "by Law" authorize the President, the head of an executive department, or a court of law to appoint inferior officers without the advice and consent of the Senate. *Id.* U.S. Attorneys are inferior officers. *See Myers v. United States*, 272 U.S. 52, 159 (1926). Accordingly, U.S. Attorneys must be appointed either 1) by the President with the advice and consent of the Senate, or 2) through a process that Congress has properly authorized "by Law." An appointment that conforms with neither pathway violates the Appointments Clause. *See Lucia*, 585 U.S. at 251.

Since the first Congress, U.S. Attorneys have been appointed through the "default manner of appointment,"—by the President with the advice and consent of the Senate. *Edmond*, 520 U.S. at 660; *see also* Judiciary Act of 1789, 1 Stat. 73 § 35; James A. Heilpern, *Interim United States*

---

[11] *See* Anna Bower, *"Anna, Lindsey Halligan Here*.", *Lawfare* (October 20, 2025) https://www.lawfaremedia.org/article/anna--lindsey-halligan-here.

*Attorneys*, 28 Geo. Mason L. Rev. 187, 190 (2020). This requirement is codified at 28 U.S.C. § 541(a). To minimize the disruption posed by a prolonged vacancy at a U.S. Attorney's office, however, Congress has provided the Executive Branch with a pathway to temporarily install a U.S. Attorney without Senate confirmation. Under 28 U.S.C. § 546, "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," and that person may serve until either "(1) the qualification of a United States attorney for such district appointed by the President" and confirmed by the Senate, "or (2) the expiration of 120 days after appointment by the Attorney General under this section." 28 U.S.C. § 546(c). When an interim U.S. Attorney appointment expires after 120 days, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

The durational limit on the Attorney General's appointment authority under 28 U.S.C. § 546(c)(2) guarantees the role of 28 U.S.C. § 541 (and therefore, Senate confirmation) as the exclusive means of appointing a U.S. Attorney. In 2006, Congress removed the 120-day expiration date on interim U.S. Attorney appointments as part of the PATRIOT Act. *See* Pub. L. No. 109–77, Title V, § 502, 120 Stat. 192, 246 (2006). A little more than a year later, however, Congress amended the statute to reinstate the 120-day limitation. *See* Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007). The catalyst for the reversion was Congress's concern about "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." H.R. Rep. No. 110–58 at 6 (2007). Section 546 has not changed since the 2007 amendment.

**ARGUMENT**

I.    **MS. HALLIGAN'S PURPORTED APPOINTMENT AS INTERIM UNITED STATES ATTORNEY IS UNLAWFUL**

    A.    **Ms. Halligan's Appointment is Invalid and Unlawful Under Section 546.**

The Attorney General's authority to name an interim U.S. Attorney expires 120 days after she makes an appointment. Section 546 affords the Attorney General a single 120-day period between the departure of one Senate-confirmed U.S. Attorney and the appointment of another. Multiple interim U.S. Attorneys may serve during that period, but they cannot serve for a cumulative total of more than 120 days. Once an interim U.S. Attorney appointment expires after 120 days, Subsection 546(d) provides that the exclusive authority to appoint an interim U.S. Attorney belongs to the district court.

Because the Attorney General invoked Section 546 on January 21, 2025, to name Mr. Siebert as interim U.S. Attorney for the Eastern District of Virginia, her authority under Section 546 expired on May 21, 2025. Consequently, the Attorney General's attempt to appoint Ms. Halligan as interim U.S. Attorney for the Eastern District of Virginia on September 22, 2025, violated Subsection 546(c)(1). The Government has resisted this straightforward application of Section 546. It seemingly believes that the Attorney General has the power to appoint an unlimited number of interim U.S. Attorneys to an unlimited number of 120-day terms. Because the text, structure, and context provide no support for the Government's novel interpretation of Section 546, this Court should reject the Executive Branch's attempt to install Ms. Halligan as interim U.S. Attorney.

    1.    **The Government's Position is Contrary to Section 546's Text**

The text of Section 546 is unambiguous: the Attorney General is vested with 120 total days to appoint an interim U.S. Attorney, and that 120-day clock starts running from the date the

Attorney General first invokes Subsection 546(a).  Under the clear framework established by Section 546, the Attorney General "may appoint" an interim U.S. Attorney; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; and after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. §§ 546(a), (c)(2), (d).  Ms. Halligan's purported appointment did not comport with this framework.

Analyzing Section 546's text reveals several flaws with the Government's theory that the 120-day limit on the Attorney General's appointment authority applies only on a per-appointee basis.  First, the Government's reading requires the insertion of terms that are absent from the statute.  Subsection 546(c) provides that "a person appointed" under the statute may serve until "the expiration of 120 days after appointment *by the Attorney General*" (emphasis added).  The time limitation is thus benchmarked to the Attorney General's actions, not an individual's appointment.  The Government reads the statute as stating that an interim U.S. Attorney may serve until "the expiration of 120 days after *his or her* appointment by the Attorney General."  Those words do not appear in the statute, however, and the Court cannot "add words to the statute to achieve what the [government] thinks a desirable result." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 348 (2024); *see also Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face" (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))).

Second, the text of Subsection 546(d) provides a single option for what can happen following the expiration of an appointment under Subsection 546(c)(2):  "if an appointment expires under Subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d).  But under the Government's reading of the

statute, there is also a second, unwritten option: The Attorney General may appoint a new interim U.S. Attorney. Here again, the Government's interpretation brushes up against the fundamental principle of statutory interpretation that "absent provision[s] cannot be supplied by the courts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012). To do so "is not a construction of a statute, but, in effect, an enlargement of it by the court." *Iselin v. United States*, 270 U.S. 245, 251 (1926). If Congress had intended to provide an additional option for appointing an interim U.S. Attorney following the expiration of the Attorney General's 120-day appointment window, it would have said so through the text. But the sole option that Congress wrote into law affords authority to the judiciary "until the vacancy is filled" by appointment under Section 541; it makes no mention of a possible successive appointment by the Attorney General.

> **2.    The Government's Position is Contrary to the Context and Structure of Section 546.**

The Government's theory of Section 546 is also operationally unworkable. Under the Government's reading of the statute, the district court and the Attorney General have concurrent authority to appoint a U.S. Attorney following the expiration of an appointment under Subsection 546(c)(2). The Attorney General and district court thus might select *different* individuals to serve as interim U.S. Attorney. But Section 546 provides no guidance about whose selection would control in this scenario, precisely because the statute does not allow for it to occur in the first instance. The statute's silence is not an accidental omission or a blank canvas for the judiciary's pen. Moreover, an interpretation of Section 546 that would give the Attorney General and district court concurrent authority to name an interim U.S. Attorney would give rise to thorny separation-of-powers questions. "When legislation and the Constitution brush up against each other," however, "[a court's] task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). The Government's theory would force the judiciary to resolve

an unnecessary constitutional conflict.

The statutory history of Section 546 further supports the plain-text reading. Under the reenactment canon of statutory interpretation, "[i]f the legislature amends or reenacts a provision other than by way of a consolidating statute or restyling project, a significant change in language is presumed to entail a change in meaning." Scalia & Garner, Reading Law, § 40 at 256. Such a change happened here. Through the passage of the PATRIOT Act in 2006, Congress "entirely removed the 120-day limit and the district court's backstopping role," and simply provided that "'a person appointed as United States attorney under this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title.'" *United States v. Giraud*, 2025 WL 2416737, at *11 (D.N.J. Aug. 21, 2025) (quoting Pub. L. No. 109-77, Title V, § 502, 120 Stat. 192, 246 (2006)). Yet this switch was "short lived." *Giraud*, 2025 WL 2416737, at *11. Recognizing that the amendment "created a possible loophole that could permit United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation,"[12] Congress in June 2007 enacted a law restoring the pre-2006 regime. H.R. Rep. No. 110-58, at 4 (2007), *see* Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).

The Government's interpretation of Section 546 would give no effect to the 2007 amendment. Instead, the Government's reading would mean that the amendment failed to close the very loophole that motivated its passage. That cannot be the correct reading of the statute. "Courts should remember that '[l]egislation has an aim; it seeks to obviate some mischief.'" Felix

---

[12] The House Report expressed serious concerns about the Executive Branch "[b]ypassing the Requirement of Senatorial Advice and Consent," emphasizing "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." *Giraud*, 2025 WL 2416737, at *11 (quoting H.R. Rep. No. 110-58 at 6 (2007).

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 538–39 (1947); *see also*, Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967, 968 (2021) ("The mischief rule instructs an interpreter to consider the problem to which the statute was addressed, and also the way in which the statute is a remedy for that problem. . . . [T]he generating problem is taken as part of the context for reading the statute."). As Justice Story explained nearly two centuries ago, "[E]very statute is to be expounded reasonably, so as to suppress, and not to extend, the mischiefs, which it was designed to cure." *Sherwood v. Sutton*, 21 F. Cas. 1303, 1307 (C.C.D.N.H. 1828).

Reading Section 546 to enable the Attorney General to string together an infinite number of "interim" U.S. Attorney appointments without any time limitations would fully extinguish the Senate's advice-and-consent role in the appointment of U.S. Attorneys. There would be little incentive for the Executive Branch to ever turn to 28 U.S.C. § 541(a) to undertake the arduous process of Senate confirmation to appoint a "permanent" U.S. Attorney. The Government's reading would thus allow the Executive Branch to sideline the Senate from performing the role it has played continuously since the first Congress. *See* Judiciary Act of 1789, 1 Stat. 73 § 35; Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. at 190. This Court cannot accept an interpretation of Section 546 that would render obsolete Section 541 and, resultingly, the Senate's constitutional role in the appointments process. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided." (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 & n. 11 (1988))).

The Government's novel interpretation of Section 546 is also contrary to the Executive Branch's historical understanding of the statute. Just three days after Congress enacted the 1986 law, the Office of Legal Counsel (OLC) within the DOJ issued an opinion, authored by then-

Deputy Assistant Attorney General Samuel Alito, interpreting the provision in a manner that contradicts the interpretation that the Government maintains.[13]  OLC concluded that while a "vacancy exists when the 120-day period expires under the amended section 546 and the President has either not made an appointment or the appointment has not been confirmed," "it *does not follow* that the Attorney General may make another appointment pursuant to 28 U.S.C. § 546(a) after the expiration of the 120-day period." *Id*. at 2 (emphasis added).  Then-Deputy Assistant Attorney General Alito reasoned that "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *Id.* at 3.  This "contemporaneous[]" Executive Branch interpretation provides persuasive evidence of statutory meaning.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024).

The only district court to confront the Government's theory of Section 546 resoundingly rejected it.  *See Giraud*, 2025 WL 2416737, at *10–12.  As that court recognized, the Government's interpretation of Section 546 is unmoored from the statute's text, structure, and historical context.  There is no canon of statutory construction that supports the Executive Branch's attempt to circumvent the Senate's proper role in the appointments process under Section 541(a).

**B.    As Ms. Halligan's Appointment Occurred Without Statutory Authorization, it Violates the Appointments Clause.**

The Executive Branch violated the Appointments Clause by purporting to appoint Ms. Halligan as interim U.S. Attorney without the advice and consent of the Senate and without any alternative statutory authority to do so.  The Appointments Clause establishes that the President shall not appoint "Officers of the United States," *i.e.*, principal officers, without "the advice and

---

[13] *See Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986), https://perma.cc/SD5Q-7CPH.

consent of the Senate." U.S. Const., Art. II, § 2, cl. 2. Though Congress may pass legislation to vest the power to appoint inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments" the advice-and-consent process is "the default manner of appointment for inferior officers," in the absence of such legislation. *See Edmond*, 520 U.S. at 660. Here, Ms. Halligan was not appointed either 1) by the President with the advice and consent of the Senate, or 2) through a process that Congress had authorized "by Law." Her appointment thus violated the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2.

Congress "by Law" vested the appointment of interim U.S. Attorneys in a "Head of Department[]"—the Attorney General—as well as in "the Courts of Law"—district courts. But the Attorney General's authority to appoint an interim U.S. Attorney had expired by the time she purported to appoint Ms. Halligan, and Ms. Halligan was not appointed by the district court. Accordingly, her appointment was not authorized "by Law." Because the Attorney General's purported appointment of Ms. Halligan occurred in violation of Section 546 and without the advice and consent of the Senate, it also violates the Appointments Clause. *See Trump v. United States*, 603 U.S. 593, 644–45 (2024) (Thomas, J., concurring); *United States v. Trump*, 740 F. Supp. 3d 1245, 1263 (S.D. Fla. 2024).

## II.    MS. HALLIGAN'S UNLAWFUL APPOINTMENT WARRANTS DISMISSAL OF THE INDICTMENT AND AN INJUNCTION BARRING MS. HALLIGAN FROM CONTINUING TO PERFORM THE FUNCTIONS AND DUTIES OF INTERIM U.S. ATTORNEY

### A.    This Court Should Dismiss the Indictment.

Dismissal of the indictment is warranted for three reasons. First, this Court lacks jurisdiction because no "proper representative of the Government" had a role in securing the indictment. *See Providence Journal*, 485 U.S. at 707–08. Second, even if this Court possesses jurisdiction, Supreme Court precedent establishes that an officer's actions are null and void if she

was appointed in violation of the Appointments Clause. *Lucia*, 585 U.S. at 251. And third, because this indictment would not have been sought or obtained absent Ms. Halligan's unlawful appointment under the guise of 28 U.S.C. § 546, the indictment's flaws do not constitute harmless error.

The jurisdictional defect in this prosecution warrants its dismissal. A court does not have jurisdiction over a criminal case unless "a proper representative of the Government" participates in the action. *See Providence Journal*, 485 U.S. at 699 (dismissing previously granted writ of certiorari for lack of jurisdiction in a criminal case where special prosecutor lacked authority to represent United States); *United States v. Bennett*, 464 Fed. Appx. 183, 184–85 (4th Cir. 2012) ("A federal court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative." (citing *Providence Journal Co.*, 485 U.S. at 708)). "Except as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. An indictment "must be signed by an attorney for the government." Fed. R. Crim. P. R. 7(c)(1). Federal Rule of Criminal Procedure 1(b)(1) defines "[a]ttorney for the government" as "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; . . . [and] any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). Because Ms. Halligan's appointment was invalid under Section 546, she does not qualify under any of these provisions. Accordingly, she is not a "proper representative of the Government." *Providence Journal*, 485 U.S. at 707–08.

It is true that an individual's unauthorized participation in a criminal prosecution does not deprive a court of jurisdiction where "he was not the only government attorney assigned to the case and that he was at all times acting under the direction and supervision of an Assistant U.S.

Attorney." *United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990); *see also*, *United States v. Underwood*, 129 F.4th 912, 943–44 (6th Cir. 2025), *cert. denied*, No. 25-5329, 2025 WL 2824485 (U.S. Oct. 6, 2025) (finding that the court possessed jurisdiction because "at all pertinent times, a second, licensed AUSA was present as a representative of the Government"); *Kelley v. United States*, 989 F.3d 67, 71 (1st Cir. 2021) (concluding that the court had jurisdiction because "the supervisors in the United States Attorney's Office had . . . examined and approved the indictment.")).

But where an unauthorized individual is not accompanied by a proper representative of the Government "at all relevant times," however, a court lacks jurisdiction and must dismiss the indictment. *Underwood*, 129 F.4th at 943. Thus, to "determine whether the . . . court ha[s] jurisdiction," it is necessary to determine whether Ms. Halligan was "the only prosecutor in attendance presenting the case against [Ms. James] to the grand jury." *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991). Unless the Government provides evidence that Ms. Halligan was not acting alone in presenting this case to the grand jury, this Court must dismiss for lack of jurisdiction.[14]

Because there is no evidence that any other government attorney played a role in securing the indictment,[15] the Court must dismiss this case for lack of jurisdiction if it determines that Ms.

---

[14] Courts have suggested that jurisdiction may exist where the unauthorized attorney was acting under the approval of authorized supervisors who examined and endorsed the indictment. *See Kelley*, 989 F.3d at 71; *Plesinski*, 912 F.2d at 1038. That does not save Ms. Halligan. Public reports indicate that Ms. Halligan did not coordinate with the DOJ before bringing the indictment of Attorney General James. *See* Kristin Holmes, et al., *Lindsey Halligan didn't coordinate NY AG Letitia James indictment with Pam Bondi's DOJ*, CNN (Updated Oct 10, 2025), https://www.cnn.com/2025/10/10/politics/lindsey-halligan-no-coordinate-letitia-james-indictment-doj.
[15] *See* Bower, *"Anna, Lindsey Halligan Here*.", *Lawfare* (October 20, 2025) (publishing a message in which Ms. Halligan stated that she was "the one handling" this case.).

Halligan was not a proper representative of the United States. *See United States v. Garcia-Andrade*, 2013 WL 4027859, at *5 (S.D. Cal. Aug. 6, 2013).

Even if this Court possesses jurisdiction, the indictment must be dismissed because an officer's actions are null and void if she was appointed in violation of the Appointments Clause. When a court determines that a government actor exercised "power that the actor did not lawfully possess," including because she was not "properly *appointed*," the effect of the ruling is to render her past actions "void." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis added). An improperly appointed officer cannot "lawfully exercise the statutory power of his office at all in light of the rule that an officer must be properly appointed before he can legally act as an officer." *Id.* at 266 (Thomas, J., concurring). In *Ryder v. United States*, 515 U.S. 177 (1995), for example, the Supreme Court "reversed" the court-martial conviction of a defendant after he successfully challenged the appointment of the intermediate appellate judges who reviewed his case. *Id.* at 188. Likewise, in *Lucia*, the Court set aside an agency adjudication "tainted with an appointments violation." 585 U.S. at 251. The *Lucia* Court made clear that a decision of an improperly appointed official cannot stand. *Id.* The same remedy is appropriate here.

Because Ms. Halligan's unlawful appointment fundamentally tainted the structural integrity of the grand jury process, this is a case where the harmless-error inquiry does not apply. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988). It is not necessary for a court to consider the prejudicial impact of an error where, as here, "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Id*.

But if this Court did evaluate the prejudicial impact of Ms. Halligan's improper involvement in this prosecution, it would conclude that the Government cannot sustain its "burden

of showing harmlessness" under Federal Rule of Criminal Procedure 52(a). *United States v. Davila*, 569 U.S. 597, 607 (2013). "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1966). Here, the context of the indictment makes clear that *but for* Ms. Halligan's improper appointment as interim U.S. Attorney, Attorney General James' indictment would not have even been presented to a grand jury. President Trump publicly asked the Attorney General to appoint Ms. Halligan (which she ultimately did unlawfully) because he seemingly believed that under Mr. Siebert, "nothing is going to be done" about "Letitia"—*i.e.*, Attorney General James—and others who had targeted him and were, in the President's view, "guilty as hell."[16] News reports and the President's own public statements indicate that the grand jury proceeding would not have occurred absent Ms. Halligan's unlawful appointment. The only proper remedy is dismissal.

**B.    This Court Should Enjoin Ms. Halligan From Prosecuting Cases, Supervising Prosecutions, and Performing Any of the Other Functions or Duties of Interim U.S. Attorney**

Regardless of whether this Court dismisses the indictment, Attorney General James respectfully requests that it issue an injunction barring Ms. Halligan from acting as interim U.S. Attorney. Specifically, this Court should enjoin Ms. Halligan from participating in or supervising the prosecution of this case, and from exercising any other functions or duties of an interim U.S. Attorney. Because Ms. Halligan has no authority to serve as interim U.S. Attorney under Section 546 and is not legitimately exercising the functions and duties of that office—or any other office that would allow her to litigate on behalf of the United States—her participation in Attorney

---

[16] Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025), https://www.cnn.com/2025/09/20/politics/trump-justice-department-pam-bondi.

General James' case and in grand jury proceedings causes irreparable harm. For these reasons, Ms. Halligan must be enjoined from participating in grand jury proceedings and the ongoing prosecution of this case.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the indictment and enjoin Ms. Halligan from participating in the prosecution of this case.

Dated: October 24, 2025

Respectfully submitted,

<table>
<tr><td><em>/s/ Abbe David Lowell</em></td><td><em>/s/ Andrew Bosse</em></td></tr>
<tr><td>Abbe David Lowell (<em>admitted pro hac vice</em>)</td><td>Andrew Bosse (VSB No. 98616)</td></tr>
<tr><td>David A. Kolansky (<em>admitted pro hac vice</em>)</td><td>BAUGHMAN KROUP BOSSE PLLC</td></tr>
<tr><td>Isabella M. Oishi (<em>admitted pro hac vice</em>)</td><td>500 E. Main Street, Suite 1400</td></tr>
<tr><td>LOWELL & ASSOCIATES, PLLC</td><td>Norfolk, VA 23510</td></tr>
<tr><td>1250 H Street NW, Suite 250</td><td>Tel: (757) 916-5771</td></tr>
<tr><td>Washington, DC 20005</td><td>ABosse@bkbfirm.com</td></tr>
<tr><td>Tel: 202-964-6110</td><td></td></tr>
<tr><td>Fax: 202-964-6116</td><td></td></tr>
<tr><td>ALowellpublicoutreach@lowellandassociates.com</td><td></td></tr>
<tr><td>DKolansky@lowellandassociates.com</td><td></td></tr>
<tr><td>IOishi@lowellandassociates.com</td><td></td></tr>
</table>

*Attorneys for Letitia A. James*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES B. COMEY, JR.<br><br>*Defendant.* | Criminal No. 1:25-CR-272 |
| UNITED STATES OF AMERICA<br><br>v.<br><br>LETITIA A. JAMES,<br><br>*Defendant.* | Criminal No. 2:25-CR-122 |

## <u>UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO THE MOTIONS TO DISMISS CHALLENGING THE U.S. ATTORNEY'S APPOINTMENT</u>

The United States files this opposition to the motions by Defendants James B. Comey, Jr. and Letitia A. James to dismiss their respective indictments (No. 25-cr-272, ECF No. 60; No. 25-cr-122, ECF No. 22) on the theory that interim U.S. Attorney Lindsey Halligan was improperly appointed. Because Defendants' arguments overlap substantially, and this Court has consolidated the motions for argument, the government files this consolidated response to both motions. The government will respond separately to Comey's motion to dismiss his indictment on vindictive- and selective-prosecution grounds (No. 25-cr-272, ECF No. 59), which remains pending before Judge Nachmanoff.

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 3

Argument .................................................................................................................... 5

I.    Ms. Halligan is validly serving as interim U.S. Attorney under 28 U.S.C. § 546 ................. 5

    A.    Ms. Halligan's appointment complies with the plain text of Section 546(a) .................. 5

    B.    Section 546(c)(2)'s time limit applies on a per-appointment basis and does not
    impliedly foreclose additional interim appointments ....................................... 6

    C.    Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly
    displace the Attorney General's parallel authority in Section 546(a) .......................... 13

II.    Neither dismissal nor an injunction are appropriate remedies ................................................ 19

    A.    Whatever her status as U.S. Attorney, Ms. Halligan validly obtained and signed the
    indictment as an attorney for the government ................................................ 19

    B.    Any defect in Ms. Halligan's authority does not invalidate the indictments ................ 21

    C.    The Attorney General has ratified the indictments, curing any defect ......................... 27

    D.    At minimum, any dismissal should be without prejudice ............................................. 28

    E.    James' other remedial requests should be rejected ...................................................... 29

Conclusion ................................................................................................................. 30

## INTRODUCTION

Although Defendants frame their arguments in constitutional terms, all agree that U.S. Attorneys are inferior officers whose appointment the Constitution permits Congress to vest "by Law" in a "Head[] of Department[]" like the Attorney General.  U.S. Const. art. II, § 2, cl. 2; *see* Comey Mot. 2; James Mot. 4.  All further agree that Congress, in 28 U.S.C. § 546, did in fact vest the Attorney General with the power to appoint U.S. Attorneys for at least 120 days.  *See* Comey Mot. 3, 8, 13, 17; James Mot. 5.  The sole question is whether Section 546 authorized the Attorney General to appoint interim U.S. Attorney Lindsey Halligan in the circumstances here: where a previous interim U.S. Attorney vacated office after serving 120 days and being reappointed by the district court.  Section 546's text supplies a straightforward answer: yes.

Under Section 546(a), "[e]xcept as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."  By its plain terms, that power is subject to one and only one exception: subsection (b), which bars appointing individuals to whom the Senate refused advice and consent.  All agree that the office of U.S. Attorney for this district was vacant when Ms. Halligan was appointed.  And no one claims that Subsection (b) applies since the Senate has not yet acted on Ms. Halligan's nomination.  Because Section 546(a)'s plain text is satisfied, Ms. Halligan's appointment is valid.

Defendants claim that other portions of Section 546 *impliedly* prevent the Attorney General from appointing an interim U.S. Attorney 120 days after her *first* interim appointment.  But Section 546 says no such thing.  Section 546(c)(2) permits "[a] person appointed" under Section 546 to serve until "the expiration of 120 days after appointment by the Attorney General under this section."  Thus, each appointment under Section 546(a) may not exceed 120 days.  The Attorney General must revisit her choice periodically, consistent with the nature of interim appointments.

1

J.A. 171

Defendants instead read Section 546(c)(2) to impose an *aggregate* 120-day limit as if an appointment expired "120 days after *the initial* appointment by the Attorney General." But that is not the statute Congress wrote.

Defendants also invoke Section 546(d), which provides that, after "an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." By its terms, that provision offers a parallel track to Attorney General appointments under Section 546(a), ensuring that the office of U.S. Attorney is promptly filled. Defendants, however, read Section 546(d) as if it said that "*only* the district court may appoint a United States attorney" after 120 days. But again, Congress made a different choice, and Defendants seek to rewrite the statute based on misplaced policy concerns.

Even were Ms. Halligan's appointment invalid, the motions to dismiss should be denied. While Defendants challenge Ms. Halligan's appointment as interim *U.S. Attorney*, the actions they challenge do not hinge on her validly holding that particular office. Any government attorney can present a case to a grand jury or sign an indictment, and the Attorney General plainly possessed and exercised the authority to make Ms. Halligan a government attorney, as the Attorney General has now confirmed. *See* Ex. A. Moreover, any defect in Ms. Halligan's role does not taint the indictments themselves: She at least was a de facto officer, and any error was harmless since the Attorney General indisputably could have appointed her in a different capacity to obtain the indictments. In all events, the government has endorsed the prosecutions, and the Attorney General has personally ratified the indictments to obviate any question as to their validity. *Id.* At minimum, any dismissal should be without prejudice to permit the government to seek new indictments now that the Attorney General has cured any arguable flaw in Ms. Halligan's authority to prosecute.

2

J.A. 172

## BACKGROUND

***Legal Background.*** "Investigative and prosecutorial decision making is the special province of the Executive Branch, and the Constitution vests the entirety of the executive power in the President, Art. II, § 1." *Trump v. United States*, 603 U.S. 593, 620 (2024) (citation and quotation marks omitted). The Attorney General, "as head of the Justice Department, acts as the President's 'chief law enforcement officer.'" *Id.*; *see* 28 U.S.C. § 503. And U.S. Attorneys, appointed for each federal judicial district, act as "the chief federal law enforcement official[s] for the judicial district[s] [they] serve." *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992); *see* 28 U.S.C. § 547.

Congress has provided for the appointment of U.S. Attorneys for four-year terms by the President with the advice and consent of the Senate. 28 U.S.C. § 541(a)-(b). But because U.S. Attorneys are "inferior officer[s]" subject to the control of the Attorney General and, ultimately, the President, *Myers v. United States*, 272 U.S. 52, 159 (1926), Congress may also by law vest the power to appoint U.S. Attorneys in "the President alone, in the Courts of Law, or in the Heads of Departments," like the Attorney General. U.S. Const. art. II, § 2, cl. 2. In the absence of a Senate-confirmed U.S. Attorney, Congress has authorized numerous fallback means for the duties of that office to be exercised. The Federal Vacancies Reform Act (FVRA), for instance, allows certain individuals to temporarily perform the duties of offices requiring Senate confirmation (like U.S. Attorney). *See* 5 U.S.C. § 3345. In addition, Congress has vested the Attorney General with "[a]ll functions" of Department of Justice officers and employees, including U.S. Attorneys, plus the general authority to conduct and supervise litigation on behalf of the United States, 28 U.S.C. §§ 509, 516-519, and allowed the Attorney General to delegate those powers to any Department of Justice officer or employee, *id.* § 510. The Attorney General may appoint attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings … , which United

States attorneys are authorized by law to conduct." *Id.* § 515(a).  The Attorney General may "retain[]" "special assistant[s]" or "special attorney[s]." *Id.* § 515(b).  And she may appoint "officials … to detect and prosecute crimes against the United States." *Id.* § 533(1).

Congress also has authorized the appointment of U.S. Attorneys on an interim basis under 28 U.S.C. § 546.  Section 546(a) supplies the topline grant of authority:  "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."  Section 546(b) provides a single exception: "The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent."  Section 546(c) provides a time limit on an interim appointment:  "A person appointed as United States attorney under this section may serve until the earlier of—(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title," *i.e.*, Senate confirmation of a U.S. Attorney, "or (2) the expiration of 120 days after appointment by the Attorney General under this section."  And Section 546(d) provides yet another fallback option, ensuring that when the Attorney General fails to act, there will be *someone* to exercise the powers of U.S. Attorney:  "If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  Regardless of how she was appointed, "[e]ach United States attorney is subject to removal by the President." *Id.* § 541(c); *see In re Sealed Case*, 838 F.2d 476, 521 (D.C. Cir. 1988) (R.B. Ginsburg, J., dissenting) ("Under § 546, of course, the executive branch is free to replace the interim U.S. Attorney at any time.").

*Factual Background.*  On January 20, 2025, the incumbent U.S. Attorney for the Eastern District of Virginia resigned.  The next day, the Acting Attorney General appointed Erik Siebert as interim U.S. Attorney under Section 546(a).  Mr. Siebert's initial appointment expired 120 days

4

later, on May 21, 2025, *see* 28 U.S.C. § 546(c)(2), and the judges of the Eastern District reappointed him under Section 546(d).

On September 19, 2025, Mr. Siebert vacated the office of U.S. Attorney.  The next day, the President announced his intention to nominate Lindsey Halligan as U.S. Attorney with the Senate's advice and consent under 28 U.S.C. § 541(a).[1]  To lead the office in the interim, on September 22, the Attorney General named Ms. Halligan as interim U.S. Attorney under Section 546(a).  The Senate received Ms. Halligan's nomination on September 30.[2]

After Ms. Halligan's appointment as interim U.S. Attorney, on September 25, 2025, a grand jury in the Eastern District returned a two-count indictment charging Comey with making false statements to Congress, in violation of 18 U.S.C. § 1001(a)(2), and obstructing a congressional proceeding, in violation of 18 U.S.C. § 1505.  No. 25-cr-272, ECF No. 1.  On October 9, a grand jury returned an indictment charging James with bank fraud, in violation of 18 U.S.C. § 1344, and making false statements to a financial institution, in violation of 18 U.S.C. § 1014.  No. 25-cr-122, ECF No. 1.  For each indictment, the only government attorney who signed was Ms. Halligan.

## ARGUMENT

I.    **Ms. Halligan Is Validly Serving as Interim U.S. Attorney Under 28 U.S.C. § 546**

A.    **Ms. Halligan's appointment complies with the plain text of Section 546(a)**

Section 546(a) states: "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."  Subsection (b), in turn, prohibits the Attorney General from appointing someone "whose appointment by the President to that office the Senate refused to give advice and consent."  Those

---

[1]  Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025), https://truthsocial .com/@realDonaldTrump/posts/115239776714791650.

[2]  *PN559 – Lindsey Robyn Michelle Halligan – Department of Justice*, Congress.gov (last visited Nov. 3, 2025), https://congress.gov/nomination/119th-congress/559.

J.A. 175

criteria are plainly met here: The "office of United States attorney" for the Eastern District became vacant upon Mr. Siebert's September 19 departure. And the Senate has not refused advice and consent to Ms. Halligan—her nomination remains pending. The Attorney General therefore lawfully appointed Ms. Halligan as interim U.S. Attorney under Section 546 and the Appointments Clause, and the motions to dismiss should be denied. These cases are that simple.

Defendants, however, contend that Sections 546(c) and (d) together implicitly "limit[] the total tenure of the Attorney General's interim appointment to 120 days," after which only court-appointed interim U.S. Attorneys are allowed. Comey Mot. 9; *see* James Mot. 6. But Section 546 imposes only one exception to the Attorney General's appointment authority: Section 546(b)'s bar on appointees to whom the Senate has refused advice and consent. Because "Congress provide[d] exceptions in a statute," courts do not "have authority to create others." *United States v. Johnson*, 529 U.S. 53, 58 (2000).

**B.    Section 546(c)(2)'s time limit applies on a per-appointment basis and does not impliedly foreclose additional interim appointments**

1.    Defendants principally rely on Section 546(c), which states that "[a] person appointed as United States attorney under this section may serve until" the qualification of a Senate-confirmed U.S. Attorney or "the expiration of 120 days after appointment by the Attorney General under this section." Ms. Halligan's appointment fully complies with that provision: She is "[a] person appointed as United States attorney under this section." The Senate has not yet confirmed her or any other nominee as U.S. Attorney. And Ms. Halligan has not yet served "120 days after appointment by the Attorney General under this section." Nothing in the text explicitly or implicitly precludes the Attorney General from making additional appointments under Section 546(a) after 120 days if a new vacancy arises. Again, Subsection (a) identifies only one exception to the Attorney General's appointment authority: Subsection (b), not Subsection (c).

6

J.A. 176

If anything, Section 546(c) expressly contemplates that the Attorney General may make multiple interim appointments by referring to "*A* person appointed as United States attorney under this section" rather than "*The* person" appointed.  Defendants recognize as much (Comey Mot. 9; James Mot. 6) but claim that the Attorney General must cram multiple appointments into a single 120-day period.  But the far more natural reading is that each "appointment" triggers its own 120-day clock:  Each "person appointed" may serve until "120 days after appointment."  That reading does not render the 120-day time limit "meaningless," as Comey asserts (at 9).  The Attorney General must revisit her interim appointments every 120 days.  They do not automatically renew.  That process provides political accountability, ensuring that an appointee without Senate confirmation cannot serve indefinitely without frequent, personal review by the Attorney General.  At the same time, Congress did not hamstring the Attorney General with an artificial, one-time-only appointment window.

That reading also tracks the ordinary presumption that, "when a statute provides for an appointee to serve a term of years, the specified time of service begins with the appointment."  23 Op. O.L.C. 123, 123 (1999); *see* Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* § 386, at 254 (1890); 16 Op. Att'y Gen. 656 (1880).  For example, if a Senate-confirmed U.S. Attorney resigns before the end of his four-year term, 28 U.S.C. § 541(b), a new Senate-confirmed U.S. Attorney is entitled to his own four-year term, not the remaining days of his predecessor's term.  Likewise, each new interim appointment triggers a new 120-day clock under Section 546(c)(2), avoiding the instability of artificially limited appointments in the waning days of the initial 120-day period.

Recent Fourth Circuit precedent supports the same conclusion.  In *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), the circuit addressed a regulation authorizing the appointment

J.A. 177

of "temporary Board [of Immigration Appeals] members for terms not to exceed six months." *Id.* at 716 (quoting 8 C.F.R. § 1003.1(a)(4) (2022)). An alien challenged the Attorney General's reappointment of a temporary Board member to four successive six-month terms. *Id.* The court rejected that challenge, recognizing that the regulation's "language doesn't restrict the power to appoint the same person to multiple consecutive terms," so successive terms are permissible. *Id.* at 717. As the Eighth Circuit added in rejecting a similar argument, implying a limitation on successive appointments "would be inconsistent with the Attorney General's broad power to make appointments and delegate duties to his subordinates." *Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024). Likewise, nothing in Section 546(c)'s text limits the Attorney General's authority to make successive interim U.S. Attorney appointments, meaning that the Attorney General's ordinary, broad authority to appoint subordinates and delegate her prosecutorial powers applies.

2. Defendants' contrary approach (Comey Mot. 8-9; James Mot. 6-7) reads Section 546(c)(2) as if it said that an interim appointment lasts until "the expiration of 120 days after *the initial* appointment by the Attorney General under this section." That reading violates the basic interpretive rule that courts may not "add words … to the statute Congress enacted." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Section 546(c)(2)'s clock on interim service by "[a] person appointed" runs from "appointment," not "the initial appointment" of someone else. Defendants' more specific justifications for their 120-days-and-done approach are equally untenable:

*First*, Defendants claim (Comey Mot. 11; James Mot. 8) that, had Congress wanted each appointment to last up to 120 days, Congress would have made appointments expire "120 days after *that* appointment" or "after *his or her* appointment" rather than "120 days after appointment." But the "appointment" to which Congress naturally referred in Subsection (c)(2) is the same "appointment" that Congress has been discussing throughout Section 546. Subsection (a) allows the

8

J.A. 178

Attorney General to "*appoint* a United States Attorney," who is referred to again in Subsection (c) as "A person *appointed*." Congress presumptively uses terms (even with variations) "in one consistent sense" in "neighboring provisions." *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 389 (2021). The unadorned word "appointment" logically refers to the appointment of the "person *appointed*." That inference is particularly apt here given that all agree (Comey Mot. 9; James Mot. 6) that the Attorney General may appoint multiple interim U.S. Attorneys, so the reader must infer *which* "appointment" Congress was referring to. In context, the obvious referent is the appointment of the "person appointed" that Congress has been discussing, not the initial appointment of someone *else*.

*Second*, Comey contends (at 11) that the government's reading renders superfluous the phrase "under this statute" in Subsection (c)(2)'s tying of the 120-day clock to "appointment by the Attorney General under this section." But "under this statute" serves at least two functions: To begin, it draws a contrast with Subsection (c)(1)'s discussion of someone "appointed by the President under section 541 of this title," reorienting the reader that Subsection (c)(2) is discussing an Attorney General appointment under Section 546. Furthermore, it clarifies that the 120-day limit governs appointments only under Section 546, not the many other authorities for individuals to perform the duties of U.S. Attorneys temporarily. *See supra* pp. 3-4. In any event, Comey's reading adds no additional meaning to "under this section." He reads "after appointment by the Attorney General" to mean "after *the initial* appointment by the Attorney General." Reading Congress's subsequent inclusion of "under this section" to "refer[] more broadly to *any* appointment 'under this section,'" Comey Mot. 11, does not support emending the statute in the way Defendants ask.

*Third*, Comey asserts (at 11-12) that the limit in Subsection (c)(1)—that an interim U.S. Attorney may not serve once the Senate confirms the President's nominee under Section 541—is

not "appointee-specific," so (c)(2) should not be read as "appointee-specific" absent "clear lan-guage to that effect." But Subsection (c)(2) is perfectly clear: It uses "appointment" to refer to the "person appointed as United States attorney under this section." Regardless, Subsection (c)(1) does not address a specific appointee because it sets out a condition that does not turn on the status of any interim appointment. Once the Senate confirms a U.S. Attorney, the interim officeholder is out, regardless of how long she served or who appointed her. Subsection (c)(2), by contrast, ad-dresses when an interim appointment expires and thus logically turns on the "appointment" at issue.

3.    Defendants' reading also contradicts Section 546's statutory history. As Defendants recognize (Comey Mot. 15-16; James Mot. 9), between 1986 and 2006, Section 546 was identical to the current version. Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616-17 (1986). During that period, the government repeatedly used successive 120-day appointments for interim U.S. Attor-neys. In 1987, the Attorney General reappointed an interim U.S. Attorney after the initial 120-day clock had run—an appointment that was challenged in court and upheld. *In re Grand Jury Pro-ceedings*, 671 F. Supp. 5, 6-7 (D. Mass. 1987). The Congressional Research Service reports that, "between January 1993 and March 9, 2006, at least eight U.S. Attorney vacancies—three under the Clinton Administration and five under the Bush Administration—were filled through succes-sive 120-day appointments by the Attorney General under the provisions of 28 U.S.C. § 546." Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008). In debating later amendments to Section 546, Senator Kyl identified two pre-2006 instances when interim U.S. Attorneys served three or even four successive 120-day terms. 153 Cong. Rec. S3250 (daily ed. Mar. 19, 2007). As far as the government is aware, the only district court to consider the practice contemporaneously approved

10

it, *In re Grand Jury*, 671 F. Supp. at 7, and until the current Administration, no court questioned it, *see United States v. Giraud*, 2025 WL 2416737, at *9 (D.N.J. Aug. 21, 2025).

In 2006, Congress amended Section 546 to eliminate the district court's appointment power and permit the Attorney General's appointee to serve indefinitely. Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006). But following controversy over the Bush Administration's firings of U.S. Attorneys, in 2007, Congress restored the previous language—language that was still well understood to authorize successive appointments. Pub. L. No. 110-34, § 2, 121 Stat. 224, 224 (2007). Where "Congress has chosen to maintain the relevant provisions"—and, here, affirmatively reenacted them—against "decades" of executive-branch practice, Congress should be understood to have implicitly ratified that practice. *Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 190 (D.C. Cir. 2022); *see Salomon-Guillen*, 123 F.4th at 718 (relying on "agency practice" of successive Board of Immigration Appeals appointments).

Citing legislative history, Defendants assert (Comey Mot. 16-17; James Mot. 9) that the purpose of the 2007 amendment was to prevent successive interim appointments. "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And Defendants' legislative history reflects the proverbial "looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). While some members certainly wanted to prohibit successive appointments, Senator Kyl correctly pointed out that, "because [the bill] reinstates the exact language that existed before the statute was amended in 2006[,] the Attorney General could make consecutive 120-day appointments of interim U.S. attorneys." 153 Cong. Rec. S3250. Congress was thus "aware that even upon a return to the previous version of section 546," the Attorney General could rely "on preexisting legal rationales" to make "successive interim appointments." *Restoring Checks and Balances in the Confirmation Process of*

11

J.A. 181

*United States Attorneys: Hearing Before the Subcomm. on Comm'l & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong. 132 (2007) (statement of T.J. Halstead, Cong. Rsch. Serv.). And the Senate rejected an amendment that would have repealed the Attorney General's interim appointment authority altogether. 153 Cong. Rec. S3227, S3302. If Congress had intended to block successive appointments in 2007, as Defendants claim, returning to the former text that had long been understood to authorize such appointments would have been a bizarre way of doing so.

Instead, the 2007 amendment means what it says: The Attorney General can no longer make a single indefinite appointment under Section 546 as she could under the 2006 version; she must revisit her choice every 120 days. And courts may once again appoint interim U.S. Attorneys as a backstop. That amendment marks a significant change from the *2006* version. *Contra* James Mot. 9-10. But in reenacting the pre-2006 text, Congress presumptively ratified the Executive's longstanding use of successive 120-day appointments under *that* version of the statute.

Defendants also place (Comey Mot. 15; James Mot. 10-11) significant weight on a 1986 memorandum by then-Deputy Assistant Attorney General Alito identifying a purported "Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court." Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William P. Tyson, Director, Exec. Office for U.S. Att'ys 3 (Nov. 13, 1986) (Alito Mem.). But consistent with the era in which it was written, the extent of the memorandum's analysis is a citation of a single House floor statement. *Id.*; *see Brnovich v. DNC*, 594 U.S. 647, 667 (2021) (Alito, J.) (declining to follow the approach of a 1986 case that "jumped right" to legislative history rather than "start[ing] with a careful consideration of the text"). And the cited statement does not even suggest that the Attorney General cannot make multiple appointments that total over 120 days; the congressman merely said that once an interim appointment "*expires*, the district court appoints a

J.A. 182

United States Attorney," *i.e.*, the government cannot let one 120-day appointment lapse, but multiple, shorter appointments may be allowed. 132 Cong. Rec. H11294 (daily ed. Oct. 17, 1986) (emphasis added). In any event, the memorandum left open whether the Attorney General could make an additional appointment if the district court failed to act, Alito Mem. 4, refuting Comey's claim (at 15) that the memorandum took "precisely the same" approach he takes here. And subsequent Department of Justice practice rebuts any suggestion that the Attorney General is limited to a single 120-day period, with the first of many successive interim appointments made less than 10 months after the memorandum issued. *In re Grand Jury Proceedings*, 671 F. Supp. at 6.

**C.    Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly displace the Attorney General's parallel authority in Section 546(a)**

1.    Defendants also divine (Comey Mot. 9-10; James Mot. 7-8) their implied limitation from Section 546(d), which provides that, "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." Here, Mr. Siebert's initial appointment expired on May 21, and the judges of the Eastern District appointed him to a new, indefinite term subject to presidential removal. Yet Mr. Siebert then vacated his office on September 19, and nothing in Subsection (d) explicitly or implicitly limited the Attorney General's authority to appoint an interim U.S. Attorney under Subsection (a) to fill the vacancy. Again, the only limitation in Subsection (a) is that it applies "[e]xcept as provided in subsection (b)." Defendants' reading impermissibly treats Subsection (d) as an additional, unstated restriction. *See supra* p. 6.

Section 546(d)'s text further refutes Defendants' reading. Subsection (d) says that "the district court for such district may appoint a United States attorney" once a 120-day appointment has expired, not that "*only* the district court … may appoint." Subsection (d) thus provides a parallel grant of authority; it does not displace Subsection (a). Comey claims otherwise (at 10)

13

J.A. 183

based on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), a case about whether the Federal Rules of Civil Procedure displaced a state-law class-action limit. But when it comes to the federal government's powers, it is common for Congress to grant "parallel authority." *United States v. Gaubert*, 499 U.S. 315, 329 (1991) (parallel regulatory authority for banking agencies); *e.g.*, 15 U.S.C. § 18a(b)(2) (authorizing both the Federal Trade Commission and the Department of Justice to review mergers under the Clayton Act).

Parallel tracks are especially common in the *appointments* context to ensure the continuity of government and provide the Executive Branch with flexibility to implement its priorities with its preferred personnel. For example, 28 U.S.C. § 508(b) allows the Attorney General to designate certain subordinates to serve as Acting Attorney General during a future vacancy, while the FVRA authorizes the President to select different people to temporarily perform Senate-confirmed offices, including Attorney General. 5 U.S.C. § 3345(a)(2), (3). Those two authorities, the Fourth Circuit has held, are "alternative[s]," not "mutually exclusive." *United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020); *see* 42 Op. O.L.C. 182 (2018). Likewise, Defendants accept that the Attorney General may make at least 120 days' worth of interim U.S. Attorney appointments even though the FVRA says that "the first assistant … *shall* perform the functions and duties of the office temporarily" during a vacancy. 5 U.S.C. § 3345(a)(1) (emphasis added); *see Giraud*, 2025 WL 2416737, at *6 (agreeing that the FVRA and Section 546(a) are "alternative[s]"). Sections 546(a) and (d) similarly provide parallel authority to ensure that the office of U.S. Attorney does not stay vacant if the Attorney General neglects to make a successive appointment. As Comey recognizes (at 8), "the importance of the office mandates a mechanism for ensuring that it will function on an interim basis when no Senate-confirmed occupant serves." *See* James Mot. 5 (similar).

14

Nor are Defendants correct (Comey Mot. 12; James Mot. 8) that "concurrent" authorities would produce "an intractable conflict" or "thorny separation-of-powers questions." If both the Attorney General and the court attempt to make an appointment, the President can remove the court's appointee to ensure that the Attorney General's choice prevails. 28 U.S.C. § 541(c). The same would be true if the Attorney General attempted to designate one successor under 28 U.S.C. § 508(b) and the President preferred someone else under the FVRA. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020). To the extent there is a dispute over whether a district court or the President should decide who gets to wield executive power, the Constitution provides a clear answer: the President. In any event, no such conflict exists here. The district court did not appoint anyone in the days following Mr. Siebert's departure.

2.      At bottom, Defendants' arguments sound in policy, not text: If "the Attorney General could string together 120-day appointments," they claim, "the Executive Branch could circumvent both the district court's role under subsection (d) and Senate confirmation under Section 541." Comey Mot. 10, 13; *see* James Mot. 10. But "even the most formidable policy arguments cannot overcome a clear statutory directive." *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 245 (2021) (cleaned up). And Defendants' concerns ring hollow given that the government previously let the district court make an appointment, has now submitted Ms. Halligan for Senate confirmation, and secured Senate confirmation of 16 U.S. Attorneys mere weeks ago.[3]

Defendants' policy argument also assumes the conclusion that Subsection (d) seeks to make the court, not the Attorney General, the sole appointer of interim U.S. Attorneys after 120 days.

---

[3] U.S. S. Comm. on the Judiciary, *Confirmed Nominations*, https://www.judiciary .senate.gov/nominations/confirmed (16 U.S. Attorneys confirmed on October 7, 2025).

Instead, as explained above, Subsection (d) simply offers a failsafe should the Attorney General not make an appointment. Regardless, Defendants' own reading does not guarantee district-court appointments, since if the government uses the FVRA instead of Section 546(a), the district court's authority is never triggered. Likewise, because Subsection (d) is triggered only when "an *appointment* expires under subsection (c)(2)," the district court cannot appoint if the Attorney General's appointee vacates office *before* expiration of the appointment after 120 days. And even the Alito memorandum on which Defendants rely contemplates that the Attorney General might make successive appointments if the district court fails to act, Alito Mem. 4—a conclusion that makes sense lest a slow-moving district court stymie prosecutorial power. Permitting the Attorney General to appoint an additional interim U.S. Attorney is not "circumvent[ing]" or "sidelin[ing]" anyone (Comey Mot. 13; James Mot. 10), but allowing the statute's parallel authorities to work.

Defendants' concerns over bypassing Senate confirmation are particularly puzzling given that, even on their reading, *court*-appointed interim U.S. Attorneys can serve indefinitely. *E.g.*, *United States v. Hilario*, 218 F.3d 19, 21 (1st Cir. 2000) (court-appointed U.S. Attorney served over six years). Historically district courts have overwhelmingly reappointed the Attorney General's choice, as happened with Mr. Siebert and multiple other U.S. Attorneys in the Fourth Circuit this year.[4] In practice, Defendants would frequently allow the President's pick to serve an entire four-year term or longer without Senate confirmation or even periodic reassessment.

There is a reason, however, that lengthy interim appointments are the exception, not the rule. In addition to obviating the need to revisit an appointment every 120 days, the imprimatur

---

[4] *See, e.g.*, W.D.N.C., U.S. Att'y's Office, *United States Attorney Russ Ferguson* (Aug. 4, 2025), https://www.justice.gov/usao-wdnc/staff-profile/united-states-attorney; Press Release, D. Md., U.S. Att'y's Office, *Court Appoints Hayes U.S. Attorney for the District of Maryland* (June 25, 2025), https://www.justice.gov/usao-md/pr/court-appoints-hayes-us-attorney-district-maryland; Order, *In re Appointment of Bryan P. Stirling*, No. 3:25-mc-626 (D.S.C. Aug. 19, 2025).

16

of Senate confirmation offers tangible benefits, telling courts and litigants that the U.S. Attorney has the backing of two branches of government and will presumptively lead the office for four years with a direct line of accountability to the President. *See* 28 U.S.C. § 541(b). The Executive has little incentive to forgo those benefits across the board, which is why presidential appointment and Senate confirmation remain the norm, even though the FVRA allows the Executive to fill vacancies with acting appointees for far longer than 120 days. *See* 5 U.S.C. § 3346 (general 210-day limit on acting designations, with lengthy extensions if nominations are made). And again, the claim that the government engaged in a "gambit" (Comey Mot. 13) to avoid the district court and Senate makes no sense here where the government let the district court make an appointment, allowed him to serve for four months, and submitted Ms. Halligan for Senate approval.

3.     To the extent Section 546 is ambiguous, constitutional avoidance favors the government's reading. *See FCC v. Fox Television Stations,* 556 U.S. 502, 516 (2009) ("[A]mbiguous statutory language [should] be construed to avoid serious constitutional doubts."). There are few functions more "quintessentially executive" than the "[i]nvestigation and prosecution of crimes." *Trump*, 603 U.S. at 620. Article II therefore requires that the President have "*complete* control over investigation and prosecution of violations of the law," including over the prosecutors who carry out those duties. *Morrison v. Olson*, 487 U.S. 654, 710 (1988) (Scalia, J., dissenting). Conversely, Article III requires courts to "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution." *Muskrat v. United States*, 219 U.S. 346, 355 (1911); *see* U.S. Const. art. III, § 1. Congress may permit "Courts of Law" to appoint some inferior officers. U.S. Const. art. II, § 2, cl. 2. But Congress may not do so in a way that "is incongruous with the appointers' judicial duties or unduly interferes with the proper functioning of the Executive Branch." *Hilario*, 218 F.3d at 26.

17

J.A. 187

Defendants' position steers into that constitutional concern by allowing Article III courts to control the appointment of a paradigmatic executive official *even over the President's objection*. On Defendants' view, once the 120-day clock has run on the Attorney General's initial appointment, only the district court can appoint an interim U.S. Attorney until there is a Senate-confirmed replacement. The President, of course, remains free to remove whomever the court selects. 28 U.S.C. § 541(c). But that arrangement raises the possibility that the court could continue making appointments unacceptable to the President, and the President could continue removing those appointees until the court picks someone to his satisfaction. That regime is far more "profoundly destabilizing" (Comey Mot. 12) than one in which the Attorney General and district court make simultaneous picks and the Attorney General's pick prevails. Courts ordinarily strive to avoid, not embrace such "interbranch conflict," which raises "significant separation of powers issues." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 866, 868 (2020).

This case illustrates the danger: Presumably because the previous interim U.S. Attorney was appointed by the judges of the Eastern District, those judges *sua sponte* transferred the present motions to this Court. Other courts have felt compelled to transfer similar cases challenging U.S. Attorney appointments.[5] Courts should avoid an interpretation that would routinely put themselves in the uncomfortable position of being the subjects, not the arbiters, of cases or controversies. Instead, consistent with the Appointments Clause and the separation of powers, Congress gave district courts only a narrow, yet important, role in ensuring the efficient and continuous exercise of federal authority when the political branches fail to act.

---

[5] *E.g.*, *United States v. Garcia*, 2025 WL 2784640, at *2 (D. Nev. Sept. 30, 2025) (entire District of Nevada recused and transferred motions to Arizona after defendants challenged acting U.S. Attorney's appointment); *Giraud*, 2025 WL 2416737, at *4 (Chief Judge of Third Circuit had to specially designate out-of-district judge to adjudicate acting U.S. Attorney's appointment after District of New Jersey judges attempted an interim appointment that the President disapproved).

18

J.A. 188

## II.    Neither Dismissal Nor an Injunction Are Appropriate Remedies

Even were Ms. Halligan's appointment invalid, dismissal, especially with prejudice, would not be an appropriate remedy for what is at most a procedural misstep in how the Attorney General phrased the appointment.  James' request for prospective relief should also be denied now that the Attorney General has reappointed Ms. Halligan under other, unchallenged authorities.

### A.    Whatever her status as U.S. Attorney, Ms. Halligan validly obtained and signed the indictment as an attorney for the government

Defendants' motions evince a fundamental mismatch between their asserted violation and their request for dismissal.  While Defendants assail Ms. Halligan's purportedly "unlawful title," their indictments in no way depend on that title.  Comey Mot. 21; *see* James Mot. 1.  "[N]o federal rule exists which demands that a U.S. Attorney sign every indictment."  *United States v. Kouri-Perez*, 47 F. Supp. 2d 164, 166 (D.P.R. 1999); *accord United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999), *overruled on other grounds by United States v. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc).  Instead, an indictment need only be signed by an "attorney for the government."  Fed. R. Crim. P. 7(c)(1).  Likewise, "attorneys for the government" may conduct grand-jury proceedings.  Fed. R. Crim. P. 6(d)(1).  In many districts, Assistant U.S. Attorneys therefore routinely sign indictments and any vacancy or defect in the U.S. Attorney's appointment does not affect their power to do so.  *See United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008).  That is because "their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party."  *Hilario*, 218 F.3d at 22; *see* 28 U.S.C. §§ 516, 518(b), 519.

Likewise, any flaw in Ms. Halligan's appointment as interim U.S. Attorney does not affect her ability to exercise *the Attorney General*'s prosecutorial power.  Whatever her title, Ms. Halligan is still an "attorney for the government" authorized to conduct grand-jury proceedings and sign

indictments, just as she is an "attorney for the government" bound by the grand-jury secrecy rule, Fed. R. Crim. P. 6(e)(2)(B)(vi), protected by the government's attorney-client privilege, and entitled to a federal paycheck (after the shutdown). The Federal Rules define an "Attorney for the government" to include not just a "United States attorney" or Assistant U.S. Attorney, but any "authorized assistant" to the Attorney General or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). "[S]pecial attorneys, operating under letters of authorization" from the Attorney General, may therefore conduct grand-jury proceedings and sign indictments, even if the "letter of authorization contained no express grant of authority to sign indictments." *Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975).

The Attorney General has broad power "to appoint subordinate officers to assist [her] in the discharge of [her] duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). Specifically, she may "specially appoint[]" attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings …, which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515. She may appoint "attorneys to assist United States attorneys when the public interest so requires." *Id.* § 543(a). She may make "provisions as [s]he considers appropriate" to authorize "any other officer, employee, or agency of the Department of Justice" to perform "any function of the Attorney General." *Id.* § 510; *see id.* § 509. And she may appoint "officials … to detect and prosecute crimes against the United States." *Id.* § 533(1). Individually and collectively, those authorities amply authorize Ms. Halligan to conduct these prosecutions as an "authorized assistant" to the Attorney General or an "attorney authorized by law to conduct proceedings under [the Federal] rules as a prosecutor." Fed. R. Crim. P. 1(b)(1); *see United States v. Ramirez*, 2025 WL 3019248, at *18-*19 (C.D. Cal. Oct. 28, 2025) (holding that Acting U.S. Attorney was improperly appointed but could supervise the office via other delegated authorities).

20

To be sure, Ms. Halligan's original appointment cited only Section 546, consistent with the government's view that the Attorney General is not limited to a single 120-day window to appoint interim U.S. Attorneys. But an agency need not cite the specific statutory provision on which it relies when making a decision. *See Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964). And courts ordinarily interpret legal texts to avoid rendering them invalid. Antonin Scalia & Bryan A. Garner, *Reading Law* 66 (2012). There is no question that the Attorney General *intended* to vest Ms. Halligan with the powers of U.S. Attorney and thus with the powers of a government attorney authorized to conduct criminal litigation—a fact that the Attorney General has confirmed by ratifying Ms. Halligan's appointment under her other authorities. *See* Ex. A. Ms. Halligan's original appointment should not be read as a nullity given the Attorney General's broad power to appoint prosecutors and delegate authority.

### B.    Any defect in Ms. Halligan's authority does not invalidate the indictments

Even if Ms. Halligan lacked the authority to obtain and sign indictments, the indictments are still valid for three independent reasons.

*First*, the Fourth Circuit has long "held that the signature of the prosecuting attorney is no part of the indictment and is necessary only as evidence of the authenticity of the document." *Wheatley v. United States*, 159 F.2d 599, 600 (4th Cir. 1946). Accordingly, "the improper signing of an indictment is not such a defect as would invalidate the instrument." *Id.* at 601. It is a mere "technical deficienc[y] that [is] not necessarily fatal to the indictment." *United States v. Irorere*, 228 F.3d 816, 830-31 (7th Cir. 2000); *accord United States v. Morse*, 613 F.3d 787, 793 (8th Cir. 2010) ("The signatures on the indictment, however, are a formality, and even the lack of signatures would not render an indictment invalid."); Charles Alan Wright et al., *Federal Practice and Procedure* § 124 (5th ed. Westlaw Sept. 2025 update) (observing that "courts have not rigorously enforced" the signature requirement); *see United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir.

21

J.A. 191

2001) ("An appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute.").

"[M]ultiple courts have" therefore "held that an indictment is not invalid if the prosecutor was not licensed to practice if other evidence indicates that the government endorsed the prosecution." *United States v. Kelley*, 404 F. Supp. 3d 447, 452 (D. Mass. 2019) (collecting cases), *aff'd*, 989 F.3d 67 (1st Cir. 2021). For example, where the only government attorney to present evidence to the grand jury and sign the indictment was suspended from the practice of law, a court held that "the indictment was valid" because other government lawyers "agreed with the grand jury that the indictment should issue," as evidenced by their signatures on later filings. *Id.* at 453.[6]

Those cases confirm the validity of these indictments. There is no question as to "the indictment's authenticity" or "the government's agreement with the grand jury's return of it." *Kelley*, 989 F.3d at 70. Other federal prosecutors with unchallenged appointments have signed subsequent filings, and the Attorney General has personally ratified both indictments. Ex. A.[7] That readily distinguishes cases like *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (cited at James Mot. 13), where *no* authorized official approved of the challenged action. *See id.* at 698-99 (dismissing certiorari petition filed by special prosecutor that the Solicitor General had affirmatively *disapproved*); *see Kelley*, 989 F.3d at 71 (distinguishing *Providence Journal*).

*Second*, even were a government attorney's signature necessary and even were Ms. Halligan not a government attorney at the time, her actions would be entitled to "de facto validity."

---

[6] *United States v. Durham*, 941 F.2d 886 (9th Cir. 1991) (discussed at James Mot. 14), does not hold otherwise. There, the Ninth Circuit stated that a defect in the appointment of the only prosecutor to present the case to the grand jury would raise a "question" as to whether he was properly supervised. *Id.* at 892. But the court expressly recognized that an invalid appointment of the sole prosecutor "alone would not be sufficient to upset the conviction." *Id.*

[7] That also forecloses James' contention (at 14 n.14) based on anonymous news reports that the government does not approve of her prosecution.

22

J.A. 192

*Buckley v. Valeo*, 424 U.S. 1, 142 (1976). "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). That doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question." *Id.* That doctrine has such deep roots in Anglo-American law that early American courts considered it "too well settled to be discussed." *People ex rel. Bush v. Collins*, 7 Johns. 549, 552 (N.Y. Sup. Ct. 1811) (Kent, C.J.). Even if the Attorney General failed to properly appoint Ms. Halligan as "an officer *de jure*," she was acting under color of official title and her past actions are "valid and binding." *Phillips v. Payne*, 92 U.S. 130, 132 (1876).

Defendants try to bootstrap their claimed violation of Section 546 into a violation of the Appointments Clause, citing Supreme Court cases declining to apply the de facto officer doctrine to certain Appointments Clause claims. According to Defendants (Comey Mot. 17-18; James Mot. 11-12), any appointment not made in compliance with Section 546 is not authorized "by Law" and thus automatically violates the Appointments Clause. But not every action "in excess of … statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). As the Supreme Court observed in *Ryder*, "a mere matter of statutory construction" does not rise to an Appointments Clause violation. 515 U.S. at 181 (quoting *McDowell v. United States*, 159 U.S. 596, 598 (1895)). *Ryder* therefore distinguished the constitutional claim there—that an inferior officer had not been appointed by the President, a court of law, or department head—from a claim that a judge had been appointed to temporarily fill a vacancy in violation of a statute. *Id.* at 181-82. Yet on Defendants' theory, *every* statutory violation would become a constitutional violation since any appointment in violation of a statute would not be authorized "by Law."

23

Regardless, the de facto officer doctrine equally applies to claims asserting the "unconsti-tutionality of the mode by which the party was appointed or elected to a legally existing office." *Norton v. Shelby County*, 118 U.S. 425, 444 (1886). Defendants' cases do not hold otherwise. In *Ryder*, 515 U.S. at 182-83, and *Lucia v. SEC*, 585 U.S. 237, 251-52 (2018) (discussed at Comey Mot. 19-20; James Mot. 15), the Court invalidated the past acts of *adjudicators* under the Appoint-ments Clause. In that context, only a limited number of decisions will be on direct review at any time, so "there is not the sort of grave disruption or inequity involved in awarding retrospective relief." *Ryder*, 515 U.S. at 185. Extending that narrow exception to *non*-adjudicators, like prose-cutors, who make countless decisions every day that can go well beyond individual cases, would risk just the sort of "chaos" the de facto officer doctrine is designed to avoid. *Id.* at 180.

Defendants' other cases are even further afield. Defendants invoke (Comey Mot. 18-19; James Mot. 15) a passage in *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021), discussing when an officer's actions might be "void." But the cited passage merely described how the challengers characterized certain cases in the course of *distinguishing* those cases and *rejecting* their argument. *See id.* That discussion cannot plausibly be construed as having abrogated sub silentio the centu-ries-old de facto officer doctrine, and the Supreme Court has made clear that its prior precedents remain binding on lower courts despite any arguable tension with more recent decisions. *See Ro-driguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (Lower courts "should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overrul-ing its own decisions."). Comey also cites (at 19) the district-court decision in *United States v. Trump*, 740 F. Supp. 3d 1245, 1304 (S.D. Fla. 2024), which declined to apply the de facto officer doctrine and dismissed an indictment against President Trump on the ground that the special coun-sel's appointment was unlawful. But the court there found that appointment unconstitutional and

24

irremediable because there was no "statutorily created office to fill in the first place" and, the court held, the de facto officer doctrine cannot apply when "there is no office to fill." *Id.* (quoting *Norton*, 118 U.S. at 441). Even on its own terms, that reasoning has no application here, where the office of U.S. Attorney plainly exists; the question is just whether Ms. Halligan properly filled it.

*Third*, any error in Defendants' indictments was harmless given the grand jury's independent decision to indict. The grand jury "is a constitutional fixture in its own right" that "act[s] independently of [the] prosecuting attorney," *United States v. Williams*, 504 U.S. 36, 47, 49 (1992) (cleaned up), and "gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime," *Kaley v. United States*, 571 U.S. 320, 328 (2014). Historically, "the grand jury was competent to act solely on its own volition," even without a prosecutor. *Hale v. Henkel*, 201 U.S. 43, 60 (1906). "An indictment returned by a legally constituted and unbiased grand jury" is thus "enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363 (1956). Failures by the Executive Branch—even prosecutorial misconduct before the grand jury—provide a court "no authority to dismiss the indictment … absent a finding that [the defendant] w[as] prejudiced by such misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988). That rule applies to defects in U.S. Attorney appointments: The "remedy would not be the dismissal of [the] indictment" unless the appointment affects "basic constitutional rights." *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002); *accord Franklin v. United States*, 2011 WL 1675035, at *5 (M.D.N.C. May 3, 2011) (applying harmless-error review to claim that prosecutor was not an "attorney[] for the government").

In this context, prejudice requires that "the government's misdeeds substantially influenced the grand jury's decision to indict" or that "there is grave doubt that the decision to indict was free

from the substantial influence of such violations." *United States v. Derrick*, 163 F.3d 799, 807-08 (4th Cir. 1998). Defendants cannot make that showing. Given the Attorney General's expansive power to appoint attorneys and delegate the Department of Justice's powers, there is no question that, as she has now made explicit, the Attorney General could have authorized Ms. Halligan to conduct grand-jury proceedings and sign indictments, even without an interim U.S. Attorney for the Eastern District, by appointing her as a special attorney. *Supra* pp. 20-21. The Attorney General could have also hired Ms. Halligan as an Assistant U.S. Attorney, 28 U.S.C. § 542(a), making her an indisputable "[a]ttorney for the government" under Rule 1(b)(1)(B).

Defendants' basic claim therefore amounts to at most a paperwork error: that the Attorney General should have cited a different provision of Title 28 in appointing Ms. Halligan instead of adhering to the Department's longstanding view that Section 546(a) authorizes successive interim U.S. Attorneys. Absent her appointment under Section 546(a), Ms. Halligan would not have been excluded from the grand-jury room, as Comey claims (at 21). She would have simply had a different title. That kind of technical difference cannot establish the "grave doubt" required to take the extraordinary step of impugning a grand jury's decision to indict. *Derrick*, 163 F.3d at 808.

Defendants seek (Comey Mot. 21; James Mot. 15) to avoid harmless-error review altogether, insisting that this case falls into the rare exception for cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Bank of Nova Scotia*, 487 U.S. at 257. But that exception is exceedingly narrow and is "exemplified," *id.*, by a case finding structural error where "blacks had been systematically excluded" from the grand jury. *Vasquez v. Hillery*, 474 U.S. 254, 256 (1986); *see also Ballard v. United States*, 329 U.S. 187, 193-94 (1946) (intentional exclusion of all women from grand juries). That precedent reflects "the special problem of racial discrimination"—a problem "so pernicious"

that no showing of prejudice is required. *United States v. Mechanik*, 475 U.S. 66, 70 n.1 (1986). "[T]hese considerations have little force outside the context of racial discrimination in the composition of the grand jury." *Id.* Any defect in Ms. Halligan's job title is not remotely comparable to the wholesale exclusion of minorities from the grand jury.

### C.     The Attorney General has ratified the indictments, curing any defect

In any event, the Attorney General—in whom Congress has vested all powers of the Department of Justice, 28 U.S.C. § 509—has personally ratified Defendants' indictments. *See* Ex. A. When an officer allegedly appointed in violation of the Appointments Clause takes a challenged action, "subsequent ratification" by an official with the power to authorize that action "cur[es] any Appointments Clause defects that may have existed when [the document] was initially signed." *Wille v. Lutnick*, 2025 WL 3039191, at *6 (4th Cir. Oct. 31, 2025). Here, the Attorney General plainly could have authorized any Department of Justice officer or employee to obtain and sign the indictments, 28 U.S.C. § 510, exercising the powers of a U.S. Attorney, *id.* § 509; *see id.* § 547, or her personal authority to "conduct and argue any case in a court of the United States, in which the United States is interested, *id.* § 518(a). The Attorney General's ratification therefore cures any flaw in both indictments from Ms. Halligan's appointment.

Comey may respond that a ratifying principal must have been able to take that action "at the time the ratification was made," *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994), and the statute of limitations for his offenses (but not James') expired before the Attorney General's October 31 ratification order. But when a timely filed indictment is "dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment." 18 U.S.C. § 3288. Because the Attorney General could personally obtain a new indictment using that grace period, she may ratify Comey's existing indictment.

Comey previews (at 25 n.17) that he disputes Section 3288's applicability but does not say why. By its text, Section 3288 applies when an indictment is dismissed for "*any* reason," which obviously includes a defective appointment. Section 3288 bars refiling only where the original indictment was untimely or was dismissed for "some other reason that would bar a new prosecution." That language prevents the refiling of an indictment that was "not capable of being cured." *United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996). But where "a valid indictment could have been brought in a timely fashion; the six-month grace period merely allows the government to do what it had a right to do in the first place." *Id.* Here, Comey does not dispute that a validly appointed federal prosecutor—be that a U.S. Attorney, an Assistant U.S. Attorney, a Special Attorney, or the Attorney General herself—could have lawfully obtained this indictment. Section 3288's tolling rule would therefore govern any dismissal.

### D.    At minimum, any dismissal should be without prejudice

James does not request dismissal with prejudice (and thus forfeits any such request). The maximum relief to which she could possibly be entitled is dismissal *without* prejudice—a remedy that would allow Ms. Halligan (or another government attorney) to seek a new indictment now that the Attorney General has ratified the appointment under other, unchallenged authorities.

For his part, Comey seeks the "harsh remedy" of dismissal with prejudice. *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000). But as he recognizes (at 22-23), that sanction is reserved for "flagrant misbehavior" causing "substantial prejudice" where no "lesser sanction" will do. Comey cannot make that showing as to Ms. Halligan's appointment. Instead, he rehashes (at 23-25) his vindicative- and selective-prosecution claims—claims that are the subject of a *different* motion before Judge Nachmanoff, over which this Court lacks jurisdiction. But if Judge Nachmanoff accepts those allegations and grants that motion, this Court would have no need to

28

J.A. 198

adjudicate *this* motion. The Court should therefore proceed on the assumption that Comey's vin-

dictive- and selective-prosecution claims fail (or defer this motion until Judge Nachmanoff rules).

Zeroing in on the actual claim here—that the Attorney General could not lawfully invoke

Section 546(a) to appoint Ms. Halligan—Comey comes nowhere close to showing "flagrant mis-

behavior," "substantial prejudice," or the unavailability of a "lesser sanction." The Attorney Gen-

eral's invocation of Section 546(a) rather than her many other appointment authorities is not "fla-

grant misconduct" akin to repeated *Brady* violations. *Cf. United States v. Bundy*, 968 F.3d 1019,

1029, 1037 (9th Cir. 2020). As explained above, Comey suffered no prejudice, much less substan-

tial prejudice, from Ms. Halligan's title when she entered the grand-jury room. And contrary to

his assertion (at 25), the counterfactual where the Attorney General did not, in his words, "unlaw-

fully appoint[] Ms. Halligan" is not a world where the government would have let the limitations

period run. Instead, the Attorney General would have cited a different authority that would have

unquestionably authorized Ms. Halligan to obtain the exact same indictment at the exact same

time. If the Court deems the indictment invalid, any dismissal should be without prejudice to

permit the government to swiftly seek reindictment under 18 U.S.C. § 3288.

### E.     James' other remedial requests should be rejected

James, but not Comey, requests (at 16-17) an injunction against Ms. Halligan "acting as

interim U.S. Attorney." To the extent she requests relief beyond the confines of this case, that

request is plainly improper. Equitable remedies like injunctions must be "party[] specific." *Trump

v. CASA, Inc.*, 606 U.S. 831, 851 (2025). James has no standing to seek an injunction against Ms.

Halligan's participation in *other cases.* James' request is also improper to the extent that she seeks

an injunction—a remedy that "will not be appropriate" "[i]n almost all federal criminal prosecu-

tions." *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016).

James may seek to *disqualify* Ms. Halligan from acting as U.S. Attorney in this case. That remedy, while "drastic," is at least potentially available "in limited circumstances." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003). But James' request has been overtaken by events. The Attorney General has ratified Ms. Halligan's appointment as Special Attorney with the authority to conduct criminal litigation in this district. Ex. A. Because Ms. Halligan now has the indisputable authority to proceed with this prosecution, prospective relief would be inappropriate.

## CONCLUSION

For the foregoing reasons, the motions to dismiss should be denied.

Respectfully submitted,

Lindsey Halligan
United States Attorney

/s/ Henry C. Whitaker_____
Henry C. Whitaker (Fla. Bar #1031175)
Counselor to the Attorney General
950 Pennsylvania Ave. NW Rm. 5134
Washington, D.C. 20530
Tel: (202) 445-8942
henry.whitaker@usdoj.gov

Roger A. Keller, Jr. (Mo. Bar #42541)          N. Tyler Lemons (N.C. Bar #46199)
Assistant United States Attorney               Gabriel J. Diaz (N.C. Bar #49159)
101 West Main Street, Suite 8000               Assistant United States Attorneys
Norfolk, VA 23510                              2100 Jamieson Avenue
Tel.: (757) 441-6331                           Alexandria, VA 22314
Fax: (757) 441-6689                            Tel: (703) 299-3700
roger.keller@usdoj.gov                         tyler.lemons@usdoj.gov
                                               gabriel.diaz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk using the CM/ECF system, which will send a notification of filing to all counsel of record.

/s/ Henry C. Whitaker_____
Henry C. Whitaker
Counselor to the Attorney General

J.A. 200

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

*Norfolk Division*

UNITED STATES OF AMERICA      \*
                              \*
        v.                   \*   Case No. 2:25-cr-122-JKW-DEM
                              \*
LETITIA A. JAMES,             \*
                              \*
       Defendant.          \*
                              \*
\*      \*      \*      \*      \*      \*      \*

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ATTORNEY GENERAL
LETITIA JAMES'S MOTION TO DISMISS THE INDICTMENT AND
<u>ENJOIN THE PROSECUTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.    THE GOVERNMENT'S THEORY OF SECTION 546 WOULD ELIMINATE THE SENATE'S ROLE IN THE APPOINTMENTS PROCESS............................................ 2

II.   THE GOVERNMENT'S ANALYSIS OF SECTION 546 IS FUNDAMENTALLY FLAWED. ................................................................................................................ 3

III.  DISMISSAL OF THIS DEFECTIVE INDICTMENT IS THE ONLY PROPER REMEDY. ............................................................................................................... 13

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988) .......................................................................................... 18

*Chapman v. California,*
    386 U.S. 18 (1967) ............................................................................................ 19

*Collins v. Yellen,*
    594 U.S. 220 (2021) .......................................................................................... 17

*Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.,*
    33 F.4th 218 (5th Cir. 2022) ............................................................................ 17

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981) .......................................................................................... 10

*Edmond v. United States,*
    520 U.S. 651 (1997) ............................................................................................ 2

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
    545 U.S. 546 (2005) ............................................................................................ 9

*Gun Owners of Am., Inc. v. Garland,*
    19 F.4th 890 (6th Cir. 2021) ............................................................................ 17

*Loper Bright Enterprises v. Raimondo,*
    603 U.S. 369 (2024) .......................................................................................... 12

*Lucia v. SEC,*
    585 U.S. 237 (2018) .......................................................................................... 17

*Medellín v. Texas,*
    552 U.S. 491 (2008) .......................................................................................... 10

*N.L.R.B. v. SW Gen., Inc.,*
    580 U.S. 288 (2017) ..................................................................................... 9, 11

*Neaderland v. Comm'r,*
    424 F.2d 639 (2d Cir. 1970) ............................................................................ 17

*Parker v. United States,*
    2006 WL 2597770 (E.D. Ark. Sept. 8, 2006). ................................................ 15

*Ryder v. United States,*
    515 U.S. 177 (1995) .......................................................................................... 17

*Salomon-Guillen v. Garland,*
    123 F.4th 709 (4th Cir. 2024) ............................................................................ 8

*United States v. Adams,*
    777 F. Supp. 3d 185 (S.D.N.Y. 2025) ........................................................ 19, 20

*United States v. Bennett*,
    464 F. App'x 183 (4th Cir. 2012) .......................................................... 15

*United States v. Davila*,
    569 U.S. 597 (2013) ............................................................................. 18

*United States v. Durham*,
    941 F.2d 886 (9th Cir. 1991) ........................................................... 15, 16

*United States v. Giordano*,
    416 U.S. 505 (1974) ............................................................................... 6

*United Sates v. Giraud*,
    2025 WL 2416737 (D.N.J. Aug. 21, 2025) ........................................... 7

*United States v. Hasting*,
    461 U.S. 499 (1983) ............................................................................. 20

*United States v. Kelley*,
    404 F. Supp. 3d 447 (D. Mass. 2019) ............................................. 14, 15

*United States v. Morton*,
    467 U.S. 822 (1984) ............................................................................... 4

*United States v. Providence Journal Co.*,
    485 U.S. 693 (1988) ............................................................................. 15

*United States v. Trump*,
    740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........................................... 16, 17

*Wille v. Lutnick*,
    2025 WL 3039191 (4th Cir. Oct. 31, 2025).................................... 17, 18

*Woods v. United States*,
    2010 WL 4746138 (M.D.N.C. Nov. 16, 2010) .................................... 15

**Statutes**

28 U.S.C. § 541 ............................................................................. 2, 7, 8

28 U.S.C. § 545 ....................................................................................... 4

28 U.S.C. § 546 ................................................................................ passim

Act of June 25, 1948, ch. 646, § 1, 62 Stat. 909 ................................... 13

Judiciary Act of 1789, 1 Stat. 73 § 35.................................................... 2

**Other Authorities**

153 Cong. Rec. S3298 (2007)................................................................ 10

153 Cong. Rec. S3302 (2007) ................................................................. 9

8 C.F.R. § 1003.1(a).......................................................................... 8, 9

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) ..................... 5, 6

*Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986). ............ 11

H.R. Rep. No. 110–58 (2007) ................................................................................. 3, 10

Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* (Jan. 25, 2008)........................................................ 10

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020) ............ 2

**Constitutional Provisions**

U.S. Const. amend. XIV, § 3 ..................................................................................... 4

## INTRODUCTION

The unlawful attempt to install Lindsey Halligan as interim U.S. Attorney was neither a "paperwork error" nor a "procedural misstep in how the Attorney General phrased the appointment." Br. 26, 19. It was a fundamental violation of 28 U.S.C. § 546 and the Appointments Clause that mandates the dismissal of this indictment. Since the first Congress, the appointment of U.S. Attorneys has required the advice and consent of the Senate. In attempting to justify the defective appointment of Ms. Halligan, however, the government advances a radical theory that would upend this centuries-old framework. The government argues that the Attorney General can erase the Senate's role in the appointments process by naming "interim" U.S. Attorneys to an unlimited succession of 120-day terms. But this boundless interpretation of the Attorney General's power is contrary to the Appointments Clause and at odds with the text, structure, and history of the statutes that govern U.S. Attorney appointments.

Dismissal of this indictment is the only appropriate remedy for Ms. Halligan's unlawful appointment. Though the government seeks to obscure the relevant inquiry, all parties agree that "any *government* attorney can present a case to a grand jury or sign an indictment." Br. 2 (emphasis added). The problem is that when Ms. Halligan presented this case to the grand jury and signed the indictment—entirely on her own—she was not a "government" attorney. Instead, she was a private citizen with no authority to litigate on behalf of the United States. The government attempts to whitewash this fatal defect by pointing to alternative, lawful paths that Attorney General Bondi "could have" taken to install Ms. Halligan as a prosecutor. Br. 26–28. But the Executive Branch cannot retroactively appoint Ms. Halligan to positions she never held. Nor can it ratify this illegitimate indictment or claim that Ms. Halligan—whose purported appointment plainly violated the Appointments Clause—was a "de facto" officer. Attorney General Bondi's attempt to retroactively give Ms. Halligan new titles and to bless the improper

1

indictment is a telling indication that the government knows Ms. Halligan's actions were unauthorized, null and void.

## ARGUMENT

### I. THE GOVERNMENT'S THEORY OF SECTION 546 WOULD ELIMINATE THE SENATE'S ROLE IN THE APPOINTMENTS PROCESS.

Reading Section 546 to enable the Attorney General to string together an infinite number of "interim" U.S. Attorney appointments would fully eliminate the Senate's advice-and-consent role in the appointment of U.S. Attorneys. From the Founding, U.S. Attorneys have been appointed through the "default manner of appointment"—by the President with the advice and consent of the Senate. *Edmond v. United States*, 520 U.S. 651, 660 (1997); *see* Judiciary Act of 1789, 1 Stat. 73 § 35; James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 190 (2020). This requirement is codified at 28 U.S.C. § 541(a).

The government now seeks to circumvent the firmly established appointments process by probing for a loophole in a statute that provides for the appointment of *interim* U.S. Attorneys. Under 28 U.S.C. § 546, Congress has provided the Executive Branch with a pathway to temporarily install a U.S. Attorney without Senate confirmation. Section 546 provides that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," and that person may serve until either "(1) the qualification of a United States attorney for such district" under Section 541, "or (2) the expiration of 120 days after appointment by the Attorney General under this section." 28 U.S.C. § 546(c). When an interim U.S. Attorney appointment expires after 120 days, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

The durational limit on the Attorney General's interim appointment authority under Section 546 is not an empty formality. Instead, it guarantees the role of Section 541 (and therefore, Senate

confirmation) as the exclusive means of appointing a U.S. Attorney.  Congress's 2007 action to affirmatively reinstate the 120-day expiration date on interim appointments—which was motivated by "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals"—squarely foreclosed the workaround that the government now attempts to exploit.  H.R. Rep. No. 110–58 at 6 (2007).  Section 546 has not changed since the 2007 amendment, and, outside of this Administration, the government does not point to any example of successive interim appointments following the amendment's enactment.

Instead of giving effect to the 2007 amendment, the government's reading of Section 546 would enable the Executive Branch to appoint the President's handpicked U.S. Attorney to serve for an entire presidential term without ever facing Senate confirmation.  The government argues for a profound redistribution of power that Congress expressly rejected, and that this Court cannot accept.

## II. THE GOVERNMENT'S ANALYSIS OF SECTION 546 IS FUNDAMENTALLY FLAWED.

To support its preferred interpretation of Section 546, the government principally relies on a textual argument that is too clever by half.  The government asserts that because Subsection (b) is the only provision described as an *exception* to the Attorney General's appointment authority under Subsection (a), no other provision can be read to limit the Attorney General's interim appointment power.  *See* Br. 4, 6.  Subsection (a) states that "[e]xcept as provided in [S]ubsection (b)," the Attorney General may appoint an interim U.S. Attorney while the position is vacant.  And Subsection (b), in turn, prohibits the Attorney General from appointing someone whose nomination the Senate rejected.  But to accept the government's premise that an appointment is valid so long as "546(a)'s plain text is satisfied," Br. 1, one would need to stop

reading the statute halfway through. "We do not, however, construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984).

The remaining provisions of Section 546 expressly delineate an additional constraint on the Attorney General's appointment authority. Subsection (c)(2) establishes that 120 days after the Attorney General invokes Subsection (a), an interim U.S. Attorney appointment expires. And Subsection (d) provides that when such an appointment expires, the *district court* inherits the power to appoint a U.S. Attorney until the position is filled through Senate confirmation. This is an express temporal limitation on the Attorney General's appointment authority, regardless of whether the statute labels it an exception.

In arguing that Subsection (b) is the only *exception* to Subsection (a), the government grounds its textual analysis in a meaningless formalism. The government cannot seriously dispute that the Attorney General's appointment authority is subject to other *limitations* and *restrictions*. As the government tacitly acknowledges, an Attorney General's interim appointment "may not exceed 120 days" under Subsection (c)(2). Br. 1. The government refers to this as an "implied[]" limitation, Br. 1, but that label does not fit. If the Attorney General announced that she had appointed an interim U.S. Attorney to a term of 130 days, such an appointment would be invalid on its face. Subsection (c)(2) thus provides an express constraint on the Attorney General's appointment authority, "exception" or not.

Subsection (c)(2) is not the only additional limitation. Under 28 U.S.C. § 545, the Attorney General cannot appoint as interim U.S. Attorney a person who does not live in the district in which she would serve. And under Section Three of the Fourteenth Amendment, the Attorney General cannot appoint as interim U.S. Attorney a person who previously violated her constitutional oath by engaging in an insurrection or rebellion against the United States. U.S. Const. Amend. 14, § 3.

These provisions impose express limitations on the Attorney General's Subsection (a) authority. By characterizing Subsection (b) as the sole *exception*, the government identifies what is, at most, a distinction without a difference. Contrary to the government's assertion, Subsection (b) is not the "one and only one" restriction on the Attorney General's appointment power. Subsection (c)(2)—which provides that the Attorney General's appointment authority expires after 120 days—is among the additional constraints.

In addition to overlooking Subsection (c)(2), the government's preferred reading of Section 546 is fundamentally incompatible with the text of Subsection (d). By its plain terms, Subsection (d) provides a single option for appointing an interim U.S. Attorney following the expiration of a Subsection (a) appointment: "[I]f an appointment expires . . . *the district court* for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d) (emphasis added). Under the interpretive canon of *expressio unius*, Subsection (d)'s express mention of the district court—and only the district court—should be read to imply that no other authority may appoint an interim U.S. Attorney upon the expiration of 120 days. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 111 (2012). The government accuses Attorney General James of reading Subsection (d) to implicitly state that after an interim appointment expires under Subsection (c)(2), "*only* the district court . . . may appoint" an interim United States Attorney. Br. 13. But under the *expressio unius* canon, that is exactly how it is supposed to be read.

It is the government that reads into Subsection (d) words that do not belong. Brushing past the *expressio unius* canon, the government insists that the Attorney General—who Subsection (d) does not mention—has "parallel authority" to name an interim U.S. Attorney following the expiration of the 120-day window. Br. 14. The government thus reads Subsection (d) to provide

that if an appointment expires, "the district court . . . *or the Attorney General* may appoint a United States Attorney." But that is not the statute that Congress wrote. If Subsection (d) intended to recognize the Attorney General's appointment power as a "parallel track," Br. 2, it would have said so.

The Supreme Court's analysis in *United States v. Giordano*, 416 U.S. 505, 513–14 (1974), is instructive. That opinion, which is cited as a textbook example of how to apply the *expressio unius* canon, *see* Scalia & Garner, *supra*, at 111, concerned a statutory provision closely resembling Subsection (d). There, the Court analyzed a provision providing that "(t)he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize" a wiretap application. *Giordano*, 416 U.S. at 513 (quoting 18 U.S.C. § 2516(1) (1971)). Though the statute identified only two types of officials—the Attorney General and a specially designated Assistant Attorney General—the government in *Giordano* asserted that an additional official, the Attorney General's executive assistant, implicitly possessed parallel authority to authorize a wiretap. *Id.* at 512. The Court rejected that argument. *Id.* at 512–14. It held that because the provision expressly named certain officials, all others were excluded by negative implication. *Id.* Here, the fact that Subsection (d) expressly identifies only the district court carries the same implication. "If an appointment expires [after 120 days] under [S]ubsection (c)(2)," there is no other authority that can appoint an interim U.S. Attorney. 28 U.S.C. § 546(d).

The government's preferred interpretation of Section 546 also flouts the surplusage canon. *See* Scalia & Garner, *supra*, at 174. The government reads Subsection (c) to provide that "[a] person appointed as United States attorney under this section may serve until . . . the expiration of 120 days after [*his or her*] appointment by the Attorney General under this section." 28 U.S.C. § 546(c). But under that interpretation, the provision should stop after the word "appointment."

6

J.A. 211

The phrase "by the Attorney General under this section" in Subsection (c)(2) would be entirely redundant. Under Attorney General James's reading of Subsection (c), however, there is no superfluity.

The government attempts to justify the glitch in its preferred reading of Section 546 by arguing that the phrase "by the Attorney General under this section" serves to "clarif[y] that the 120-day limit governs appointments only under Section 546," and not appointments under Section 541. Br. 9. But no additional language is needed to clarify whether the clause "a person appointed under *this section*," 28 U.S.C. § 546(c) (emphasis added), refers to a person appointed under a *different section*—Section 541. Nor does looking to Subsection (c)(1) help the government explain away the surplusage. The government describes the superfluous language in its interpretation of Subsection (c)(2) as "draw[ing] a contrast" with Subsection (c)(1) and "reorient[ing] the reader." Br. 9. Yet absent an express textual indication—which the phrase "by the Attorney General under this section" is not—it would be strange to assume that Congress intended Subsections (c)(1) and (c)(2) to be read in "contrast." Br. 9. Subsection (c)(1), which provides that the Senate Confirmation of a full-time U.S. Attorney terminates an interim appointment, "is indisputably benchmarked to an event unrelated to any specific person's interim appointment." *United Sates v. Giraud*, 2025 WL 2416737, at *10 (D.N.J. Aug. 21, 2025). There is no indication that Subsection (c)(2) is any different. The government concedes that under Subsection (c)(1), "[o]nce the Senate confirms a U.S. Attorney, the interim officeholder is out, regardless of how long she served or who appointed her." Br. 10. Subsection (c)(2) should be read the same way: Once the clock hits 120 days after the Attorney General's initial appointment, the interim officeholder is out, regardless of how long she served or who appointed her. Subsection (c)(2) is benchmarked to action "by the

Attorney General under this section," just as Subsection (c)(1) is benchmarked to action by Congress. Neither provision is appointee-specific.

Though the government argues that Fourth Circuit precedent supports its preferred reading of Section 546, it relies on a recent case that instead cuts against its expansive theory of the Attorney General's power to appoint U.S. Attorneys. In *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), the Fourth Circuit considered the scope of the Attorney General's authority to appoint temporary members to the Board of Immigration Appeals (BIA). Under the relevant regulations, the unilateral authority to appoint *permanent* members of the BIA belonged to the Attorney General. *See* 8 C.F.R. § 1003.1(a)(1). Neither Senate confirmation nor any other mechanism provided a check on the Attorney General's power. *Id.* The appellant argued, however, that there was an implicit constraint on the Attorney General's authority to appoint *temporary* Board members. *Salomon-Guillen*, 123 F.4th at 717. The regulation at issue authorized the appointment of "temporary Board members for *terms not to exceed six months.*" 8 C.F.R. § 1003.1(a)(4) (2022) (emphasis added). In the appellant's view, the absence of the word "renewable" before "terms" indicated that the Attorney General could not appoint a temporary Board member to successive terms. The Fourth Circuit rejected this argument, concluding that the regulation's text did not "restrict the [Attorney General's] power to appoint the same person to multiple consecutive terms." *Salomon-Guillen*, 123 F.4th at 717.

*Salomon-Guillen* illuminates two critical differences between temporary BIA appointments and interim U.S. Attorney appointments. First, whereas any potential constraint on the Attorney General's power to appoint temporary BIA members needed to be reconciled with the Attorney General's absolute authority to appoint permanent BIA members, the Attorney General has no authority to appoint a full-fledged U.S. Attorney. *See* 28 U.S.C. § 541. And

second, the regulation at issue in *Salomon-Guillen* imposed a six-month time limitation on "terms," not persons. 8 C.F.R. § 1003.1(a)(4) (2022). Subsection (c), in contrast, imposes a limit on when "a person . . . may serve." Further, by using the plural form of the word "term" and referring to "term*s*" of six months, the regulation at issue in *Salomon-Guillen* implied that one could serve for multiple terms. 8 C.F.R. § 1003.1(a)(4) (2022). Section 546 does not use similar language. Subsection (c) provides that a person may not serve as interim U.S. Attorney after a 120-day window expires; it does not state that a person may serve "terms" of 120 days. That is a meaningful distinction.

The government's resort to legislative history is similarly unavailing. After deriding legislative history as "not the law," Br. 11 (citation omitted), the government employs the worst version of the practice it criticizes: "looking over a crowd and picking out your friends." Br. 11 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)). To support its theory that an Attorney General may make successive interim appointments, the government quotes floor statements from Senator Kyl—the author of an amendment to Section 546 that *failed* to pass. Br. 11; *see* 153 Cong. Rec. S3302 (March 20, 2007). But "floor statements by individual legislators rank among the least illuminating forms of legislative history." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). And though Senator Kyl feared that Section 546 allowed the Attorney General to make more than one interim appointment, the majority that rejected his amendment and voted to pass the 2007 bill did not share his interpretation. Senator Feinstein, the architect of the legislation that *did* pass, stated that the bill would "give the Attorney General the authority to appoint interim U.S. attorneys, but it would limit that authority to 120 days. If after that time the President had not nominated a new U.S. [A]ttorney or the Senate had not confirmed a nominee, then the district courts would appoint an interim U.S. attorney." 153 Cong. Rec. S3298

9

(March 20, 2007). And the House Report on the 2007 amendment—a far more reliable source of legislative history than the statement of any individual legislator—stated that the amendment was motivated by concerns about the Executive Branch "Bypassing the Requirement of Senatorial Advice and Consent," emphasizing "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." H.R. Rep. No. 110-58, at 6 (2007). Resort to legislative history is unnecessary given that the plain text of Section 546 squarely forecloses the government's radical reading of Section 546, but the legislative history weighs heavily in favor of Attorney General James's position.

Nor does historical practice within the Executive Branch support the government's position. The government argues that because the Executive Branch has previously attempted to make multiple interim appointments under Section 546, the practice must be permissible. In support of this argument, the government points to one example of a successive interim appointment in 1987, Br. 10, and cites a 2008 report from the Congressional Research Service stating that "between January 1993 and March 9, 2006, at least eight U.S. Attorney vacancies—three under the Clinton Administration and five under the Bush Administration—were filled through successive 120-day appointments by the Attorney General under the provisions of 28 U.S.C. § 546." Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* at 6 n.23 (Jan. 25, 2008).

Citing nine examples over two decades is not strong evidence of historical practice. Though a "systematic, unbroken, executive practice, long pursued to the knowledge of Congress and never before questioned" may be evidence of a statute's meaning, *Medellín v. Texas*, 552 U.S. 491, 531 (2008) (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)), that is not what the government provides. Instead, it offers only a handful of anecdotes among hundreds of interim

U.S. Attorney appointments.  This is precisely the type of evidence that the Supreme Court rejected in *Southwest General*.  *See* 580 U.S. at 308 ("'[H]istorical practice' is too grand a title for the Board's evidence . . . the 112 nominations that the Board cites make up less than two percent of the thousands of nominations . . . .").  The only difference here is that the government cites nine examples rather than 112.  And critically, the government does not point to *any* instance of successive interim appointments following the statute's 2007 amendment.  In the 18 years since Congress amended Section 546 to install guardrails on the Attorney General's appointment authority, the government cannot find a single instance of the practice it asks this Court to bless.

The more relevant evidence of the Executive Branch's historical understanding of Section 546 squarely refutes the government's preferred interpretation.  Just three days after Congress enacted the 1986 law, the Office of Legal Counsel (OLC) issued an opinion, authored by then-Deputy Assistant Attorney General Samuel Alito, that contradicts the interpretation that the government now maintains.[1]  OLC concluded that while a "vacancy exists when the 120-day period expires under the amended section 546 and the President has either not made an appointment or the appointment has not been confirmed," "it *does not follow* that the Attorney General may make another appointment pursuant to 28 U.S.C. § 546(a) after the expiration of the 120-day period."  *Id*. at 2 (emphasis added).  Then-Deputy Assistant Attorney General Alito reasoned that "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General."  *Id.* at 3.  This "contemporaneous[]" Executive Branch interpretation provides persuasive evidence of statutory meaning.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369,

---

[1] *See Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986), https://perma.cc/SD5Q-7CPH.

386 (2024).  The government accuses then-Deputy Assistant Attorney General Alito of relying on a Congressional floor statement that "does not even suggest" support for the his ultimate conclusion, Br. 12, and it denigrates the memo's reasoning as "consistent with the era in which it was written."  Br 12.  But the government has provided no evidence that OLC ever changed its position in the subsequent forty years until this Administration.

The government's characterization of Subsection (d) as a "fallback option," Br. 4, is entirely inconsistent with the way that this Administration has operated.  Neither this Administration nor any other has treated Subsection (d) as a "fallback" that comes into play only when "the Attorney General fails to act" after an interim appointment expires.  Br. 4.  Consider Mr. Siebert's appointment.  Approximately two weeks *before* Mr. Siebert's 546(a) appointment expired, the district court—pursuant to Subsection (d)—unanimously appointed Mr. Siebert to continue in his role as interim U.S. attorney.[2]  The district court did not wait to see whether the Attorney General would act, nor did the Attorney General try to preempt the district court by announcing in advance that she would appoint Mr. Siebert to a second 120-day term.  The same is true of other interim U.S. Attorney appointments throughout the country, including in the Southern District of New York:  Before Jay Clayton's 120-day term expired, the district court issued an order providing for his reappointment.[3]  And in the District of New Jersey, the Attorney General attempted to extend Alina Habba's term as U.S. Attorney only *after* it failed to convince the district

---

[2] United States District Court for the Eastern District of Virginia, *Appointment of Erik S. Siebert as Interim U.S. Attorney Effective May 21, 2025* (May 9, 2025), https://www.vaed.uscourts.gov/news/appointment-erik-s-siebert-interim-us-attorney-effective-may-21-2025.

[3] *See* Benjamin Weiser, *Manhattan Judges Approve Trump's Choice for U.S. Attorney*, N.Y. Times (Aug. 18, 2025), https://www.nytimes.com/2025/08/18/nyregion/jay-clayton-us-attorney-manhattan-trump.html.

court to reappoint her upon the expiration of her interim term.[4] This administration's own conduct belies the assertion that it views Subsection (d) as a "fallback option."  Br. 4.

Nor does the history of Subsection (d) support the notion that Congress intended it to serve only as a "fallback."  Br. 4.  Until 1986, the district court had *exclusive* authority to appoint an interim U.S. Attorney.  The pre-1986-amendment version of the statute read: "The district court for a district in which the office of United States attorney is vacant, may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court."  Act of June 25, 1948, ch. 646, § 1, 62 Stat. 909.  When Congress amended the statute in 1986 and added Subsection (a) to provide certain authority to the Attorney General, it did not eliminate the district court's role in the interim U.S. Attorney appointment process.  It merely gave the Attorney General the limited authority to choose an interim U.S. Attorney for 120 days, after which control remained in the hands of the district court.  Except for the ill-fated 2006 amendment that lasted less than a year, that scheme has not changed.  The interpretation of Subsection (d) that the government now advances is squarely at odds with the statute's history.  This Court cannot accept a theory of Section 546 that is contrary to the text, context, and historical understanding of every relevant provision.

III.    **DISMISSAL OF THIS DEFECTIVE INDICTMENT IS THE ONLY PROPER REMEDY.**

Because this indictment violates both the Appointments Clause and Section 546, the Court must dismiss this case.  After Attorney General James filed this motion to dismiss, Attorney General Bondi undertook a series of novel maneuvers to attempt to clean up the mess of Ms. Halligan's unlawful interim appointment.  *See* Gov't Ex. A, ECF No. 43-1 (Oct. 31, 2025

---

[4] *See* Joey Fox, *Deputy AG accuses judges of 'act[ing] like activists' in bypassing Habba*, N.J. Globe (July 22, 2025, 2:53 PM), https://newjerseyglobe.com/judiciary/deputy-ag-accuses-judges-of-acting-like-activists-in-bypassing-habba/.

Appointment and Ratification Order).  But Attorney General Bondi does not have a time machine.  None of Attorney General Bondi's actions change the fact that when Ms. Halligan brought this indictment before the grand jury, apparently entirely on her own, she was not a government attorney.  Attorney General Bondi could not, on October 31, 2025, appoint Ms. Halligan to a new prosecutorial position effective September 22, 2025.  The government cannot point to any case indicating that so long as the government allegedly "*intended*" to vest the relevant official with the proper authority, an invalid appointment can be excused.  Br. 21.  It is what the Attorney General did, not what was in her mind, that determines whether the appointment was proper.  All parties agree that "any *government* attorney can present a case to a grand jury or sign an indictment."  Gov't Br. 2 (emphasis added).  The problem is that Ms. Halligan brought this indictment as a private citizen with no authority to litigate on behalf of the United States.  No amount of ex-post maneuvering can rescue this unlawful indictment from dismissal.

The government attacks a strawman in arguing that "the improper signing of an indictment" is a "technical deficiency" that does not require the indictment's dismissal.  Br. 21.  No one contends that the improper appearance of Ms. Halligan's signature would, without more, invalidate an indictment.  Rather, the fatal flaw in this indictment is that Ms. Halligan—as a private citizen—was the only individual to *present this case to the grand jury* and sign the indictment. That fact requires dismissal.

Because Ms. Halligan was the only individual to participate in securing this indictment, the Court lacks jurisdiction to hear this case.  This case is entirely distinguishable from *United States v. Kelley*, 404 F. Supp. 3d 447, 450 (D. Mass. 2019), *aff'd*, 989 F.3d 67 (1st Cir. 2021).  The government represents *Kelley* as a case in which the district court held that an indictment was valid—even though it was signed by only an improper attorney—because other government

lawyers' "signatures on later filings" evidenced that the government supported the prosecution. Br. 22. But in *Kelley*, the relevant evidence was that multiple government attorneys approved the indictment *before* it was signed, not that they expressed approval via "later filings," Br. 22. *See Kelley*, 404 F. Supp. 3d at 453. And in *Kelley*, the U.S. Attorney overseeing the office in question stated that, in his office, "the decision to prosecute is . . . made by a number of people and AUSAs at all times act under the direction of a supervisory AUSA." *Kelley*, 404 F. Supp. 3d at 450. The court's inquiry in *Kelley* concerned whether other government attorneys supervised and approved the indictment before it issued, not whether, weeks later, government attorneys indicated that they approved *of* the indictment. The other cases that the government characterizes as "confirm[ing] the validity of these indictments," Br. 22, involve similar circumstances. In each case, the court found that it possessed jurisdiction because there was evidence that other government attorneys supervised and approved the indictment *before* it issued. *See United States v. Bennett*, 464 F. App'x 183, 185 (4th Cir. 2012); *Woods v. United States*, 2010 WL 4746138, *2 (M.D.N.C. Nov. 16, 2010); *Parker v. United States*, 2006 WL 2597770, at *15 (E.D. Ark. Sept. 8, 2006). Though the government argues that elements of this case are distinguishable from *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), Br. 22, the fact that the government in *Providence Journal* never approved of the improper prosecutor's conduct does not establish that those circumstances are the only ones in which a court lacks jurisdiction. Br. 22. The government mistakes a sufficient condition for a necessary one.

Similarly unconvincing is the government's attempt, via footnote, to minimize *United States v. Durham*, 941 F.2d 886, 891–92 (9th Cir. 1991). In *Durham*, the Ninth Circuit "was unable to determine whether the district court had jurisdiction" because, in the Ninth Circuit's view, certain evidence that the improper prosecutor "may have been the only prosecutor in

attendance presenting the case . . . to the grand jury" was enough to "call into question whether [the improper prosecutor] was operating under the direction and supervision of the United States Attorney." *Id.* at 892. The plain implication of the Ninth Circuit's analysis is that if the improper prosecutor had been acting without supervision when he secured the indictment, the district court would lack jurisdiction. Here, the fact that the Attorney General purportedly "ratified" the indictment three weeks later provides no evidence that Ms. Halligan was supervised when she walked into the grand jury room on October 9. The DOJ in *Durham* of course approved of the indictment after it was returned—that is why it was defending the conviction on appeal. But this was not the relevant question.

In faulting Attorney General James for "try[ing] to bootstrap" a Section 546 violation into a violation of the Appointments Clause, the government betrays a fundamental misunderstanding of how the two provisions relate. The government again attempts to slay a strawman in emphasizing that "not every action in excess of statutory authority is *ipso facto* in violation of the Constitution." Br. 23 (citation omitted). That is not what Attorney General James argues. Attorney General James's theory of a constitutional violation is grounded in the plain text of the Appointments Clause and does not, as the government mistakenly claims, provide that "every statutory violation would become a constitutional violation." Br. 23 (emphasis omitted). The Appointments Clause dictates that inferior officers like U.S. Attorneys can be appointed only 1) by the President "with the Advice and Consent of the Senate," or 2) through a process that Congress has properly authorized "by Law." An appointment that comports with neither of these pathways violates the Appointments Clause. In *United States v. Trump*, 740 F. Supp. 3d 1245, 1304 (S.D. Fla. 2024), the district court recognized that if an inferior office is appointed in a manner that does not comply with any statute, her appointment violates the Appointments Clause.

The government contends that Attorney General James's theory of Appointments Clause violations is too broad, but tellingly, it does not argue that *Trump* was incorrectly decided.

Because Ms. Halligan's appointment is unconstitutional, her work "cannot be salvaged by the *de facto* officer doctrine." *Trump*, 740 F. Supp. 3d at 1303. "'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer . . . ' is entitled to relief." *Lucia v. SEC*, 585 U.S. 237, 251 (2018) (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). As the Supreme Court has recognized, in cases that involve a "[g]overnment actor's exercise of power that the actor did not lawfully possess," the proper remedy is invalidation of the *ultra vires* action. *Collins v. Yellen*, 594 U.S. 220, 258 (2021). Invalidation of the action "follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough." *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (Jones, J., concurring).

The government does not cite a single case in which a court has accepted a prosecutor's attempt to "ratify" an unlawful indictment. "Ratification is a doctrine derived from agency law," *Wille v. Lutnick*, No. 24-1734, 2025 WL 3039191, at *3 (4th Cir. Oct. 31, 2025), and the government fails to explain why this doctrine should apply in the criminal context. The "safeguards which surround an accused in a criminal prosecution . . . create wide differences between the bundle of legal principles which govern a criminal trial and those which apply to a civil suit." *Neaderland v. Comm'r*, 424 F.2d 639, 643 (2d Cir. 1970) (citation omitted); *see Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 902 (6th Cir. 2021) (Opinion of White, J.) ("No one contests that criminal law and procedure afford special protections to a criminal defendant that are not accorded to a civil defendant."). The remedies provided in civil Appointments Clause cases constitute a floor, not a ceiling. Further, the Fourth Circuit case the government cites concerns an

attempt to ratify an action undertaken by an official who was, without question, a valid government employee. *See Lutnick*, No. 24-1734, 2025 WL 3039191, at *2. The government provides no support for the notion that it can ratify the actions of private citizens such as Ms. Halligan.

The government argues that Attorney General James's request for an injunction has been "overtaken by events." Br. 30. But none of those "events" cure the constitutional violation or render Ms. Halligan eligible to supervise this prosecution. The Attorney General's attempt to fix Ms. Halligan's appointment is invalid on its face. *See* Gov't Ex. A, ECF No. 43-1. On October 31, 2025, the Attorney General had no power to appoint Ms. Halligan to new prosecutorial position "as of September 22, 2025." *Id.* Just as President Trump could not announce tomorrow that he is "appointing" Attorney General Bondi as the acting Administrator of NASA from January 2025 to March 2025, Attorney General Bondi lacked the power announce an appointment of Ms. Halligan that bent space and time. To this date, Ms. Halligan has not been properly appointed to any prosecutorial position that saves the illegitimate indictment or allows her to supervise this case as illegally brought.

Because Ms. Halligan's unlawful appointment fundamentally tainted the structural integrity of the grand jury process, this is a case where the harmless-error inquiry does not apply. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988) (collecting cases and concluding that the presumption of prejudice applies where "the structural protections the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair"). But if this Court did evaluate the prejudicial impact of Ms. Halligan's improper involvement in this prosecution, it would conclude that the government cannot sustain its "burden of showing harmlessness" under Federal Rule of Criminal Procedure 52(a). *United States v. Davila*, 569 U.S. 597, 607 (2013). "Before a federal constitutional error can be held

harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Here, the circumstances surrounding the indictment make clear that *but for* Ms. Halligan's improper appointment as interim U.S. Attorney, Attorney General James's indictment would not have even been presented to a grand jury. President Trump publicly asked the Attorney General to appoint Ms. Halligan (which she ultimately did unlawfully) because he seemingly believed that under Mr. Siebert, "nothing is going to be done" about "Letitia"—*i.e.*, Attorney General James—and others who had targeted him and were, in the President's view, "guilty as hell."[5] The President's own public statements indicate that the grand jury proceeding would not have occurred absent Ms. Halligan's unlawful appointment.

Finally, the indictment should be dismissed with prejudice. That is the only remedy that will promote the interests protected by the Appointments Clause and deter the government from deploying unlawful appointments to effectuate retaliation against perceived political opponents. In contrast, dismissal without prejudice will reward the government for its willful violation of Section 546 by allowing it to seek reindictment. And dismissal without prejudice would improperly empower the government to use the "threat of re-indictment" to "exercis[e] leverage over an elected official." *United States v. Adams*, 777 F. Supp. 3d 185, 218 (S.D.N.Y. 2025) (dismissing with prejudice to avoid similar concern). The government has already attempted to exercise similar leverage in this case: Ed Martin, the head of the DOJ's "Weaponization Working Group," sent Attorney General James's counsel a letter pressuring her to "resign from office" because, in his view, it "would best serve the good of the state and nation." *See* James Ex. G, ECF

_____

[5] Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025), https://www.cnn.com/2025/09/20/politics/trump-justice-department-pam-bondi.

J.A. 224

No. 53-7 at 1 (Aug. 12, 2025 letter from E. Martin to A. Lowell). Mr. Martin stated that if Attorney General James resigned, he would "take this as an act of good faith." *Id.* Indeed, if the indictment were dismissed without prejudice, Attorney General James "would be prejudiced by having 'to wait in a state of uncertainty and under public obloquy for an indefinite period of time.'" *Adams*, 777 F. Supp. 3d at 218 (citation omitted). This case calls out for an exercise of the Court's "supervisory power" to "deter" the government's "illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983).

Contrary to the government's suggestion (at 29), the unlawful appointment here stems directly from the President's vindictive targeting of Attorney General James. And Attorney General Bondi's appointment itself willfully flouted a 39-year-old OLC memorandum. Nor can the government plausibly suggest that Attorney General James "suffered no prejudice," *id.*: Absent the unlawful appointment, Ms. Halligan would have been barred from entering the grand jury room. The Court should reject the government's "counterfactual" speculation that it could have appointed Ms. Halligan a different way, *id.*, and require the government to follow the law *before* seeking to deprive individuals of liberty.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the indictment and enjoin Ms. Halligan from participating in the prosecution of this case.

Dated: November 10, 2025                    Respectfully submitted,


*/s/ Abbe David Lowell*                     */s/ Andrew Bosse*
Abbe David Lowell (*admitted pro hac vice*)  Andrew Bosse (VSB No. 98616)
David A. Kolansky (*admitted pro hac vice*)  BAUGHMAN KROUP BOSSE PLLC
Isabella M. Oishi (*admitted pro hac vice*)  500 E. Main Street, Suite 1400
Schuyler Standley (*admitted pro hac vice*)  Norfolk, VA 23510
John P. Bolen (*admitted pro hac vice*)     Tel: (757) 916-5771

LOWELL & ASSOCIATES, PLLC          ABosse@bkbfirm.com
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Counsel for Letitia A. James*

21

```
 1                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3   UNITED STATES OF AMERICA,     :    Criminal Action
                                   :    No. 1:25-cr-00272-MSN-WEF
 4              v.                 :
                                   :
 5   JAMES B. COMEY, JR.           :
                                   :
 6              Defendant.         :
                                   :
 7   ...........................:

 8   UNITED STATES OF AMERICA,     :    Criminal Action
                                   :    No. 2:25-cr-00122-JKW-DEM
 9              v.                 :
                                   :
10                                 :
     LETICIA A. JAMES,             :
11                                 :
                Defendant.         :    November 13, 2025
12                                 :    10:00 a.m. - 11:13 a.m.
     ...........................:

13

14                TRANSCRIPT OF MOTION PROCEEDINGS
            BEFORE THE HONORABLE CAMERON CURRIE,
15                 UNITED STATES DISTRICT JUDGE

     APPEARANCES:
16

17   For the United States:  OFFICE OF THE ATTORNEY GENERAL
                             Henry Charles Whitaker, AAG
18                           950 Pennsylvania Avenue NW
                             Room 5134
19                           Washington, D.C. 20530

20                           UNITED STATES ATTORNEY'S OFFICE
                             Lindsey Halligan, U.S. Attorney
21                           Nathaniel Tyler Lemons, AUSA
                             Gabriel J. Diaz, AUSA
22                           2100 Jamieson Avenue
                             Alexandria, VA 22314

23

24

25                                (Continued)
```

```
 1                        (Continued)

 2    For Defendant Comey:    CARMICHAEL ELLIS & BROCK
                              Jessica Nicole Carmichael, Esquire
 3                            108 North Alfred Street, 1st Floor
                              Alexandria, VA 22314
 4
                              COOLEY LLP (DC)
 5                            Ephraim McDowell, Esquire
                              Pro hac vice
 6                            Elias Kim, Esquire
                              Pro hac vice
 7                            1299 Pennsylvania Avenue NW
                              Suite 700
 8                            Washington, D.C. 20004

 9                            COOLEY LLP (NY-NA)
                              Rebekah Donaleski, Esquire
10                            Pro hac vice
                              55 Hudson Yards
11                            New York, NY 10001

12                            PATRICK FITZGERALD (Solo
                              Practitioner)
13                            Patrick Joseph Fitzgerald, Esquire
                              Pro hac vice
14                            P.O. Box 277
                              New Buffalo, MI 49117
15
                              Michael Richard Dreeben, Esquire
16                            600 New Jersey Avenue NW
                              Washington, D.C. 20001
17
      For Defendant James:    BAUGHMAN KROUP BOSSE PLLC
18                            Andrew C. Bosse, Esquire
                              500 East Main Street
19                            Suite 1400
                              Norfolk, VA 23510
20
                              LOWELL & ASSOCIATES, PLLC
21                            Abbe David Lowell, Esquire
                              Pro hac vice
22                            John Patrick Bolen, Esquire
                              Pro hac vice
23                            1250 H Street NW
                              Suite 250
24                            Washington, D.C. 20005

25
                              (Continued)
```

```
 1                              (Continued)

 2    Court Reporter:          Diane Salters, B.S., CSR, RPR, RCR
                               Official Court Reporter
 3                             United States District Court
                               401 Courthouse Square
 4                             Alexandria, VA 22314
                               Email: Dianesalters.edva@gmail.com
 5                             Telephone: (301) 338-8033

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
      Proceedings reported by machine shorthand.  Transcript produced
25    by computer-aided transcription.
```

*Proceedings*

1          THE COURTROOM DEPUTY:  *United States v. James Comey*,

2     Case Number 25-cr-272.  Will the parties please note their

3     appearances for the record.

4          MR. WHITAKER:  Henry Whitaker for the United States.

5     With me is Lindsey Halligan, Tyler Lemons, and Gabriel Diaz.

6          MR. MCDOWELL:  Ephraim McDowell for the defendant,

7     James Comey.  With me is Michael Dreeben, Pat Fitzgerald,

8     Jessica Carmichael, Bekah Donaleski, and Elias Kim.

9          THE COURT:  Who is here for Ms. James?

10          MR. LOWELL:  Your Honor, Abbe Lowell on behalf

11     of Attorney General Letitia James.  With me is Andrew Bosse and

12     John Bolen.

13          THE COURT:  Thank you, everyone.

14          I would suggest that the way we proceed is to have

15     Mr. Comey's attorney, who is going to speak first, go ahead and

16     do that, and then we'll have Mr. Lowell.  I assume you're

17     speaking for Ms. James?

18          MR. LOWELL:  Yes, ma'am.

19          THE COURT:  And then we'll hear from Mr. Whitaker,

20     who, I assume, you're speaking for the government?

21          MR. WHITAKER:  Yes, Your Honor.

22          THE COURT:  All right.  And then we will have a brief

23     reply from the defense counsel; all right?

24          MR. MCDOWELL:  Thank you, Judge Currie.

25          Ephraim McDowell on behalf of Defendant James Comey.

1      This prosecution should be dismissed with prejudice

2  because of a fundamental defect.  Ms. Halligan, the sole

3  official who obtained the indictment, had no authority to do

4  so.  That result follows from basic constitutional, statutory,

5  and remedial principles.

6      U.S. attorneys wield tremendous power over individual

7  life and liberty.  That's why since the founding of our nation,

8  U.S. attorneys have been confirmed by the Senate, and that's

9  why since 1863, Congress has primarily tasked courts with

10  appointing interim U.S. attorneys.

11      THE COURT:  Mr. McDowell, are you aware of any

12  evidence of whether there was a declination memo prepared in

13  the Comey matter?

14      MR. MCDOWELL:  We are not aware of that at the moment.

15  I think, you know, that would be something that could

16  potentially come out in discovery, but we don't have that as of

17  yet.  But I don't think that that ultimately makes a difference

18  for purposes of the statutory question at issue here under

19  Section 546, and I think the key there is to look -- just

20  starting with the text of the statute, I think the key

21  provisions within 546 are subsection (c)(2) and subsection (d).

22  Subsection (c)(2) is the provision that limits the service of

23  the interim attorney general -- or, excuse me -- interim

24  U.S. attorney for 120 days, and (d) is the provision that says

25  after an appointment expires under (c)(2), the district court

*Proceedings*

1  gets the opportunity to make the appointment.

2  　　　　Under our interpretation, those two provisions make

3  perfect sense together because the attorney general gets the

4  initial 120-day window to make appointments, at which time that

5  authority then shifts to the district courts.  Under the

6  government's reading, I think they read two parts of that

7  provision kind of out of the statute.  Number 1 is the term

8  "expires" because the government is saying that the

9  attorney general can renew, perpetually, a U.S. attorney

10  appointment every 120 days such that it never actually expires.

11  So that's number 1.

12  　　　　Number 2, they are also reading the statute so that

13  the attorney general can effectively preclude district courts

14  from picking interim U.S. attorneys at all, and so I think that

15  nullifies subsection (d), the key piece of subsection (d),

16  which is the district court's appointment authority.

17  　　　　THE COURT:  Well, doesn't it also nullify the impact

18  on the Senate?

19  　　　　MR. MCDOWELL:  It does, and I think that gets me to

20  our next critical point, which is -- and the government

21  characterizes this as a policy argument, and that's just not

22  correct.  This is a statutory structure argument based on

23  Section 541 of the statute which creates the default rule that

24  U.S. attorney nominees must be confirmed by the Senate.  And

25  when Congress passed 546, it was an exception to that default

*Proceedings*

1  rule, and it has to be read narrowly as such an exception.  And

2  under the government's reading, the default rule of Senate

3  confirmation, which dates back to the founding, would be

4  eviscerated because, again, the attorney general could pick

5  someone and reappoint them every 120 days such that the Senate

6  would never have to confirm the person.  And as the government

7  admits on page 7 of its brief, the person could serve

8  indefinitely without Senate confirmation.  And as Your Honor

9  alluded to, that's an end-run around the core Senate

10  confirmation process.

11       THE COURT:  Indefinitely within the president's

12  four-year term.

13       MR. MCDOWELL:  I suppose so, but I think it could

14  actually go beyond that.  If it were the same president, they

15  could theoretically keep reappointing through eight years.  And

16  I think that just highlights how much the government's position

17  is an evasion of the Appointments Clause and the separation of

18  powers.

19       By contrast, our interpretation of subsection (d),

20  which is the provision, again, that authorizes district courts

21  to make these appointments, that provision facilitates the

22  Senate confirmation process because after the attorney

23  general's 120-day window, it goes to the district court.  And

24  the president is most likely to prefer his own Senate-confirmed

25  nominee over the district court's selection.  And so the way

*Proceedings*

 1   that this has always worked is that once the district court

 2   picks, that's going to provide incentive to the president to

 3   put someone through the Senate confirmation process, which is

 4   clearly what Congress wanted under the statutory framework.

 5   And as between one interpretation that facilitates the Senate

 6   confirmation process and one that actively thwarts it, I would

 7   submit that Your Honor should pick our interpretation because

 8   it's, again, more consistent with the statutory structure, the

 9   separation of powers, and the Appointments Clause.

10          THE COURT:  Could you address the harmless error

11   doctrine and its impact here on your argument?

12          MR. MCDOWELL:  Yes, Your Honor.  So that gets us to

13   the remedy question.  So our first order of response on that

14   issue is that the harmless error doctrine shouldn't apply at

15   all, and that's based on the Supreme Court's Appointments

16   Clause cases *Lucia v. SEC* and *Ryder v. United States.*  In those

17   cases, the court simply found the act of an improperly

18   appointed official void *ab initio.*  It was without lawful

19   government authority, so the court set it aside, and it didn't

20   apply harmless error doctrine in those cases.  And I think that

21   it highlights the importance of the Appointments Clause to

22   individual liberty and to the separation of powers, and it

23   shows -- it also highlights one thing that the court has said

24   in those cases, which is that Appointments Clause remedies must

25   be designed to incentivize Appointments Clause challenges.  And

1  if you could raise harmless error, that would be kind of an out

2  for the government in a way that would not incentivize these

3  Appointments Clause challenges in the way that the Supreme

4  Court has wanted.

5        But even if Your Honor were to apply the harmless

6  error framework, I think we satisfy it, and this is not a

7  harmless error for two main reasons.  The first is that

8  Ms. Halligan was the sole prosecutor in the grand jury room;

9  and when the sole prosecutor in the grand jury room lacks

10 lawful authority to prosecute, that's not going to be a

11 harmless error because the Federal Rules of Criminal Procedure

12 allow only authorized government attorneys to present to the

13 grand jury.  And I think it's notable that all of the

14 government's cited harmless error cases are ones in which there

15 were multiple prosecutors involved in either authorizing the

16 indictment or signing the indictment or being involved in the

17 case, and that is not the case here where only one person was

18 in the grand jury room signing the indictment and presenting

19 the indictment to the grand jury.

20        THE COURT:  Have you found any other case where there

21 was one prosecutor involved other than Judge Cannon's case of

22 *United States v. Trump*?

23        MR. MCDOWELL:  The best other example I can point you

24 to, Your Honor, is a case we cite in our reply brief called

25 *United States v. Garcia-Andrade*.  This is from the Southern

*Proceedings*

1   District of California.  There, the court said that there was

2   only one prosecutor before the grand jury, and she was not

3   authorized to practice law, and the court found that that was

4   not a harmless error because she was the only prosecutor before

5   the grand jury.  I think this is even more problematic because

6   we don't just have a violation about whether someone is

7   authorized to practice law; we have an Appointments Clause, a

8   constitutional violation, and so I think harmless error

9   certainly should not apply in that scenario.  So that takes us

10  through the key points on remedy.

11          I guess the one other thing I would say is I think,

12  for purposes of kind of the fundamental defect analysis, I

13  think you can look at that through the lens of *Lucia* and *Ryder*,

14  or you could look at it through more of a criminal law

15  type doctrine, like structural error or fundamental error; but

16  either way, I think you get to the same place, which is that

17  when the only person presenting to the grand jury lacks lawful

18  government authority, that's not going to be an error that --

19  that's always going to be prejudicial.  It's a fundamental

20  error.  It's fundamental to the integrity of the grand jury

21  process and the grand jury proceedings, so a prejudice has to

22  be presumed in that circumstance.

23          THE COURT:  Let's talk about the ratification by the

24  attorney general on October 31st; what's your position on that?

25          MR. MCDOWELL:  So our position on that -- first and

*Proceedings*

1   foremost, if you're referring to the ratification of the

2   actions before the grand jury themselves, for us, that

3   ratification cannot possibly work because of the statute of

4   limitations.  The ratification came on October 31st after the

5   statute of limitations had expired in Mr. Comey's case, and

6   under ratification doctrine, the ratifying official must have

7   the power to do the relevant act at the time it was done and at

8   the time the ratification was made.  And here when the

9   ratification was made on October 31st, the statute of

10  limitations had expired, and I think that is dispositive of the

11  ratification argument on the other side.

12          If you are referring to their argument that they've

13  now appointed Ms. Halligan in a different way which she wasn't

14  appointed in on the date the indictment was secured, if you

15  look at the original appointment order, it only cites

16  Section 546, and it appoints her as U.S. attorney.  They've now

17  come out and said, well, actually, the whole time, she's been

18  serving as special attorney, but they don't cite any authority

19  for that idea that you can post hoc, retroactively transform an

20  officer into a different position after the fact.  I didn't see

21  anything in their papers supporting that sort of maneuver.  And

22  that also runs counter to the Supreme Court's decision in

23  *Lucia*, the one I mentioned earlier, because, there, the court

24  looked only to whether the relevant official had lawful

25  authority at the time he conducted the relevant adjudication.

*Proceedings*

1   That was the question, was he a properly appointed officer at

2   the time he took the challenged action.  In footnote 6 of the

3   court's decision, the court explained that, later, the head of

4   the agency had tried to appoint the ALJ there, the

5   administrative law judge, in a different way.  And the court

6   didn't find that material.  It looked only at what the position

7   was, whether the appointment was proper at the relevant time

8   period that the official took the challenged action.  And so,

9   here, the only thing that matters is whether Ms. Halligan had a

10  proper appointment when she stood up in front of the grand

11  jury.  And she did not because, again, her appointment was not

12  authorized by the only statute that that appointment order

13  cited, which is Section 546.

14          THE COURT:  So what do you understand to be the

15  government's position regarding the effect of Section 3288 on

16  that?

17          MR. MCDOWELL:  So, Your Honor, as to 3288, I think

18  their argument for ratification of the actions before the

19  indictment is that because 3288 is out there, somehow

20  Ms. Halligan could have invoked that -- excuse me -- Attorney

21  General Bondi could have invoked that on October 31st.  But

22  3288 applies only when an indictment has been dismissed.  It

23  only comes up after an indictment has been dismissed.

24  Certainly on October 31st, the indictment in this case was not

25  dismissed.  It's still not dismissed, and so at the time of the

*Proceedings*

1   ratification, that 3288 could not have come into play.  I

2   actually don't think that Your Honor needs to reach anything

3   about 3288 in this case for that very reason.  It only could

4   come into play if the indictment in this case is dismissed

5   without prejudice, which we think it should be with prejudice,

6   but setting that aside, if it's dismissed without prejudice and

7   then the government was going to try to reindict.  At that

8   point, we would raise -- we would say that 3288 doesn't apply,

9   but that's not implicated in the case before Your Honor right

10  now.

11          THE COURT:  But you are asking me to determine or to

12  agree, I guess, that the statute of limitations continued to

13  run after the indictment in this case because it was an

14  invalid, void indictment and, therefore, that affects the

15  ratification portion of the government's position, correct?

16          MR. MCDOWELL:  I don't think so because I think that

17  the statute of limitations clearly has run, clearly stopped

18  running on September 30th.  What 3288 does is if the

19  prerequisites of that provision are satisfied, then the

20  government can get six additional months.  We don't think you

21  need to reach that question here because, clearly, 3288 only

22  could come into play after an indictment is dismissed.  And as

23  I mentioned before, for purposes of ratification, the key

24  question is whether the ratifying official had the authority at

25  the time she did the ratifying act, which was on October 31st.

Proceedings

1  So the only question is whether 3288 had any application on

2  October 31st, and I think, plainly, it did not because on that

3  date, the indictment had not been dismissed, and so that's why

4  we don't think 3288 affects the analysis.

5          THE COURT:  All right.

6          MR. MCDOWELL:  And the last thing I would want to

7  mention is the dismissal with prejudice argument.  So we think,

8  obviously, that dismissal is appropriate for all the reasons

9  I've given, both because the indictment is void *ab initio* and

10 because this is not a harmless error.

11         But the next question, then, would be dismissal with

12 or without prejudice, and we think that this Court should

13 exercise its supervisory powers to dismiss the indictment with

14 prejudice in order to deter and not reward the government's

15 constitutional violation in this case and its manipulation of

16 the statute of limitations because if Your Honor gets to this

17 point of the analysis, you've likely already concluded that

18 there's an Appointments Clause violation.  So we have a

19 constitutional violation, and if you look at the facts of the

20 case, it's pretty clear that the government was trying to find

21 anyone at the last minute before the statute of limitations

22 expired to bring this indictment, perhaps to invoke 3288

23 afterwards.  And I think that sort of conduct, that sort of

24 unconstitutional conduct and manipulation of the statute of

25 limitations, should be deterred, not rewarded.  If you

15

*Proceedings*

1   dismissed without prejudice, that would reward the government

2   for those sorts of actions because it would allow it to try

3   again, it would allow it to try to invoke 3288, and we don't

4   think that's the appropriate remedy when you have such a

5   serious constitutional violation and a manipulation of the

6   statute of limitations.

7           THE COURT:  So other than an indictment dismissed with

8   prejudice, is there any other relief that you seek regarding,

9   for example, the status of Ms. Halligan or, for example, the

10  situation where the right to appoint goes back to the district

11  court?

12          MR. MCDOWELL:  Your Honor, we've only sought dismissal

13  with prejudice in Mr. Comey's case.  That is all we are

14  seeking.  I think there could be logical ramifications that

15  come from that, particularly if the appellate courts were to

16  uphold that sort of ruling, but all we are seeking is dismissal

17  with prejudice.

18          THE COURT:  All right.  Thank you, sir.

19          MR. MCDOWELL:  Thank you.

20          THE COURT:  All right.  Mr. Lowell.

21          MR. LOWELL:  Good morning, Your Honor.  Thank you for

22  the time.

23          THE COURT:  Good morning.

24          MR. LOWELL:  I'm trying not to be repetitive.  Let me

25  ask the Court to allow me to address three or four ways that

*Proceedings*

1   you look to see how a statute works and what was intended and

2   how it applies.  I'd start the way the Fourth Circuit always

3   says, which is to look at the text, to look at the text.  The

4   government's reading would require this Court to do the

5   following three things:  First, to insert words into a statute.

6   For example, if they want this to be a perpetual ability to

7   continue to appoint every 119 days, you have to put the words

8   "his or her" before the word "appointment" in (c)(2).  If you

9   want this to be something that a court can do in subsection (d)

10  as well as giving the attorney general that same authority at

11  the same time, you would have to add the words "or the attorney

12  general" after the phrase "the district court."  But as you

13  know, absent provisions are not allowed to be put into a case

14  by a court, according to various Supreme Court cases, and we

15  have briefed those.

16        The second thing they're asking you to do is to,

17  again, in a statutory context, ignore some of the basic tools

18  we use to understand statutes.  One, for example, is the

19  *expressio unius* provision.  If, indeed, they meant that it

20  could be the court or the attorney general, you would say "the

21  court or the attorney general" by pointing out that the power

22  at that point after 120 days belongs only to the court.  They

23  would ask you to look past that.

24        And, last, but certainly not least, is the argument

25  that you're not supposed to interpret a statute which

1  would create numerous issues of superfluidity, and here there

2  are at least two; One you've already heard, which is if this

3  works the way they want, not only does 546 contain certain

4  sections, like the second reference to "under this section" --

5  which I'll come to -- but it also basically makes moot 541

6  because, as you just heard and what they have conceded, a

7  president and an attorney general could do this over and over

8  again, never having to invoke 541.

9       And then the last part of this is that you don't,

10  hopefully, interpret a statute as they're asking that would run

11  that statute's interpretation right into a statutory

12  contradiction that could implicate constitutional issues.  For

13  example, if, indeed, both the court and the attorney general

14  could continue to do what they think it can do, you could very

15  well see that you'd have two different candidates occupying the

16  seat at the same time.  All those statutory issues were raised

17  and addressed by Chief Judge Brown in the case that was brought

18  to challenge the similar appointment of interim U.S. attorney

19  Alina Habba in New Jersey.

20       THE COURT:  And I've listened to your argument before

21  the Third Circuit.

22       MR. LOWELL:  And waiting eagerly for its conclusion.

23       The second thing is -- again, I'm looking to the

24  Fourth Circuit, which says look at the words, but also to use

25  the Fourth Circuit statutory context, structure, history, and

1  purpose, and it's been a minute; just supplementing what my

2  colleague said -- their position in structure would have you

3  ignore that the way the statute is structured is to have the

4  reference in (c) which says "a person" to begin, then shifts

5  not to be focusing on the person but to continue to say "a

6  person" in each of the (c) sections, whereas the prefatory

7  language of (c) is about a specific person, but then it shifts,

8  and then it shifts to (c)(2) which puts the action in the hands

9  of the attorney general and has nothing to do with who it is

10  that that attorney general originally had put into place.  And

11  they need you, in order to accept their position, to forget

12  that structure.

13        As my colleague said, the entirety of the government's

14  case in asking you to allow these indictments to go forward is

15  based on simply starting the conversation after they took the

16  act as opposed to seeing that the structure of this statute is

17  supposed to sit side by side with 541.  546 refers to 541;

18  they're in the same chapter.  They were put that way years ago;

19  and because they are supposed to stand side by side, you can't

20  simply say that 546 is the all end of how you can get around

21  541.  Indeed, as they sit side by side, if you accept their

22  position that 546 is an exception to 541, then what you have

23  done is allowed, again, a statutory rule not to be followed,

24  which is you've allowed the exception to swallow the rule.

25        And in terms of the purpose, I don't think you can

*Proceedings*

 1   walk away from why it is that we're standing here.  You already

 2   know about the change that occurred in that 120 days that was

 3   taken out of the statute in 2006, only to be put back later for

 4   the very reason that Congress was talking about, the ability

 5   of there to be these successive 120s.

 6           The framework of 541, Your Honor, and 546 together has

 7   a brilliant part to it, and that brilliant part is, the

 8   president is given permission for a limited amount of time to

 9   get the case -- to get the office moving.  But then two things

10   happen.  541 says find somebody who can be qualified to be

11   confirmed by the United States Senate, and the second says if

12   you can't do it in 120 days, we're going to find a qualified

13   person by getting the courts to have that.  Their

14   interpretation is that the attorney general all by herself can

15   take away those protections that were built in to have other

16   branches of government involved.  And beyond that, the response

17   is, don't worry, the attorney general has to renew, reevaluate

18   every 119 days, and that's a safety check.  That's not the

19   safety check that the statute had in mind when it put those two

20   other branches in the proceeding.  And more importantly than

21   that, there's no rhyme or reason to that review.  And if past

22   is prologue, what do we know?  We can only talk about what

23   happened in this case.  The person who was in office, Erik

24   Siebert, was somebody who was an interim.  The court did re-up,

25   and then what happened?  Because that person, according to the

*Proceedings*

1   press, and you may know more, would not go ahead with these

2   cases, certainly not the case against Attorney General James,

3   he was forced out of office, and the person who came in, who's

4   sitting to my right, was somebody who said she would do what

5   the president asked.  If that's the kind of review that is

6   going to give us pause not to worry about the successive

7   120 days, that is certainly not a check and balance the statute

8   had in mind.

9       THE COURT:  Let me direct you to another question that

10  I have.  You, in your motion and in the reply brief, contend at

11  different points that the Court lacks jurisdiction to decide

12  the validity of Ms. Halligan's appointment.  That confused me,

13  and I'd like for you to explain that to me.

14      MR. LOWELL:  Yes.  So what we are referring to in the

15  cases that we cite for the jurisdiction is that the proposition

16  exists that if somebody purports to invoke the jurisdiction of

17  a court, then if that person didn't have the authority to

18  invoke the jurisdiction of the court, then the court doesn't

19  have jurisdiction, and the court always has the power to

20  determine its own jurisdiction.  And the cases that we pointed

21  to all talk about it in that fashion.  *Providence Journal* talks

22  about this lack of authority in terms of being without

23  jurisdiction, and the cases following the *Providence Journal*

24  case do exactly the same.

25      *By the way, Durham* was another case.  You asked my

*Proceedings*

1   colleague is there another case besides *Andrade* -- well, he

2   talked about *Andrade* -- *Durham* is another case in which the

3   court, using the word "jurisdiction," said the inquiry would be

4   to see if there was somebody else in the process who

5   participated or supervised the unauthorized actor.

6          THE COURT:  They remanded for that, so we don't know

7   the answer.

8          MR. LOWELL:  But you may have the answer already if

9   I've read the order correctly, and you'll have the grand jury

10  transcripts -- we do not -- so that may be an answer that

11  doesn't need a remand or, in your case, to ask for anything

12  more than you probably -- than you have already.

13         THE COURT:  No.  All the evidence in my review is that

14  Ms. Halligan acted alone in the grand jury in both cases.

15         MR. LOWELL:  And in that case, it would fit into those

16  cases in which that single fact was dispositive of whether or

17  not you could save the unauthorized action by some other

18  vehicle, as in *Durham* and as in the case of *Garcia-Andrade*.  So

19  when you ask me why is it a jurisdictional matter, an

20  indictment doesn't live by itself.  It's returned by a grand

21  jury.  And what's the very first thing that happens?  It's

22  handed up to a judge, and then things happen because the court

23  orders things to happen, including a summons, including an

24  order to come do an arraignment or initial appearance.  So if

25  that vehicle, that indictment, was void *ab initio* because it

*Proceedings*

1  was done in a way that is not prescribed either by statute or

2  the Appointments Clause, then it does affect the jurisdiction.

3  That's what *Providence Journal* said; that's what *Durham* said;

4  that's what *Garcia-Andrade* said.  And their reference to a case

5  to try to defeat that point, that *Kelley* case, is just off.

6  We're not saying that the lack of a signature on a case

7  otherwise properly brought would be a jurisdictional issue, so

8  said *Kelley*, but that's not what happened in this case, as you

9  just indicated what you saw in the transcript and what I

10  believe to be the case as well.  That's the jurisdictional

11  part, but it's not dispositive.

12        We've given the Court three vehicles for the relief we

13  seek.  One is, of course, that if the Court has no

14  jurisdiction, then we shouldn't even be here today.  The second

15  is a violation of the Appointments Clause by itself requires a

16  remedy, and the violation of the statute requires a remedy.

17  And within those three, the Court, as you know, has wide

18  discretion under its supervisory authority to form a relief, a

19  remedy that meets the harm.  So even if the Court were to

20  decide that somehow this weaves through those cases on

21  jurisdiction, there are two other legs that support the relief

22  we're asking.

23        THE COURT:  Do you have anything to add to what

24  Mr. McDowell said about the ratification?

25        MR. LOWELL:  I do, partially because his position on

*Proceedings*

1   behalf of his client is slightly different than ours.

2          So I think there are three things that we can

3   say about the ratification argument the government has put

4   forward.  Sometimes you create a hypothetical that goes to the

5   extreme just because that's how you can see whether someone's

6   argument makes sense.  And the government's argument literally,

7   taken to its absolute words, would indicate that even a person

8   like Steve Bannon or Elon Musk could have come into the grand

9   jury in this courthouse without any authority to do so, go into

10  the grand jury, ask for an indictment without either being a

11  government attorney or a government employee or any sense of

12  government anything, and then afterwards, the attorney general

13  could bless it, could ratify it.  They can point to no case

14  that does that.  Every case of ratification they point to has

15  at least a government employee in the same agency or related to

16  that agency taking the action to which a supervisor later does

17  that.

18          Second point:  They are applying, or asking you to

19  apply, the general agency notion of ratification, which is an

20  administrative or agency law in a criminal context, and there's

21  been no Supreme Court case that allows the retroactive

22  application of ratification in either a civil or in a criminal

23  case where there's an Appointments Clause violation.  But more

24  importantly, we have some guidance, and the guidance comes from

25  the very case that the government has put forward to support

*Proceedings*

1  this notion that they can do this ratification, the --

2          THE COURT:  The dolphin case?

3          MR. LOWELL:  Yes.  No, no -- yes, the dolphin case.

4  And then the question becomes this:  They cite to *Lutnik*, the

5  dolphin case, for a promulgation of irregulation.  Now, to

6  begin with, we ask the Court to take into consideration the

7  Second Circuit's in *Nederland* (phonetic), which is one where it

8  sets out why, generally speaking, cases that protect criminal

9  rights should be applied more strongly than those in any other

10 context.  And I don't need to tell you all the things that in

11 the Constitution give defendants those protections, which the

12 court called the bundle of legal principles that protect a

13 defendant from an improper process, everything from the rules

14 of secrecy in 6(c) to, of course, the proof beyond a reasonable

15 doubt.  All of those set criminal cases separate from admin law

16 cases.  But even so, they said, please, we can do this under

17 *Lutnik*, because the Fourth Circuit had a promulgation,

18 delegation, ratification, you know, that kind of policy issue.

19 But what I didn't hear them point out is what the district

20 court said that got the case to the Court of Appeals.  It is

21 not only instructive, it's dispositive.  And what the lower

22 court said was this:  Plaintiffs also assert that the court

23 should not find that the ratification cures any Appointments

24 Clause defect because the structural errors cannot be cured.

25 It goes on to say, But on this point, Plaintiff's analogy,

*Proceedings*

 1  criminal law structures to those of administrative law, such as

 2  saying that a petit jury's conviction was essentially a

 3  ratification of an improper indictment, this is not, however, a

 4  criminal case.  And the concerns, namely, a criminal

 5  defendant's liberty interest, that motivate courts to find

 6  structural errors in criminal context infect the entire process

 7  even absent a showing of prejudice simply do not apply here.

 8  That's what separates this case from the general ratification

 9  cases in which the government cites and asks you to rely on.

10  And the context, therefore, is while we -- and we don't profess

11  to have the statute of limitations prohibition; we have

12  something that equally is powerful, and that is that there is

13  no case that allows this ratification process to be done as the

14  ratifications of a private person.

15          And, secondly -- oh, and by the way, at the point at

16  which she walked into the grand jury, Ms. Halligan was a

17  private person.  She was no longer in the White House.  She

18  was pretending or purporting to be interim.  She wasn't

19  actually interim, which means she was no, for purposes of the

20  ratification process, other than a private person.

21          And, secondly, we do away with all these criminal law,

22  criminal process protections if we allow what the Supreme Court

23  has never said allowable, which is to apply this in

24  the criminal law context.

25          THE COURT:  So in your first motion, you asked me to

*Proceedings*

```
 1   disqualify Ms. Halligan from acting any further as interim
 2   U.S. attorney.  In the second, your reply brief, you indicate
 3   you want an injunction regarding her actions.  What specific
 4   relief are you seeking regarding that?
 5           MR. LOWELL:  Can I start just by saying that we also
 6   move for a dismissal --
 7           THE COURT:  Yes.  I understand.
 8           MR. LOWELL:  -- of the case?
 9           THE COURT:  I got that.
10           MR. LOWELL:  Okay.  Now I can move on from there.
11           In a certain way, the verbs "disqualify"
12   and "injunction" are not terribly different, but they have one
13   specific difference in this case.  One of the cases that you
14   saw was the case mentioned about the administrative law judge,
15   and what was interesting about that was when the court said you
16   did it wrong, the ALJ had no authority and, therefore, we're
17   sending it back, said that that ALJ could no longer participate
18   even if they tried to do it right the next time.  Now, I
19   realize it's not a perfect analogy because they said it was
20   because the judge had already made up his mind.  Well, in that
21   case, it is a perfect analogy because if a U.S. attorney is
22   supposed to do anything, it's supposed to be a filter as to
23   what is and is not a good case to bring, as we saw with Erik
24   Siebert.  So, here, using the same flavor, we believe that the
25   relief, among others, depending on what happens to the case
```

---

*Proceedings*

1  dismissed, would be that she cannot continue to do what other

2  courts have said an improperly appointed interim or acting or

3  special attorney could do, which is to continue to participate

4  or supervise on the case, and heavy emphasis on the word

5  "participate" because if this case goes back, she did not have

6  authority.  Consequently, those cases we cite indicate that a

7  proper remedy would be that she should be enjoined from

8  participating.

9       Now, who else might participate if, somehow, this case

10  isn't dismissed with prejudice is for another day.  I suspect

11  there could be somebody in the future that has the right

12  authority.  So the relief we're asking for has two parts.

13  Part 1 is to dismiss.  We believe the conduct of the

14  government, within your discretion, allows that to be with

15  prejudice because of the affront to the Appointments Clause,

16  because of the track record.  In fact, you asked Mr. McDowell

17  in his first question, if I remember you asking, was how does

18  the harmless error fit in, and I'd like to address that for

19  15 seconds.

20       THE COURT:  Go ahead.

21       MR. LOWELL:  That's where it goes to the remedy side

22  as well because harmless error, it's their burden to show

23  that -- this is harmless error beyond a reasonable doubt, by

24  the way -- also has the requirement to say that but for what

25  had happened in the unauthorized way, et cetera, and the "but

---

*Proceedings*

1   for" here is obvious.  The "but for" here is that we have good

2   reason to believe that every career prosecutor that was

3   involved in the process realized that this was not a proper

4   case against the attorney general, and then they left or they

5   were forced out or some combination, and now the one person who

6   would do it at the direction of the president with a text that

7   was probably meant to be a text, but went out to Attorney

8   General Bondi, to the world, basically, commanded that what

9   happened happened.  If that's not a good definition of "but

10  for" and against the harmless error, I couldn't make up a

11  better one myself.

12          THE COURT:  Thank you, sir.

13          MR. LOWELL:  Thank you.

14          THE COURT:  All right.  Mr. Whitaker.

15          MR. WHITAKER:  Henry Whitaker for the United States.

16          The defendants here are attempting to elevate what is,

17  at best, a paperwork error, and to the extraordinary remedy

18  of dismissing duly returned indictments with prejudice.  That

19  request should be rejected on its merits and because dismissal

20  of the indictment would in any event not be a proper remedy.

21  And I'll turn first to the merits unless the Court would like

22  me to start somewhere else.

23          Section 546 permits the attorney general, with one

24  exception that's clearly inapplicable here, to appoint a

25  U.S. attorney for the district in which the office of the

*Proceedings*

1  United States Attorney is vacant.  The office here is vacant,

2  and there is nothing in the other subsections of 546 that in

3  any way suggests that the attorney general, under that

4  unqualified language, is limited to only one appointment.  On

5  the contrary, subsection (c) of the statute refers to a person

6  appointed as United States attorney under this section, and the

7  defendants agree that multiple persons can be appointed by the

8  attorney general under that section, which makes sense because

9  "a" has an indefinite article.  And so the question that the

10 Court has to decide on the merits is whether the attorney

11 general is forced to cram those multiple appointments into one

12 120-day period, and subsection (c)(2) of the statute refutes

13 that notion because it says -- well, let's just read the whole

14 statute in its entirety -- "A person appointed as United

15 States attorney under this section may serve until the earlier

16 of the expiration of 120 days after appointment by the attorney

17 general under this section."

18        Ms. Halligan is a person appointed as United States

19 attorney, and she may serve until the expiration of 120 days

20 after appointment by the attorney general under this section.

21 That last bit, "appointment by the attorney general under this

22 section" refers to the person who was appointed, that

23 particular person.  It does not refer to some other person.

24 That is not an actual way of reading that language.

25        And so the plain language of the statute fully

*Proceedings*

1  supports that the attorney general is entitled to multiple

2  120-day appointments there.  And that principle, that

3  proposition is consistent with the way we normally read

4  appointments, term appointments.  And we cite in our brief the

5  Mechem treatise and attorney general opinions going back to the

6  19th century that say that as a general matter, when you have a

7  person appointed to a term, that term is personal to the

8  appointee, and they get a full term.  For example, for example,

9  in this very context.  Under 28 U.S.C. 541, which provides for

10 U.S. attorneys to be appointed for four-year terms by and with

11 the advice and consent of the Senate, you get a four-year term.

12 If a U.S. attorney leaves before the expiration of that

13 four-year term, it is clear as day that a new appointee would

14 get a new four-year term, and that person would not be limited

15 to simply serving out the remainder of that predecessor's term.

16 Now, there's an exception to that principle for multi-member

17 commissions who serve staggered terms and the like, and that's,

18 of course, entirely inapplicable here, nor is there anything --

19 and, of course, this is a case where the district court's

20 authority under subsection (d) was triggered.  There is

21 likewise no indication that once an appointment expires under

22 subsection (d), that the district court's authority that is

23 triggered under subsection (d), that that is exclusive of the

24 attorney general's authority.

25          The attorney general's authority under 546(a) does not

*Proceedings*

```
 1   contain an exception for 546(d); and 546(d), when it defines
 2   the district court's appointment authority, is expressly
 3   phrased in permissive terms.  It says the district court may
 4   appoint, and there is absolutely no incongruity in reading both
 5   appointment options to be available.  In this particular
 6   context, that's actually a very common structure that exists
 7   when it comes to temporary appointments.
 8              THE COURT:  If you are correct that the 120-day
 9   repetition is fostered by this statute, then what effect did
10   the 2007 amendment do?
11              MR. WHITAKER:  Well, what the 2007 amendment did,
12   Your Honor, is it repealed the prior structure that Congress
13   had put in place in 2006, which was to allow the attorney
14   general an indefinite one-time-only appointment, and that's not
15   what -- and, instead, what they did was they restored the prior
16   structure of the statute that had existed in 1986.
17   That history -- so we certainly agree that the attorney general
18   does not have a fire and forget, so to speak, one-time-only
19   appointment authority where she can appoint someone and never
20   think about it again.
21              Now, of course, the district court is fully empowered
22   to do just that under subsection (d).  So I think that --
23   certainly, Congress got rid of that, but what it didn't get rid
24   of was the idea that the attorney general is not limited to one
25   120-day appointment; and, in fact, the history suggests exactly
```

*Proceedings*

```
 1    the opposite because prior to the 2007 restoration of the
 2    statute, Congress knew that the executive branch's practice had
 3    been to make successive 120-day appointments.  That's exactly
 4    how the executive branch had construed the statute --
 5              THE COURT:  Only eight of them.
 6              MR. WHITAKER:  That's -- fair enough, Your Honor;
 7    that's true, there weren't a lot of them.  And one of the
 8    reasons -- let me just address that.  There weren't a lot them,
 9    but they, nonetheless, existed and, in fact, were referred to
10    by Congress in the House reports.  So they were very well aware
11    of them.  And if Congress really wanted to abolish that
12    practice, it would have been a very strange way of doing it by
13    reenacting the exact same statutory language that the executive
14    branch had previously construed to allow that.  But one of the
15    reasons why this actually doesn't come up all that much is the
16    way this statute normally works -- and Your Honor may be
17    familiar to some degree with this -- is that the Department of
18    Justice and the district court work together to find an
19    appointee who is mutually agreeable.  Generally speaking, what
20    has happened under this statute over the years is that the
21    attorney general appoints someone for a 120-day period, and the
22    district court will ratify, in effect, that appointment.
23              THE COURT:  Well, we have about 200 years where the
24    judges made the appointments.
25              MR. WHITAKER:  That's true, Your Honor, and I think
```

*Proceedings*

1   actually, that history is pretty telling because my friends

2   talk about evading Senate confirmation.  Well, the one thing we

3   know about this statute is that Congress didn't have any

4   problem with allowing the district court, certainly, to have an

5   appointment authority that allowed an interim U.S. attorney to

6   serve until a PAS nominee is confirmed and appointed.  And so I

7   think the idea that -- it's sort of baked into the statute that

8   these appointments can exist for a long time, and we cite some

9   examples in our brief where interim appointments sometimes have

10  lasted for a very long time.  And, look, that's certainly not

11  the preferred course.  The executive branch has very strong

12  reasons to want to have PAS nominees despite the --

13  appointees -- despite the fact that, yes, there are sort of

14  stopgaps where you can have temporary appointees that serve in

15  the interim, but it is very useful to the executive branch to

16  have PAS appointees who have imprimatur of ordinate branch of

17  government and, in many instances, the approval of the home

18  state senators.  So this idea that we're just going to sort of

19  evade the Senate confirmation just because we have this

20  appointment authority is, I think, kind of fanciful and does

21  not fit with the way this has worked over the years because

22  there has been this indefinite appointment authority that the

23  district court, as Your Honor pointed out, has had for a long

24  time, and, yet, we've seen plenty of PAS U.S. attorneys over

25  the years.  So I think that concern is kind of fanciful.  And

*Proceedings*

```
 1   it is a small step, I think, from that to construe the statute

 2   to allow the attorney general a similar but lesser, in fact,

 3   type of appointment authority, namely, the authority to appoint

 4   interim U.S. attorneys to successive 120-day terms.  And that

 5   is not -- and that is a real limit because it is obviously not

 6   the preferred course to have to re-up the appointment every

 7   120 days.  And, obviously, we don't -- it creates some

 8   uncertainty in office if, basically, the situation is that an

 9   interim appointee needs to be ratified 120 days.  You may not

10   know who is going to be your boss the next 120 days, and that's

11   a situation that, certainly, the executive branch would not

12   prefer, and I can assure you from experience with the attorney

13   general that a reappointment is not a rubber stamp.  She cares

14   very much about the documents she signs.

15         THE COURT:  Well, Mr. Whitaker, let's cut to the

16   chase.  What about your ratification; why do you need that?

17         MR. WHITAKER:  Well, I don't think we do need it,

18   Your Honor.  I'm happy to talk about it, but I definitely think

19   that the arguments the other side has made about why it's

20   invalid are completely wrong.  And let me begin with Mr. Comey.

21         Mr. Comey says that the statute of limitations has run

22   because you have not yet dismissed the indictment, which sort

23   of elevates form over substance.  I guess I could just redo

24   the ratification once the indictment gets dismissed and that

25   would fall away.  But in any event, even right now, the return
```

35

*Proceedings*

1    of the indictment tolled the statute of limitations.  And so it

2    was not the case that the statute of limitations has expired

3    right now, and I would point you to *United States v. Ojedokun*,

4    which is 16 F. 4th 1091, 1109, which is the Fourth Circuit,

5    2021, which says, quote [as quoted]:  The return of the

6    indictment tolls the statute of limitations, and a superseding

7    indictment which supplants a timely filed indictment, still

8    pending, is itself to be regarded as timely so long as it

9    neither materially broadens nor substantially amends the

10   charges against the defendants.

11          THE COURT:  So, Mr. Whitaker, if you're wrong and both

12   Section 546 and the Appointments Clause violate or violated,

13   then why wouldn't you need a ratification?

14          MR. WHITAKER:  Well, we certainly don't think they

15   were violated, and I'm happy --

16          THE COURT:  I know that, but if you assume for the

17   moment hypothetically if they were violated, then how would

18   that affect the relief that Mr. Comey would be entitled to and

19   Ms. James?

20          MR. WHITAKER:  Well, if the ratification is valid,

21   he's certainly not entitled to dismissal of the indictment.  I

22   mean, it's possible that you could enter some kind of

23   prospective remedy here which --

24          THE COURT:  Let me ask you this.  I was involved in

25   receiving *in camera* provisions of the grand jury transcripts

*Proceedings*

```
 1   and tapes, and it became obvious to me that the attorney

 2   general could not have reviewed those portions of the

 3   transcript of the Comey presentation by Ms. Halligan which

 4   preceded and came after her presentation of the witness

 5   testimony in the case.  There also is a missing section of what

 6   occurred between 4:28 and the return of the grand jury

 7   indictment, and it appears to me that there was no court

 8   reporter present, or if he or she was present, did not take

 9   down what happened during that time period.

10        So how does the attorney general ratify and say that

11   she has reviewed the grand jury transcripts when they did not

12   exist in the records of the Justice Department at that time?

13        MR. WHITAKER:  Well, it's true that -- it is true,

14   Your Honor, you're right, that we didn't have the intro and

15   back end of the grand jury transcripts when we presented that.

16        THE COURT:  What the sole prosecutor and the grand

17   jury said.

18        MR. WHITAKER:  But I think all that's necessary -- but

19   that is not what ratification doctrine requires for a principal

20   to ratify.

21        THE COURT:  It may not require it, but she's done it.

22   She said that she reviewed it and that on the basis of her

23   review, she ratifies it.

24        MR. WHITAKER:  Well, she said she reviewed the

25   proceedings.
```

*Proceedings*

1        THE COURT:  She could not have.

2        MR. WHITAKER:  She reviewed the material facts,

3    certainly, of the proceedings.  She reviewed -- she had before

4    her all of the witness testimony, and she reviewed that, and

5    it's not necessary for a principal to ratify all this.  And the

6    Fourth Circuit said this in the *Wille* case, the dolphin case

7    that Your Honor mentioned, that all that's necessary for

8    ratification is that the principal know of the material facts

9    of the transaction, and she knew those.  And so there's no

10   problem with ratification for the fact that there was a

11   mismatch in those transcripts, and the other side hasn't

12   disputed that.

13        On the point that Mr. Lowell makes about the criminal

14   context, that has to be wrong.  In *NRA Victory Fund* [*sic*], the

15   Supreme Court applied ratification doctrine to the certiorari

16   deadline which applies to civil and criminal cases alike.  And

17   in the *Wille* case -- in the dolphin case -- the Fourth Circuit

18   indicated that ratification doctrine is that Congress

19   legislates against the common law backdrop of ratification

20   doctrine, and I think that would apply to criminal statutes no

21   less than civil statutes, so there's --

22        THE COURT:  Didn't Judge Richardson's footnote

23   specifically say that the ratification would not apply as to

24   the office but could only apply as to the acts?

25        MR. WHITAKER:  Well, first of all, as to the act --

*Proceedings*

1   well, that's what we're saying.

2           THE COURT:  Your first page of your ratification

3   document is ratifying the office.

4           MR. WHITAKER:  Well, it is, and I'm happy to talk

5   about that, but if I could just finish off --

6           THE COURT:  Go ahead.

7           MR. WHITAKER:  -- with the ratification of the

8   indictments, that is a ratification of the acts, and that's

9   valid, and that in and of itself, quite apart from the

10  ratification of the office, would be sufficient to deny the

11  defendants any kind of a retrospective remedy.

12          With respect to the ratification --

13          THE COURT:  Do you have any case saying that?

14          MR. WHITAKER:  Well, there are many cases that --

15          THE COURT:  In a criminal context?

16          MR. WHITAKER:  I don't have a specific case in the

17  criminal context, although the other side does not have a

18  specific case rejecting the application of the doctrine in the

19  criminal context specifically, but I don't think that that

20  distinction should matter because, again, I don't think that

21  *NRA Victory Fund* -- the Supreme Court would have said that just

22  because it's a criminal case implicating the certiorari

23  deadline, that that would have somehow meant that you shouldn't

24  apply normal agency principles to that.

25          But let me just address the ratification of the

*Proceedings*

1    appointment for one second, and that comes into this case in a

2    little bit of a different way because our contention is that

3    even if you thought that there was a 546 error here, that does

4    not mean that Ms. Halligan was not an authorized attorney, an

5    authorized assistant of the attorney general for purposes of

6    the grand jury rules. And, you know, the ratification, we

7    don't think that's necessary for that argument to succeed, but

8    certainly the ratification document of her appointment supports

9    the idea that the attorney general did want Ms. Halligan to be

10   an attorney for the government as of the time she was appointed

11   U.S. attorney under 546. And the Federal Rules of Criminal

12   Procedure -- and, by the way, the defendants' argument here is,

13   basically, well, she was equivalent to a private citizen when

14   she went there in the grand jury room, which would result, I

15   think, in some pretty odd consequences if that were really

16   true. It would mean, for example, I suppose, that Ms. Halligan

17   wouldn't be bound by grand jury secrecy, which is applicable to

18   attorneys for the government, and, certainly, that's not the

19   way that she's conducted her business. But in any event, she

20   was an authorized assistant despite the fact that the

21   appointment order may have cited the wrong statute.

22        And, you know, there's no requirement in the relevant

23   appointment statutes that any particular statute be cited when

24   an appointment is made. I mean, if this appointment had simply

25   said, I hereby appoint Lindsey Halligan to be the chief

1    prosecutor in the Eastern District of Virginia, we would have

2    to cite statutes if that appointment were challenged to say

3    what the basis of that was, but the fact that no statutes were,

4    in particular, cited wouldn't invalidate the appointment.

5        And I think there is very little dispute here in this

6    case that the attorney general has broad authority to, quite

7    apart from 546, authorize attorneys to conduct criminal

8    proceedings; for example, under 28 U.S.C. 515, 510, 543, 542,

9    and so on.  And so in contrary to, I think, what Mr. McDowell

10   said, we do cite a case that suggests that the fact that the

11   government might have cited a wrong statute is not in and of

12   itself a basis for invalidating the government action.  We cite

13   the *Massachusetts Trustees* case at page 21 of our brief, and

14   the quote from -- you know, a good quote from that case is that

15   you can disregard a mis-citation when the error is, quote, one

16   that clearly had no bearing on the procedure used or the

17   substance of decision reached.  That's 377 U.S. 248, and I

18   think that is some authority for the idea that merely citing

19   the wrong statute isn't a basis for saying that the action was

20   unauthorized.  And I think the contrast between the *Providence*

21   *Journal* case that the defendants rely on and this case is

22   pretty instructive.  So they say *Providence Journal* for the

23   idea that an unauthorized government representative can't

24   conduct legal proceedings.  But what happened in *Providence*

25   *Journal* was that somebody -- basically, a prosecutor who was

*Proceedings*

1  appointed to prosecute a contempt -- tried to file a certiorari

2  petition without authorization by the solicitor general, and

3  the solicitor general said, no, thank you; we don't want that

4  to be done on behalf of the United States.  Here, though, the

5  relevant actor who is responsible for authorizing people like

6  Ms. Halligan is the attorney general, and she did authorize

7  Ms. Halligan to do this, and if there were any doubt about the

8  fact that she did so, the attorney general has now ratified

9  that appointment, both the appointment and, indeed, the

10  underlying action.

11          Mr. McDowell cited *Lucia,* footnote 6.  Well, *Lucia* was

12  not a case to begin with where the government had ratified the

13  underlying adjudications in fact, and that is not what we did

14  in *Lucia*.  And, in fact, the government never intended that the

15  ratification of the appointments in any way deprived the

16  challengers of a remedy in that case.  And so I don't think

17  *Lucia* -- and, in fact, in *Lucia*, the court did not reach

18  whether the ratification -- what the effect the ratifications

19  had on the case, so I think that case is quite irrelevant.

20          THE COURT:  Mr. Whitaker, let me ask you one last

21  question.  Do you believe that *U.S. v. Trump*, decided by

22  Judge Cannon, in, I believe, 2021, was wrongly decided?

23          MR. WHITAKER:  Well, I think it's certainly not

24  controlling here, Your Honor, because in *United States v.*

25  *Trump*, Judge Cannon held that various statutes that existed,

*Proceedings*

1    some of which I've cited here today, did not authorize the

2    appointment of a special counsel.  But here, in a very

3    important distinction between this case and *Trump*, is that we

4    have available to us a number of statutes that the United

5    States did not have available in making those arguments.  For

6    example, you know, you couldn't have appointed Jack Smith as an

7    AUSA under 542.  I mean, we could have -- we certainly could

8    have done that with Ms. Halligan.  You couldn't have appointed

9    Jack Smith as an assistant to a United States attorney under

10   543.  We certainly could have done that with regard to

11   Ms. Halligan.

12           But, I mean, look, to the extent that -- and I do

13   think that mostly what was driving Judge Cannon's decision in

14   that case was sort of the unique and broad authority that the

15   special counsel possessed sort of free of supervision, which,

16   of course, is an element that we do not have here.  But I will

17   say this:  Like, look, to the extent you can read Judge

18   Cannon's decision as suggesting that the Department of Justice

19   does not have authority under, for example, 28 U.S.C.

20   Section 510 to appoint Main Justice attorneys, which would

21   basically knock out most of the Department of Justice as it

22   existed for the past, like, 50 years, yes, we certainly do

23   disagree with that, and we agree that the attorney general has

24   full authority to make appointments under statutes like 28

25   U.S.C. Section 510 and 509, and that source of authority would

1    fully support Ms. Halligan being an authorized attorney to the

2    government even though there may have been a paperwork error, a

3    citation error in her appointment order.

4            I did want to briefly touch on harmless error if I

5    may, Your Honor.

6            THE COURT:  All right.

7            MR. WHITAKER:  I do think the harmless error question

8    here is somewhat different from how the defendants are framing

9    it.  The question is what effect did the fact that the attorney

10   general cited -- mis-cited 546 and gave Ms. Halligan a title

11   that the defendants claim she was not entitled to, whether that

12   affected the proceedings before the grand jury.  I think that's

13   the basic question.  Your Honor has the grand jury transcripts,

14   and so -- you know, and obviously we can't talk about them now,

15   but when you're reviewing the transcripts and asking whether

16   that particular error -- I would urge you to focus on that

17   question:  What was the effect of her title on the proceedings?

18   And I would respectfully submit that what the grand jury

19   transcript shows is that, in fact, the grand jury made a

20   decision based on the facts and the law, and they followed

21   their oath, and they returned duly constituted indictments

22   against these defendants.  And the fact that there may have

23   been a paperwork error had absolutely no effect on that

24   particular decision.

25           THE COURT:  Thank you, sir.

1          Mr. McDowell.

2          MR. MCDOWELL:  Yes.  Thank you, Your Honor.  I would

3    like to make a few points in response to Mr. Whitaker.

4          THE COURT:  Go ahead.

5          MR. MCDOWELL:  So he repeatedly called this a

6    "paperwork error" or a "citation error."  We think that is just

7    completely incorrect.  This was a violation of the Appointments

8    Clause which is designed to protect individual liberty, and

9    that is particularly true in the criminal context, as my

10   colleague Mr. Lowell was saying.  This is a criminal case where

11   protections have to be at their apex; and to have someone who

12   comes in with a title as U.S. attorney -- which, by the way,

13   there was no other way to try to appoint Ms. Halligan as

14   U.S. attorney -- I think that could be very different for a

15   grand jury to see this is the U.S. attorney, this is the chief

16   prosecutor in the district.  That comes with some weight.  That

17   comes with credibility that may not be there when you're

18   talking about a special attorney or an assistant U.S. attorney,

19   and particularly where the indictment in Mr. Comey's case was

20   by a razor-thin margin.  It was by a very, very close margin,

21   and the grand jury no true billed one of the counts.  I do

22   think that that could have made a significant difference in the

23   context of this grand jury proceeding.  But I don't even think

24   you get there because under the Appointments Clause cases that

25   we cite -- and we also wanted to add one other additional

*Proceedings*

1   citation for Your Honor which applies a statutory violation

2   argument, *Nguyen v. United States*, 539 U.S. 69.  This stands

3   for the proposition that the same sort of remedial analysis

4   would apply to a statutory appointments violation as a

5   constitutional appointments violation where the court there did

6   not engage in harmless error review.  It didn't apply the

7   *de facto* officer doctrine even though it was a statutory

8   violation.  So even if you thought that this was purely a

9   statutory violation and not a constitutional violation, you

10  still wouldn't get into harmless error review or the *de facto*

11  officer doctrine.

12          The second point I wanted to make is about the merits.

13  So I didn't hear my colleague on the other side give

14  subsection (d) any real meaning.  That's the provision that

15  transfers the authority to the district courts.  As Your Honor

16  mentioned, for 120 years, district courts were the sole

17  appointors of interim U.S. attorneys.  If Congress, in 1986,

18  had wanted to change that, it would have spoken far more

19  clearly.  Instead, Congress gave the attorney general a limited

20  role up-front for 120 days and then kept subsection (d) in the

21  statute.  We also know that from the Justice Alito memo, which

22  hasn't come up yet today.  Three days after the 1986 law,

23  Justice Alito, writing on behalf of the Office of Legal Counsel

24  when he was deputy assistant attorney general, interpreted

25  subsection (d) in the exact way we interpreted it here.  He

1  said the attorney general gets 120 days, and then after that,

2  it goes to the district court, and the attorney general does

3  not get another bite at the apple.

4         Your Honor also mentioned the 2007 law.  I think that

5  is critical because I didn't hear any meaning that the other

6  side was giving to that particular amendment, because under

7  their view, both before and after the 2007 law, interim

8  U.S. attorneys could serve indefinitely without Senate

9  confirmation even though the entire purpose behind the 2007

10  amendment was to stop bypass -- stop the executive branch from

11  bypassing Senate confirmation.  That is all over the House

12  report.  It was the clear impetus for this law, because in 2006

13  when the 120-day limit in the district court provision was

14  taken out of the statute, we saw executive branch abuses of

15  that power where they fired Senate-confirmed U.S. attorneys and

16  installed interim U.S. attorneys who were going to serve

17  indefinitely.  So we know that the 2007 statute was designed to

18  prevent exactly the sort of result that the government is

19  advocating here.

20         That also brings me to one final point about the

21  merits, which is that Mr. Whitaker kept saying that we haven't

22  seen this happen before, the executive branch has always gone

23  through Senate confirmation.  He thinks that everything is

24  going to be okay.  But if the judiciary blesses this

25  interpretation now from the government, which is the first time

*Proceedings*

 1  they've offered this interpretation in nearly 40 years since

 2  the statute was passed, they would never have any reason to go

 3  through Senate confirmation again.  The district courts would

 4  never have another opportunity to appoint.  So I just don't

 5  think that past practice can possibly help the government when

 6  it's their position that would be a dramatic departure from

 7  that practice.  Our position is the one that is consistent with

 8  40 years of practice, and we've seen this statute generally

 9  work well where district courts make reasonable decisions, and

10  then the presidents submit their U.S. attorney nominees to the

11  Senate, and the Senate gets to weigh in.  Those important and

12  critical checks have long made sure that U.S. attorneys are not

13  simply installed to be personal allies of the president, but,

14  instead, are people who are well-qualified, adhere to the rule

15  of law, and are committed to our system of justice.

16        As to the remedy for purposes of ratification, I think

17  there are a few moving parts here.  With respect to ratifying

18  the indictment itself, we agree with Mr. Lowell that Your Honor

19  could draw a very compelling distinction between the civil

20  context and the criminal context in light of the ramifications

21  of the argument that ratification applies in the criminal

22  context.  What that would mean is that, again, the government

23  could send in any private person to the grand jury just before

24  the statute of limitations is about to expire, get the

25  indictment, and then have the attorney general come out

1    afterwards and ratify it, and I just think that that would be

2    a dramatic extension of ratification doctrine to an area where

3    individual liberty is at stake and due process interests are at

4    stake in a way that is very different from the regulatory

5    context.

6         Mr. Whitaker mentioned *FEC vs. NRA Political Victory*

7    *Fund*.  Actually, the certiorari deadline that was at issue

8    there doesn't apply as a statutory matter in criminal cases.

9    So that ratification case does not support the idea that

10   ratification can apply in criminal cases.  As a statutory

11   matter, the cert deadline only applies to civil cases, and it's

12   not jurisdictional in the criminal context.  For precisely some

13   of these same reasons, everyone recognizes that the procedural

14   interests are more compelling in the criminal case than in the

15   civil case.

16        Again, their ratification argument would have no

17   limiting principle.  It would allow the attorney general to

18   come after the fact and ratify any indictment.  As for

19   ratifying the office of what was the U.S. attorney at the time

20   now, supposedly the special attorney, ratifying that office

21   retroactively, they have not cited a single case that allows

22   that.  I still haven't heard any case be offered that allows

23   that sort of post hoc ratification of an office.  And I think

24   that that would be, again, very, very difficult to square with

25   the fact that there was no other citation available.  There was

1   no other source of authority to appoint Ms. Halligan as

2   U.S. attorney.  That's very different for purposes of a grand

3   jury proceeding when you're coming in as the U.S. attorney as

4   opposed to a special attorney.

5          And I just want to close with the following point:

6   Stepping back, this case is the latest in a pattern of this

7   administration trying to evade the Appointments Clause as well

8   as other structural safeguards of the Constitution, but this

9   case is also unique because if the government was to prevail

10  here, it would never need to go through Senate confirmation,

11  again, for U.S. attorneys.  And I think that is just a critical

12  consequence that Your Honor has to be grappling with when you

13  decide this case.  And for that reason, we think that you

14  should reject the government's flawed interpretation of

15  Section 546 and dismiss with prejudice.

16         THE COURT:  Thank you, sir.

17         Mr. Lowell.

18         MR. LOWELL:  Again, sensitive not to be repetitive, I

19  think I have seven points to respond to what government counsel

20  said.

21         The first was when he asked you to parse out the

22  clauses of 546(c).  And then I looked back to see if what he

23  said was correct.  So I ask the Court when it's thinking of it,

24  to do, again, what I just did.  And in (c), it says [as

25  quoted]:  A person appointed as U.S. attorney under this

*Proceedings*

```
 1   section -- and then has two limitations -- clause (1) if a
 2   person is confirmed in the normal 541; and then, (2) the
 3   expiration of 120 days after appointment.  You could consider
 4   that word to be "action," but the key is that it says "under
 5   this section."  Their interpretation would basically mean that
 6   you should have ended the sentence after "attorney general"
 7   because there would be no reason to have the second "under this
 8   section" if the first "under this section" carried the weight
 9   that learned government counsel said it would.
10           Second, I'm glad -- again, Mr. McDowell sort of stole
11   some of my points, so I'm not going to repeat them, but it is
12   interesting that the government asked you to consider the
13   attorney general opinions since the 19th century, and yet not
14   the one that is bearing, not the attorney general, but the
15   attorney general's counsel in the Office of Legal Counsel on
16   what this 120-day prohibition really means.  And, of course,
17   that was now Justice Alito's.
18           In terms of his saying how 541 and 546 meld or don't
19   meld in his case, nobody has pointed out -- and I better make
20   sure I do it before I sit down again -- this 541, 546 was
21   something that they gave allegiance to in the first
22   administration.  Indeed, President Trump submitted and got
23   confirmed 85 U.S. attorneys out of whatever there are, 90, by
24   doing it the way the statutes envisioned, by submitting a
25   candidate to the United States Senate for advice and consent.
```

1   And the difference in this administration appears that the

2   administration has different criteria by which they are going

3   to install people to carry out the directions of the president.

4           In terms of the Appointments Clause issue, seeking to

5   go around 546 by going beyond the 120 days is as much a

6   violation of the statute with ramifications to the

7   constitutional order of things as if in that 200 or however

8   many years where only the courts could do it.  So if it was in

9   that era and Attorney General Bondi said, I still want

10  Ms. Halligan to be the U.S. attorney, everybody would say that

11  violates, that's not powerful.  Well, the statute has that

12  second provision now.  The 120-day limit is no different than

13  what (d) used to be in terms of who could do it after always.

14  So you can't parse the statute in some way and say, well, sure,

15  we would have never even dreamed of appointing an interim

16  U.S. attorney under 546 when the statute only allowed the court

17  to do it, but that's no different when the statute says only

18  the attorney general could do it for 120 days.

19          About ratification, a lot has been said.  The

20  government's response is, well, what are the ramifications of

21  Mr. Lowell's argument that when Ms. Halligan stepped into the

22  grand jury, she was a private person?  And their example was

23  she wouldn't even have been bound by 6(a) -- 6(e).  I'm not

24  going to be the only one who noticed that one of the motions we

25  made in this case was that, for whatever reason, in her

1   interchange with a journalist named Bower, we believe that

2   that's exactly what she did.  And those aren't the boundaries

3   by which you determine anyway as to whether at that moment --

4   to use the phrase of the *Nguyen* case that my colleague already

5   mentioned, I think there's an important clause in there.  In

6   that case, remember, there is a district court judge sitting in

7   an appellate panel with no authority to do that, and what they

8   said was that even if it's not an Appointments Clause problem,

9   the statutory problem still required them to determine it was

10  null and void.  And this was the language because they are

11  talking about this being, I think his phrase was, a paperwork

12  error.  The court said this is not a mere technicality because

13  it goes to see whether a person was competent to sit at the

14  time the person was taking the action.  And that defines

15  exactly what happened in this case.

16          And last for me is the *Ryder* case, which is in the

17  issue of the Appointments Clause as well, talked about the

18  importance of why we are asking you to consider the relief

19  under the Appointments Clause.  The Supreme Court in *Ryder* said

20  that you can distinguish the exceptions to the *de facto* cases

21  because the claim here becomes a, quote, trespass upon the

22  constitutional power of appointment, not merely a

23  misapplication of a statute.  It went on to say -- and it's

24  better words that I can conclude with myself -- [as quoted]:

25  The clause is a bulwark against one branch aggrandizing its

*Proceedings*

1    power at the expense of another branch, but it is more:  It

2    preserves another aspect of constitutional structural integrity

3    by preventing the diffusion of the appointment power as a

4    whole.

5         THE COURT:  That was Justice Rehnquist.

6         MR. LOWELL:  Yes.  Thank you.

7         THE COURT:  All right.  Thank you, everyone, for your

8    arguments and your attention to this matter.  I will have an

9    order out prior to Thanksgiving.  We'll be adjourned.

10                *       *       *       *       *

11                    CERTIFICATE OF REPORTER

12         I, Diane Salters, hereby certify that the foregoing

13    transcript is a true and accurate record of the stenographic

14    proceedings in this matter.

15                              /s/ Diane Salters

16                    _____

                                 Diane Salters, CSR, RCR, RPR
17                               Official Court Reporter

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

LETITIA A. JAMES

Defendant.

No. 2:25-CR-00122-JKW-DEM

## <u>NOTICE OF RATIFICATION</u>

On November 13, 2025, U.S. District Court Judge Cameron M. Currie held a hearing on the defendant's Motion to Dismiss the Indictment and to Enjoin the Prosecution. D.E. 22. At the hearing, Judge Currie noted that U.S. Attorney General Pamela Bondi did not have all the grand jury materials at the time of her ratification. Accordingly, the government respectfully requests the Court take notice of the attached ratification dated November 17, 2025, by U.S. Attorney General Pamela Bondi (Exhibit 1).

Respectfully submitted this 17th day of November 2025.

          Respectfully submitted,

          Lindsey Halligan
          United States Attorney

By:       /s/
          Roger A. Keller, Jr.
          Missouri Bar #42541
          Assistant United States Attorney
          United States Attorney's Office
          101 West Main Street, Suite 8000
          Norfolk, VA 23510
          Phone: (757) 441-6331
          Facsimile: (757) 441-6689
          E-Mail: Roger.Keller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:    /s/ Roger A. Keller, Jr.
          Roger A. Keller, Jr.
          Assistant United States Attorney

2

J.A. 281



## Office of the Attorney General
### Washington, D. C. 20530

ORDER NO. 6495-2025

RATIFICATION OF CERTAIN ACTIONS IN THE EASTERN DISTRICT OF VIRGINIA

On October 31, 2025, and based on the record of the grand jury proceedings that was available to the government at the time, I ratified the actions of United States Attorney Lindsey Halligan before the grand jury and her signature on the indictment returned by the grand jury in the case of *United States v. James* (Case No. 2:25-CR-00122). *See* Att'y Gen. Order No. 6485-2025. The district court has subsequently raised questions about the completeness of the record of the grand jury proceedings presented to me at the time of that initial ratification. For the avoidance of doubt, I have reviewed the entirety of the record now available to the government and confirm my knowledge of the material facts associated with the grand jury proceedings. Based on that knowledge, I hereby exercise the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictment returned by the grand jury.

_11/17/25_
Date

_Pam Bondi_
Pamela Bondi
Attorney General

J.A. 282

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA,

    v.

LETITIA A. JAMES,

       Defendant.

Criminal No. 2:25-cr-00122-JKW

**OPINION AND ORDER GRANTING MOTION
TO DISMISS INDICTMENT (ECF NO. 22)**

On October 9, 2025, Lindsey Halligan, a former White House aide with no prior prosecutorial experience, appeared before a federal grand jury in the Eastern District of Virginia. Having been appointed Interim U.S. Attorney by the Attorney General just two weeks before, Ms. Halligan secured a two-count indictment charging New York Attorney General Letitia James with bank fraud and making false statements to a financial institution.

Ms. James now moves to dismiss the indictment on the ground that Ms. Halligan, the sole prosecutor who presented the case to the grand jury, was unlawfully appointed in violation of 28 U.S.C. § 546 and the Constitution's Appointments Clause. As explained below, I agree with Ms. James that the Attorney General's attempt to install Ms. Halligan as Interim U.S. Attorney for the Eastern District of Virginia was invalid. And because Ms. Halligan had no lawful authority to present the indictment, I will grant Ms. James's motion and dismiss the indictment without prejudice.

## I.    BACKGROUND

### A.    Legal Background

"The Appointments Clause prescribes the exclusive means of appointing 'Officers [of the United States].'" *Lucia v. SEC*, 585 U.S. 237, 244 (2018).  The text of the Clause contemplates two types of officers: "principal" and "inferior" officers.  *See Morrison v. Olson*, 487 U.S. 654, 670–71 (1988).  Principal officers must be appointed by the President "with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2.  The same process "is also the default manner of appointment for inferior officers."  *Edmond v. United States*, 520 U.S. 651, 660 (1997).  But the Framers "recognized that requiring *all* officers of the Federal Government to run the gauntlet of Presidential nomination and Senate confirmation would prove administratively unworkable."  *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760 (2025) (emphasis in original).  "So on one of the last days of the Constitutional Convention[,] . . . they authorized an additional and streamlined method of appointment for inferior officers" in the final provision of the Appointments Clause.  *Id.*  That provision, "sometimes referred to as the 'Excepting Clause,'" *Edmond*, 520 U.S. at 660, permits Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.

"For United States Attorneys, Congress has preserved the constitutional default rule of Presidential appointment and Senate confirmation."[1]  *United States v. Giraud*, __ F.Supp.3d __, No. 1:24-CR-768, 2025 WL 2416737, at *6 (D.N.J. Aug. 21, 2025) (*Giraud II*), *appeal filed*, No. 25-2635 (3d Cir. Aug. 25, 2025); *see* 28 U.S.C. § 541(a) ("The President shall appoint, by and

---

[1] The parties agree that U.S. Attorneys are inferior officers.  ECF No. 22 at 9; ECF No. 43 at 5.

with the advice and consent of the Senate, a United States attorney for each judicial district."). Congress has also established a mechanism, set forth in 28 U.S.C. § 546, for appointing interim U.S. Attorneys when a vacancy arises.[2] Section 546 essentially "divide[s] the responsibility for making interim appointments between the Attorney General and the district courts." *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1192 (D.N.M. 2008). It provides in full:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.
>
> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.
>
> (c) A person appointed as United States attorney under this section may serve until the earlier of—
>
>> (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>>
>> (2) the expiration of 120 days after appointment by the Attorney General under this section.
>
> (d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

28 U.S.C. § 546.

### B.    Factual Background

On January 20, 2025, Jessica Aber, who had been nominated by President Biden and confirmed by the Senate, resigned from her position as U.S. Attorney for the Eastern District of

---

[2] Another statute, the Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. §§ 3345–3349d, allows the President to "direct certain officials to temporarily carry out the duties of a vacant [office requiring Presidential appointment and Senate confirmation] in an acting capacity." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017). The FVRA is not at issue in this case.

3

Virginia.[3]  The following day, the Attorney General appointed Erik Siebert as Interim U.S. Attorney under 28 U.S.C. § 546.[4]  Mr. Siebert's 120-day interim appointment was set to expire on May 21, 2025.  So, on May 9, 2025, the judges of the district exercised their authority under section 546(d) to appoint Mr. Siebert to continue in his role, effective May 21.[5]

On September 19, 2025, Mr. Siebert informed colleagues of his resignation.[6]  According to news reports, Mr. Siebert had recently expressed concerns to senior Department of Justice officials about the viability of pursuing charges against Ms. James and former FBI Director James Comey.[7]  Mr. Siebert's resignation came hours after President Trump told reporters at the White House he "want[ed] [Mr. Siebert] out."[8]

---

[3] Press Release, United States Attorney's Office, Eastern District of Virginia, *U.S. Attorney Jessica D. Aber Announces Resignation* (Jan. 17, 2025), https://www.justice.gov/usao-edva/pr/us-attorney-jessica-d-aber-announces-resignation.

[4] Press Release, United States Attorney's Office, Eastern District of Virginia, *Erik Siebert Appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025), https://www.justice.gov/usao-edva/pr/erik-siebert-appointed-interim-us-attorney-eastern-district-virginia.

[5] United States District Court for the Eastern District of Virginia, *Appointment of Erik S. Siebert as Interim U.S. Attorney Effective May 21, 2025* (May 9, 2025), https://www.vaed.uscourts.gov/news/appointment-erik-s-siebert-interim-us-attorney-effective-may-21-2025.

[6] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[7] *Id.*; Salvador Rizzo, Perry Stein & Jeremy Roebuck, *Top Virginia Prosecutor Resigns Amid Criticism over Letitia James Investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/; The Associated Press, *U.S. Attorney Resigns Under Pressure From Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025), https://www.npr.org/2025/09/20/nx-s1-5547837/us-attorney-virginia-resigns-letitia-james-probe.

[8] Thrush et al., *supra* note 6.

4

The next day, President Trump posted (and later deleted) the following message on social media:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT[9]

Less than 48 hours after President Trump's post, on September 22, 2025, the Attorney General issued an order "authorizing Lindsey Halligan to be the Interim United States Attorney for the Eastern District of Virginia during the vacancy in that office" ("September 22 Order"). Att'y Gen. Order No. 6402-2025. The September 22 Order cites only 28 U.S.C. § 546 as the basis for Ms. Halligan's appointment. *Id.*

On October 9, 2025, a grand jury sitting in the Eastern District of Virginia returned a two-count indictment against Ms. James, charging her with bank fraud, in violation of 18 U.S.C. § 1344, and making false statements to a financial institution, in violation of 18 U.S.C. § 1014. ECF No. 1. The charges stem from allegations that Ms. James falsely claimed that she would use a Norfolk, Virginia home as a secondary residence to secure a more favorable mortgage rate. Ms.

---

[9] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 18:44 ET), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

Halligan was the only prosecutor who participated in the Government's presentation to the grand jury, and only her signature appears on Ms. James's indictment. *Id.* at 5.[10]

### C.    Procedural History

On October 24, 2025, Ms. James moved to dismiss the indictment on the ground that Ms. Halligan's appointment was unlawful under section 546 and violated the Appointments Clause. ECF No. 22.  Later that day, the Honorable Jamar K. Walker transferred Ms. James's motion to me pursuant to an October 21 order issued by the Honorable Albert Diaz, Chief Judge of the United States Court of Appeals for the Fourth Circuit.  ECF No. 23.  Chief Judge Diaz had designated and assigned me to "sit in the Eastern District of Virginia for the limited purpose of hearing and determining . . . motions concerning the appointment, qualification, or disqualification of" Ms. Halligan or the U.S. Attorney's Office.  ECF No. 23-1 at 1.

Finding it "necessary to determine the extent of [Ms. Halligan's] involvement in the grand jury proceedings," I ordered the Government on October 28 to submit for in camera review "all documents relating to [Ms. Halligan's] participation" before the grand jury, "along with complete grand jury transcripts."  ECF No. 28.  On October 31, I received a partial transcript containing only Ms. Halligan's presentation of evidence and witness testimony.  Subsequently, on November 6, the Government provided a complete transcript of the proceeding, which included Ms. Halligan's opening and closing remarks.  ECF No. 48.

On November 3, the Government responded in opposition to Ms. James's motion.  ECF No. 43.  Also that day, the Government filed an order from the Attorney General dated October

---

[10] Citations to page numbers are to those generated by CM/ECF.

31, 2025 ("October 31 Order"). Att'y Gen. Order No. 6485-2025. The October 31 Order reads in

its entirety:

> On September 22, 2025, I exercised the authority vested in the Attorney General by 28 U.S.C. § 546 to designate and appoint Lindsey Halligan as the United States Attorney for the Eastern District of Virginia. *See* Att'y Gen. Order No. 6402-2025. For the avoidance of doubt as to the validity of that appointment, and by virtue of the authority vested in the Attorney General by law, including 28 U.S.C. §[§] 509, 510, and 515, I hereby appoint Ms. Halligan to the additional position of Special Attorney, as of September 22, 2025, and thereby ratify her employment as an attorney of the Department of Justice from that date going forward. As Special Attorney, Ms. Halligan has authority to conduct, in the Eastern District of Virginia, any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before United States Magistrates and Judges. In the alternative, should a court conclude that Ms. Halligan's authority as Special Attorney is limited to particular matters, I hereby delegate to Ms. Halligan authority as Special Attorney to conduct and supervise the prosecutions in *United States v. Comey* (Case No. 1:25-CR-00272) and *United States v. James* (Case No. 2:25-CR-00122).
>
> In addition, based on my review of the grand jury proceedings in *United States v. Comey* and *United States v. James*, I hereby exercise the authority vested in the Attorney General by law, including 28 U.S.C. §[§] 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictments returned by the grand jury in each case.

*Id.*

Ms. James filed her reply on November 10.[11] ECF No. 56. On November 13, I heard oral

argument from the parties and took the matter under advisement. ECF No. 69. During the hearing,

I raised concerns about the Attorney General's ability to review Ms. Halligan's presentation to the

grand jury in *United States v. Comey* when, as of October 31, the Government had not yet received

the complete transcript of the proceeding. ECF No. 89 at 36–37. My questioning prompted the

Government to file a new ratification order from the Attorney General in this case on November

---

[11] In addition to the parties' briefs, I have also considered an amicus brief from a bipartisan group of former federal judges and U.S. Attorneys. ECF No. 55.

J.A. 289

17.  In that order, the Attorney General stated she had "reviewed the entirety of the record now available to the government" and again "ratif[ied] Ms. Halligan's actions before the grand jury and her signature on the indictment returned."  Att'y Gen. Order No. 6495-2025.

## II.    DISCUSSION

Resolving Ms. James's motion requires me first to decide whether Ms. Halligan was validly appointed as Interim U.S. Attorney under section 546 and the Appointments Clause.  If the answer to that question is yes, I need not go any further, and Ms. James's motion must be denied.  But if the answer is no, and Ms. Halligan had no authority to present Ms. James's indictment to the grand jury, then the question becomes, what remedy is appropriate?  Should the indictment be dismissed?  And if so, should the dismissal be with or without prejudice?  I address these issues in turn, beginning with whether Ms. Halligan's appointment was valid under section 546.

### A.    Ms. Halligan's appointment violated section 546.

According to the Government, this case is "simple."  ECF No. 43 at 8.  In its view, the "one and only" limitation on the Attorney General's authority to appoint interim U.S. Attorneys under section 546 is subsection (b), which bars the Attorney General from appointing anyone whom the Senate has refused to confirm.  *Id.* at 3, 8, 15.  "Nothing in the text," it continues, "explicitly or implicitly" precludes the Attorney General from making multiple interim appointments during a vacancy.  *Id.* at 8.  Thus, it concludes, because "the Senate has not refused advice and consent to Ms. Halligan," the Attorney General "lawfully appointed [her] as interim U.S. Attorney" on September 22.  *Id.* at 8.

Ms. James counters that section 546 "vest[s]" the Attorney General "with 120 total days to appoint an interim U.S. Attorney"; after that period, "the exclusive authority to appoint an interim U.S. Attorney belongs to the district court."  ECF No. 22 at 11.  Therefore, she argues, Ms.

8

Halligan's appointment was unlawful because the Attorney General's appointment authority expired on May 21 with the end of Mr. Siebert's 120-day term. *Id.* Ms. James has the better reading of the statute.

"The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "Thus, [my] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Section 546 is unambiguous. Subsection (a) begins by authorizing the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant." 28 U.S.C. § 546(a). Subsection (c)(2), however, imposes a time limit on appointments made by the Attorney General. It specifies that "[a] person appointed as United States attorney" under the statute "may serve until . . . the expiration of 120 days after appointment by the Attorney General." *Id.* § 546(c)(2). Subsection (d) then provides a single option for how subsequent interim appointments may be made: "If an appointment expires under subsection (c)(2), the district court for such district" — and only the district court — "may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

The text and structure of subsection (d) in particular make clear the appointment power (1) shifts to the district court after the 120-day period and (2) does not revert to the Attorney General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed. The first word in subsection (d) — "if" — introduces a conditional clause that establishes

9

the condition triggering the district court's authority. *See The Chicago Manual of Style* ¶ 5.235 (18th ed. 2024) ("A conditional clause . . . is an adverbial clause, typically introduced by *if* or *unless* . . . , establishing the condition in a conditional sentence. Usually this is a direct condition, indicating that the main clause . . . is dependent on the condition being fulfilled."). That condition is met once "*an* appointment expires under subsection (c)(2)." 28 U.S.C. § 546(d) (emphasis added). The indefinite article "an" points "to a nonspecific object, thing, or person that is not distinguished from other members of a class," Bryan A. Garner, *Garner's Modern English Usage* 1195 (5th ed. 2022), so the expiration of any single Attorney General appointment satisfies the condition. Thus, if, as here, a court-appointed U.S. Attorney resigns, the district court retains the authority to make another interim appointment because the triggering event — the expiration of "*an* appointment" under subsection (c)(2) — has already occurred. Finally, the conjunction "until" in subsection (d)'s main clause defines the duration of the district court's authority. It lasts from the moment the condition is first met "up to the time that" the vacancy is filled by a Senate-confirmed appointee. *Merriam-Webster's Collegiate Dictionary* 1297 (10th ed. 1997).

This reading is reinforced by the negative-implication canon, which recognizes that the "expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). To be sure, the Supreme Court has cautioned that the "force of any negative implication . . . depends on context," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013), and that the "canon applies only when circumstances support[] a sensible inference that the term left out must have been meant to be excluded," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (internal quotation marks omitted). Here, however, "the inference is not just sensible but overwhelming." *Johnson v. White*, 989 F.3d 913, 918 (11th Cir. 2021). Congress assigned the authority to appoint interim U.S. Attorneys to different actors

10

in different parts of the same statute: first to the Attorney General in subsection (a), and then to the district court in subsection (d).  The omission of the Attorney General in subsection (d), when combined with her inclusion in subsection (a), is strong evidence Congress did not intend for the Attorney General to retain appointment power beyond 120 days.  *Cf. United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000) ("The absence of any temporal limit [in subsection (d)] strikes us as deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute.").

Adopting the Government's contrary reading would render subsection (d) "insignificant," leaving it to "lie dormant in all but the most unlikely situations."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted); *see id.* ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); *Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("[C]ourts must give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).  Under the Government's interpretation, Attorney General appointees can "serve indefinitely" "without Senate confirmation" as long as the Attorney General "revisit[s] her interim appointments every 120 days."  ECF No. 43 at 9.  But if that were correct, the Attorney General could prevent interim appointments from ever "expir[ing] under subsection (c)(2)," which in turn would prevent the district court from ever exercising its appointment power under subsection (d).  28 U.S.C. § 546(d).  Such a result would run counter to the principle that courts must avoid interpreting statutes in a way that has the "practical effect" of rendering a provision "entirely superfluous in all but the most unusual circumstances."  *TRW Inc.*, 534 U.S. at 29.

The Government's interpretation also conflicts with section 546's statutory history.  *See Snyder v. United States*, 603 U.S. 1, 12 (2024) (relying on "statutory history[] [to] reinforce[] [its]

11

textual analysis"); *United States v. Hansen*, 599 U.S. 762, 775 (2023) ("Statutory history is an important part of . . . context."); Scalia & Garner, *supra*, at 440 (defining "statutory history" as the "enacted lineage of a statute, including prior laws, amendments, codifications, and repeals"). From 1986 to 2006, section 546 was identical to its current form.[12] *See* Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616–17 (1986). But in 2006, Congress amended the statute to abolish "the 120-day limit and the district court's backstopping role" altogether. *Giraud II*, 2025 WL 2416737, at *11; *see* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Title V, § 502, 120 Stat. 192, 246 (2006) [hereinafter Reauthorization Act]. This change, which was "inserted quietly into the conference report on the [Reauthorization] Act, without debate," made it possible for "United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation." H.R. Rep. No. 110-58, at 5 (2007).

"The switch to an unlimited appointment was short lived," however. *Giraud II*, 2025 WL 2416737, at *11. Just over a year later, "Congress reverted to the pre-[Reauthorization] Act language," reinstating the 120-day limit and the district court's role in the interim appointment process. *Id.*; *see* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-

---

[12] Three days after Congress enacted the 1986 law, an Office of Legal Counsel ("OLC") memorandum authored by then-Deputy Assistant Attorney General Samuel Alito concluded the statute does not allow "the Attorney General [to] make another appointment pursuant to [subsection (a)] after the expiration of the 120-day period." Memorandum from Samuel A. Alito, Jr., Deputy Assistant Att'y Gen., Off. of Legal Couns., to William P. Tyson, Dir., Exec. Off. for U.S. Att'ys 3 (Nov. 13, 1986), available at https://perma.cc/SD5Q-7CPH. "The statutory plan," Alito reasoned, "discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *Id.* Though not binding, OLC's "contemporaneous[]" interpretation of section 546 further supports Ms. James's position. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386, 388 (2024).

12

34, § 2, 121 Stat. 224 (2007) [hereinafter 2007 Act].  "When Congress amends legislation, courts must presume it intends [the change] to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (internal quotation marks omitted).  Yet if the Government's reading were correct, the 2007 Act would have had virtually no effect, as it would still allow the Executive to evade the Senate confirmation process indefinitely by stacking successive 120-day appointments.

Undeterred, the Government insists that "in reenacting the pre-2006 text, Congress presumptively ratified the Executive's longstanding use of successive 120-day appointments under [the 1986–2006] version of the statute."  ECF No. 43 at 14.  True, "a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned, can raise a presumption that the [action] had been [taken] in pursuance of its consent." *Medellín v. Texas*, 552 U.S. 491, 531 (2008) (alterations in original) (internal quotation marks omitted); *see also NLRB. v. Noel Canning*, 573 U.S. 513, 525 (2014) ("[T]he longstanding practice of the government can inform our determination of what the law is." (internal citation and quotation marks omitted)).  But the evidence on which the Government relies — a handful of successive 120-day appointments across the Clinton and Bush administrations — hardly establishes a "longstanding" Executive practice. *Cf. Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 415 (2003) ("Given the fact that the practice goes back over 200 years, and has received congressional acquiescence throughout its history, the conclusion that the President's control of foreign relations includes the settlement of claims is indisputable." (internal quotation marks omitted)).  This is

13

J.A. 295

especially true when considering the Attorney General had no authority to appoint interim U.S.

Attorneys *at all* before 1986.[13]  *See* H.R. Rep. No. 110-58, at 4.

Finally, "[f]or those who find it relevant, the legislative history confirms" Congress sought

to eliminate the Executive Branch's ability to circumvent the Senate's advice-and-consent role

through repeat or indefinite interim appointments.  *Honeycutt v. United States*, 581 U.S. 443, 453

(2017).  For example, in describing the pre-2006 framework, Senator Leahy explained Congress

had "carefully circumscribed [the Attorney General's authority to appoint an interim U.S.

Attorney] by limiting it to 120 days, after which the district court would make any further interim

appointment needed."  153 Cong. Rec. S1994 (2007) (statement of Sen. Patrick Leahy).  The 2007

Act, he stated, would "reinstate th[o]se vital limits on the Attorney General's authority and bring

back incentives for [an] administration to fill vacancies with Senate-confirmable nominees."  *Id.*

Notably, Senator Leahy also rejected the notion that the Attorney General could "use the 120-day

appointment authority more than once," stating that the statute "is not designed or intended to be

used repeatedly for the same vacancy."  *Id.* at S3299.

Senator Feinstein, the 2007 Act's primary sponsor, similarly stated that the legislation

"would return the law to what it was before the change that was made in March of 2006."  *Id.* at

S3298 (statement of Sen. Dianne Feinstein).  She explained:

> It would still give the Attorney General the authority to appoint interim U.S.
> attorneys, *but it would limit that authority to 120 days*. If after that time, the
> President had not nominated a new U.S. attorney or the Senate had not confirmed
> a nominee, then the district courts would appoint an interim U.S. attorney.

---

[13] By contrast, the judiciary's authority to make interim appointments dates back to the
Civil War.  *See* Act of March 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863).

*Id.* (emphasis added). Several other Senators echoed this understanding,[14] as did Members of the House of Representatives.[15]   And the accompanying House Report explicitly identified "Bypassing the Requirement of Senatorial Advice and Consent" as a primary concern motivating the 2007 Act. H.R. Rep. No. 110-58, at 6.

<div align="center">*       *       *</div>

In sum, the text, structure, and history of section 546 point to one conclusion: the Attorney General's authority to appoint an interim U.S. Attorney lasts for a total of 120 days from the date she first invokes section 546 after the departure of a Senate-confirmed U.S. Attorney.  If the position remains vacant at the end of the 120-day period, the exclusive authority to make further

---

[14] 153 Cong. Rec. S3240 (2007) (statement of Sen. Harry Reid) (remarking that the 2007 Act would "restore[] the pre-[Reauthorization] Act procedure," which "allowed the chief Federal judge in the Federal district court to appoint a temporary replacement while the permanent nominee undergoes Senate confirmation"); *id.* at S3245 (statement of Sen. Arlen Specter) ("I think there is no doubt we ought to . . . go back to the old system where the Attorney General could appoint for 120 days, on an interim basis, and then after that period of time the replacement U.S. attorney would be appointed by the district court."); *id.* at S3255 (statement of Sen. Ted Kennedy) ("The bill before us . . . reinstates the 120-day limit on service by interim U.S. attorneys appointed by the Attorney General.  This change will force the administration to send nominees to the Senate to fill vacant slots, or have them filled by a court instead."); *id.* at S3304 (statement of Sen. Carl Levin) ("The legislation before us today is simple: it would repeal [the] changes [in the Reauthorization Act] . . . and would require an interim appointment made by the Attorney General to expire after 120 days or when a successor is nominated by the President and confirmed by the Senate, whichever comes first. If at the end of the 120-day period no successor has been confirmed, the relevant district court would be authorized to appoint an interim U.S. attorney to serve until the vacancy is filled.").

[15] 153 Cong. Rec. H5553 (2007) (statement of Rep. John Conyers) ("[W]hat this measure does is restore the checks and balances that have historically provided a critical safeguard against politicization of the Department of Justice and the United States attorneys, limiting the Attorney General's interim appointments to 120 days only, then allowing the district court for that district to appoint a U.S. attorney until the vacancy is filled[.]"); *id.* at H5554 (statement of Rep. Ric Keller) ("S. 214 returns the authority of the judiciary to appoint interim U.S. attorneys if a permanent replacement is not confirmed within 120 days."); *id.* at H5555 (statement of Rep. Sheila Jackson Lee) ("This much needed and timely legislation . . . restore[s] the 120-day limit on the term of a United States Attorney appointed on an interim basis by the Attorney General.").

<div align="center">15</div>

interim appointments under the statute shifts to the district court, where it remains until the President's nominee is confirmed by the Senate.

Ms. Halligan was not appointed in a manner consistent with this framework. The 120-day clock began running with Mr. Siebert's appointment on January 21, 2025. When that clock expired on May 21, 2025, so too did the Attorney General's appointment authority. Consequently, I conclude that the Attorney General's attempt to install Ms. Halligan as Interim U.S. Attorney for the Eastern District of Virginia was invalid and that Ms. Halligan has been unlawfully serving in that role since September 22, 2025.

### B.    Ms. Halligan's appointment also violated the Appointments Clause.

As discussed, the Appointments Clause allows Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2. Through section 546, Congress devised a statutory scheme that vests the appointment of interim U.S. Attorneys first in "the Head[] of [a] Department[]," and then in "the Courts of Law." *Id.* Because Ms. Halligan was appointed in violation of that scheme, her appointment was not authorized "by Law" and thus also violates the Appointments Clause. *See United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The head of a department has no constitutional prerogative of appointment to offices independently of the legislation of congress, and by such legislation he must be governed, not only in making appointments, but in all that is incident thereto.").

Resisting this conclusion, the Government briefly asserts that "not every action 'in excess of . . . statutory authority is *ipso facto* in violation of the Constitution.'" ECF No. 43 at 25 (quoting *Dalton v. Specter*, 511 U.S. 462, 472 (1994)). That is true but beside the point. "[A]n officer can[not] lawfully exercise the statutory power of [her] office *at all*" unless she has been "properly

16

J.A. 298

appointed" under Article II. *Collins v. Yellen*, 594 U.S. 220, 266 (2021) (Thomas, J., concurring) (emphasis added). And here Ms. Halligan has not been appointed (1) by the President with the advice and consent of the Senate or (2) through a process Congress has authorized "by statute." *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting) ("At the time of the framing, 'by Law' of course meant 'by statute.'" (quoting *Lucia*, 585 U.S. at 254 (Thomas, J., concurring))). So an Appointments Clause violation has occurred. The next question is what to do about that violation.

### C.    Dismissal of the indictment is appropriate.

The Appointments Clause "is more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. at 659 (internal quotation marks omitted). The Clause not only serves as "a bulwark against one branch aggrandizing its power at the expense of another," *Ryder v. United States*, 515 U.S. 177, 182 (1995), but also "preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power," *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991). "Given its importance within our Constitution's structure," *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022), "'remedies with bite' should be applied to appointments that run afoul of the Clause's restrictions," *Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023) (quoting *Cody*, 48 F.4th at 960).

Here, Ms. James contends Ms. Halligan's unlawful appointment renders all her purported official actions void *ab initio*. ECF No. 22 at 20. Ms. James therefore argues the case must be dismissed because Ms. Halligan was not lawfully exercising executive power when she appeared before the grand jury alone and obtained her indictment. *See id.* I agree.

"When an appointment violates the Appointments Clause from the jump, the actor has 'exercise[d] power that [she] did not lawfully possess.'" *United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2196794, at *8 (D.N.J. Aug. 1, 2025) (*Giraud I*) (alterations in original) (quoting

17

*Collins*, 594 U.S. at 258); *see also Collins*, 594 U.S. at 276 (Gorsuch, J., concurring in part) (explaining that when an officer is "unconstitutionally appointed," "governmental action is taken by someone erroneously claiming the mantle of executive power — and thus taken with no authority at all"); *id.* at 266 (Thomas, J., concurring) ("[A]n officer must be properly appointed before he can legally act as an officer."). In such a case, "the proper remedy is invalidation of the *ultra vires* action[s]" taken by the actor. *United States v. Trump*, 740 F. Supp. 3d 1245, 1302 (S.D. Fla. 2024). "Invalidation 'follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough.'" *Id.* (quoting *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (Jones, J., concurring)).

In light of these principles, I conclude that all actions flowing from Ms. Halligan's defective appointment, including securing and signing Ms. James's indictment, constitute unlawful exercises of executive power and must be set aside. There is simply "no alternative course to cure the unconstitutional problem." *Trump*, 740 F. Supp. 3d at 1303.

The Government attempts to counter this result with several arguments, but none is persuasive.

First, the Government argues that whatever her status as U.S. Attorney, Ms. Halligan still validly obtained and signed Ms. James's indictment as an "attorney for the government." ECF No. 43 at 21; *see* Fed. R. Crim. P. 1(b)(1) (defining an "[a]ttorney for the government" as "the Attorney General or an authorized assistant," "a United States attorney or an authorized assistant," or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor"); Fed. R. Crim. P. 6(d)(1) ("The following persons may be present while the grand jury is in session: attorneys for the government . . . ."); Fed. R. Crim. P. 7(c)(1) ("The indictment

18

J.A. 300

. . . must be signed by an attorney for the government."). In support of this argument, the Government relies on the Attorney General's October 31 Order, which purported to retroactively appoint Ms. Halligan to the "additional position" of "Special Attorney," effective September 22, 2025 — 17 days before Ms. James was indicted. Att'y Gen. Order No. 6485-2025. Although the Attorney General has "the power to appoint subordinate officers to assist [her] in the discharge of [her] duties," *United States v. Nixon*, 418 U.S. 683, 694 (1974), the Government has identified no authority allowing the Attorney General to reach back in time and rewrite the terms of a past appointment.

Nor can the variation between the September 22 and October 31 Orders be dismissed as a mere "paperwork error," as suggested by the Government. ECF No. 43 at 28. The September 22 Order was unambiguous. The Attorney General stated she was appointing Ms. Halligan under 28 U.S.C. § 546 to "serve as the United States Attorney for the Eastern District of Virginia . . . for the period of one hundred and twenty days or until replaced in accordance with law, whichever occurs first." Att'y Gen. Order No. 6402-2025. The October 31 Order then purported to appoint Ms. Halligan to an entirely different position (Special Attorney), under entirely different statutes (28 U.S.C. §§ 509, 510, and 515). Att'y Gen. Order No. 6485-2025. I reject the Attorney General's attempt to retroactively confer Special Attorney status on Ms. Halligan. Regardless of what the Attorney General "intended," ECF No. 43 at 23 (emphasis omitted), or "could have" done, *id.* at 28, the fact remains that Ms. Halligan was not an "attorney authorized by law" to conduct grand jury proceedings when she secured Ms. James's indictment,[16] Fed. R. Crim. P. 1(b)(1)(D), 6(d)(1).

---

[16] The Government attempts to frame the effect of Ms. Halligan's invalid appointment as nothing more than a violation of Rule 7's signature requirement. *See* ECF No. 43 at 23–24. The Footnote Continued . . .

19

Second, the Government contends that even if Ms. Halligan lacked the authority to obtain and sign indictments when she appeared before the grand jury, her actions should be entitled to "de facto validity." ECF No. 43 at 24–25 (quoting *Buckley v. Valeo*, 424 U.S. 1, 142 (1976)). When applicable, the de facto officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder*, 515 U.S. at 180. "In other words, the doctrine operates so that a defect in an official's appointment is not an adequate ground to challenge his earlier decisions." *Sidak v. U.S. Int'l Trade Comm'n*, 678 F. Supp. 3d 1, 18 (D.D.C. 2023), *appeal filed*, No. 23-5149 (D.C. Cir. June 30, 2023).

But the de facto officer doctrine "applies only to some *non*-constitutional appointments challenges." *Id.* (emphasis in original); *see, e.g.*, *Ball v. United States*, 140 U.S. 118, 128–29 (1891) (applying doctrine where an out-of-district judge assigned to replace a resident judge who had fallen ill continued to hold court after the resident judge's death); *McDowell v. United States*, 159 U.S. 596, 601–02 (1895) (holding that a properly appointed judge assigned to another district was a "judge de facto" and that "his actions as such, so far as they affect[ed] third persons, [were] not open to question," notwithstanding any question as to the validity of his designation). It has no application "when Appointments Clause challenges are involved." *Rop v. Fed. Housing Fin.*

―――――――――――――

Government is correct that courts have treated "the improper signing of an indictment," *Wheatley v. United States*, 159 F.2d 599, 601 (4th Cir. 1946), as a "technical deficienc[y]" that does not always require dismissal, *United States v. Irorere*, 228 F.3d 816, 830–31 (7th Cir. 2000); *see also* 1 *Wright & Miller's Federal Practice & Procedure* § 124 (5th ed. 2025) (observing that "courts have not rigorously enforced" Rule 7's signature requirement). The problem here, though, is not just Ms. Halligan's signature on the indictment — she presented the indictment to the grand jury alone, without being a "proper representative of the Government." *United States v. Garcia-Andrade*, No. 13-CR-993-IEG, 2013 WL 4027859, at *9 (S.D. Cal. Aug. 6, 2013).

*Agency*, 50 F.4th 562, 587 (6th Cir. 2022) (Thapar, J., concurring in part and dissenting in part); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015) ("In its most recent cases, . . . the Supreme Court has limited the doctrine, declining to apply it when reviewing Appointments Clause challenges[.]"); *Sidak*, 678 F. Supp. 3d at 17–19.

In *Ryder*, a unanimous Supreme Court declined to apply the de facto officer doctrine to a claim that two judges on a panel of the Coast Guard Court of Military Review had been appointed in violation of the Appointments Clause. 515 U.S. at 179. The Court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."[17] *Id.* at 182–83. "Any other rule," it explained, "would create a disincentive to raise Appointments Clause challenges with respect to questionable . . . appointments." *Id.* at 183. "[T]he Court then buried past precedents applying the doctrine," including *Buckley*. *Rop*, 50 F.4th at 587 (Thapar, J., concurring in part and dissenting in part). It declared, "To the extent [those] cases may be thought to have implicitly applied a form of the de facto officer doctrine, we are not inclined to extend them beyond their facts." *Ryder*, 515 U.S. at 184.

"After *Ryder*, the Supreme Court in *Lucia* 'doubled down' on its holding that 'the de facto officer doctrine has no place when Appointments Clause challenges are involved,'" *Sidak*, 678 F. Supp. 3d at 18 (quoting *Rop*, 50 F.4th at 587 (Thapar, J., concurring in part and dissenting in part)),

---

[17] Although *Ryder* concerned the appointment of adjudicators, "[t]here is no reason to limit the permissive approach to Appointments Clause claims and remedies where a defendant challenges the appointment of the party bringing criminal charges against him, as opposed to the party adjudicating the case." *Giraud I*, 2025 WL 2196794, at *7. "The same 'structural' interests are at stake, because the allegation is that one branch has attempted to 'aggrandiz[e] its power at the expense of another branch' and thereby 'diffus[e] the appointment power.'" *Id.* (quoting *Freytag*, 501 U.S. at 878).

reaffirming that a party who raises a timely Appointments Clause claim is "entitled to relief," *Lucia*, 585 U.S. at 251; *see also id.* at 251 n.5 (explaining that "Appointments Clause remedies are designed" both "to advance [the Clause's structural] purposes directly" and "to create []incentive[s] to raise Appointments Clause challenges" in the first place (internal quotation marks omitted)). Given the Court's holdings in *Ryder* and *Lucia*, the de facto officer doctrine does not bar the relief sought by Ms. James.

Third, the Government submits that the grand jury's "independent decision" to indict Ms. James renders any error in her indictment harmless. ECF No. 43 at 27–29. The "customary harmless-error inquiry" is normally "applicable where . . . a court is asked to dismiss an indictment prior to the conclusion of the trial." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Harmless-error analysis does not apply, however, when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Id.* at 257. This case presents the unique, if not unprecedented, situation where an unconstitutionally appointed prosecutor, exercising "power [she] did not lawfully possess," *Collins*, 594 U.S. at 258, acted alone in conducting a grand jury proceeding and securing an indictment. In light of the near-complete control that prosecutors wield over the grand-jury process,[18] such an error necessarily "affect[s] the entire framework within which the proceeding occurs," *Greer v. United States*, 593 U.S. 503, 513–14 (2021), and thus "def[ies] analysis by 'harmless-error' standards," *Arizona v.*

---

[18] Although the grand jury is understood to be "a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47 (1992) (internal quotation marks omitted), it is "easy to overstate the grand jury's independence from the prosecutor," 1 *Wright & Miller's Federal Practice & Procedure* § 102 (5th ed. 2025). Indeed, it is the prosecutor "who decides which investigations to pursue, what documents to subpoena, which witnesses to call, and what charges to recommend for indictment." 1 *Wright & Miller*, *supra*, § 102. And it is the prosecutor who examines the witnesses, summarizes the evidence, and advises the grand jury on the law.

*Fulminante*, 499 U.S. 279, 309 (1991); *cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 812–14 (1987) (plurality opinion) (holding that "harmless-error analysis is inappropriate in reviewing the appointment of an interested prosecutor" in part because "[s]uch an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision").

As a final fallback position, the Government argues that even if Ms. James's indictment is flawed, dismissal is inappropriate because the Attorney General has since ratified Ms. Halligan's actions before the grand jury and her signature on the indictment. ECF No. 43 at 29–30; *see* Att'y Gen. Order Nos. 6485-2025, 6495-2025. Even assuming the agency-law doctrine of ratification can be used to cure a defective indictment (the Government cites no authority holding as much), the Attorney General's attempt at ratification here fails.

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . . ." Restatement (Second) of Agency § 82 (1958). In effect, the doctrine "reaches back and makes it so that a formerly unauthorized act was authorized from the get-go. *Wille v. Lutnick*, __ F.4th __, 2025 WL 3039191, at *8 (4th Cir. Oct. 31, 2025). But for ratification to be effective, "the principal must have [had] the authority to authorize the action . . . when the action [was] initially performed by the agent." *Id.* The Attorney General lacked that authority here.

I have already concluded that Ms. Halligan's original appointment was invalid and that the Attorney General's attempt to retroactively bestow Special Attorney status on her was ineffective. As a result, the Attorney General "could not have authorized" Ms. Halligan, who was not an attorney for the Government at the time, to present Ms. James's indictment to the grand jury on October 9. Restatement (Second) of Agency, *supra*, § 84(2) (stating that if "the purported or

23

intended principal could not have authorized" the challenged "act" when it was "done," "he cannot ratify" it). The implications of a contrary conclusion are extraordinary. It would mean the Government could send any private citizen off the street — attorney or not — into the grand jury room to secure an indictment so long as the Attorney General gives her approval after the fact. That cannot be the law.

**D.      Dismissal will be without prejudice.**

Having found that Ms. Halligan's appointment violated 28 U.S.C. § 546 and the Appointments Clause and that dismissal of Ms. James's indictment is warranted, the remaining issue is whether dismissal should be with or without prejudice. Ms. James's motion does not specifically request dismissal with prejudice. The Government argues she has thus forfeited the request. ECF No. 43 at 30. In her reply brief, however, Ms. James urges me to exercise my supervisory powers and dismiss her indictment with prejudice. ECF No. 56 at 25. A with-prejudice dismissal is necessary, she argues, to "promote the interests protected by the Appointments Clause" and to "deter the government from deploying unlawful appointments to effectuate retaliation against perceived political opponents." *Id.* at 24; *see United States v. Hasting*, 461 U.S. 499, 505 (1983) (recognizing that a court may use its "supervisory powers" to "implement a remedy for violation of recognized rights" and "as a remedy designed to deter illegal conduct").

Ultimately, I believe the Supreme Court's Appointments Clause jurisprudence provides the answer to the with-or-without-prejudice question. In both *Ryder* and *Lucia*, the Court essentially unwound the actions taken by the unconstitutionally appointed officer and restored the affected party to the position the party occupied before being subjected to those invalid acts. *See Ryder*, 515 U.S. at 188 (remanding for a new "hearing before a properly appointed panel"); *Lucia*, 585

24

J.A. 306

U.S. at 251 ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." (quoting *Ryder*, 515 U.S. at 183, 188)); *see also Nguyen v. United States*, 539 U.S. 69, 83 (2003) (vacating decisions made by an appeals panel that included a judge who was ineligible to sit by designation on an Article III court and remanding "for fresh consideration of petitioners' appeals by a properly constituted panel"). I will do the same here.  I will invalidate the *ultra vires* acts performed by Ms. Halligan and dismiss the indictment without prejudice, returning Ms. James to the status she occupied before being indicted.  *See Trump*, 740 F. Supp. 3d at 1303, 1309.

### III.    CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution.

2.    All actions flowing from Ms. Halligan's defective appointment, including securing and signing Ms. James's indictment, were unlawful exercises of executive power and are hereby set aside.

3.    The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside.

4.    Ms. James's motion to dismiss the indictment (ECF No. 22) is granted in accordance with this order.

5.    The indictment is dismissed without prejudice.

6.    Ms. James's request for an injunction barring Ms. Halligan from participating in the prosecution of this case is denied as moot.

7.     The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541.

**IT IS SO ORDERED**.

<u>s/Cameron McGowan Currie</u>
CAMERON MCGOWAN CURRIE
Senior United States District Judge
Sitting by Designation

Columbia, South Carolina
November 24, 2025

26

J.A. 308

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:25-CR-122 (JKW) |
| LETITIA A. JAMES | |
| *Defendant*. | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that the United States of America, pursuant to 18 U.S.C. § 3731 appeals to the United States Court of Appeals for the Fourth Circuit from the order of the District Court, issued on November 24, 2025 (ECF No. 140), which ordered that (1) The appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. (2) All actions flowing from Ms. Halligan's defective appointment, including securing and signing Ms. James's indictment, were unlawful exercises of executive power and are hereby set aside. (3) The Attorney General's attempts to ratify Ms. Halligan's actions were ineffective and are hereby set aside. (4) Ms. James's motion to dismiss the indictment (ECF No. 22) is granted in accordance with this order. (5) The indictment is dismissed without prejudice. (6) Ms. James's request for an injunction barring Ms. Halligan from participating in the prosecution of this case is denied as moot. (7) The power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541.

Respectfully submitted,


Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney


By:     /s/
Henry C. Whitaker
Counselor to the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, D.C. 20530
Phone: (202) 445-8942
E-Mail: henry.whitaker@usdoj.gov

2

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.


_____/s/_____
Henry C. Whitaker
Counselor the Attorney General
950 Pennsylvania Ave. NW
Room 5134
Washington, D.C. 20530
Phone: (202) 445-8942
E-Mail: henry.whitaker@usdoj.gov

3

J.A. 311