**Case Nos. 25-4673 & 25-4674**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

United States of America, *Appellant*,
*v.*
James Comey Jr., *Appellees.*

United States of America, *Appellant*,
*v.*
Letitia James, *Appellee.*

*On Appeal from the U.S. District Court for the Eastern District of Virginia*,
Nos. 1:25-cr-122 & 1:25-cr-272, Sat Below: Judge Cameron McGowan Currie

## AMICUS BRIEF OF BIPARTISAN CURRENT AND FORMER MEMBERS OF CONGRESS IN SUPPORT OF APPELLEES

Lawrence H. Woodward
RULOFF HADDAD & WOODWARD, P.C.
317 30th Street
Virginia Beach, VA 23451
Telephone: (757) 671-6000

Joseph T. Baio
JOSEPH T. BAIO LLC
240 Centre Street
New York, NY 10013
Telephone: (914) 523-2255

Carey R. Dunne
Kevin Trowel
Mónica Folch
Zack Goldberg
Martha Reiser
FREE + FAIR LITIGATION GROUP, INC.
266 West 37th Street, 20th Floor
New York, NY 10018
Telephone: (646) 434-8604

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ........................................................................................... 1

INTERESTS OF AMICI ................................................................................. 3

BACKGROUND ............................................................................................. 5

    I.    Ms. Halligan's Appointment as U.S. Attorney ............................... 5

    II.   The Trump Administration's practice of disregarding the Appointments Clause and 28 U.S.C. § 546 ............................................................. 10

ARGUMENT ................................................................................................. 13

    I.    The Appointments Clause mandates congressional involvement in appointments of Officers of the United States ............................. 13

    II.   U.S. Attorneys are Officers of the United States ......................... 15

    III.  Congress has implemented its authority under the Appointments Clause in Title 28, Sections 541 and 546 ............................................... 17

    IV.  The Administration's efforts to install Ms. Halligan in office are inconsistent with Section 546 and the Appointments Clause ................. 19

CONCLUSION .............................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bowsher v. Synar,*
478 U. S. 714 (1986) ................................................................................1

*Collins v. United States,*
14 Ct. Cl. 568 (1878) .............................................................................16

*Edmond v. United States,*
520 U.S. 651, 658 (1997) ................................................................. *passim*

*Freytag v. Comm'r,*
501 U.S. 868 (1991) ................................................................................2

*In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.,*
No. 25-misc-19-LGS, 2026 WL 60793 (N.D.N.Y. Jan. 8, 2026) ..........12

*Morrison v. Olson,*
487 U.S. 654 (1988)..........................................................................13, 14

*N.L.R.B. v. Enter. Leasing Co. Se., LLC,*
722 F.3d 609 (4th Cir. 2013) ...............................................................1, 2

*N.L.R.B. v. New Vista Nursing & Rehab.,*
719 F.3d 203 (3d Cir. 2013)...................................................................15

*N.L.R.B. v. Noel Canning,*
573 U.S. 513 (2014) ................................................................................1

*Ryder v. United States,*
515 U.S. 177 (1995) ................................................................................2

*United States v. Baker,*
504 F. Supp. 2d 402 (E.D. Ark. 2007)...................................................15

*United States v. Baldwin,*
541 F. Supp. 2d 1184 (D.N.M. 2008)...............................................17, 18

*United States v. Gantt,*
194 F.3d 987 (9th Cir. 1999) .................................................................15

*United States v. Garcia*,
No. 2:25-cr-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ....................11, 20

*United States v. Giraud*,
795 F. Supp. 3d 560, 584 (D.N.J. 2025)................................................10, 19, 20, 21

*United States v. Giraud*,
160 F.4th 390 (3d Cir. 2025) ...................................................................................10

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000).....................................................................15, 16, 18

*United States v. Ramirez-Martinez*,
No. 1:22-CR-01721-KWR, 2026 WL 113431 (D.N.M. Jan. 14, 2025)............12, 13

*United States v. Sotomayor Vazquez*,
69 F. Supp. 2d 286 (D.P.R. 1999) ...................................................................17, 18

## United States Constitution

U.S. Const. art. II, § 2, cl. 2 ...............................................................*passim*

## Statutes

5 U.S.C. § 3345 et seq..............................................................................................16

28 U.S.C. § 541 ........................................................................................2, 16, 18

28 U.S.C. § 541(a) ...................................................................................................17

28 U.S.C. § 546 ...............................................................................................*passim*

28 U.S.C. § 546(a) ..............................................................................................17, 20

28 U.S.C. § 546(b) ...................................................................................................17

28 U.S.C. § 546(c) ..........................................................................................*passim*

28 U.S.C. § 546(d) ..........................................................................................*passim*

## Other Authorities

Alan Feuer, *Longtime Virginia Lawyer Chosen by Judges as U.S. Attorney, and
Then Fired*, N.Y. Times (Feb. 20, 2026) ................................................................10

Brittny Mejia, *et al*, *Trump Administration Maneuvers to Keep Essayli as L.A. 's Top Federal Prosecutor*, L.A. Times (July 29, 2025) ...............................................11

Devan Cole and Kristen Holmes, *Lindsey Halligan departs Justice Department hours after Trump-appointed federal judge calls her leadership a 'charade'*, CNN (Jan. 20, 2026) ................................................................................................9

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 18:44 EST) 8

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 21:50 EST) 8

The Federalist No. 47 (James Madison) ....................................................................1

The Federalist No. 76 (Alexander Hamilton) ...........................................................2

Glenn Thrush, *et al*, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025)......................................7

Jeremy Herb, *et al*, *Inside the Seven Tumultuous Days the Led to the Comey Indictment*, CNN (Sept. 28, 2025) ...............................................................................8

Katherine Faulders, *et al*, *2nd grand jury refuses to indict New York AG Letitia James: Sources*, CBS (Dec. 11, 2025) .......................................................................9

Max Matza, *Trump's Ex-Lawyer Replaced as Federal Prosecutor by Judges*, BBC (July 22, 2025) ......................................................................................................10

Nomination of Erik Siebert for Department of Justice, 119th Congress (2025-2026), PN141-35, 119th Cong. (2025) .......................................................................6

Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025) .......................................................6

Salvador Rizzo, *et al*, *Top Virginia Prosecutor Resigns Amid Criticism Over Letitia James Investigation*, Wash. Post (Sept. 20, 2025) ........................................7

Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025)............................................................16

The Associated Press, *U.S. Attorney Resigns Under Pressure from Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025) ............................................7

United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025) ......................................................................................................................6

U.S. Dep't. of Justice, Justice Manual § 9-27.260 (2018)......................................21

# INTRODUCTION

The Constitution's core, government-structuring provisions "reflect the founding generation's deep conviction that 'checks and balances were the foundation of a structure of government that would protect liberty.'" *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, joined by Roberts, C.J., Thomas, J. and Alito, J.) (quoting *Bowsher v. Synar*, 478 U. S. 714, 722 (1986)).[1]  The Founders believed that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny."  The Federalist No. 47 (James Madison).

In the constitutional scheme of checks and balances, the requirement—found in the Appointments Clause—that the President submit nominations for "principal" and "inferior" officers for the "Advice and Consent of the Senate," U.S. Const. art. II, § 2, cl. 2, plays a crucial role.  *See generally Edmond v. United States*, 520 U.S. 651, 658–666 (1997).  Since the Founding, the Appointments Clause has functioned as a safeguard against presidential overreach.  The Clause creates a "shared responsibility between the President and the Senate" concerning senior executive branch officials, which acts "as a 'check upon a spirit of favoritism in the President,'" and "prevent[s] the appointment of 'unfit characters.'"  *N.L.R.B. v.*

---

[1] All internal quotation marks, alterations, and citations are omitted from case quotations.

1

*Enter. Leasing Co. Se., LLC*, 722 F.3d 609, 633 (4th Cir. 2013) (quoting The

Federalist No. 76 (Alexander Hamilton)). "The Clause is a bulwark against one

branch aggrandizing its power at the expense of another branch," *Ryder v. United

States*, 515 U.S. 177, 182 (1995), and "it is among the significant structural

safeguards of the constitutional scheme," *Edmond*, 520 U.S. at 659. "The

structural interests protected by the Appointments Clause are not those of any one

branch of Government but of the entire Republic." *Freytag v. Comm'r*, 501 U.S.

868, 880 (1991).

     Amici respectfully submit that the Administration's appointment of Lindsey

Halligan as United States Attorney for the Eastern District of Virginia violates the

letter and the spirit of the Appointments Clause and the statutes that implement it.

*See* U.S. Const. art. II, § 2, cl. 2; 28 U.S.C. §§ 541, 546. The Administration's

appointment of Ms. Halligan—which involved stacking numerous interim

appointments under § 546 without obtaining the Senate's advice and consent—

appears designed to circumvent the public hearing and accountability that Senate

confirmation requires. *See, e.g.*, *Enter. Leasing Co. Se., LLC*, 722 F.3d at 633.

Indeed, the publicly reported facts surrounding Ms. Halligan's appointment reflect

precisely the sort of dangers that can arise when the advice and consent

requirement is disregarded. Amici urge the Court to affirm the district court's

ruling and to reject this transparent attempt to sidestep the Appointments Clause with respect to Ms. Halligan.

## INTERESTS OF AMICI[2]

Amici curiae are a bipartisan group of current and former members of Congress who swore an oath to support the United States Constitution and who are deeply committed to preserving the Constitution's carefully calibrated separation of powers framework. Some of the amici participated in the consideration and passage of the Preserving United States Attorney Independence Act of 2007 (the "Act"), codified in 18 U.S.C. § 546, which restored the 120-day limit on interim appointments of United States Attorneys now codified in § 546(c). The Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law.

In enacting the statutory scheme at issue here, Congress acted pursuant to its explicit constitutional prerogative to "by Law vest the Appointment of" inferior

---

[2] In accordance with Federal Rule of Appellate Procedure 29, all parties consented to the filing of this amicus brief. *See* Fed. R. App. P. 29(a)(2). No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. These provisions reflect the balance struck by the Framers between executive branch flexibility and legislative branch oversight, ensuring that a critical law enforcement position is filled without undue delay while preserving the Senate's essential role in confirming those who serve beyond a short interim period.

Amici have a strong interest in ensuring that federal courts interpret the statutory framework governing the appointment of United States Attorneys in a manner faithful to this constitutional design and Congress's original intent in passing these critical appointment provisions. The Administration's recent actions to impermissibly stack successive interim appointments under § 546 without obtaining the Senate's advice and consent implicates the very separation of powers concerns Congress sought to address when it enacted the current version of § 546 in 2007. Amici submit this brief to provide the Court with the legislative and constitutional context in which the relevant statutory scheme was enacted, and to underscore the structural principles at stake in the proper application of these provisions.

The current and former members of Congress in support of this brief are:

- Barbara Comstock, Representative of the 10th Congressional District of Virginia from 2015 to 2019 (R).

- Mickey Edwards, Representative of the 5th Congressional District of Oklahoma from 1977 to 1993 (R).

- Wayne Gilchrest, Representative of the 1st Congressional District of Maryland from 1991 to 2009 (R).

- Jim Greenwood, Representative of the 8th Congressional District of Pennsylvania from 1993 to 2005 (R).

- Stephen Lynch, Representative of the 9th Congressional District of Massachusetts from 2001 to 2013, and the 8th Congressional District of Massachusetts from 2013 to the present (D).

- Frank Pallone, Representative of the 3rd Congressional District of New Jersey from 1988 to 1993, and the 6th Congressional District of New Jersey from 1993 to the present (D).

- Tom Petri, Representative of the 6th Congressional District of Wisconsin from 1979 to 2015 (R).

- Christopher Shays, Representative of the 4th Congressional District of Connecticut from 1987 to 2009 (R).

- David Trott, Representative of the 11th Congressional District of Michigan from 2015 to 2019 (R).

- Nydia Velázquez, Representative of the 12th Congressional District of New York from 1993 to 2013, and the 7th Congressional District of New York from 2013 to the present (D).

## BACKGROUND

### I.    Ms. Halligan's Appointment as U.S. Attorney

On January 21, 2025, the day after President Trump was inaugurated as

president, the Attorney General appointed Erik S. Siebert as Interim U.S. Attorney

5

for the Eastern District of Virginia.[3]  Mr. Siebert was an experienced prosecutor who had served in the office since 2010 and had received numerous awards related to his service.[4]  The duration of Mr. Siebert's interim appointment was limited by statute to 120 days and was set to expire on May 21, 2025.  *See* § 546(c)(2).  On May 6, 2025, the Trump Administration transmitted his nomination to the Senate.[5] Three days later, with the 120-day deadline on Mr. Siebert's interim appointment approaching and Mr. Siebert's nomination in the Senate still pending, judges in the Eastern District of Virginia exercised their authority under § 546(d) and unanimously appointed him to the position of U.S. Attorney for the Eastern District of Virginia.[6]  His appointment by the district court became effective on May 21, 2025, the day his interim appointment expired.  *Id.*

---

[3] *See* United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025), https://www.justice.gov/usao-edva/pr/erik-siebert-appointed-interim-us-attorney-eastern-district-virginia.

[4] *See id.*

[5] Nomination of Erik Siebert for Department of Justice, 119th Congress (2025-2026), PN141-35, 119th Cong. (2025), https://www.congress.gov/nomination/119th-congress/141/35.

[6] *See* Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025), https://www.vaed.uscourts.gov/sites/vaed/files/Order%20of%20Appointment.pdf.

On September 19, 2025, Mr. Siebert reportedly informed colleagues that he had resigned his position.[7]  His resignation came hours after President Trump told reporters in the Oval Office that he intended to fire Mr. Siebert and that he "want[ed] him out" of the office.[8]  According to news reports, President Trump's comments came on the heels of Mr. Siebert informing senior Justice Department officials that he did not intend to seek indictments against two individuals that President Trump perceived as political adversaries, Letitia James and James Comey.[9]

The following day, September 20, 2025, President Trump posted (and later withdrew) a Truth Social message to Attorney General Pam Bondi complaining that "[n]othing is being done" with respect to the indictment of James Comey,

---

[7] The Associated Press, *U.S. Attorney Resigns Under Pressure from Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025), https://www.npr.org/2025/09/20/nx-s1-5547837/us-attorney-virginia-resigns-letitia-james-probe.

[8] Glenn Thrush, *et al*, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[9] Salvador Rizzo, *et al*, *Top Virginia Prosecutor Resigns Amid Criticism Over Letitia James Investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/.

Letitia James, and other political adversaries.[10]  He then announced on Truth

Social the appointment of Lindsey Halligan as U.S. Attorney for the Eastern

District of Virginia.[11]  Ms. Halligan had no prosecutorial experience but had

previously served as President's Trump's personal lawyer.[12]  Two days later, the

Attorney General formally appointed Ms. Halligan as interim United States

Attorney, citing 28 U.S.C. § 546 as the source of legal authority for the

appointment.  (*See* J.A. 35.)  Several days later, on September 25, 2025, Ms.

Halligan presented and secured an indictment against Mr. Comey related to

statements Mr. Comey made to Congress in 2020.  (*See* J.A. 28.)  Two weeks later,

Ms. Halligan presented and secured an indictment against Ms. James related to

statements she made on a mortgage application in 2020.  (*See* J.A. 142.)

Both defendants subsequently moved to dismiss their indictments.  The

district court granted their motions on November 24, 2025, after finding that Ms.

Halligan was not lawfully serving as U.S. Attorney at the time she secured their

indictments.  (J.A. 89; J.A. 283.)  In the weeks after the court issued its ruling, the

---

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 18:44 EST), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

[11] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 21:50 EST), https://truthsocial.com/@realDonaldTrump/posts/115239776714791650.

[12] Jeremy Herb, *et al*, *Inside the Seven Tumultuous Days the Led to the Comey Indictment*, CNN (Sept. 28, 2025), https://www.cnn.com/2025/09/26/politics/james-comey-indictment-trump-prosecution.

government reportedly tried two more times to indict Ms. James, but grand juries refused to return indictments on both occasions.[13]  The government appealed the district court's decision on December 19, 2026.

During the pendency of the appeal, Ms. Halligan continued identifying herself in court filings as the U.S. Attorney in the district, notwithstanding the November 24, 2025 ruling that she had not lawfully been appointed.  On January 20, 2026, hours after a judge said he intended to initiate disciplinary proceedings against Ms. Halligan if she continued to identify herself as U.S. Attorney in filings before his court, Ms. Halligan resigned her position as U.S. Attorney.[14]

One month later, on February 20, 2026, the judges in the Eastern District of Virginia exercised their authority under 28 U.S.C. § 546(d) and appointed a new U.S. Attorney for the district, James W. Hundley, a widely respected lawyer with

---

[13] Katherine Faulders, *et al*, *2nd grand jury refuses to indict New York AG Letitia James: Sources*, CBS (Dec. 11, 2025), https://abcnews.com/US/2nd-time-grand-jury-refuses-indict-new-york/story?id=128279779.

[14] Devan Cole and Kristen Holmes, *Lindsey Halligan departs Justice Department hours after Trump-appointed federal judge calls her leadership a 'charade'*, CNN (Jan. 20, 2026), https://www.cnn.com/2026/01/20/politics/lindsey-halligan-judge-vitriol-charade.

more than 35 years of experience as a litigator in Virginia.[15]  The Trump

Administration fired him two hours after his appointment was announced.[16]

## II.    The Trump Administration's practice of disregarding the Appointments Clause and 28 U.S.C. § 546

In the last six months, courts have found that at least five other U.S.

Attorneys appointed by the Trump Administration were unlawfully serving in their

positions.  As is the case with Ms. Halligan's appointment, these appointments

raise serious statutory and constitutional problems and appear designed to avoid

the Constitution's advice and consent requirement.  They include:

*Alina Habba (District of New Jersey)*.  On August 21, 2025, a district court

found the Administration's attempt to keep Alina Habba in office as U.S. Attorney

for the District of New Jersey beyond the statutorily authorized period for interim

appointments was unlawful.  *See United States v. Giraud*, 795 F. Supp. 3d 560

(D.N.J. 2025).  Like Ms. Halligan, Ms. Habba had no experience as a prosecutor at

the time of her appointment but had previously served as Mr. Trump's personal

lawyer.[17]  The Third Circuit affirmed the decision, 160 F.4th 390 (3d Cir. 2025),

---

[15] Alan Feuer, *Longtime Virginia Lawyer Chosen by Judges as U.S. Attorney, and Then Fired*, N.Y. Times (Feb. 20, 2026), https://www.nytimes.com/2026/02/20/us/politics/us-attorney-eastern-district-of-virginia.html.

[16] *Id.*

[17] Max Matza, *Trump's Ex-Lawyer Replaced as Federal Prosecutor by Judges*, BBC (July 22, 2025), https://www.bbc.com/news/articles/cj9vm03yye4o.

and subsequently denied the government's request for rehearing *en banc*, *see* No.

25-2635 (Dkt. No. 86) (3d Cir., Jan. 26, 2026).

*Sigal Chattah (District of Nevada)*.  On September 30, 2025, a district court

found that the Administration's attempt to keep Sigal Chattah in office as U.S.

Attorney for the District of Nevada beyond the statutorily authorized period for

interim appointments was unlawful.  *See United States v. Garcia*, No. 2:25-cr-

00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025).  The district court explained

that the law does not permit the executive branch to simply "choose whomever it

want[s], whenever it want[s], and fill [a U.S. Attorney] vacancy."  *See id*. at *9, 14.

The matter is now before the U.S. Court of Appeals for the Ninth Circuit.  *See*

*United States v. Garcia*, No. 25-6229 (9th Cir., docketed Oct. 3, 2025).

*Bilal Essayli (Central District of California)*.  On October 28, 2025, a

district court found that Bilal Essayli was not lawfully serving as U.S. Attorney for

the Central District of California.  *United States v. Ramirez*, No. 22-CR-573-FWS,

2025 WL 3019248 (C.D. Cal. Oct. 28, 2025).  Prior to the court's ruling, Mr.

Essayli had told the political host Glenn Beck that the Administration had "some

tricks up [their] sleeves" to keep him in office as U.S. Attorney beyond the

statutorily authorized period for interim appointments.[18]  The court rejected those

---

[18] *See* Brittny Mejia, *et al, Trump Administration Maneuvers to Keep Essayli as*
*L.A.'s Top Federal Prosecutor*, L.A. Times (July 29, 2025),

efforts, though the court allowed him to continue serving as the district's First Assistant U.S. Attorney.  *Ramirez*, 2025 WL 3019248 at *20.

*John Sarconne (Northern District of New York).*  On January 23, 2026, a district court found that John Sarconne was unlawfully serving as U.S. Attorney for the Northern District of New York.  *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, No. 25-misc-19-LGS, 2026 WL 60793 (N.D.N.Y. Jan. 8, 2026).  The court reached its decision in a case challenging subpoenas issued to the New York Attorney General's Office, which is led by Ms. James.  The court explained that "[w]hen the Executive branch of government skirts restraints put in place by Congress and then sues that power to subject political adversaries to criminal investigations, it acts without lawful authority."  *Id.* at *1.  The court noted its decision was consistent with "a growing body of persuasive authority" coming out of New Jersey, Nevada, California and Virginia regarding unlawful U.S. Attorney appointments by the Trump Administration.  *See id.*  The matter is now before the U.S. Court of Appeals for the Second Circuit.  *See In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, No. 26-156 (2d Cir., docketed Jan. 23, 2026).

---

https://www.latimes.com/california/story/2025-07-29/trump-essayli-us-attorney-los-angeles.

*Ryan Ellison (District of New Mexico)*.  On January 14, 2025, a district court found that Ryan Ellison was not lawfully serving as the U.S. Attorney for the district of New Mexico.  *United States v. Ramirez-Martinez*, No. 1:22-CR-01721-KWR, 2026 WL 113431 (D.N.M. Jan. 14, 2025).  The court rejected what it found to be "an apparent attempt [by the Trump Administration] to contravene the clear and plain limitations Congress implemented" regarding temporary appointments.  *Id.* at *13.  Although the court concluded that Mr. Ellison could continue to serve as the district's First Assistant U.S. Attorney, it found that he "cannot validly claim, as he has, that he is the Acting United States Attorney."  *Id.* at *10.

## ARGUMENT

### I.    The Appointments Clause mandates congressional involvement in appointments of Officers of the United States

The Appointments Clause provides that:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., art. II, § 2, cl. 2; *see also Edmond*, 520 U.S. 658–59.  The Clause contemplates two kinds of officers: "principal" and "inferior" officers.  *See*

13

*Morrison v. Olson*, 487 U.S. 654, 670–71 (1988).  Although the line between the two categories "is far from clear," *id*. at 671, the Supreme Court has explained that, in general, "inferior" officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663.  Factors relevant to this determination include whether the official in question is "subject to removal by a higher Executive Branch official," "empowered . . . to perform only certain, limited duties," and "limited in jurisdiction." *Morrison*, 487 U.S. at 671–72.  The Clause makes clear that, for "principal" and "inferior" officers alike, "the *default* manner of appointment" is Presidential nomination followed by Senate confirmation.  *Edmond*, 520 U.S. at 660 (emphasis added).

The Framers, with their extraordinary foresight, tempered the advice and consent requirement with a certain amount of flexibility in the appointment of inferior officers.  *See id*.  The final provision in the Appointments Clause—known as the "Excepting Clause"—authorizes Congress to "by Law vest the Appointment of such inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*  The "obvious purpose" of this flexibility "is administrative convenience," which the Framers "deemed to outweigh the benefits of the more cumbersome" advice and consent process that applies without exception to principal officers.  *See id.*  Still, the Framers ensured that Congress

14

would play a role in appointments of inferior officers by requiring that Congress provide for such appointments "by Law." U.S. Const., art. II, § 2, cl. 2.

The role of the Appointments Clause as the "primary, or general, method of appointment" is confirmed by the scope of the Recess Appointments Clause found in Article II, section 2, clause 3. *N.L.R.B. v. New Vista Nursing & Rehab.*, 719 F.3d 203, 228 (3d Cir. 2013). The Appointments Clause "lacks any limitation on when this power is operative—the president *always* has the power to fill vacancies through nomination and the advice and consent of the Senate"—which "stands in contrast to the power given to the president in the Recess Appointments Clause, which explicitly allows him to fill vacancies unilaterally only during the Recess of the Senate." *Id.* Read together, these clauses "reveal a constitutional preference for divided power over the appointments process, which is deviated from only in specified situations." *Id.*

## II. U.S. Attorneys are Officers of the United States

"United States Attorneys are clearly 'officers' of the United States under the Appointments Clause," *United States v. Baker*, 504 F. Supp. 2d 402, 414 (E.D. Ark. 2007), and to amici's knowledge, every court to have considered the issue has held that U.S. Attorneys are "inferior" officers under the Appointments Clause. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 25–26 (1st Cir. 2000) ("United States Attorneys are inferior officers."); *United States v. Gantt*, 194 F.3d 987, 999–

1000 (9th Cir. 1999) (same), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). This is not to suggest that U.S. Attorneys are "inferior" "in the sense of petty or unimportant," *Collins v. United States*, 14 Ct. Cl. 568, 574 (1878), but rather that their "work is directed and supervised at some level by others who are" principal officers, "appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. As the First Circuit noted in *Hilario*, "Congress has ceded to the Attorney General plenary authority over United States Attorneys," and "[t]hey are subject to much closer supervision by superiors than" the officers held to be "inferior" by the Supreme Court in *Edmond*. 218 F.3d at 25.

Accordingly, U.S. Attorneys are subject to the constitution's "default" requirement of Presidential nomination and Senate confirmation. *Edmond*, 520 U.S. at 658–60.[19] Congress has exercised its authority under the Appointments Clause by enacting a statutory scheme applicable to the appointment of interim and acting U.S. Attorneys, *see* 5 U.S.C. §§ 3345–3349c; 28 U.S.C. §§ 541, 546, but it

---

[19] During President Trump's first term as President, he nominated 85 U.S. Attorneys and all were moved through the Senate Judiciary Committee and confirmed by the Senate. *See* U.S. Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025), https://www.judiciary.senate.gov/press/dem/releases/durbin-calls-on-trump-white-house-to-honor-blue-slip-rule-for-us-attorneys-during-senate-judiciary-committee-executive-business-meeting.

has so far declined to exercise its authority under the Appointments Clause to delegate final appointment authority for U.S. Attorneys to the President, the judiciary, or to the Attorney General, *see* U.S. Const., art. II, § 2, cl. 2. In case of a vacancy, the Attorney General may make an interim appointment for 120 days, but thereafter the United States Attorney either must be confirmed by the Senate or empowered by the court.

### III. Congress has implemented its authority under the Appointments Clause in Title 28, Sections 541 and 546

Congress has exercised its constitutional authority to provide for the appointment of U.S. Attorneys "by Law." U.S. Const., art. II, § 2, cl. 2. Section 541(a) of Title 28 confirms the "default" rule under the Clause: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). When vacancies arise, § 546(a) authorizes the Attorney General to appoint an interim U.S. Attorney, but the appointment power is "limited in candidacy and scope." *See United States v. Baldwin,* 541 F. Supp. 2d 1184, 1191 (D.N.M. 2008). Specifically, the statute prohibits the Attorney General from appointing anyone to whom "the Senate refused to give advice and consent," *see* § 546(b), and the aggregate duration of interim appointments is limited to 120 days, *see* § 546(c)(2). If 120 days expire and no nominee for the position has obtained the Senate's approval, § 546(d) vests authority to appoint an interim U.S. Attorney in the federal courts.

*See generally United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001) (discussing Appointments Clause and history of U.S. Attorney appointments); *Hilario*, 218 F.3d at 26 ("Congress chose to place the appointing power vis-à-vis interim United States Attorneys partially in the judiciary."). The 120-day limit established by § 546(c)(2)—and the absence of any such limit in § 546(d)—is plainly "deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute." *Hilario*, 218 F.3d at 23.

The provisions enacted in § 546 reinforce and implement the allocation of constitutional authority described in the Appointments Clause. The appointment powers under § 546 "are permissive, and the President, with the advice and consent of the Senate, at all times retains the power to essentially veto" the interim U.S. Attorney—whether appointed by the district court or the Attorney General—"and appoint someone of his choosing." *Baldwin*, 541 F. Supp. 2d at 1210. They also "ensure[] that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" and his constitutional power under the Appointments Clause. *Sotomayor Vazquez*, 69 F. Supp. 2d at 295.

**IV.    The Administration's efforts to install Ms. Halligan in office are inconsistent with Section 546 and the Appointments Clause**

The Administration's attempt to install Ms. Halligan as interim U.S. Attorney circumvents the accountability envisioned by the Founders and is inconsistent with § 546 and the Appointments Clause.  The law does not permit the executive branch to stack successive interim appointments under § 546 beyond the statutorily authorized period without the advice and consent of the Senate, as the Administration attempted to do when it appointed Ms. Halligan as interim U.S. Attorney.

The text, context and statutory history all confirm that § 546 only authorizes the Attorney General to appoint individuals as U.S. Attorneys on an interim basis for an *aggregate* total of 120 days.  This is apparent from the text of § 546(c)(2), which provides that the 120-day clock is "benchmarked only to 'appointment by the Attorney General under this section," not to a *particular person's* appointment under the provision.  *See Giraud*, 795 F. Supp. 3d at 579.  The statutory structure and history of § 546 confirm this understanding of the text.  Specifically, Congress enacted § 546(c)(2) after a short-lived period during which there were no temporal limits on the duration of interim U.S. Attorney appointments, and Congress's decision to re-insert the 120-day limit in 2007 "is strong evidence that Congress did not intend to permit that limit to be circumvented by repeat appointments."  *See Giraud*, 795 F. Supp. 3d at 581.  Indeed, the House Report on the draft 2007 bill

identified as a primary concern "Bypassing the Requirement of Senatorial Advice and Consent," which included "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." *See id.* (quoting H.R. Rep. No. 110-58, at 6 (2007)).

As a result, when the Trump Administration appointed Mr. Siebert as interim U.S. Attorney under § 546(a) on January 21, 2025, it triggered the 120-day clock in § 546(c)(2). When that clock expired on May 21, 2025, the Administration lacked authority to appoint another interim U.S. Attorney under the provision, and only the district court was authorized at that point to appoint an interim U.S. Attorney under § 546(d). *See Giraud*, 795 F. Supp. 3d at 580, 582 ("[T]he Attorney General is vested with 120 *total* days to appoint an Interim United States Attorney from the date that she first invokes section 546(a)"; "Congress provided next steps for keeping the United States Attorney's office filled when the 120-day clock runs out: section 546(d) permits the district court to step in and make an appointment") (emphasis added). The Administration's subsequent appointment of Ms. Halligan on September 22 as interim U.S. Attorney under § 546(a) was therefore unlawful and she is not lawfully serving in the position today, nor was she at the time she secured Mr. Comey's indictment. *See Garcia*, 2025 WL 2784640, at *18 (a U.S. attorney that is not lawfully appointed is "not validly serving" in the position and "her involvement in [] cases [is] unlawful").

The Administration's attempt to stack successive interim appointments under § 546(a) beyond the statutorily authorized period is an attempt to nullify the limitations that Congress established in the exercise of its authority under the Appointments Clause.  To endorse these efforts would effectively allow the president "to staff the United States Attorney's office with individuals of his personal choice for an entire term without seeking the Senate's advice and consent."  *Giraud*, 795 F. Supp. 3d at 580.  This "would eviscerate the divided-powers framework" that the Appointments Clause requires.  *New Vista Nursing & Rehab.*, 719 F.3d at 230.  Just as the Recess Appointments Clause must not be construed to "swallow the rule of the Appointments Clause," *id.*, the statutory scheme that effectuates Congress's constitutional authority under the Appointments Clause should not be construed to eliminate the Senate's essential role in providing advice and consent.

The extraordinary circumstances presented in Mr. Comey and Ms. James's cases reflect the dangers that the Constitution's drafters and members of Congress recognized when they carefully placed and preserved limits on the executive branch's authority to appoint U.S. Attorneys.  Federal prosecutors wield enormous power and make critical decisions about whether, when, and against whom to bring criminal charges.  *See* U.S. Dep't. of Justice, Justice Manual § 9-27.260 (2018) (instructing that prosecutors "may never" be influenced by political

considerations).  Amici submit that the Court should reject the Administration's effort to bypass the constitutional constraint on this authority imposed by the Appointments Clause.  To do otherwise would undermine one of the "significant structural safeguards" of our constitutional scheme.  *See Edmond*, 520 U.S. at 659.

## CONCLUSION

Amici respectfully submit that the Court should affirm the district court's ruling and reject the Administration's attempt to sidestep the Appointments Clause with respect to Ms. Halligan.

Respectfully submitted,

March 10, 2026                    */s/ Lawrence H. Woodward*

Lawrence H. Woodward
RULOFF HADDAD & WOODWARD, P.C.
317 30th Street
Virginia Beach, VA 23451
Telephone: (757) 671-6000

Carey R. Dunne
Kevin Trowel
Mónica Folch
Zack Goldberg
Martha Reiser
FREE AND FAIR LITIGATION GROUP, INC.
266 West 37th Street, 20th Floor
New York, NY 10018
Telephone: (646) 434-8604

Joseph T. Baio
JOSEPH T. BAIO LLC
240 Centre Street
New York, NY 10013
Telephone: (914) 523-2255

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 4,834 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

DATED: March 10, 2026                        Respectfully submitted,

                                            */s/ Lawrence H. Woodward*
                                            Lawrence H. Woodward