Nos. 25-4673(L) & 25-4674

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA
*Plaintiff-Appellant*
v.
LETITIA JAMES
*Defendant-Appellee*

UNITED STATES OF AMERICA
*Plaintiff-Appellant*
v.
JAMES BRIEN COMEY, JR
*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**BRIEF OF SOCIETY FOR THE RULE OF LAW, ITS EXECUTIVE
DIRECTOR GREGG NUNZIATA, AND CHARTER MEMBERS DONALD
AYER, STUART GERSON, ALAN RAUL, AND STANLEY TWARDY, JR.
AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES
AND URGING AFFIRMANCE**

Erin H. Flynn
*Counsel of Record*
Maithreyi Ratakonda
Christine P. Sun
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
Tel.: (202) 999-9305

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

IDENTITY AND INTEREST OF THE AMICI CURIAE.......................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT ....................................................................................5

I.    The Constitution and Federal Statutes Grant Congress an Essential Role in the Lawful Appointment of U.S. Attorneys. ...........................5

      A.    Congress Has Retained Its Role Under the Appointments Clause for Filling U.S. Attorney Vacancies. .............................6

      B.    Federal Statutes Governing Interim and Acting Appointments Protect Against Unilateral Appointments. ................................10

II.   The District Court Correctly Held that the Executive Branch Unlawfully Arrogated Power to Purportedly Appoint Halligan. ........15

III.  The Administration's End-Run Around the Constitution, Section 546, and the FVRA Undermines the Rule of Law by Emboldening Politicized Prosecutions and Chilling Opposition. ............................18

CONCLUSION ................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Berger v. United States*, 295 U.S. 78 (1935) ....................................................8

*Bowsher v. Synar*, 478 U.S. 714 (1986)..........................................................5

*Edmond v. United States*, 520 U.S. 651 (1997) ........................................6, 7

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ...................................................6

*In re Grand Jury Subpoena*, No. 25 Misc. 19, 2026 WL 60793
(N.D.N.Y. Jan. 8, 2026), *appeal filed* No. 26-156 (2d Cir.) ........................18

*Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025)........................................6

*Lucia v. SEC*, 585 U.S. 237 (2018)................................................................6

*Morrison v. Olson*, 487 U.S. 654 (1988) .........................................................6

*Myers v. United States*, 272 U.S. 52 (1926) ....................................................7

*Ryder v. United States*, 515 U.S. 177 (1995) ..................................................6

*United States v. Comey*, No. 1:25-cr-00272, 2025 WL 3266932 (E.D.
Va. Nov. 24, 2025) ....................................................................................15

*United States v. Garcia*, No. 2:25-cr-00227, 2025 WL 2784640 (D.
Nev. Sept. 30, 2025), *appeal filed* No. 25-6229 (9th Cir.).....................18, 19

*United States v. Germaine*, 99 U.S. 508 (1878) ...........................................6

*United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025) .....................13, 14, 15, 18

*United States v. James*, No. 2:25-cr-00122, 2025 WL 3266931 (E.D.
Va. Nov. 24, 2025) ............................................................................ passim

*United States v. Naviwala*, No. 2:24-cr-00099 (D.N.J. Mar. 9, 2026) ....................18

*United States v. Perkins*, 116 U.S. 483 (1886) .............................................7

*United States v. Ramirez*, 807 F. Supp. 3d 1086 (C.D. Cal. 2025) .................18, 19

*United States v. Ramirez-Martinez*, No. 1:22-cr-01721, 2026 WL
113431 (D.N.M. Jan. 14, 2026)........................................................18, 19

ii

*Widakuswara v. Lake*, No. 1:25-cv-1015, 2026 WL 638676 (D.D.C. Mar. 7, 2026) ................................................................ 14, 15

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) ..............................12

**Statutes**

28 U.S.C. § 541 .........................................................................................7

28 U.S.C. § 546 ............................................................................. passim

28 U.S.C. § 547 .........................................................................................8

5 U.S.C. § 3345 ................................................................................ 13, 14

5 U.S.C. § 3346 ................................................................................ 13, 14

5 U.S.C. § 3347 .......................................................................................14

5 U.S.C. §§ 3345 *et seq.* ................................................................... 4, 10

Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, 121 Stat. 224 (2007) ...................................................12

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ..............................................................6, 7

U.S. Const. art. II, § 2, cl. 3 ...............................................................14

**Other Authorities**

H.R. Rep. No. 110-58 (2007)............................................................ 12, 22

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020)...............................................................................4

Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39 Am. U. Int'l L. Rev. 587 (2024)....................................................23

Robert H. Jackson, U.S. Att'y Gen., Address to the Second Annual Conference of United States Attorneys: *The Federal Prosecutor* (Apr. 1, 1940), https://perma.cc/4KS4-YLAJ ..................................... 8, 9, 24

*The Federalist* No. 47 (James Madison)..................................................5

*The Federalist* No. 48 (James Madison)..................................................5

*The Federalist* No. 51 (James Madison)..................................................5

*The Federalist* No. 76 (Alexander Hamilton)................................................. 5, 7, 9

U.S. Att'y Gen. Griffin B. Bell, Address Before U.S. Dep't of Justice
  Lawyers (Sept. 6, 1978), https://perma.cc/XWM7-TPCR ..........................24

## IDENTITY AND INTEREST OF THE AMICI CURIAE[1]

*Amicus curiae* Society for the Rule of Law is a national membership organization of conservative, libertarian, and center-right lawyers, and others, who prioritize the defense of the rule of law, the Constitution, and American democracy above their partisan and policy preferences. The Society was originally founded as Checks & Balances in 2018 by lawyers and jurists who served at the highest levels of government in previous Republican administrations. The Society relaunched in its current form in 2023 with a renewed vision to defend and advance the aforementioned beliefs and to amplify, among other constitutional principles, the separation of powers and each branch's importance as a check and balance on the other branches of government.

The Society's executive director and the four charter members listed below join this brief as *amici* based, in part, on their relevant government service:

Gregg Nunziata is Executive Director of the Society for the Rule of Law. He formerly served as Chief Nominations Counsel to the Senate Judiciary Committee and played a key role in the confirmation proceedings for scores of federal judges

---

[1] No counsel for a party to this case authored this brief in whole or in part, and no party or counsel to a party, or any person other than amici and its counsel, contributed money to fund the preparation or submission of this brief. *Amici* Society for the Rule of Law is a nonprofit organization that has no parent corporation, and no publicly held corporation owns 10% or more of its stock. The views of the Society expressed here do not necessarily reflect those of any individual member.

and executive branch appointees. He also served as policy counsel to the Senate Republican Policy Committee, and as general counsel and domestic policy advisor to Senator Marco Rubio.

Donald Ayer is a former Deputy Attorney General (1989-1990), former Principal Deputy Solicitor General (1986-1988), and former U.S. Attorney for the Eastern District of California (1981-1986).

Stuart Gerson is a former Acting Attorney General (1993) and former Assistant Attorney General for the Civil Division of the U.S. Department of Justice (1989-1993).

Alan Raul served as General Counsel of the U.S. Department of Agriculture (1989-1993), General Counsel of the Office of Management and Budget (1988-1989), and Associate Counsel to President Ronald Reagan (1986-1988). He also served as Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006-2008). His work in the White House involved U.S. Attorney nominations.

Stanley Twardy, Jr. is a former U.S. Attorney for the District of Connecticut (1985-1991) and was Chief of Staff to Connecticut Governor Lowell P. Weicker, Jr. (1991-1993).

*Amici*'s interest in this case lies in correctly construing and preserving checks and balances and the proper role of Congress, the President, and the courts in the appointment of U.S. Attorneys. Prosecutors wield immense power that

should be exercised fairly and impartially. But their power can be—and in the past has been—abused to advance the personal interests of the President, undermining the core foundations of our democracy. Our system of constitutional checks and balances is essential to thwart efforts to install prosecutors who will abuse their power and act corruptly. But the administration's brazen attempts to bypass the fundamental system of checks and balances in this case erodes the values that *amici* hold dear and that uphold the rule of law: an impartial criminal justice system; free speech; due process; equal protection; and the ability to petition the government. The Executive Branch's disregard for the Senate and the separation of powers relevant here, and its attempts to arrogate power and weaponize the criminal justice system, profoundly concern *amici*.

*Amici* file this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2), and all parties have consented to its filing.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court correctly held the appointment of Lindsey Halligan as U.S. Attorney for the Eastern District of Virginia to be unlawful. The Executive Branch cannot ignore the Constitution and federal statutes by installing a hand-picked loyalist to indefinitely occupy the office of U.S. Attorney where the President has not obtained Senate confirmation for his preferred prosecutor. The administration's actions disregard the checks and balances established in the

3

Appointments Clause and 28 U.S.C. § 546(d), and the Senate's ultimate authority under the Constitution to provide advice and consent for the appointment of U.S. Attorneys. Congress has not relinquished its constitutional role and placed responsibility for U.S. Attorney appointments solely in the Executive Branch. Here, Halligan's appointment violated both 28 U.S.C. § 546 and the Constitution. Although not directly at issue, the appointment also conflicted with the alternate paths available to the President for acting appointments under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345 *et seq.*

The Executive Branch cannot be permitted to proceed in such a unilateral and unchecked manner, particularly for offices subject to Senate confirmation by consensus understanding since the first Congress in 1789. *See* James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 190-91 (2020). The administration's end-run around our constitutional system of checks and balances imperils the integrity of U.S. Attorney's offices and the fair and impartial administration of justice. Prosecutors wield enormous power for the public good; they should not be weaponized as vehicles for personal retribution accountable to only the President and not the Constitution they serve. Such weaponization denigrates the office of U.S. Attorney, emboldens politicized prosecutions, and undermines the rule of law. Yet the cases on appeal show a President intent on prosecuting as well as persecuting his perceived political adversaries and settling

scores. The advice and consent process that the Appointments Clause established, and that the First Congress adopted, was specifically designed to prevent "unfit characters" willing to pursue such schemes. *The Federalist* No. 76 (Alexander Hamilton). It is essential that this Court uphold the Constitutional design and the limits that Congress placed on U.S. Attorney appointments and affirm the decisions below.

## ARGUMENT

## I.     The Constitution and Federal Statutes Grant Congress an Essential Role in the Lawful Appointment of U.S. Attorneys.

The Constitution establishes three separate and distinct branches of government that interact with each other and that check and balance one another's actions to protect against the abuse of power, to safeguard constitutional rights, and to preserve liberty. *See Bowsher v. Synar*, 478 U.S. 714, 730 (1986); *The Federalist* No. 47 (James Madison). In establishing "the necessary partition of power among the several departments," the Framers envisioned an "interior structure of the government" that would provide "the means of keeping each other in their proper places." *The Federalist* No. 51 (James Madison). The Framers understood that the branches were interrelated, could not function wholly independently, and "should not be so far separated as to have no constitutional control over each other." *The Federalist* No. 48 (James Madison).

5

As relevant here, "[t]he [Appointments] Clause is a bulwark against one branch aggrandizing its power at the expense of another branch," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "is among the significant structural safeguards of the constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997). The Clause protects "[t]he structural interests" not of each individual branch but "of the entire Republic." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991). Moreover, the federal statutes governing the appointment of U.S. Attorneys further protect against the unilateral actions of one branch. It is essential that the checks on Executive Branch power established by the Appointments Clause and in federal law are preserved.

## A. Congress Has Retained Its Role Under the Appointments Clause for Filling U.S. Attorney Vacancies.

The Appointments Clause governs the appointment, upon the President's nomination and "by and with the Advice and Consent of the Senate," of "Officers of the United States," U.S. Const. art. II, § 2, cl. 2, and is "the exclusive means of appointing" such officers, *Lucia v. SEC*, 585 U.S. 237, 244 (2018). The Clause delineates between "principal" and "inferior" officers, *see Morrison v. Olson*, 487 U.S. 654, 670-71 (1988), and permits Congress to adopt methods short of presidential nomination and Senate confirmation for inferior officers, *see United States v. Germaine*, 99 U.S. 508, 509-10 (1878); *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760 (2025). Whereas principal officers must be appointed by

6

the President with the Senate's advice and consent—that is, Congress cannot assign its constitutional responsibility—Congress "by Law" may authorize the President, the head of an executive department, or a court of law to appoint inferior officers without Senate confirmation. U.S. Const. art. II, § 2, cl. 2; *see Edmond*, 520 U.S. at 660; *The Federalist* No. 76 (Alexander Hamilton).

United States Attorneys are inferior officers, *see Myers v. United States*, 272 U.S. 52, 159 (1926), but Congress has *not* authorized their appointment at will or without Senate confirmation. Rather, it has reaffirmed by federal statute its constitutional power to check the Executive Branch: "The President shall appoint, *by and with the advice and consent of the Senate*, a United States attorney for each judicial district." 28 U.S.C. § 541(a) (emphasis added). Appointments are for four-year terms, although incumbents "shall continue to perform the duties of [their] office until" a "successor is appointed and qualifies," *id.* § 541(b), and appointees are subject to the President's removal, *id.* § 541(c).

"The head of a department," including the Attorney General, "has no constitutional prerogative of appointment to offices independently of the legislation of [C]ongress, and by such legislation [s]he must be governed, not only in making appointments, but in all that is incident thereto." *United States v. Perkins*, 116 U.S. 483, 485 (1886); *see Edmond*, 520 U.S. at 660 (the "default" for both principal and inferior officers is Senate confirmation). Simply put, the

7

President and the Attorney General cannot bypass Congress and install someone indefinitely as U.S. Attorney.

That Congress has retained the power to exercise the Senate's advice and consent role for U.S. Attorney appointments reflects the important role of that office and Congress's decision that checks and balances for that role are needed to ensure the Executive Branch does not abuse the prosecutorial powers it wields. *See* 28 U.S.C. § 547 (delineating duties of the U.S. Attorney). The Supreme Court has recognized that the U.S. Attorney represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Yet as Attorney General Robert Jackson warned the U.S. Attorneys assembled for their annual conference in the Great Hall of the Department of Justice building in 1940, "[i]f the prosecutor is obliged to choose his cases, it follows that he can choose his defendants. Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted." Robert H. Jackson, U.S. Att'y Gen., Address to the Second Annual Conference of United States Attorneys: *The Federal Prosecutor* 4 (Apr. 1, 1940), https://perma.cc/4KS4-YLAJ. For this reason,

Jackson explained, two branches of government are required for the appointment of U.S. Attorneys:

> Because of this immense power to strike at citizens, not with mere individual strength, but with all the force of government itself, the post of Federal District Attorney from the very beginning has been safeguarded by presidential appointment, requiring confirmation of the Senate of the United States. You are thus required to win an expression of confidence in your character by both the legislative and the executive branches of the government before assuming the responsibilities of a federal prosecutor.

*Id.* at 2.

Jackson's concerns remain relevant over eighty-five years later. The Senate's confirmation process ensures that presidential nominees possess the competence and character to perform the duties of their office. *See The Federalist* No. 76 (Alexander Hamilton). As *amicus* Gregg Nunziata, on behalf of the Society for the Rule of Law Institute, explained in opposing the confirmation of Ed Martin as U.S. Attorney for the District of Columbia, the Senate, through its Judiciary Committee, "must ensure that any Justice Department nominee would apply the government's vast prosecutorial powers not on behalf of the president, but Justice itself." Letter from Gregg Nunziata, Exec. Dir., Society for the Rule of Law Institute, to Hon. Chuck Grassley, Chairman, and Hon. Dick Durban, Ranking Member, Sen. Judiciary Comm. 1 (May 1, 2025), https://perma.cc/5L6N-P2QJ. The "[c]onfirmation of individuals ill-suited" to be prosecutors, Nunziata explained, "would pose a dire threat to the Constitution, the rule of law, and the

rights and liberties of all Americans." *Id.* Critically, Senate confirmation protects against abuses of prosecutorial power and bald partisanship, and it helps preserve liberty—of both individuals and the Nation as a whole.

At the same time, however, *amici* recognize that U.S. Attorney vacancies combined with the sometimes lengthy Senate confirmation process can impede local offices from effectively carrying out their functions and, in turn, from achieving an administration's lawful enforcement priorities. Yet Congress has responded to these concerns. Two paths readily permit the Executive Branch to temporarily fill U.S. Attorney vacancies while also ensuring that it ultimately seeks Senatorial advice and consent. The administration complied with neither path here.

## B. Federal Statutes Governing Interim and Acting Appointments Protect Against Unilateral Appointments.

Congress has enacted two paths to permit the Executive Branch to designate interim and acting U.S. Attorneys while the office of U.S. Attorney remains vacant—that is, unoccupied by an individual who has received Senate confirmation for that office. The first, 28 U.S.C. § 546, is specific to interim U.S. Attorneys. The second, the FVRA, 5 U.S.C. §§ 3345 *et seq.*, operates across executive agencies to permit the appointment of acting officers, including Acting U.S. Attorneys. Both paths allow the Executive Branch to choose and temporarily install leaders for U.S. Attorney's offices, subject to certain statutory conditions. And both paths retain

10

Congress's role under the Appointments Clause and the system of checks and balances so important to our Nation.

*Section 546.* Congress assigned both the Attorney General and the courts a role in interim U.S. Attorney appointments while continuing to incentivize Senate confirmation for this consequential office. Under 28 U.S.C. § 546(a), "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." The appointee, who cannot be someone for whom "the Senate refused to give advice and consent," *id.* § 546(b), may serve until the earlier of "(1) the qualification of a United States attorney for such district appointed by the President under section 541," *i.e.*, confirmed by the Senate, "or (2) the expiration of 120 days after appointment by the Attorney General," *id.* § 546(c)(1)-(2). When 120 days after appointment expires, "the district court for such district may," in its discretion, "appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d). In other words, where the district court acts, the appointee may remain in the office indefinitely "until the vacancy is filled." *Id.*

Notably, in 2006, Congress removed the 120-day limit on Attorney General appointments under Section 546(a), but it reinstated the time limit only a year later specifically because of "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals" and the ability for the Executive Branch to significantly

avoid Senate confirmation. H.R. Rep. No. 110-58, at 6 (2007); *see* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007); *United States v. James*, No. 2:25-cr-00122, 2025 WL 3266931, at *6-8 & nn.12-15 (E.D. Va. Nov. 24, 2025) (reciting this legislative history). In so doing, Congress reaffirmed its essential role in the permanent installation of U.S. Attorneys and the judiciary's secondary role in indefinitely filling a vacant office. Congress did not authorize the Attorney General to make successive interim appointments, each with their own 120-day term, and to bypass *both* Congress and the courts.

That Congress shared checks and balances with the federal judiciary under Section 546(d) makes sense, given both the judiciary's interest in the integrity of the criminal justice system and its isolation from political influence. The independent judiciary upholds the fair and impartial administration of justice in the communities in which they sit. Courts also have an interest in appointing capable and qualified leaders to helm local U.S. Attorney's offices, earn the respect of their staff, the court, other attorneys, and the public, and protect the integrity of the justice system. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (courts "must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice"). Congress therefore could have confidence that courts would not exercise their

discretion to choose unqualified and politically beholden appointees who would abuse their office. Moreover, where the President does not like the court's choice, he can permanently replace that individual with a candidate the Senate confirms.

*The FVRA.* Whether used independently or in tandem with 28 U.S.C. § 546, the FVRA offers the President additional options to temporarily fill a U.S. Attorney vacancy, while maintaining Senatorial advice and consent as the path for permanent appointments. These options are subject to statutory constraints, including time limits, to ensure compliance with the Appointments Clause. *See* 5 U.S.C. §§ 3345-3346; *see also United States v. Giraud*, 160 F.4th 390, 393-95 (3d Cir. 2025). Temporary officeholders, moreover, must possess required in-office experience or have earlier received Senate confirmation. 5 U.S.C. § 3345(a)(1)-(3). These additional checks ensure vacant offices are occupied by qualified persons and also reaffirm the importance of Senate confirmation.

More specifically, the FVRA permits three classes of persons to temporarily fill a vacancy for which Senate confirmation is required. By default, the "first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." *Id.* § 3345(a)(1); *see also id.* § 3345(b)(1) (further limiting the first-assistant pool based on tenure and whether the person has themself been nominated); *Giraud*, 160 F.4th at 394, 397-400 (noting elevation to the acting role is automatic, requires no action from the Executive Branch, citing

*NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017), and applies only to the first assistant at the time the vacancy occurs); *Widakuswara v. Lake*, No. 1:25-cv-1015, 2026 WL 638676, at *5-7 (D.D.C. Mar. 7, 2026) (similarly interpreting the language in 5 U.S.C. § 3345(a)(1)). The President also has the option under the FVRA to instead appoint a Senate-confirmed officer or senior agency employee as the acting officer. *See* 5 U.S.C. § 3345(a)(2)-(3); *Giraud*, 160 F.4th at 394, 398. In all circumstances, acting service is time limited: the officer may serve for a 210-day period from the date that the vacancy occurred, or while a first or second nomination for the office is pending in the Senate, with extensions if the nomination is rejected, withdrawn, or returned, although no tolling occurs for further nominations. *See* 5 U.S.C. § 3346; *Giraud*, 160 F.4th at 394.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which the Senate's advice and consent is required unless another statute (*e.g.*, 28 U.S.C. § 546) applies or the President makes a recess appointment under the Constitution. *See* 5 U.S.C. § 3347; *see also* U.S. Const. art. II, § 2, cl. 3. General vesting and delegation statutes—that is, statutes other than specific authorization for interim U.S. Attorney appointments under 28 U.S.C. § 546, for example—cannot be used consistent with the FVRA to have another acting official perform

14

all U.S. Attorney duties and functions. *See Giraud*, 160 F.4th at 394-95, 403-05; *see also Widakuswara*, 2026 WL 638676, at \*7-8 (applying 5 U.S.C. § 3347).

Together Section 546 and the FVRA provide the Executive Branch ample discretion and opportunity to temporarily fill a vacant U.S. Attorney office so that the work of the office can continue uninterrupted, while still ensuring that the Executive Branch complies with the Appointments Clause to permanently install their preferred occupant.

## II. The District Court Correctly Held that the Executive Branch Unlawfully Arrogated Power to Purportedly Appoint Halligan.

The district court properly concluded that Lindsey Halligan's appointment violated the Appointments Clause and the path Congress established under 28 U.S.C. § 546 for interim U.S. Attorney appointments pending nomination and Senate confirmation of a permanent appointee. *See James*, 2025 WL 3266931, at \*5-9; *United States v. Comey*, No. 1:25-cr-00272, 2025 WL 3266932, at \*5-10 (E.D. Va. Nov. 24, 2025).[2] The administration's maneuvers to appoint Halligan ran afoul of Section 546 and the Appointments Clause, just as its efforts to install temporary appointees indefinitely in other U.S. Attorney offices violated the Constitution, Section 546, and the FVRA, *see infra* Section III.

---

[2] The decisions below are identical as to the issue *amici* address herein. As the lead case on appeal, *amici* cite to *James* and do not include separate citations to *Comey*.

Section 546 permits the Attorney General to install an interim U.S. Attorney for a total of 120 days, 28 U.S.C. § 546(a), after which the district court can act, *id.* § 546(d), or the position can be filled consistent with the FVRA pending the Senate's confirmation of a nominee. Here, upon the Senate-confirmed U.S. Attorney's resignation on January 20, 2025, the Attorney General appointed Erik Siebert as interim U.S. Attorney for the Eastern District of Virginia under 28 U.S.C. § 546(a). *See James*, 2025 WL 3266931, at *2. Before the end of Siebert's statutorily mandated term, the district court exercised its discretion under Section 546(d) to appoint Siebert and have him continue in his role beyond the 120-day limit that otherwise applied. *Id.* Given his appointment by the court, Siebert could lawfully remain in the position "until the vacancy"—*i.e.*, the ongoing lack of a Senate-confirmed officeholder that put Section 546 in play on January 20, 2025— "[was] filled." 28 U.S.C. § 546(d).

When Siebert later resigned, Section 546(a) did not spring back into availability for the Attorney General. Rather, the initial vacancy from January 20, 2025, remained unfilled and no new 120-day period took effect.

A different conclusion would permit serial appointments under Section 546(a) to permanently evade Senatorial advice and consent—and contrary to the appropriate checks and balances described above. The Attorney General could (1) repeatedly appoint a new interim U.S. attorney so long as her prior appointee

16

served no more than 120 days, or (2) appoint an interim U.S. Attorney anew after the President forced out or fired the district court's choice under Section 546(d). But as the court below aptly stated, "[t]he text and structure of subsection (d) in particular make clear the appointment power (1) shifts to the district court after the 120-day period and (2) does not revert to the Attorney General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed." *James*, 2025 WL 3266931, at *5; *see id.* at *5-9 (explaining the court's conclusion). Importantly, to interpret Section 546 otherwise would elevate the role of the Executive Branch relative to Congress and the courts in a manner Congress never authorized despite having the constitutional power to place U.S. Attorney appointments solely within the Executive Branch. Instead, the statutory conditions in both Section 546 and the FVRA prioritize the Senate's advice and consent.

Because Halligan was not appointed by the President and confirmed by the Senate, and because Section 546 did not permit the Attorney General to name Halligan as interim U.S. Attorney under Section 546(a) after the role already had been filled for 120 days, the district court was correct to hold that Halligan's appointment violated the Appointments Clause. *See id.* at *9.

17

### III. The Administration's End-Run Around the Constitution, Section 546, and the FVRA Undermines the Rule of Law by Emboldening Politicized Prosecutions and Chilling Opposition.

Significantly, the district court is not alone in rejecting an attempt by the Executive Branch to circumvent federal law and install its preferred prosecutor atop a U.S. Attorney's office indefinitely without obtaining Senate confirmation. Every court that has examined a recent challenge to such an appointment—and there have been challenges to at least five other appointees—has held the appointment to be invalid under Section 546, the FVRA, or both, because of similar maneuvers by the administration as in this case. *See Giraud*, 160 F.4th at 406-07 (Alina Habba); *United States v. Garcia*, No. 2:25-cr-00227, 2025 WL 2784640, at *14, *18 (D. Nev. Sept. 30, 2025), *appeal filed* No. 25-6229 (9th Cir., argued Feb. 12, 2026) (Sigal Chattah); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1091, 1105 (C.D. Cal. 2025) (Bilal Essayli); *In re Grand Jury Subpoena*, No. 25 Misc. 19, 2026 WL 60793, at *1, *5 (N.D.N.Y. Jan. 8, 2026), *appeal filed* No. 26-156 (2d Cir., pending merits briefing) (John Sarcone III); *United States v. Ramirez-Martinez*, No. 1:22-cr-01721, 2026 WL 113431, at *26 (D.N.M. Jan. 14, 2026) (Ryan Ellison); Mem. Op., *United States v. Naviwala*, No. 2:24-cr-00099 (D.N.J. Mar. 9, 2026), ECF No. 317 (holding unlawful delegation to triumvirate).[3]

---

[3] Both Lindsey Halligan and Alina Habba resigned from their respective U.S. Attorney's offices. *See* Steve Thompson, Salvador Rizzo & Jeremy Roebuck, *Lindsey Halligan out as U.S. attorney following pressure from judges*, Wash. Post

The consequences of the administration's attempted end-run around federal law are clear. Its actions threaten the legitimacy of prosecutions, the credibility of U.S. Attorney's offices, and the fair and impartial administration of justice. The two cases on appeal demonstrate as much. They show a President intent on using the justice system to punish his perceived political adversaries and hostile to experienced prosecutors who would prioritize the integrity of their office, and their sense of fairness, justice, and impartiality, over loyalty to the President.

The President's September 20, 2025, Truth Social post—a message to Attorney General Pam Bondi complaining about interim and court-appointed U.S.

_____

(Jan. 20, 2026), https://wapo.st/4b6k2lQ. Sigal Chattah remains in charge of the District of Nevada as First Assistant U.S. Attorney because the district court stayed its decision pending the Ninth Circuit's review. *See* Order, *Garcia*, No. 2:25-cr-00227 (D. Nev. Oct. 23, 2025), ECF No. 52; U.S. Att'y's Off., D. Nev., *Meet the First Assistant U.S. Attorney* (last visited Mar. 2, 2026), https://perma.cc/NM3C-GCVP. The President has since nominated George Kelesis for U.S. Attorney for the District of Nevada. *See* Dana Gentry, *Trump appoints Kelesis as U.S. attorney as Chattah fights disqualification before Ninth Circuit*, Nevada Current (Feb. 12, 2026), https://tinyurl.com/ye27chem. Bill Essayli, John Sarcone, and Ryan Ellison remain in charge of their respective offices as First Assistant U.S. Attorneys. *See* U.S. Att'y's Off., C.D. Cal., *Staff Profile: First Assistant U.S. Attorney Bilal A. Essayli* (last visited Mar. 2, 2026), https://perma.cc/A92E-G2KW; U.S. Att'y's Off., N.D.N.Y., *Staff Profile: First Assistant U.S. Attorney John A. Sarcone III* (last visited Mar. 2, 2026); https://perma.cc/9TVY-3ER3; U.S. Att'y's Off., D.N.M., *Staff Profile: Meet the U.S. Attorney* (last visited Mar. 2, 2026), https://perma.cc/B5XK-VPF2; *Ramirez*, 807 F. Supp. 3d at 1112-15 (holding Essayli unlawfully assumed the role of Acting U.S. Attorney but could continue as First Assistant U.S. Attorney); *Ramirez-Martinez*, 2026 WL 113431, at *26 (holding Ellison could not claim to be Acting U.S. Attorney, Interim U.S. Attorney, or U.S. Attorney but could serve as First Assistant U.S. Attorney pursuant to an order by the Attorney General).

Attorney Erik Siebert, praising Halligan (an insurance attorney with no prior criminal prosecutorial experience who served on Trump's personal legal team), and directing the prosecution of James, Comey, and Senator Adam Schiff—speaks volumes:[4]



**Donald J. Trump** ✔ ➕
@realDonaldTrump

Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT

**16k** ReTruths    **52.9k** Likes                    Sep 20, 2025 at 6:44 PM

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 6:44 PM),

---

[4] *See* Alan Feuer et al., *Trump Demands That Bondi Move 'Now' to Prosecute Foes*, N.Y. Times (Sept. 20, 2025), https://tinyurl.com/zaftdnva; Josh Dawsey, Sadie Gurman & Aruna Viswanatha, *Inside the Justice Department Where the President Calls the Shots*, Wall Street Journal (Oct. 8, 2025), https://tinyurl.com/mwtzmrzv; Salvador Rizzo, Perry Stein & Jeremy Roebuck, *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025), https://wapo.st/40MXnq2.

https://truthsocial.com/@realDonaldTrump/posts/115239044548033727. Siebert

purportedly resigned under pressure from the White House because he did not

believe the facts supported charging either James or Comey. *See James*, 2025 WL

3266931, at *2-3. Frustrated by this refusal to go after his perceived enemies, the

President instead sought the appointment of a prosecutor who would do his

bidding. Two days later, General Bondi swore in Halligan as interim U.S.

Attorney. *See* Kyle Cheney, *Bondi taps Trump's former personal attorney as a top*

*federal prosecutor*, Politico (Sept. 22, 2025), https://tinyurl.com/44x33acw.

Halligan obtained an indictment against Comey later that week, and an indictment

against James two weeks later, and was the only attorney listed on each indictment.

Devlin Barrett, Glenn Thrush & Jonah Bromwich, *N.Y. Attorney General Letitia*

*James Indicted After Trump's Pressure Campaign*, N.Y. Times (Oct. 9, 2025,

updated Dec. 7, 2025), https://www.nytimes.com/live/2025/10/09/us/trump-news.

The Executive Branch's installation of Halligan shows that it "is putting

people into these roles not for their expertise in law or their service to the rule of

law, but for their loyalty to the President and their willingness to put his personal

interests above the law." Society for the Rule of Law, *Gregg Nunziata on Trump's*

*DOJ Overreach with Chris Hayes* (Sept. 24, 2025), https://tinyurl.com/3s85p8ku.[5]

---

[5] *See also* Cameron Joseph & Henry Gass, *Trump lands his former attorneys in top*
*positions as he leans on the judiciary*, Christian Science Monitor (July 31, 2025),
https://perma.cc/VHK5-FXTK; Peter Baker, *Trump's Top Aide Acknowledges*

But "[t]he resources of the federal government, particularly the immense prosecutorial powers of the Justice Department, should not be directed toward persecuting, unlawfully, the personal enemies or critics of the President who happens to sit in the White House today." Society for the Rule of Law, *All in with Chris Hayes*, at 3:05 (Sep. 24, 2025), https://tinyurl.com/3s85p8ku.

The indefinite installation of loyalists enables the Executive Branch to target its foes for prosecution in an egregious politicization of the criminal justice system, used for retaliation and intimidation. Senatorial advice and consent for U.S. Attorneys, and statutory constraints on temporary and acting U.S. Attorney appointments, are integral to upholding the rule of law and the fair and impartial administration of justice. *See* H.R. Rep. No. 110-58, at 3-5 (citing concerns about political interference with U.S. Attorney's prosecutorial independence and stating that the "Senate's advise and consent process formally checks the power of the President" and that "Senatorial courtesy" serves "as an additional, informal check on the President's appointment power").

Moreover, political prosecutions send a message that failure to capitulate to the president's whims exposes even very powerful people to trumped-up criminal investigation. Even where defendants, as here, may have their cases dismissed pre-

---

*'Score Settling' Behind Prosecutions*, N.Y. Times (Dec. 16, 2025), https://tinyurl.com/3uz5xc9h.

trial, or others may be acquitted after trial, simply by bringing the charges, the

prosecution discredits political opponents and their political party, imposes legal

costs, and seeks to remove them as a political threat while chilling the speech of

others. Politicized prosecutions harass their targets by consuming their time and

resources, tarnishing their reputations, and impeding their future opposition efforts.

*See* Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39

Am. U. Int'l L. Rev. 587, 617-18 (2024). The result is a chilling effect that goes

beyond the immediate target, broadly deterring political advocacy and speech by

instilling fear in political opponents and those who would seek to uphold the rule

of law by holding everyone equally accountable.

The abuse of the Justice Department's prosecutorial power is profoundly

incompatible with the rule of law, which is fundamental to our freedoms and the

foundation of our nation. An increasingly politicized, weaponized, and corrupted

justice system threatens our fundamental values: impartial criminal justice,

freedom of speech, due process, equal protection of the laws, the right to petition

the government, and democracy itself. *See* Society for the Rule of Law, *Statement*

*on Jerome Powell Investigation* (Jan. 13, 2026), https://perma.cc/GY2U-5CUF. As

Attorney General Robert Jackson explained over eighty-five years ago, "the

greatest danger of abuse of prosecuting power" is when "law enforcement becomes

personal, and the real crime becomes that of being unpopular with the predominant

or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself." *The Federal Prosecutor* at 5.

The threat of vindictive and politicized prosecutions reaffirms the importance of upholding our constitutional system of robust checks and balances to ensure that qualified individuals committed to the fair and impartial administration of justice inhabit such offices. The Justice Department "must be recognized by all citizens as a neutral zone, in which neither favor nor pressure nor politics is permitted to influence the administration of the law." U.S. Att'y Gen. Griffin B. Bell, Address Before U.S. Dep't of Justice Lawyers 13 (Sept. 6, 1978), https://perma.cc/XWM7-TPCR.

## CONCLUSION

This Court should affirm the decisions below holding the installation of Lindsey Halligan to be unlawful and in violation of both 28 U.S.C. § 546 and the Appointments Clause.

Respectfully submitted,

*/s/ Erin H. Flynn*
Erin H. Flynn
*Counsel of Record*
Maithreyi Ratakonda
Christine P. Sun
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320

24

Brooklyn, NY 11201
Tel.: (202) 999-9305

*Attorneys for* Amici Curiae
*Society for the Rule of Law,*
*Its Executive Director Gregg*
*Nunziata, and Charter Members*
*Donald Ayer, Stuart Gerson, Alan*
*Raul, and Stanley Twardy, Jr.*

25

## CERTIFICATE OF COMPLIANCE

This brief contains 5519 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with Federal Rule of Appellate Procedure 29(a)(4) and (5), and further complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

*/s/ Erin H. Flynn*
Erin H. Flynn
*Attorney for* Amici Curiae
*Society for the Rule of Law,*
*Its Executive Director Gregg*
*Nunziata, and Charter Members*
*Donald Ayer, Stuart Gerson, Alan*
*Raul, and Stanley Twardy, Jr.*

Dated: March 10, 2026

**CERTIFICATE OF SERVICE**

I, Erin H. Flynn, hereby certify that on March 10, 2026, I electronically filed the foregoing Brief of Society for the Rule of Law, Its Executive Director Gregg Nunziata, and Charter Members Donald Ayer, Stuart Gerson, Alan Raul, and Stanley Twardy, Jr. as *Amici Curiae* in Support of Defendants-Appellees and Urging Affirmance with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. A true and correct copy of this brief has been served via CM/ECF on all counsel of record.

/s/ Erin H. Flynn
Erin H. Flynn
*Attorney for* Amici Curiae
*Society for the Rule of Law,*
*Its Executive Director Gregg*
*Nunziata, and Charter Members*
*Donald Ayer, Stuart Gerson, Alan*
*Raul, and Stanley Twardy Jr.*